UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------x
Highfields Capital Ltd., Highfields         :
Capital I LP, Highfields Capital II LP,      :
                                             :
                    Plaintiffs,              :    Case No. 04-10624 (MLW)
            v.                               :
                                             :
SCOR, S.A.,                                  :
                                             :
                    Defendant.               :
-----------------------------------------------------X
```

**DEFENDANT SCOR, S.A.'S**
**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR STAY</u>**

Douglas H. Meal, BBO# 340971
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Tel:  617-951-7000
Fax:  617-951-7050

July 6, 2004

Of Counsel:
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel:  212-558-4000
Fax:  212-558-3588

<u>TABLE OF CONTENTS</u>

**Page No.**

STATEMENT OF FACTS ................................................................................. 1

THE IRISH ACTION ..................................................................................... 4

HIGHFIELD'S SECOND FRONT ..................................................................... 8

SUMMARY OF ARGUMENT .......................................................................... 8

    I.  THE IRISH FORUM SELECTION CLAUSE SHOULD BE
        ENFORCED ...................................................................................... 9

    II.  THIS ACTION SHOULD BE DISMISSED OR STAYED
        BECAUSE IRELAND IS THE MORE CONVENIENT FORUM .............. 10

        A.  A federal district court may dismiss or in the alternative stay an action
           when there is a parallel proceeding in a foreign court ..................... 10

        B.  All of the Relevant Factors Favor a Dismissal or Stay
           of this Action. ................................................................................. 11

           1.  The parties and issues involved in both proceedings are
              substantially the same ............................................................. 12

           2.  Dismissing this action would promote judicial efficiency. ......... 13

           3.  The relief available in the Irish High Court is adequate. ............ 14

           4.  Litigation in the Irish High Court is reasonably convenient for
              both parties. ............................................................................. 15

           5.  There would be no prejudice to either party in the Irish High
              Court. ...................................................................................... 16

           6.  The temporal sequence of the filings favors a
              dismissal or stay. .................................................................... 16

CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Abdullah Sayid Rajab Al-Rifai & Sons v. McDonnel Douglas Foreign Sales Corp.*, 988 F.Supp 1285 (E.D.Miss 1997) ...................................................11

*Boushel v. Toro Co.*, 985 F.2d 406 (8th Cir. 1993) ...........................................11

*Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233 (D.D.C. 1982) ....................16

*Caminiti and Iatarola, Limited v. Behnke Warehousing, Inc.*, 962 F.2d 698 (7th Cir. 1992) ...........................................................................................12

*Capital Currency Exchange*, 155 F.3d 603 (2d Cir. 1998) ................................................14

*Carey v. Bayerische Hypo-und Vereinsbank AG*, Docket No. 03-7819 ...........................15

*Caspian Investments, Ltd. V. Vicom Holdings, Ltd.*, 770 F. Supp. 880 (S.D.N.Y. 1991) ...................................................................12, 14, 16, 17

*Detroit Medical Center v. Provider Healthnet Services, Inc.*, 269 F. Supp. 2d 487 (D. Del. 2003) ....................................................................................10

*Doe v. Hyland Therapeutics Division*, 807 F. Supp. 1117 (S.D.N.Y. 1992) ....................14

*Dowling v. Hyland Therapeutics Div.*, 767 F. Supp. 57 (S.D.N.Y. 1991) ........................14

*EFCO Corp. v. Aluma Systems, USA, Inc.*, 983 F. Supp. 816 (S.D. Iowa 1997) ..............13

*Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F.Supp 101 (S.D.N.Y. 1997) ...............................................................................11, 15, 17

*Goldhammer DD UK v. Dunkin' Donuts, Inc.*, 59 F. Supp.2d 248 (D.Mass 1999) ...............................................................10, 11, 12, 14, 16

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) .................................................15

*Hilton v. Guyot*, 159 U.S. 113 (1895) .............................................................11

*Interamerican Trade Corporation v. Companhia Fabricadora*, 973 F.3d 487 (6th Cir. 1992) .............................................................................................9

*MLC Ltd. V. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249 (S.D.N.Y. 1999) ...................................................................................11, 12, 13, 14, 17

*Manetti-Farrow, Inc. v. Guccie American, Inc.*, 858 F.2d 509 (9th Cir. 1988) .................9

*National Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1243, *MLC LTD., v. Credit Suisse First Boston Corp.*, (S.D.N.Y. 1999 ) ............................................11, 13

*Oxley v. Wyeth Laboratories, Inc.*, 1992 U.S. Dist. LEXIS 6858 (E.D. Pa. 1992) ...........14

*Personal Security & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002) .........................................................................................................................10

*Piper Aircraft v. Reyno*, 454 U.S. 235 (1981) ..................................................................14

*Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993)........................................10

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).....................................................9

*Turner Entertainment Co. v. Degeto Film GMBH*, 25 F.3d 1512 .....................................12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------x
Highfields Capital Ltd., Highfields　　　　　:
Capital I LP, Highfields Capital II LP,　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs,　　　:　Case No. 04-10624 (MLW)
　　　　　　　　　v.　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
SCOR, S.A.,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendant.　　　:
------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR STAY

Defendant SCOR, S.A. ("SCOR"), a French company, submits this memorandum in support of its motion to dismiss the complaint in this action, pursuant to Rules 12(b)(3) and (6) of the Federal Rules of Civil Procedure, on the basis of improper venue or, in the alternative, to stay the action pending disposition of a previously-filed, related case pending in the High Court of Ireland.

## STATEMENT OF FACTS

SCOR is a French reinsurance company with its principal place of business in Paris, France. SCOR does not conduct business in Massachusetts and was served with process in this action in Paris on June 14, 2004, pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. (A copy of the complaint is Exhibit A to the Affidavit of Arnaud Chneiweiss (the "Chneiweiss Aff.") submitted in support of this motion.)

Plaintiffs Highfields Capital Ltd., Highfields Capital I LP and Highfields Capital II LP (collectively, "Plaintiffs" or "Highfields") are a Cayman Islands company and its affiliates which describe themselves in their complaint as "investment vehicles" managed by Boston-based Highfields Capital Management LP. (Complaint, para. 1)

SCOR and Highfields are majority and minority shareholders, respectively, of Irish Holdings Limited, a holding company for Irish Reinsurance Partners Limited (collectively, "IRP"). SCOR owns 53.35% of the shares of IRP, while Highfields owns 46.65%. IRP, as its name suggests, conducts reinsurance business from its offices in Ireland.

Highfields became an investor in IRP upon IRP's creation, pursuant to a Subscription Agreement dated as of December 21, 2001. (Chneiweiss Aff., Ex. B) The terms of that agreement were negotiated principally by trans-Atlantic telephone calls and at a meeting in Paris. (Chneiweiss Aff., para. 3) The only contacts with Massachusetts are that Highfields alleges that it received a Private Placement Memorandum at its Boston office (evidently by mail) and that a SCOR executive paid a single visit there to discuss a potential investment in IRP. (Complaint, Chneiweiss Aff., Ex. A, para. 5)

The Subscription Agreement expressly acknowledges that there are substantial risks involved in the investment, which it states that Highfields has evaluated, and provides that Highfields "bears the risk of the investment." (Chneiweiss Aff., Ex. B at 4) The Subscription Agreement annexes and incorporates by reference a form of the Shareholders' Agreement that the parties proposed to enter into at closing. The Subscription Agreement recites:

> 11. **Entire Agreement**. This Subscription Agreement and the Shareholders Agreement constitute the entire agreement between the Investor, on the one hand and the Company and/or SCOR, on the other hand, and supersede all prior agreements and understandings, oral and written, between such parties with respect to the subject matter hereof. (Chneiweiss Aff., Ex. B at 8, para. 11)

The Subscription Agreement states that it is governed by and is to be construed in accordance with the laws of Ireland. (Chneiweiss Aff., Ex. B at 9, para. 18)

Upon purchasing and taking up its shareholding in IRP, Highfields executed and became a party to a Shareholders' Agreement dated as of December 28, 2001 (Chneiweiss Aff., Ex. C), in the form that earlier had been annexed to and incorporated as part of the Subscription Agreement. The final Shareholders' Agreement

-2-

provides that it, together with the Subscription Agreement that was specifically referenced in the Shareholders' Agreement (which provided the final word on the contractual relations between SCOR and, Highfields), "constitute the entire agreement between the parties hereto and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof." The Shareholders' Agreement continues:

> Each party hereto acknowledges and agrees that, in entering into this Agreement and the agreements and the other documents referred to herein, such party has not relied and shall not rely on, and <u>shall have no remedy in respect of, any statement, representation, warranty or understanding (whether negligently or innocently made)</u> of any Person (whether such Person is a party to this Agreement or not) other than as expressly set forth in this Agreement as a representation or warranty and <u>each party hereto irrevocably waives any claims, rights or remedies which such party might otherwise have had in relation thereto</u>.

(Chneiweiss Aff., Ex. C, Section 7.9; emphasis added)

The Shareholders' Agreement also states that it is governed by and is to be construed in accordance with the laws of Ireland. It also provides that: "<u>Each shareholder hereby submits to the exclusive jurisdiction of the courts of Ireland for all purposes relating to this Agreement</u>." (Chneiweiss Aff., Ex. C, Section 7.16; emphasis added)

Highfields' December 2001 investment in IRP was for a fixed period of time only. The Shareholders' Agreement provides for a mandatory exit by Highfields in either 2004, 2005 or, at the latest, 2006, based on an agreed valuation methodology. But rather than redeem its investment, Highfields has instigated a series of disputes with SCOR, all arising out of their joint ownership of IRP and thus "relating to" their Shareholders' Agreement, in an attempt to improve for Highfields the terms of the deal (and, in particular, the compensation that Highfields would receive upon its exit from IPR) that it negotiated with SCOR.

## THE IRISH ACTION

Those matters derive from the same alleged transactions, agreements, events and communications that are the subject of litigation commenced by Highfields in the designated exclusive forum, the High Court of Ireland.  On December 1, 2003 Highfields issued a Petition out of the High Court in Dublin, Ireland (the "Irish Action"). (Highfields' Petition is Exhibit A to the Affidavit of Conor McDonnell, Esq. (the "McDonnell Aff.") submitted in support of this motion.)

Relying on various of the alleged communications and events that are addressed in the complaint in this case, Highfields asserts in the Irish Action that (i) it was induced to invest in IRP on the basis of a misrepresentation as to SCOR's financial well being and market position, as a result of which Highfields understood that IRP would be more financially sound and, thus, more commercially successful than it has been; (ii) SCOR has misused the terms of the Subscription Agreement, the Shareholders' Agreement and related documentation to consolidate for itself majority ownership of IRP's equity and to operate IRP in an oppressive manner and in disregard of Highfields' interests; and (iii) that this has resulted in an undermining of the relationship between the parties.  In the Irish Action, Highfields seeks, among other things, IRP's dissolution.

SCOR has counterclaimed in its Points of Defence and Counterclaim  in the Irish Action for a declaration that it did not make any misstatements to Highfields in connection with Highfields investment in IRP and that SCOR has not acted in violation of the terms of the Subscription Agreement or the Shareholders Agreement or other legal requirements.  (McDonnell Affidavit, Ex. G)

Highfields' claims in the Irish Action were elaborated in the December 2, 2003 affidavit of Richard Grubman, the Managing Director of Highfields.  (McDonnell Aff., Ex. B)  Mr. Grubman of Highfields attacks, among other things, representations allegedly made by SCOR at the time of Highfields' investment.  He asserts that SCOR in late 2001 "held itself out as having strong credit ratings and a correspondingly strong position in the reinsurance market," which "figured prominently in [Highfields'] decision to invest in [IRP].  Mr. Grubman adds, "The high calibre of the intended business was

reflected by the involvement of the other shareholders who were prepared to subscribe for IRP shares pursuant to copies of the Subscription Agreement." (Para. 18-19) However, Highfields suggests its alleged reliance on SCOR's representations in making its investment was misplaced. Mr. Grubman states: "as a result of the weakened financial condition of [SCOR], its ratings have dramatically fallen and it accordingly will face enormous pressure to write riskier and more poorly-priced business." (Para. 20) This, Highfields asserts, will hurt the value of its investment in IRP.[1]

A schedule for the exchange of pleadings and the completion of certain procedural steps required prior to fixing a trial date was established by the Irish High Court at an initial directions hearing on January 12, 2004. (McDonnell Aff., Ex. C)

SCOR responded in the Irish Action with the January 26, 2004 affidavit of Denis Kessler, the Chairman and Chief Executive Officer of SCOR. (McDonnell Aff., Ex. D) In his Affidavit Mr. Kessler disputes Highfields' allegations, noting among other things the full disclosure of risks that occurred as part of the process by which Highfields decided to invest in IRP (para. 14) Mr. Kessler states, "I should point out that at no stage during the negotiations leading to the agreements completed in December 2001 was it made clear by Highfields that they would place such emphasis on the question of SCOR's ratings. Notwithstanding the detailed and extensive negotiations, no clause in relation to the ratings was included in the Agreement." (Para. 64) Mr. Kessler acknowledges a decline in SCOR's credit ratings but alleges that Highfields overstates the importance of such ratings (para. 19). He describes the fact that IRP's business has been successful and profitable, and he disputes in detail Highfields' various claims of "oppression" by SCOR as the majority shareholder in IRP.

In purported compliance with the schedule set out on January 12, Highfields delivered a Points of Claim document on February 9, 2004. There followed an exchange of correspondence in which SCOR alleged that the Points of Claim delivered failed to define adequately the case being made by Highfields. Highfields

---

[1] In fact, IRP has been very successful and profitable, and Highfields increased its investment after December 2001. (McDonnell Aff., Ex. G, paras. 25, 14)

denied this, and SCOR subsequently applied to the High Court seeking to force Highfields to deliver appropriate Points of Claim.  That motion was heard before the High Court on March 29, 2004, when the High Court made an order striking out the initial Points of Claim and directing Highfields to deliver Points of Claim in proper form. (McDonnell Aff., Ex. E)

Highfields duly delivered revised Points of Claim in compliance with this order on April 7, 2004.  (McDonnell Aff., Ex. F)  SCOR subsequently delivered its Points of Defence and Counterclaim on May 6, 2004.  (McDonnell Aff., Ex. G)  The Points of Defence take specific issue with each aspect of the Points of Claim.  In addition, the counterclaim refers to the various agreements between the parties and seeks declarations as follows:

(a)     that Highfields has not been oppressed;

(b)     that Highfields is bound by the said Agreements;

(c)     that SCOR is not and has not been guilty of any misrepresentation to Highfields in respect of its own financial position or performance, or in respect of the business of IRP;

(d)     that the Agreements in respect of IRP were not induced by any alleged misrepresentation by or on behalf of SCOR or its servants or agents;

(e)     that Highfields is and remains bound by the terms of the Agreements including but not limited to the agreed exit terms contained therein; and

(f)     any other appropriate relief, plus the costs of the action.

The discovery process has commenced in the Irish Action.  On June 3, 2004 Highfields served a request for voluntary discovery (McDonnell Aff., Ex. H), and SCOR served its request for voluntary discovery on June 4, 2004 (McDonnell Aff., Ex. I).  Highfields confirmed the categories of documentation in respect of which it is prepared to provide discovery by letter dated June 17, 2004.  (McDonnell Aff., Ex. J) Highfields has issued a motion seeking to compel SCOR to provide the discovery. (McDonnell Aff., Ex. K)  SCOR will issue its response to the Highfields discovery

request in advance of the hearing of the motion.  SCOR intends to provide a substantial part, but not all, of the discovery requested as there are issues as to the relevance of certain of the documents requested, and SCOR believes that the way in which many requests are framed is inappropriate and oppressive, and certain unnecessary documentation is sought.  (McDonnell Aff., para. 13)

The High Court does not sit for hearing from the end of July until the first Monday in October, except in matters of urgency.  Although the discovery requested is wide ranging, and subject to the scope of discovery being finalized, SCOR expects that the parties will attempt to complete the discovery process in the Irish Action in the next few months.  Following a review of the discovery, Counsel for both sides will consider what remaining steps, if any, need to be taken to prepare the case for trial.  Once Counsel certifies that the case is ready for trial, it will be placed in a High Court list to Fix Dates. The hearing of the List to Fix Dates occurs once in each legal term (there being four terms in a year), at which time application is made to the High Court for the allocation of a trial date.  At present, SCOR believes that it is likely that such an application can be made before the end of 2004 for a hearing in early 2005.

The hearing will proceed with oral evidence from witnesses who will be examined by their own Counsel, cross-examined by the Counsel for the other side and possibly re-examined by their own Counsel.  At the end of the evidence, there will be legal submissions from both sides.  The hearing will take place before a single Judge of the High Court, who will determine all issues.  An appeal may be taken from the High Court to the Supreme Court.  (McDonnell Aff., para. 15)

The High Court of Ireland has considerable expertise and sophistication in dealing with issues similar to those arising in these proceedings during more than 40 years since the Irish Companies Act of 1963 was introduced.  Candidates for appointment must be qualified Irish lawyers of significant expertise and experience in the practice of law in Ireland.  Appointments are made by the Government from a list of suitable candidates submitted by the Judicial Appointments Commission, which was set up in 1996.  (McDonnell Aff., para. 16)

## HIGHFIELD'S SECOND FRONT

Only after the striking out of Highfields' initial Points of Claim did Highfields choose to open a "second front" here in Massachusetts, raising largely issues that are in litigation in Ireland but seeking to package them differently. Highfields' Complaint in this Court (Chneiweiss Aff., Ex. A) was filed March 31, 2004 and served June 14, 2004. It alleges that SCOR misrepresented its financial position in connection with the negotiations pursuant to which Highfields invested in IRP. Highfields invokes federal diversity jurisdiction and asserts claims for damages for fraud and negligent misrepresentation and unfair and deceptive acts and practices under Massachusetts law.

Repeating its allegations in its earlier Irish Action, Highfields alleges here that "in the Fall of 2001, SCOR was a seemingly healthy reinsurance company" but that SCOR in fact "had grossly inadequate reserves, was financially troubled, and was grossly under capitalized relative to its published accounts and the commercial requirements of its business." (Complaint, para. 2) Highfields alleges, as it did in Ireland, that subsequent disclosures of setbacks in SCOR's business, and resulting loss of reinsurance business, has hurt their joint investment in IRP.

There is considerable overlap between the factual basis of this proceeding and that of the Irish Action. The parallel contentions are set out in Appendix A to this memorandum. If the High Court grants the declarations sought by SCOR in its counterclaim, it will determine the factual basis of the claims brought in this Court.

## SUMMARY OF ARGUMENT

Venue in this District is improper because Highfields agreed to the exclusive jurisdiction of the Courts of Ireland "for all purposes relating to" the Shareholders' Agreement that resulted from Highfields decision to invest in IRP.

Alternatively, this action should be dismissed or stayed pursuant to the doctrine of forum non conveniens because of the pendency of the Irish Action.

## I.

## <u>THE IRISH FORUM SELECTION CLAUSE SHOULD BE ENFORCED.</u>

A forum selection clause should be enforced "absent a strong showing that it should be set aside." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). A "forum selection clause embraces disputes concerning interpretation of and compliance with the agreements…" *Interamerican Trade Corporation v. Companhia Fabricadora*, 973 F.3d 487, 490 (6th Cir. 1992); *see also Manetti-Farrow, Inc. v. Guccie American, Inc.,* 858 F.2d 509 (9th Cir. 1988).

Highfields apparently seeks to avoid the <u>exclusive</u> jurisdiction of the Irish Courts to which it agreed in the Shareholders' Agreement by avoiding reference to that document, which is the basis on which it participates as a shareholder in IRP. Instead, Highfields refers only to the prior Subscription Agreement, which has a <u>non-exclusive</u> Irish courts jurisdiction clause.

The problem for Highfields is that the exclusive jurisdiction of the Irish High Court encompasses "all purposes relating to" the Shareholders' Agreement — a document that references the earlier Subscription Agreement, with which it establishes a single commercial relationship, and contains a comprehensive clause waiving claims of oral misrepresentations concerning the Subscription Agreement. "All purposes relating to" is very broad language. The exclusive jurisdiction clause covers Highfields' present claim that SCOR committed fraud or negligent misrepresentations in the negotiations that led, via the Subscription Agreement, ultimately to the Shareholders' Agreement. As is demonstrated above, Highfields' claims in the Irish Action involve various factual allegations that Highfields also has included in its Complaint here. Moreover, the issues in this case also are part of the Irish Action as a result of SCOR's counterclaim for declaratory relief.

Several parties, including Highfields, SCOR and others (see Chneiweiss Aff., Ex. C, signature page), entered into the Shareholders' Agreement at the closing of share purchases under their various Subscription Agreements. It transformed what was an initial consent to non-exclusive Irish court jurisdiction — appropriate before the

parties actually became shareholders in IRP — into a consent to exclusive Irish jurisdiction after that point for "all disputes relating to" the Shareholders' Agreement. The single Shareholders' Agreement in effect wrapped around the several earlier Subscription Agreements which it incorporated and provided for a single forum choice for disputes among shareholders relating to their joint investment. Courts confronting this type of contract construction issue typically look to the broader "controlling" document's forum clause. *E.g.*, *Personal Security & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002); *Detroit Medical Center v. Provider Healthnet Services, Inc.*, 269 F. Supp. 2d 487 (D. Del. 2003).

Highfields cannot evade its bargained-for obligation to litigate in Ireland <u>all</u> disputes relating to the relations between the parties by endeavoring to bifurcate this dispute for resolution in different countries or by attempting to recast certain aspects of its allegations as asserting violations of Massachusetts law. Artful pleading will not render an alternate foreign forum inadequate. Structuring a complaint to involve legal theories not recognized in the foreign court system will not render a forum selection clause void, nor should it weigh in favor of continuing the U.S. litigation. *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (structuring a complaint to allege violations not available in England will not defeat a forum selection clause).

"All" is not a narrow or ambiguous term. The Shareholders' Agreement requires plaintiffs to litigate these claims, which relate to it, in Ireland.

## II.

### THIS ACTION SHOULD BE DISMISSED OR STAYED BECAUSE IRELAND IS THE MORE CONVENIENT FORUM.

**A.    A federal district court may dismiss or in the alternative stay an action when there is a parallel proceeding in a foreign court.**

As this court has stated, "[f]ederal courts have the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction." *Goldhammer DD UK v. Dunkin' Donuts, Inc*., 59 F. Supp.2d 248, 251 (D.Mass 1999); *see also Boushel v. Toro Co*., 985 F.2d 406, 409-10 (8th Cir. 1993);

-10-

*National Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1243, 1246  (D.Col. 2000);
*MLC LTD., v. Credit Suisse First Boston Corp*., (S.D.N.Y. 1999); *Evergreen Marine
Corp. v. Welgrow Int'l Inc*., 954 F.Supp 101, 103 (S.D.N.Y. 1997).

Judicial cooperation to control parallel international litigations is an aspect
of comity,

> …the recognition which one nation allows within its
> Territory to the legislative, executive, or judicial acts of
> another nation, having due regard both to international duty
> and convenience, and to the rights of its own citizens or of
> other persons who are under the protection of its laws.
> *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

Judicial efficiency is served by dismissing an action where a counterpart is
proceeding in a foreign court.  *Evergreen Marine Corp*., 954 F. Supp. at 104; *see also
Abdullah Sayid Rajab Al-Rifai & Sons v. McDonnel Douglas Foreign Sales Corp*. 988
F.Supp 1285, 1291 (E.D.Miss 1997) ("[I]n the interest of judicial economy, and
international relations, a federal court may stay an action in favor of pending litigation.")
This case and the Irish Action are part of a single dispute, involving a single set of facts
and transactions, that Highfields is attempting to bifurcate for its own tactical purposes.
A dismissal of the U.S. action puts the claims before a single tribunal, thus preventing
duplicative discovery and other litigation costs.  *See Evergreen Marine Corp*., 954 F.
Supp. at 104.  In addition, a dismissal will help prevent potential inconsistent judgments.
*Id*.

**B.    All of the Relevant Factors Favor a Dismissal or Stay of this Action.**

In determining whether to grant a dismissal or stay of one of the two
parallel proceedings, courts evaluate the following factors:  (1) similarity of the parties
and issues involved; (2) promotion of judicial efficiency; (3) adequacy of relief available
in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel,
and witnesses; (5) possible prejudice to any of the parties; and (6) temporal sequence of
the filing of the actions.  *See Goldhammer, supra,* 59 F.Supp.2d at 251.  Here, each of the
factors favors granting a dismissal or stay of this action in favor of the parallel litigation

in the Irish High Court, the forum for which Highfields first opted—and in which it was required—to litigate its claims.

      1.      **The parties and issues involved in both proceedings are substantially the same.**

      "A suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Caminiti and Iatarola, Limited v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). Here, the parties in the two proceedings are substantially the same. The only difference is that the complaint in this Court fails to name Highfields Capital SPC, one of the multiple Highfields claimants in the Irish proceeding. Highfields Capital SPC is a minor IRP shareholder, with only 10,000 shares, and it appears to be under common control with its sister companies. The parties need not be identical if there is substantial similarity. *See Goldhammer*, 59 F. Supp. 2d at 253; *see also Turner Entertainment Co. v. Degeto Film GMBH*, 25 F.3d 1512, 1518 (absence of one of the parties in the U.S. claim not material); *Caspian Investments, Ltd. V. Vicom Holdings, Ltd.,* 770 F. Supp. 880, 884 (S.D.N.Y. 1991) (two parties were substantially similar although one was a subsidiary of the other). Thus, the parties here are substantially the same.

      The factual issues involved in the two proceedings are also substantially the same. To be substantially similar, the claims need not be identical; such a requirement would be unrealistic and antithetical to the pursuit of efficiency. Accordingly, differences of form rather than substance do not control similarity. *See MLC Ltd. V. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 252 (S.D.N.Y. 1999). As this court stated in *Goldhammer*, "[t]he fact that a claim sounds in tort rather than in contract does not mean that the factual issues are so dissimilar that stay may not be granted." 59 F. Supp. 2d at 253.

      The primary difference between the action in the Irish High Court and this later action appears to be formal, namely that the Irish Action involves different causes of action based on the same matters that are at issue in this case. Thus, the factual and legal issues overlap. Despite the absence of specific claims of misrepresentation or fraud in

-12-

Highfields' Irish complaint, the body of the complaint relies on detailed accounts of certain of the facts alleged in the U.S. complaint to support the allegations made here. Highfields alleges in both courts that SCOR failed to disclose at the time of its investment alleged financial weaknesses that led to a sudden decline in SCOR's credit ratings.

Highfields' reliance on essentially the same facts and the same series of transactions between the same parties supports the conclusion that the relevant issues overlap. *See MLC Ltd.,* 46 F. Supp. 2d at 252 (reliance by complainant in English court on same misrepresentations cited in U.S. claim for fraud and misrepresentation was sufficiently similar for dismissal, even though specific claim for misrepresentation was absent from the English proceedings).

In addition, the counterclaims in the Irish Action expressly assert claims for declaratory relief on the issues of fraud and misrepresentation that are common to the two cases. Relying on the facts alleged in its Irish Points of Defence, SCOR seeks a declaration that there were no misrepresentations and that no such representations induced claimants to act.

**2.      Dismissing this action would promote judicial efficiency.**

Dismissing this action would promote judicial efficiency. "Maintaining two concurrent and simultaneous proceedings would consume a great amount of judicial, administrative, and party resources for only speculative gain." *National Union Fire Insurance Co.*, 115 F. Supp. 2d at 1247 (quoting *EFCO Corp. v. Aluma Systems, USA, Inc.*, 983 F. Supp. 816, 824 (S.D. Iowa 1997)). Here, any gain from the concurrent proceedings is suspect at best. The issues and facts relevant to this case will be evaluated in the Irish Action.

Indeed, allowing both cases to proceed would lead to potential piecemeal litigation and the threat of inconsistent verdicts. *Goldhammer*, *supra*, 59 F. Supp. 2d at 254. If inconsistent verdicts are reached, then further litigation would be necessary to resolve the conflict. Although duplicative litigation is not dispositive when deciding to dismiss a parallel proceeding, it is a "key factor" *Id.*

-13-

3.      **The relief available in the Irish High Court is adequate.**

"Generally, a forum will be considered adequate if two requirements are met: '(1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute.'" *MLC Ltd.,* 46 F. Supp. 2d at 253 (quoting *Capital Currency Exchange*, 155 F.3d 603, 609 (2d Cir. 1998)).  SCOR has submitted to Irish jurisdiction in the concurrent pending suit, so the first prong of this test certainly is satisfied.

The second prong does not call for an evaluation of the similarity of the fora, but rather asks whether the non-U.S. forum is adequate.  *See MLC Ltd.,* 46 F. Supp. 2d at 253.  Differences in national systems affecting, for example, the form and extensiveness of discovery do not render a foreign forum inadequate.  *See Piper Aircraft v. Reyno*, 454 U.S. 235, 247, 254 (1981) (differences in substantive law do not render forum inadequate).  While the discovery procedures in the Irish High Court differ from those provided by the Federal Rules of Civil Procedure, the Irish procedures accord fully with international standards of fair play and substantial justice.

U.S. courts regularly find Ireland to be an adequate alternative forum.  "Thus, despite plaintiffs' grievances with Irish discovery procedures, this court finds Ireland a sufficiently suitable forum to hear plaintiff's claims.  Other courts have already determined that Ireland offers an adequate forum… ." *Doe v. Hyland Therapeutics Division*, 807 F. Supp. 1117, 1124 (S.D.N.Y. 1992); *see also Dowling v. Hyland Therapeutics Div.*, 767 F. Supp. 57 (S.D.N.Y. 1991) (dismissing case in favor of Irish jurisdiction in products liability case); *Caspian Investments, supra,* 770 F. Supp. at 885 (dismissing U.S. proceedings in favor of parallel Irish proceeding after finding that Ireland provides adequate alternative forum); *Oxley v. Wyeth Laboratories, Inc.*, 1992 U.S. Dist. LEXIS 6858 (E.D. Pa. 1992) (Ireland is an adequate forum to adjudicate products liability case).

Of course, Highfields brought the initial suit in the High Court of Ireland, as the Shareholders' Agreement requires.  As a result, Highfields cannot assert that the Irish Court will not provide an adequate forum.  *See Caspian Investments, Ltd.*, *supra*,

-14-

770 F. Supp 885 (plaintiffs' initial suit in Ireland precluded it from asserting that Irish court was not adequate forum).

4.      **Litigation in the Irish High Court is reasonably convenient for both parties.**

Ireland is the forum Highfields agreed to use and did use in filing its first action, and a plaintiff's choice of forum is generally given deference. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[T]he plaintiff's choice of forum should rarely be disturbed."). In the case of a parallel foreign proceeding, if the same plaintiff originally brought the foreign action as well as the domestic action there is a presumption that the plaintiff cannot argue against a stay based on fairness of the foreign forum. *See Evergreen, supra,* 954 F. Supp. at 104-5 ("Evergreen has indicated its willingness to litigate in Belgium by initially suing . . . there.").

Highfields is a Cayman Islands company with U.S. affiliates, allegedly controlled from Boston. SCOR is a French company, based in Paris and with no activities in Massachusetts. They negotiated largely by trans-Atlantic conference call and met once in Paris and once, Highfields alleges, in Massachusetts. (Chneiweiss Aff., paras. 3-4) They chose an Irish company as their joint investment vehicle and selected Irish law and Irish courts as the basis for resolution of disputes.

In these circumstances, neither Boston nor Paris would be a convenient forum for both parties, and either of those places would be inconvenient for one of them or the other. Ireland, on the other hand, is the natural center of gravity of the dispute and reasonably convenient for both.

The Court of Appeals for the Second Circuit recently affirmed dismissal of an action presenting even stronger connections with the United States in favor of the courts of Germany. In that case, *Carey v. Bayerische Hypo-und Vereinsbank AG*, Docket No. 03-7819 (June 1, 2004; a copy is attached as Appendix B), the American plaintiff had entered into a loan-and-mortgage agreement with the German defendant, while living in Germany, to purchase and finance an apartment unit in Aachen, Germany, as an investment. Plaintiff moved back to the United States and later filed a lawsuit in

-15-

Germany to attempt to prevent foreclosure. She subsequently started a second front by suing in the U.S. on a theory of fraudulent inducement of the investment, much as Highfields has done here. The Court of Appeals affirmed the dismissal, even though plaintiff was an individual rather than a business enterprise, because "Such transactions in Germany reasonably give rise to the expectation on all sides that any litigation arising from them will be conducted in Germany. Indeed, the contracting papers provided that the German courts would have jurisdiction in the event of any dispute." (*Id*. at 6).

Although Highfields is a business enterprise not "living" in Ireland, it willingly entered into a business transaction to invest in a corporation based and operating there and started Irish litigation about that transaction. The parties' expectations, as reflected in the Shareholders' Agreement, were that all litigation would be heard in Irish courts, and this action should be dismissed.

### 5.    There would be no prejudice to either party in the Irish High Court.

The United States and Ireland, together with England, Canada, Australia and other nations, share a common law heritage. Deference to a coordinate common law court is a traditional application of comity. *See Goldhammer*, 59 F. Supp. 2d at 254-55 ("Because the United States and England share the same common law heritage, deference to British proceedings is consistent with notions of international comity."); *Brinco Mining Ltd. v. Federal Ins. Co*., 552 F. Supp. 1233, 1240 (D.D.C. 1982) ("Certainly if this Court cannot extend comity to Canada the comity principle has little vitality in our jurisprudence.").

Since Highfields originally brought suit in Ireland and as the plaintiff "invoked the jurisdiction of the Irish court in the initial action, [the party in Highfields' position] cannot assert that the Irish court will not afford substantial justice to its claim." *Caspian*, 770 F. Supp. at 885.

### 6.    The temporal sequence of the filings favors a dismissal or stay.

The sequence of the filings favors a dismissal because the plaintiffs filed their claim first in Ireland. Although the first filed status is not dispositive, "deference to

the first filed suit is particularly appropriate where, as here, the plaintiff itself commenced the original suit." *Caspian*, 770 F. Supp. at 885; *see also Evergreen*, *supra*, 94 F. Supp. at 105 (fact that plaintiff initiated the foreign proceedings weighed in favor of stay).

SCOR asserted its counterclaims following the filing of this suit (but before service was made), but that does not negate the priority of Highfields' filing in the Irish court. *See MLC*, 46 F. Supp. 2d at 255 (rejecting argument that priority should be judged from when amended claims were filed). Although the counterclaims support the case for dismissal of the Complaint in this action, their timing should not be dispositive because—as is discussed above— Highfields' own claims raised the factual issues.

*        *        *

Thus, each of the relevant factors supports dismissal or stay.

## <u>CONCLUSION</u>

For the foregoing reasons and those set out in the motion and the affidavits accompanying this memorandum, SCOR respectfully requests that the Court dismiss this action in deference to the action pending in the High Court of Ireland; or, in the alternative, that the Court stay this action until a final judgment is rendered in the Irish Action; and grant to SCOR such other and further relief as to the Court may seem just and proper.

Respectfully submitted,

SCOR, S.A.

By its attorneys,

*/s/ Douglas H. Meal*
Douglas H. Meal (BBO# 340971)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Tel: 617-951-7000
Fax: 617-951-7050

July 6, 2004

Of Counsel:
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel:  212-558-4000
Fax:  212-558-3588