EXECUTION COPY

# SUBSCRIPTION AGREEMENT

Dated as of December 21, 2001

IRP Holdings Limited
c/o Wilton Secretarial Limited
Fitzwilton House
Wilton Place
Dublin 2, Ireland

SCOR
1, Avenue du Général de Gaulle
92074 Paris La Défense
France

Lazard Frères & Co. LLC
Lazard Capital Markets
c/o Lazard Capital Markets
121, Boulevard Haussmann
75382 Paris cedex 08
France

Ladies and Gentlemen:

In connection with its proposed subscription for Ordinary Shares in the capital of the Company, and intending to be legally bound, each Investor confirms and agrees as follows:

1.    **Definitions; Incorporation by Reference**.  "Investor" refers to each entity or individual subscribing for the ordinary shares of the Company ("Ordinary Shares") pursuant to this Agreement being the party named as Investor on page 11 of this Agreement.  "Company" refers to IRP Holdings Limited, a private limited company incorporated under the laws of the Republic of Ireland.  "Operating Company" refers to Irish Partners Reinsurance Limited, a private limited company incorporated under the laws of the Republic of Ireland and a wholly-owned subsidiary of the Company.  "SCOR" refers to SCOR, a *société anonyme* organized under the laws of the Republic of France, and/or its affiliates. "Offering" refers to the offering of Ordinary Shares contemplated by this Subscription Agreement and the Private Placement Memorandum.  All references to the "Subscription Agreement" shall include any appendices thereto, which form an integral part of this Subscription Agreement.  Additional definitions are set out herein and in Appendix A to this Subscription Agreement.

2.    **Sale and Purchase.**

a.    The Investor hereby irrevocably undertakes to and agrees with the Company that, subject to the terms of this Agreement, it will at Closing (as defined below) subscribe for the number of Ordinary Shares set forth opposite the Investor's name in Appendix C (the "Shares") at the purchase price specified therein.

b.    The parties hereto understand and agree that each of the Company, SCOR and the Investor reserves the right to elect to terminate this Subscription Agreement if prior to the Closing there shall have been a material adverse change on the business, results of operations or financial conditions of the Company or SCOR.

c.    In the event of an election by either the Company, SCOR or the Investor not to proceed with the Offering pursuant to Section 2(b) or in the event the sale of shares pursuant to the Offering is not consummated for any reason other than a breach of the terms hereof by the Investor (in which event this Subscription Agreement shall be deemed to be terminated), the Company shall return this Subscription Agreement to the Investor, and this Subscription Agreement shall thereafter have no force or effect.

3.    **Purchase Price**.  In consideration for each of the Shares to be issued and sold pursuant to Section 2, the Investor shall pay to the Company a purchase price in cash of euro 1,000 per Share at Closing (as defined in Section 5 hereof).  The amount that the Investor agrees to pay pursuant to this Section 3 for the Shares shall hereinafter be referred to as the Investor's "Commitment."

4.    **Currency**.  All monetary amounts in this Subscription Agreement are expressed in euros and all amounts shall be paid in euros.

5.    **Closing.**

a.    The completion (the "Closing") of the transactions contemplated by this Subscription Agreement shall take place at 10:00 a.m.(Irish time) on December 28, 2001, at the offices of William Fry at Fitzwilton House, Wilton Place, Dublin 2, Ireland or at such other time, date and place as shall be set forth in a notice (a "Funding Notice") to the Investor by the Company or by Lazard given at or prior to Closing, provided that the Funding Notice shall be sent to the Investor at least two days prior to Closing if such Funding Notice determines as the date of Closing a date other than December 28, 2001. Closing will be subject to the following conditions: (i) assuming that the contribution of the Investor has been funded, €300 million in subscriptions from investors including SCOR will have been funded, unless SCOR and Highfields Capital Ltd. otherwise agree; (ii) the Company and the Operating Company will have obtained all consents and approvals from, and will have made all required notifications to, regulatory authorities in Ireland, including, if applicable, any approvals pursuant to the Mergers, Take-overs and Monopolies Control Act 1978 (as amended), and elsewhere as necessary; and (iii) the Investor shall have produced evidence to the satisfaction of the Company that the representations and warranties set forth in this Subscription Agreement are accurate as of the date of such Closing, which is hereinafter referred to as the "Closing Date."

b.    At Closing, subject to compliance by the Investor with the terms hereof, the Company shall issue to the Investor and mail to the Investor's address set forth on page 12 of this Agreement, against actual receipt by the Company of the Investor's Commitment, duly executed

share certificates evidencing the Shares, corresponding to such Commitment, registered in the name of the Investor in the register of shareholders of the Company.

       c.  At Closing, the Investor shall deliver to the Company, an amount (payable by bank wire-transfer pursuant to instructions provided to the Investor no later than December 24, 2001, in immediately available funds in euros) equal to the Investor's Commitment and shall duly execute and deliver to the Company the Shareholders Agreement (substantially in the form attached as Appendix E hereto, the "Shareholders Agreement").

**6.**     **Representations, Warranties and Agreements by the Investor**.  The Investor hereby represents and warrants to, and agrees with, SCOR, the Company and Lazard, as of the date of its execution of this Subscription Agreement and/or as of the Closing Date, as the case may be, as follows:

       a.  **Due Organization and Good Standing; Authority of the Investor**.  (A) (i) The Investor is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization and (ii) on or prior to the Closing Date, the Investor has delivered or will deliver to the Company or Lazard true and correct copies of its certificate of incorporation and by-laws or analogous governing instruments and any resolutions or consents necessary thereunder to authorize the Investor's Commitment and the Investor's investment in the Shares; and (B) the Investor has full right, power and authority to enter into this Subscription Agreement and the Shareholders Agreement and to perform its obligations hereunder and thereunder.

       b.  **Authorization and Validity of Agreements.**  This Subscription Agreement has been, and the Shareholders Agreement shall, at the time of its execution at Closing, be duly authorized, executed and delivered by the Investor.  The Subscription Agreement constitutes, and the Shareholders Agreement shall, at the time of its execution at Closing, constitute valid and binding obligations of the Investor enforceable in accordance with their respective terms. Neither the Investor nor any of the Investor's assets or properties is or, in the case of the Shareholders Agreement, will be subject to any instrument or agreement, order, judgment, decree, law, statute, ordinance or regulation or any other restriction of any kind or character that would prevent the Investor from entering into this Subscription Agreement or, at Closing, the Shareholders Agreement or from consummating the transactions contemplated herein or therein in accordance with the terms hereof or thereof, subject as to enforceability to general principles of equity and to applicable bankruptcy, insolvency, reorganization, moratorium, liquidation and similar laws relating to, or affecting generally the enforcement of, applicable creditors' rights and remedies.

       c.  **Investment Representations.**  The Investor is acquiring Shares solely for investment for the Investor's own account (or for accounts as to which the Investor exercises sole investment discretion and has authority to make, and does make, the statements contained herein) and not with a view to any distribution of the Shares. The Investor is not an employee benefit plan subject to Title I of ERISA.

**d. Investor Awareness.** The Investor acknowledges, agrees and is aware that:

(i)    There are substantial risks incident to the purchase of the Shares, including those summarized under the caption "Risk Factors" and elsewhere in the Private Placement Memorandum, and the Investor may lose the entire amount of the Investor's Commitment;

(ii)    The discussion of the taxation of the Company, the Operating Company and the Investors in the Private Placement Memorandum does not constitute an assurance that the Company and the Operating Company will not be subject to United States federal income taxation or that the Investor will not be subject to current U.S. federal income taxation on any portion of the Company's or the Operating Company's income under the "controlled foreign corporation" rules (including special insurance rules), the "passive foreign investment company" rules, or otherwise, nor does it constitute an assurance with respect to the tax laws of any other jurisdiction;

(iii)    The Shareholders Agreement, the Memorandum of Association (the "Memorandum") and Articles of Association (the "Articles") of the Company contain substantial restrictions on the voting, ownership and transferability of the Shares; the Shares will be an illiquid investment and the Investor bears the risk of the investment in the Company prior to the exchange of the Shares with SCOR; and

(iv)    The Investor has been furnished with the Private Placement Memorandum, including the accompanying annexes thereto, and the form of the Shareholders Agreement to which the Investor will be bound upon the issue of any Shares to it at Closing. The Investor has carefully read and understands the Private Placement Memorandum and the form of the Shareholders Agreement attached as Appendix E hereto; it has discussed with the Investor's own tax and legal advisers the consequences to the Investor and its beneficiaries, if any, of an investment in the Company; and understands and has evaluated the risks of a purchase of Shares, including the risks set forth under the caption "Risk Factors" and the considerations described under the caption "Certain Tax Considerations" in the Private Placement Memorandum.

If the Investor is a U.S. Person, the Investor acknowledges, agrees with, and is aware of, the information and legal conditions set forth in Section A of Appendix B hereto.

**e. Financial Qualifications.**

(i)    The Investor meets any additional or different suitability standards imposed by the state or jurisdiction of the Investor's residence or the state or jurisdiction of the Investor's incorporation or formation or by any other applicable laws and will comply with all laws relating to its acquisition of Shares, including any currency or exchange control laws; and the Investor acknowledges that:

(A)    the Investor has been given the opportunity (together with the Investor's counsel, accountants and other advisors) to ask questions of, and receive answers from, the Company, the Operating Company and Lazard concerning the terms and conditions of the Offering and other matters pertaining to this investment and has been given the opportunity to obtain such additional information and materials as the Investor may have reasonably requested in order to evaluate the merits and risks of a purchase of Shares;

4

(B)    other than as provided herein, neither the Private Placement Memorandum nor any other information provided to the Investor constitutes, and the Investor has not otherwise been furnished, whether by the Company, the Operating Company, SCOR, Lazard or otherwise, with, any representation or warranty (express or implied, written or oral) in connection with the Offering or the Company;

(C)    the Investor has not been furnished, by or on behalf of the Company or the Operating Company, with any offering literature, statement or printed material which contains information contrary to the information included in the Private Placement Memorandum;

(ii) The Investor is not relying on the Company, the Operating Company, SCOR or Lazard with respect to individual or corporate tax and other economic considerations involved in this investment;

(iii) The Investor has such knowledge and experience in financial and investment matters and in such other business matters that the Investor is capable of evaluating the merits and risks of an investment in the Shares without the assistance of a Purchaser Representative (as such term is defined in the Securities Act). The Investor's financial condition is such that it has no need for liquidity with respect to its investment in the Shares and no need to dispose of the Shares to satisfy any existing or contemplated undertaking, obligation or indebtedness.  The Investor's overall commitment to investments that are not readily marketable is proportionate to its net worth and will not become excessive as a result of an investment in the Shares. The Investor can bear a complete loss of its investment in the Shares;

(iv) Any information that the Investor has heretofore furnished to the Company or Lazard with respect to the financial position of the Investor, including the information contained in this Subscription Agreement and being delivered herewith, is correct and complete as of the date of this Subscription Agreement, and, if there should be any material change in such information before the Investor's purchase of Shares, the Investor will immediately furnish such revised or corrected information to the Company and Lazard; and

(v) If the Investor is a U.S. Person, the Investor fulfills the financial qualification set forth in Section B of Appendix B hereto.

f.    **Maximum Investor's Holdings**.  To the best of its Knowledge, the Investor is not acquiring Shares pursuant to this Subscription Agreement (together with any Ordinary Shares acquired concurrently herewith) that would cause the Investor, if a U.S. Person (as defined below) for the purposes of this Section 6(f), to own directly, indirectly or constructively, or cause another U.S. Person that is a Beneficial Owner (as defined below) to own directly, indirectly or constructively, 10% or more of the Company's issued and outstanding Ordinary Shares.  As used in this paragraph, the term "Beneficial Owner" means any person that owns Ordinary Shares directly or indirectly; references to "direct, indirect or constructive ownership" includes ownership within the meaning of Sections 958(a) and 958(b) of the Code and references to "direct or indirect ownership" includes ownership within the meaning of Section 958(a) of the Code (but not Section 958(b) of the Code).  The term "U.S. Person" for the purposes of this Section 6(f) means (i) an individual who is a citizen or resident of the United States, (ii) a corporation or partnership created in, or organized under the laws of, the United States or any state thereof or the District of Columbia, (iii) an estate or trust that is subject to U.S. federal income tax on its income regardless of its source or (iv) the United States and the states thereof,

including any of their political subdivisions. If the subscription is being made by a U.S. Person, then the Investor shall complete the Supplemental Tax Questionnaire set forth in Appendix F.

g. **For French Investors**. If the Investor is located and/or resident in France, such Investor acknowledges, represents and warrants that (a) the Offering is a private placement in France and no prospectus has been submitted to the *Commission des Opérations de Bourse*, (b) the Investor is a qualified investor ("*investisseur qualifié*") within the meaning of art. 6 of the French Ordinance no. 67-833 dated September 28, 1967, as modified, and (c) the Investor is investing for his own account. Such Investor undertakes that he or she will not resell the Shares in violation of French securities laws and regulations.

**7.    Representations, Warranties and Agreements by the Company.**    The Company hereby represents, warrants and agrees with the Investor as follows:

a. **Due Organization.** The Company has been duly incorporated and has been validly existing as a private limited company under the laws of the Republic of Ireland with power and authority (corporate and other) to own its properties and conduct its business as described in the Private Placement Memorandum. The Operating Company has been duly incorporated and validly existing as a private limited company under the laws of the Republic of Ireland with power and authority (corporate and other) to own its properties and conduct its business as described in the Private Placement Memorandum.

b. **Authorization and Validity of Agreement; Corporate Authority.** This Agreement has been duly authorized, executed and delivered by the Company, subject as to enforceability to general principles of equity and to applicable bankruptcy, insolvency, reorganization, moratorium, liquidation and similar laws relating to, or affecting generally the enforcement of, applicable creditors' rights and remedies. The Company has full power and authority (corporate and other) to enter into this Subscription Agreement and to perform its obligations hereunder.

c. **Valid Issuance.** All of the issued Ordinary Shares of the Company have been duly and validly authorized and issued and are fully paid. Prior to the issuance of the Shares, the Shares will form part of the authorized but unissued share capital of the Company and, upon issuance, will be validly issued and fully paid. All of the issued ordinary shares of the Operating Company have been duly and validly authorized and issued and fully paid.

d. **Ownership of the Operating Company.** The Company will hold the entire share capital of the Operating Company and will cause the Operating Company not to issue any securities representing the share capital of the Operating Company to any party other than the Company, provided that the Company shall have no obligations under this Section 7(d) if the Investor divests beneficial ownership of all of the Shares purchased hereunder.

e. **Consummation of Quota-Share Agreement, Investment Management Agreement and Services Agreement.** The Company will cause the Operating Company to enter into the Services Agreement, the Investment Management Agreement (as such terms are defined in the Private Placement Memorandum) and the Quota-Share Agreement with SCOR and its affiliates based on the terms reflected on Annex F to the Private Placement Memorandum as soon as practically possible following the date hereof, and in the case of the Quota Share Agreement no later than January 31, 2002.

6

f. **Regulatory Approvals.** The Company and the Operating Company are in compliance with and conduct their businesses in conformity with all applicable insurance and other laws of the Republic of Ireland, in each case with such exceptions as would not have, individually or in the aggregate, a material adverse effect on the business, results of operations or financial condition of the Company or the Operating Company, as the case may be.

8.    **Representations, Warranties and Agreements as between the Company and the Investor.**

a.    The Investor and the Company agree that, for purposes of Article 19 of the Articles and any other provision of the Articles for which compliance with the Ownership Limits (as such term is defined in the Articles) is relevant, a representation from the Investor substantially in the form set forth below shall be considered in form and substance satisfactory to the Directors and, provided that no Exception is taken and that the Directors are not, or do not become, aware of any information contrary to that contained in such representation, the Directors shall not require any additional information or confirmation with respect to such request and the Investor shall be deemed in compliance with the Ownership Limits.

"Except as set forth below, the Investor represents, to the best of its Knowledge that, as of [insert date], it and its partners or shareholders (as well as all related investors, if any, and the partners or shareholders thereof) are in compliance with the Ownership Limits (as such term is defined in the Articles).

List exceptions ("Exceptions"), if any: _____."

b.    The Investor and the Company agree that in the event that the Investor is unable to make the certification provided for in Section 8(a) without taking any Exception, the Company and the Investor shall negotiate in good faith to determine the appropriate remedy or remedies (if any) as provided for in the Articles, taking into account factors including the extent of the Exception, the adverse tax consequences (if any) arising from the circumstances of the Exception, and the party or parties (if any) bearing or likely to bear such adverse tax consequences. The Investor and the Company agree that the taking of any action that is initiated by the issuance of a Compulsory Disposition Notice (as such term is defined in the Articles) issued in respect of all or a portion of the Shares shall generally be the least appropriate remedy and shall only be done with prior notice to the Investor.

9.    **Representations, Warranties and Agreements by SCOR.** SCOR hereby represents, warrants and agrees with the Investor as follows:

a.    **Corporate Authority.** SCOR has full power and authority (corporate and other) to enter into this Subscription Agreement and to perform its obligations hereunder.

b.    **Additional Financing.** SCOR hereby undertakes to use its best efforts to assist the Operating Company in raising subordinated debt from a limited number of lenders in an aggregate amount of €100 million at the market rates (the "Borrowing"), provided that, if SCOR is unable to secure on or before February 15, 2002, the Borrowing at an interest rate of 250 basis points over EURIBOR or lower, then SCOR will lend €100 million to the Company for the lesser of (i) the lowest borrowing rate offered to SCOR (whether accepted or not) for such €100 million Borrowing or (ii) 250 basis points over EURIBOR.

7

    **c.** **Disclosure.** The Private Placement Memorandum, excluding for purposes of this Section 8(c) SCOR's 2000 Annual Report on Form 20-F, does not, and as may be amended, will not, contain, to the knowledge of SCOR, any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading. SCOR's 2000 Annual Report on Form 20-F, which is attached as Annex C to the Private Placement Memorandum, does not, as of the date thereof, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

    **d.** **Standard & Poor's Rating.** Standard and Poor's has advised SCOR that Standard & Poor's plans to assign to the Operating Company the same rating (AA-) currently assigned to SCOR.

**10.** **Survival of Representations, Warranties and Agreements**.  The representations, warranties and agreements of the Investor, the Company and SCOR contained in this Subscription Agreement and in any document delivered or to be delivered pursuant to this Subscription Agreement and in connection with the Closing hereunder shall survive the Closing.

**11.** **Entire Agreement**.  This Subscription Agreement and the Shareholders Agreement constitute the entire agreement between the Investor, on the one hand, and the Company and/or SCOR, on the other hand, and supersede all prior agreements and understandings, oral and written, between such parties with respect to the subject matter hereof.

**12.** **Binding Effect; Benefit**.  This Subscription Agreement shall inure to the benefit of and be binding, subject to Section 1 and paragraphs (b) and (c) of Section 2 hereof, upon the Investor, the Company and their respective heirs, executors, administrators, successors, legal representatives and permitted assigns.  Nothing in this Subscription Agreement, expressed or implied, is intended to confer on any person other than the Investor, the Company and their respective heirs, executors, administrators, successors, legal representatives and permitted assigns, any rights, remedies, obligations or liabilities under or by reason of this Subscription Agreement; *provided*, *however*, that Lazard and SCOR and their respective directors, officers, employees, partners and affiliates shall be entitled to rely on the Investor's representations set forth herein.

**13.** **Termination**  The Investor may terminate this Subscription Agreement in its sole discretion, by written notice to the Company or SCOR, if Closing has not occurred on or before January 21, 2002.

**14.** **Assignability**.  This Subscription Agreement shall not be transferable or assignable prior to Closing by the Investor without the prior written consent of the Company and SCOR or by the Company and/or SCOR without the prior written consent of the Investor.

**15.** **Amendment; Waiver**.  Subject to the first sentence of Section 2(c), no provision of this Subscription Agreement may be amended, waived or otherwise modified except by an instrument in writing executed by each of the Company, SCOR and the Investor.

**16.** **Headings**.  The headings contained in this Subscription Agreement are for convenience only and shall not affect the meaning or interpretation of this Subscription Agreement.

LONDON:171879.2

**17.    Counterparts**.    This Subscription Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

**18.    Applicable Law.  THIS SUBSCRIPTION AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF IRELAND. THE INVESTOR SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF IRELAND FOR ALL PURPOSES RELATING TO THIS AGREEMENT.**

**19.    Other Requirements**.    The Shares may not be offered or sold, directly or indirectly, and neither the Private Placement Memorandum nor any other offering material relating to the Shares may be distributed in or from or published or used in any country or jurisdiction, including Ireland, except under circumstances that will result in compliance with all applicable laws and regulations.

**20.    Confidentiality**.    The Investor understands that the Offering is being conducted on a private, confidential basis and will not discuss the Offering or any related matters with members of the press or other communications media or otherwise in any public or non-confidential manner.  The Investor acknowledges that the Private Placement Memorandum and other information relating to the Company has been submitted to the Investor on a confidential basis for use solely in connection with the Investor's consideration of the purchase of Shares.  The Investor agrees that, without the prior written consent of the Company (which consent may be withheld at the sole discretion of the Company), the Investor shall not (a) reproduce the Private Placement Memorandum or any other information relating to the Company, in whole or in part, or (b) disclose the Private Placement Memorandum or any other information relating to the Company to any person who is not an officer or employee of the Investor who is involved in its investments, except to the extent (1) such information is in the public domain (other than as a result of any action or omission of Investor or any person to whom the Investor has disclosed such information) or (2) such information is required by applicable law to be disclosed.  The Investor further agrees to return the Private Placement Memorandum and any other information relating to the Company if no purchase of Shares is made or upon the Company's request therefor.  The Investor acknowledges and agrees that monetary damages would not be sufficient remedy for any breach of this section by it, and that in addition to any other remedies available to the Company in respect of any such breach, the Company shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach.  It is understood that the Investor is free (and is encouraged) to consult with any such advisors and agents as the Investor deems necessary in connection with making an investment in the Shares, provided that the Investor instructs them to maintain the confidential nature of the Offering.  Neither SCOR nor the Company (and the Company shall procure that the Operating Company shall not) disclose publicly that the Investor has invested in the Company or any other information relating to the Investor or its Affiliates (as such term is defined in the Shareholders Agreement), except as may be required by applicable law or regulations, including without limitation, any applicable regulatory notification and approval procedure in Ireland or France.

**21.    Notices and Payments**.    All notices, requests, demands and other communications hereunder shall be in writing and, except to the extent otherwise provided in this Subscription Agreement, shall be deemed to have been duly given if delivered or mailed by prepaid registered mail, or transmitted by facsimile, (a) if to the Investor, at the Investor's address, telex or

facsimile number set forth in Appendix C or at any other address the Investor may subsequently provide in writing to the Company and Lazard, (b) if to the Company, c/o Wilton Secretarial Limited, Fitzwilton House, Wilton Place, Dublin 2, Ireland, telephone: (353-1) 639-5000, facsimile: (353-1) 639-5333, or such other address as the Company or Lazard may subsequently provide to the Investor in writing, and (c) if to Lazard Capital Markets, to Christian Bénézit, Lazard Capital Markets, 121 Boulevard Haussmann, 75382 Paris Cedex 08, France, telephone: (33) 1-44-13-06-68, facsimile: (33) 1-44-13-08-53. Any notice, request, demand or other communication delivered hereunder will be conclusively deemed to have been given: (i) if by personal delivery, upon the actual delivery thereof; (ii) if by registered mail, on the fifth business day following posting, and (iii) if by electronic means, on the day of transmittal thereof if given on a business day during normal business hours or on the next succeeding business day, if given at other times. A party notice, request demand or other communication by electronic means shall send the original thereof by personal delivery or by certified or registered mail unless the intended recipient agrees otherwise.

**22. Payment.** All payments contemplated under this Subscription Agreement must be satisfied by payment in euros unless otherwise expressly agreed in writing. The Investor's obligation to pay euros in payment for its Shares shall not be satisfied by payment in any other currency, whether pursuant to a judgment or otherwise, to the extent that the amount actually received by the Company upon conversion of amounts received in any other currency to euros falls short of the amount of euros originally due to the Company (the "Shortfall Amount"). The Investor agrees, as a separate obligation and notwithstanding any such judgment, to pay to the Company on demand any Shortfall Amount.

**23. For Grantors of Revocable Trusts**. By signing this Subscription Agreement each grantor of the subscribing revocable trust (the "Subscribing Trust") hereby acknowledges that, as of the date of this Subscription Agreement, such grantor has reviewed all information pertaining to such grantor provided by such grantor or the Subscribing Trust to the Company and Lazard in connection with the Subscribing Trust's subscription for the Shares hereunder, and such grantor hereby certifies that such information, including, without limitation, information contained herein and information incorporated herein by reference, is true, correct and complete as of the date hereof and may be relied upon by the Company and Lazard in determining the Subscribing Trust's and such grantor's suitability as an investor in the Company. Each grantor of the Subscribing Trust hereby agrees that each covenant and agreement of the Subscribing Trust contained herein is binding upon such grantor and enforceable against such grantor as if made directly by such grantor to the Company and Lazard.

**24. Supplements. Certain terms of the Offering are continuing to be negotiated and may change prior to Closing. In connection therewith, a supplement to the Private Placement Memorandum may be delivered to each Investor, by courier, email or facsimile to the address or facsimile number contained in this Subscription Agreement, at least three (3) days prior to Closing. Any Investor who executes a Subscription Agreement prior to delivery of any such supplement will have the right to revoke the Subscription Agreement until the close of business on the third day following the date the supplement (if any) is delivered.**

LONDON:171879.2

EXECUTION COPY

IN WITNESS HEREOF, the Investor, intending to be legally bound, has executed this Subscription Agreement as of the date indicated below. By signing below, the Investor agrees that, effective as of the Closing Date, the Investor shall subscribe for the Shares and shall (1) be bound by each and every term and provision of the Shareholders Agreement (attached as Appendix E hereto) and the constitutional documents of the Company, and (2) become and be a party to the Shareholders Agreement.

Dated this 21st day of December, 2001.

<u>HIGHFIELDS CAPITAL I L.P.</u>

By: _~signature~_

    Name:  Richard L. Grubman, Managing Member of
    Title:   Highfields Associates LLC, General Partner

Duly Authorised Signatory

[Second signatory, if required]

By: _____

    Name:
    Title:

Duly Authorised Signatory

INVESTOR'S ADDRESS

_Highfields Capital Management LP_
_200 Clarendon St._
_Boston, MA 02116_

---

**ACKNOWLEDGMENT BY NOTARY**

**All Investors:** Your signature (including that of any additional signatory) must be notarized if you area resident of the **United States, Colombia, Kuwait, the Netherlands, Singapore, Thailand, United Arab Emirates, Uruguay** or **Venezuela.**

**Notary:** Please complete county, state/province, country, date and names of all persons signing, and affix notarial seal.

On   the   date   written   below,   before   me   personally   appeared _Richard Grubman_ (names of all signatories) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to or who executed the foregoing instrument in his/her personal or authorized capacity, and who duly acknowledged to me that execution of the same is his/her own free act and deed and made with appropriate authority.

County and State/Province of    Country of    Date
_Suffolk, MA_    _USA_    _12/21/01_
Signature of Notary Public
X _Heather Kutchland_   Date Commission Expires _12/23/05_  Seal

---

Received, Acknowledged and Agreed on the date hereof.

IRP HOLDINGS LIMITED

By: _____

    Name :
    Title :

SCOR

By: _____

    Name :
    Title :

EXECUTION COPY

IN WITNESS HEREOF, the Investor, intending to be legally bound, has executed this Subscription Agreement as of the date indicated below. By signing below, the Investor agrees that, effective as of the Closing Date, the Investor shall subscribe for the Shares and shall (1) be bound by each and every term and provision of the Shareholders Agreement (attached as Appendix E hereto) and the constitutional documents of the Company, and (2) become and be a party to the Shareholders Agreement.

Dated this 21st day of December, 2001.

<u>HIGHFIELDS CAPITAL I L.P.</u>                              [Second signatory, if required]

By: _____                              By: _____
    Name:                                                              Name:
    Title:                                                              Title:
Duly Authorised Signatory                                    Duly Authorised Signatory

INVESTOR'S ADDRESS

_____
_____
_____

---

**ACKNOWLEDGMENT BY NOTARY**

**All Investors:** Your signature (including that of any additional signatory) must be notarized if you area resident of the **United States, Colombia, Kuwait, the Netherlands, Singapore, Thailand, United Arab Emirates, Uruguay** or **Venezuela.**

**Notary:** Please complete county, state/province, country, date and names of all persons signing, and affix notarial seal.

On     the     date     written     below,     before     me     personally     appeared _____ (names of all signatories) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to or who executed the foregoing instrument in his/her personal or authorized capacity, and who duly acknowledged to me that execution of the same is his/her own free act and deed and made with appropriate authority.

County and State/Province of              Country of                        Date

Signature of Notary Public
X                                         Date Commission Expires          Seal

---

Received, Acknowledged and Agreed on the date hereof.

IRP HOLDINGS LIMITED                            SCOR

By: _____                    By: _____/s/_____
    Name :                                              Name :
    Title :                                              Title :

EXECUTION COPY

IN WITNESS HEREOF, the Investor, intending to be legally bound, has executed this Subscription Agreement as of the date indicated below. By signing below, the Investor agrees that, effective as of the Closing Date, the Investor shall subscribe for the Shares and shall (1) be bound by each and every term and provision of the Shareholders Agreement (attached as Appendix E hereto) and the constitutional documents of the Company, and (2) become and be a party to the Shareholders Agreement.

Dated this 21st day of December, 2001.

HIGHFIELDS CAPITAL I L.P.                                [Second signatory, if required]

By: _____                             By: _____
        Name:                                                    Name:
        Title:                                                   Title:
Duly Authorised Signatory                                Duly Authorised Signatory

INVESTOR'S ADDRESS

_____
_____
_____

---

**ACKNOWLEDGMENT BY NOTARY**

**All Investors:** Your signature (including that of any additional signatory) must be notarized if you area resident of the **United States, Colombia, Kuwait, the Netherlands, Singapore, Thailand, United Arab Emirates, Uruguay** or **Venezuela.**

**Notary:** Please complete county, state/province, country, date and names of all persons signing, and affix notarial seal.

On       the       date       written       below,       before       me       personally       appeared
_____ (names of all signatories) who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to or who executed the foregoing instrument in his/her personal or authorized capacity, and who duly acknowledged to me that execution of the same is his/her own free act and deed and made with appropriate authority.

County and State/Province of          Country of                    Date

Signature of Notary Public
X                                     Date Commission Expires        Seal

---

Received, Acknowledged and Agreed on the date hereof.

IRP HOLDINGS LIMITED                                     SCOR

By: _____                             By: _____
        Name :                                                   Name :
        Title :                                                  Title :

# Appendix A:  Definitions

**Benefit Plan Investor.**  Any (1) Employee Benefit Plan, whether or not it is subject to the provisions of Title I of ERISA (including governmental and foreign plans), (2) any plan described in Section 4975(e)(1) of the Code or (3) any entity, including a "Master Trust" established for one or more pension plans, whose underlying assets include plan assets by reason of a plan's investment in the entity.

**Code.**  The U.S. Internal Revenue Code of 1986, as amended, and its accompanying rules and regulations.

**Employee Benefit Plan.**  As defined in Section 3(3) of ERISA.

**ERISA**.  The US Employee Retirement Income Security Act of 1974, as amended.

**Exchange Act.**  U.S. Securities Exchange Act of 1934, as amended, and its accompanying rules and regulations.

**Individual Income.**  Adjusted gross income, as reported for federal income tax purposes, minus income attributable to a spouse or to property owned by a spouse, increased by the following amounts (except for amounts attributable to a spouse or to property owned by a spouse):  (1) the amount of any tax-exempt interest income under Section 103 of the Code received; (2) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (3) any deduction claimed for depletion under Section 611 *et seq.* of the Code; (4) amounts contributed to an Individual Retirement Account or Keogh retirement plan (as defined in the Code); (5) alimony paid; and (6) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

**Institutional Accredited Investor.**  Includes any of the following:

(1)  an organization described in Section 501(c)(3) of the Code, a corporation, a Massachusetts or similar business trust, or a partnership, not formed for the specific purpose of acquiring Shares, with total assets in excess of $5,000,000;

(2)  a trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring Shares, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) under the Securities Act;

(3)  a broker or dealer registered pursuant to Section 15 of the Exchange Act;

(4)  an insurance company (as defined in Section 2(13) of the Securities Act);

(5)  an investment company registered under the Investment Company Act or a "business development company" (as defined in Section 2(a)(48) of the Investment Company Act);

(6)  a "private business development company" (as defined in Section 202(a)(22) of the Investment Advisers Act);

(7)  a small business investment company licensed under the U.S. Small Business Investment Act of 1958;

LONDON:171879.2

# Appendix A:  Definitions

(8)  a bank or a savings and loan association, whether acting in its individual or fiduciary capacity (each as defined in Section 3(a)(2) and Section 3(a)(5)(A), respectively, of the Securities Act);

(9)  a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality thereof, for the benefit of its employees, if such plan has total assets in excess of $5,000,000;

(10) an employee benefit plan within the meaning of ERISA, if it has total assets in excess of $5,000,000, or if the investment decision is made by a plan fiduciary that is a bank, savings and loan association, insurance company or registered investment adviser;

(11) a self-directed benefit plan with investment decisions made solely by persons that are Accredited Investors, as such term is defined under Rule 501(a) of the Securities Act; or

(12) an entity (*e.g.*, a corporation or partnership), each of the equity owners of which is an Accredited Investor, as such term is defined under Rule 501(a) of the Securities Act.

**Investment Advisers Act.**  U.S. Investment Advisers Act of 1940, as amended, and its accompanying rules and regulations.

**Investment Company.**  As defined in Section 3(a)(1) of the Investment Company Act. Generally, an Investment Company means any issuer (1) that is engaged, holds itself out as engaged, or proposes to engage primarily in the business of investing, reinvesting, or trading in securities; (2) that has been engaged, is engaged, or proposes to engage in the business of issuing face-amount installment certificates, or that has such certificates outstanding; or (3) that is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities whose value exceeds 40% of the value of the issuer's total assets (exclusive of government securities and cash) on an unconsolidated basis.

**Investment Company Act.**  U.S. Investment Company Act of 1940, as amended, and its accompanying rules and regulations.

**Joint Income.**  Adjusted gross income, as reported for federal income tax purposes, increased by the following amounts: (1) the amount of any tax-exempt interest income (under Section 103 of the Code received; (2) the amount of losses claimed as a limited partner in a limited partnership as reported on Schedule E of Form 1040; (3) any deduction claimed for depletion under Section 611 et seq. of the Code; (4) amounts contributed to an Individual Retirement Account or Keogh retirement plan (as defined in the Code); (5) alimony paid; and (6) any elective contributions to a cash or deferred arrangement under Section 401(k) of the Code.

**Knowledge.**  All information known, or reasonably knowable, by the Investor, its senior employees, managers, directors and the like, as well as all similar information known by related investors or entities, if any, provided, however, that for purposes of the foregoing the Investor

# Appendix A:  Definitions

shall have no specific duty to inquire with respect to unrelated investors and no specific duty to make inquiry of its partners or shareholders.

**Private Placement Memorandum.**    Unless otherwise specified, the confidential private placement memorandum accompanying this Subscription Agreement, together will all amendments, supplements and exhibits thereto.

**Securities Act.**    U.S. Securities Act of 1933, as amended, and its accompanying rules and regulations.

**United States.**    The United States of America, its territories and possessions, any State of the United States, and the District of Columbia.

**U.S. Person.**  Unless otherwise specified in the Subscription Agreement:

> (i)    Any natural person resident in the United States;

> (ii)   Any partnership or corporation organized or incorporated under the laws of the United States;

> (iii)  Any estate of which any executor or administrator is a U.S. person;

> (iv)   Any trust of which any trustee is a U.S. person;

> (v)    Any agency or branch of a foreign entity loated in the United States;

> (vi)   Any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

> (vii)  Any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

> (viii) Any partnership or corporation if:

> (A)    Organized or incorporated under the laws of any foreign jurisdiction; and

> (B)    Formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited invstors (as defined in Rule 501(a) of the Securities Act) who are not natural persons, estates or trusts.

A-3

# Appendix B:  U.S. Investor Awareness and Financial Qualifications

## A.    Investor Awareness.

(i)    the Investor may not exchange, transfer, assign, pledge or otherwise dispose of the Shares or any portion thereof without compliance with (1) the Shareholders Agreement, (2) the Memorandum and the Articles and (3) registration under the Securities Act, applicable state laws, and any applicable securities laws of any other jurisdiction (or an exemption therefrom); restrictive legends, in the forms set forth in Section 7.2 and Annex D of the Shareholders Agreement, shall be placed on the certificates evidencing the Shares; and a notation shall be made in the register of shareholders of the Company indicating that the Shares are subject to restrictions on transfer.  In addition, any SCOR ordinary shares exchanged for the Shares will not be registered under the Securities Act and accordingly may not be transferred, pledged or otherwise disposed of except pursuant to an available exemption from registration under the Securities Act and in accordance with any applicable state securities laws;

(ii)    The Investor understands that the Shares will be delivered to the Investor in registered form only and that the certificate delivered to the Investor in respect of the Shares will bear a legend substantially to the following effect :

"THE SECURITIES EVIDENCED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED OR RESOLD EXPECT (A) IN AN OFFSHORE TRANSACTION MEETING THE REQUIREMENTS OF RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT, OR (B) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT PROVIDED BY RULE 144(k) THEREUNDER (IF AVAILABLE) AND, IN EACH CASE, IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE STATES OF THE UNITED STATES AND OTHER JURISDICTIONS.

THE SCOR ORDINARY SHARES THAT MAY BE ACQUIRED CONSEQUENT UPON EXCHANGE OF THE SECURITIES WILL NOT HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR OTHER JURISDICTION OF THE UNITED STATES AND UNLESS SO REGISTERED MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (A)(1) IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT OR (2) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT PROVIDED BY RULE 144(k) THEREUNDER (IF AVAILABLE) OR (3) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT AND (B) IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE STATES OF THE UNITED STATES.  NO REPRESENTATION CAN BE MADE AS TO THE AVAILABILITY OF THE EXEMPTION PROVIDED BY RULE 144(k) FOR RESALE OF INTERESTS IN THE SCOR ORDINARY SHARES.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, SUCH SCOR ORDINARY SHARES MAY NOT BE DEPOSITED INTO ANY UNRESTRICTED

B-1

# Appendix B:  U.S. Investor Awareness and Financial Qualifications

DEPOSITARY RECEIPT FACILITY ESTABLISHED OR MAINTAINED BY A DEPOSITARY BANK UNTIL SUCH TIME AS SUCH SECURITIES ARE NO LONGER "RESTRICTED SECURITIES" WITHIN THE MEANING OF RULE 144(a)(3) UNDER THE SECURITIES ACT, UNLESS (SUBJECT TO THE TERMS OF THE DEPOSIT AGREEMENT) SUCH SCOR ORDINARY SHARES WOULD THEN BE ELIGIBLE FOR SALE UNDER RULE 144(k) UNDER THE SECURITIES ACT. IN CONNECTION WITH THE EXCHANGE FOR SCOR ORDINARY SHARES, EACH INVESTOR SHALL DELIVER TO THE COMPANY SUCH WRITTEN REPRESENTATIONS, UNDERTAKINGS, AGREEMENTS AND OTHER DOCUMENTS AS THE COMPANY MAY REASONABLY REQUEST TO DETERMINE WHETHER SUCH EXCHANGE IS BEING EFFECTED IN ACCORDANCE WITH AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT WITH RESPECT TO THE SHARES HELD BY SUCH INVESTOR, INCLUDING, WITHOUT LIMITATIONS, REPRESENTATIONS AS TO THE INVESTOR'S STATUS OF "ACCREDITED INVESTOR" WITHIN THE MEANING OF RULE 501(a) UNDER THE SECURITIES ACT AND INVESTOR'S UNDERTAKINGS NOT TO OFFER, SELL, PLEDGE OR OTHERWISE TRANSFER ANY SCOR ORDINARY SHARES EXCEPT: (A) (I) IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 903 OR RULE 904 OF REGULATION S UNDER THE SECURITIES ACT OR (2) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT PROVIDED BY RULE 144(k) THEREUNDER (IF AVAILABLE); AND (B) IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE STATES OF THE UNITED STATES.  IF SUCH EXCHANGE WOULD NOT COMPLY WITH AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, THE EXCHANGE SHALL BE SOLELY FOR CASH AND THE CONSIDERATION PAID TO THE INVESTOR SHALL NOT COMPRISE ANY SCOR ORDINARY SHARES."

and such certificate will be reissued without the foregoing legend if the Shares or SCOR ordinary shares are disposed of in accordance with paragraph below or at the Investor's request after the expiration of two years following the issue date of the Shares or the SCOR ordinary shares, respectively.

The Investor agrees that in the event that the Investor wishes to dispose of any of the Shares the Investor will not do so except :

A.    (1)    in an offshore transaction meeting the requirements of Rule 903 or Rule 904 of Regulation S under the Securities Act ; or

   (2)    pursuant to an exemption from registration under the Securities Act provided by Rule 144 thereunder (if available) ; and

B.    in each case, in accordance with all applicable securities laws of the States of the United States and other jurisdictions.

B-2

# Appendix B:  U.S. Investor Awareness and Financial Qualifications

The Investor understands that the registration and transfer agents for the Shares will not be required to accept for registration of transfer any Shares acquired by the Investor, except upon presentation of evidence satisfactory to the Company that the foregoing restrictions on transfer have been complied with; and

(iii)    The Investor understands that the SCOR ordinary shares to be acquired upon exchange of the Shares (1) have not been and will not be registered under the Securities Act, (2) may not be deposited into any unrestricted depositary facility established or maintained by a depositary bank (including the SCOR ADR facility pursuant to which the Bank of New York acts as depositary bank), unless and until such time as such SCOR ordinary shares are no longer "restricted securities" within the meaning of Rule 144(a)(3) under the Act, unless (subject to the terms of the deposit agreement) such SCOR ordinary shares would then be eligible for sale under Rule 144(k) under the Act, and (3) may not be offered, sold, pledged or other transferred except outside the United States in accordance with Rule 903 or Rule 904 of Regulation S or pursuant to Rule 144(k) if available.  No representations can be made as to the availability of the exemption provided by Rule 144(k) for resales of interests in such SCOR ordinary shares.

(iv)    In connection with the exchange for SCOR ordinary shares, the Investor shall deliver to the Company such written representations, undertakings, agreements and other documents as the Company may reasonably request to determine whether such exchange is being effected in accordance with an available exemption from the registration requirements of the Securities Act with respect to the Shares held by the Investor, including, without limitations, represenations as to the Investor's status as Accredited Investor, and Investor's undertakings not to offer, sell, pledge or otherwise transfer any SCOR ordinary shares except :

A.    (1) in an offshore transaction in accordance with Rule 903 or Rule 904 of Regulation S under the Securities Act ; or

(2) pursuant to an exemption from registration under the the Securities Act provided by Rule 144(k) thereunder (if available) ; and

B.    in each case, in accordance with all applicable securities laws of the States of the United States.

If such exchange would not comply with an available exemption from the registration requirements of the Securities Act, the exchange shall be solely for cash and the consideration paid to the Investor shall not comprise any SCOR ordinary shares.

**B.    Financial Qualification.**

The Investor acknowledges that the offering and sale of the Shares are intended to be exempt from registration under the Securities Act and state securities laws by virtue of Section 4(2) of the Securities Act and the provisions of Regulation D thereunder.  In furtherance thereof, the Investor represents and warrants that the Investor qualifies as an institutional

B-3

# Appendix B:  U.S. Investor Awareness and Financial Qualifications

"Accredited Investor" as such term is defined in Rule 501 (a)(1), (2), (3) or (7) of Regulation D promulgated under the Securities Act, which definition is summarized in Appendix A hereto.

B-4

# Appendix C:  Shares Subscribed

| **Name of Investor** | **Number of Shares** | **Aggregate Purchase Price** |
|---|---|---|
| Highfields Capital I L.P. | 9,188 | €9,188,000 |

C-1

# Appendix D:  Investor Notice Information

Name of Investor: Highfields Capital I L.P.

Address: c/o Highfields Capital Management, 200 Clarendon Street, Boston, MA 02116

Telephone number: +1 617 850 7500

Facsimile number: +1 617 850 7501

Appendix E:  Form of Shareholders Agreement

E-1

# Appendix F:  Supplemental Tax Questionnaire

*Each Investor that is a U.S. Person, as defined below, is required to answer the questions set forth in this section.  Investors that are Governmental Units do not need to complete this section.  Investors who do not respond completely and accurately may, in the discretion of the Company's Board of Directors, be required to dispose of some or all of their Shares as provided in Article 19 of the Articles of Association of the Company.  Investors will be required to update and, in certain cases, supplement the information set forth below prior to any shareholders' meeting or at such other time as may reasonably be requested, as provided in Article 18 of the Articles of Association of the Company.*

For purposes of this section, the term "U.S. Person" shall have the meaning ascribed to it in Section 6(f) of the Subscription Agreement.  The questions which follow do not cover every possible circumstance in which ownership could be attributed to or from an Investor.  *Investors should consult their tax advisors as to the application of the constructive ownership rules of the Code to them in their particular situations and as to their ability to deliver the maximum investor's holdings representation contained in Section 6(f) of the Subscription Agreement.*

**TO BE COMPLETED BY INVESTORS THAT ARE (U.S.) INDIVIDUALS**

*1.  Are you related to a U.S. citizen or resident who, following the Offering, will directly or indirectly own any Shares?  (For purposes of this question, you need only report Shares that will be owned directly or indirectly by a parent, spouse, child and/or grandchild who is a U.S. citizen or resident.)*

☐ Yes      ☐ No

*If "Yes," please state how many Shares each such person will own directly or indirectly:* _____

*2.  Are you a beneficiary of a domestic or foreign estate or trust (other than a domestic tax-exempt trust that is part of a stock bonus, pension or profit-sharing plan) that, following the Offering, will directly or indirectly own any Shares?*

☐ Yes      ☐ No

*If "Yes," please state how many Shares the estate or trust will own directly or indirectly and your percentage ownership of the estate or trust:* _____

*3.  Are you a partner in a domestic or foreign partnership that, following the Offering, will directly or indirectly own any Shares?*

☐ Yes      ☐ No

*If "Yes," please identify the partnership, state how many Shares the partnership will own directly or indirectly and your percentage ownership of the partnership:* _____

LONDON:171879.2

# Appendix F:  Supplemental Tax Questionnaire

4.  *Do you directly or indirectly own 10% or more (measured by value) of the stock of any corporation that is a U.S. Person and that, following the Offering, will directly or indirectly own any Shares?*

---

☐ Yes    ☐ No

*If "Yes," please state how many Shares such corporation will own directly or indirectly and your percentage ownership of the corporation:  _____*

---

## TO BE COMPLETED BY INVESTORS THAT ARE (U.S.) CORPORATIONS

1.  *Does any U.S. Person directly or indirectly own 50% or more (measured by value) of the corporation's stock?*

---

☐ Yes    ☐ No

*If "Yes," please state the number of Shares, if any, that such shareholder will own directly or indirectly:  _____*

---

2.  *Is the corporation a beneficiary of a domestic or foreign estate or trust (other than a domestic tax-exempt trust that is part of a stock bonus, pension or profit-sharing plan) that, following the Offering, will directly or indirectly own any Shares?*

---

☐ Yes    ☐ No

*If "Yes," please state how many Shares the estate or trust will own directly or indirectly and your percentage ownership of the estate or trust :  _____*

---

3.  *Is the corporation a partner in a domestic or foreign partnership that, following the Offering, will directly or indirectly own any Shares?*

---

☐ Yes    ☐ No

*If "Yes," please identify the partnership, state how many Shares the partnership will own directly or indirectly and your percentage ownership of the partnership:  _____*

---

4.  *Does the corporation directly or indirectly own 10% or more of the stock of any corporation that is a U.S. Person and that, following the Offering, will own any Shares directly or indirectly?*

---

☐ Yes    ☐ No

*If "Yes," please state how many Shares such other corporation will own directly or indirectly and your percentage ownership of the corporation:  _____*

---

F-3

# Appendix F:  Supplemental Tax Questionnaire

**TO BE COMPLETED BY INVESTORS THAT ARE (U.S.) PARTNERSHIPS**

1.   *Is the partnership a beneficiary of a domestic or foreign estate or trust (other than a domestic tax-exempt trust that is part of a stock bonus, pension or profit-sharing plan) that, following the Offering, will directly or indirectly own any Shares?*

---
☐ Yes      ☐ No

*If "Yes," please state how many Shares the estate or trust will own directly or indirectly and your percentage ownership of the estate or trust:  _____*

---

2.   *Is the partnership a partner in a domestic or foreign partnership that, following the Offering, will to the best of your Knowledge directly or indirectly own any Shares?*

---
☐ Yes      ☐ No

*If "Yes," please identify the partnership, state how many Shares the other partnership will own directly or indirectly and your percentage ownership of the partnership:  _____*

---

3.   *Does the partnership directly or indirectly own 10% or more of the stock of any corporation that is a U.S. Person and that, following the Offering, will to the best of your Knowledge own any Shares?*

---
☐ Yes      ☐ No

*If "Yes," please state how many Shares such corporation will own directly or indirectly and your percentage ownership of the corporation:  _____*

---

4.   *To the best of your Knowledge, will any partner in the partnership that is a U.S. Person directly or indirectly own any Shares following the Offering?*

---
☐ Yes      ☐ No

*If "Yes," please state how many shares such partner will own directly or indirectly  _____:*

---

**TO BE COMPLETED BY INVESTORS THAT ARE (U.S.) TRUSTS, EMPLOYEE BENEFIT PLANS AND GOVERNMENTAL PLANS**

F-4

# Appendix F:  Supplemental Tax Questionnaire

1.   *Is the trust, employee benefit plan or governmental plan a beneficiary of a domestic or foreign estate or trust (other than a domestic tax-exempt trust that is part of a stock bonus, pension or profit-sharing plan) that, following the Offering, will directly or indirectly own any Shares?*

☐ Yes      ☐ No

*If "Yes," please state how many Shares such estate or trust will own directly or indirectly and your percentage ownership of the estate or trust:  _____*

2.   *Is the trust, employee benefit plan or governmental plan a partner in a domestic or foreign partnership that, following the Offering, will directly or indirectly own any Shares?*

☐ Yes      ☐ No

*If "Yes," please identify the partnership, state how many Shares the partnership will own directly or indirectly and your percentage ownership of the partnership:  _____*

3.   *Does the trust, employee benefit plan or governmental plan directly or indirectly own 10% or more of the stock of any corporation that is a U.S. Person that, following the Offering, will directly or indirectly own any Shares?*

☐ Yes      ☐ No

**ARTICLE 1.If "Yes," please state how many Shares such corporation will own directly or indirectly and your percentage ownership of the corporation:  _____**

4.   *If the Investor is a trust that is not an employee benefit plan, governmental plan or otherwise part of a stock bonus, pension or profit-sharing plan, please state to the best of your knowledge whether any U.S. Person that is a beneficiary of the trust (or that is a "grantor" of the trust if the trust is classified as a "grantor trust" for purposes of the Code) will directly or indirectly own any Shares following the Offering.*

☐ Yes      ☐ No

**ARTICLE 2.If "Yes," please state how many Shares such beneficiary (or grantor) will own directly or indirectly:  _____**

F-5

# Appendix F:  Supplemental Tax Questionnaire

**TO BE COMPLETED BY INVESTORS THAT ARE (U.S.) ESTATES**

1.    *Is the estate a beneficiary of a domestic or foreign estate or trust (other than a domestic tax-exempt trust that is part of a stock bonus, pension or profit-sharing plan) that, following the Offering, will own any Shares directly or indirectly?*

> ☐ Yes      ☐ No
>
> **ARTICLE 3.If "Yes," please state how many Shares such estate or trust will own directly or indirectly and your percentage ownership of the estate or trust:  _____**

2.    *Is the estate a partner in a domestic or foreign partnership that, following the Offering, will own any Shares directly or indirectly?*

> ☐ Yes      ☐ No
>
> **ARTICLE 4.If "Yes," please identify the partnership, state how many Shares the partnership will own directly or indirectly and your percentage ownership of the partnership:  _____**

3.    *Does the estate directly or indirectly own 10% or more of the stock of any corporation that is a U.S. Person that, following the Offering, will own any Shares directly or indirectly?*

> ☐ Yes      ☐ No
>
> **ARTICLE 5.If "Yes," please state how many Shares such corporation will own directly or indirectly and your percentage ownership of the corporation:  _____**

4.    *To the best of your knowledge, will any beneficiary of the estate that is a U.S. Person directly or indirectly own any Shares following the Offering?*

> ☐ Yes      ☐ No
>
> **ARTICLE 6.If "Yes," please state how many Shares such beneficiary will own directly or indirectly:  _____**

LONDON:171879.2