UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------- x
Highfields Capital Ltd., Highfields              :
Capital I LP, Highfields Capital II              :
LP,                                              :
                                                 :     Case No. 04-10624 (MLW)
                              Plaintiffs,        :
                  v.                             :
                                                 :
SCOR, S.A.,                                      :
                                                 :
                              Defendant.         :
------------------------------------------------------- x
```

# EXHIBIT H

As referred to in the Affidavit in Support of Motion to Dismiss or Stay
of Conor McDonnell

CONOR McDONNELL

~~COMMISSIONER FOR OATHS~~
PRACTISING SOLICITOR

03/06 '04 16:13 FAX +353 1 661 2526    LAT. - COMN    @002

# LK SHIELDS
## SOLICITORS

**VIA FACSIMILE & POST**
**618 0618**

39 /40 UPPER MOUNT STREET
DUBLIN 2, IRELAND.

TELEPHONE: 353 + 1 661 0866
FACSIMILE: 353 + 1661 0883
D.D.E Box No: 123
E-MAIL: email@lkshields.ie
WEBSITE: www.lkshields.ie

Arthur Cox,
Solicitors,
Earlsfort Centre,
Earlsfort Terrace,
Dublin 2.
F.A.O. Conor McDonnell Esq.

OUR REF.    4276-001/LKS/JC/040603s1

YOUR REF:    CMcD/NO

3rd June, 2004

**Re: In the matter of IRP Holdings Limited and in the matter of the Companies Acts, 1963-2001**
**Your Client: Scor S.A.**
**Our Client: Highfields Capital Management LP**

Dear Sirs,

Pursuant to the provisions of Order 31 Rule 12 (4) of the Rules of the Superior Courts and S.I. 233/99 we hereby request your client to make Discovery on a voluntary basis in respect of the following categories of documentation for the reasons which are indicated below. It is our view that these documents are required both in order to allow the Petitioners make their case and also to respond to the issues which have been raised by the Respondent both in Affidavit and in the Points of Defence:

**Category 1:**

*All documentation/correspondence (both internal and otherwise) relating to the incorporation of IRP Holdings Limited ("the Company") and all agreements relating to its incorporation including:*

(a)    *All documentation and correspondence in the Respondent's control and possession together with memos, emails and minutes of meetings of the Respondent, its subsidiaries, employees, officers or agents of the Respondent and its subsidiaries, whether internal or otherwise, in relation to the incorporation of the Company.*

LAURENCE K. SHIELDS, EDMUND BUTLER, PATRICIA McGOVERN, HUGH GARVEY, GERALD M. GAVIN, EMMET SCULLY, GERARD HALFPENNY, JUSTIN McKENNA, MICHAEL KAVANAGH, DAVID J.H. WILLIAMS, FIONA THORNTON, NICOLA PALMER, PHILIP DALY, MARCO W. HICKEY.
ERIN BARRETT, AOIFE BRADLEY, STEPHEN BRENNAN, JILL CALLANAN, THOMAS CASEY, JENNIFER CLARKE, SUSAN CONNOLLY, JONATHAN CULLEN, EOIN CUNNEEN, GILLIAN DULLY, JENNIFER HIGGINS, ANDREW SHEWE, JENNIFER McGUIRE, ORLAICH O'DWYER, DERVAL O'HALLORAN, GERARD O'HANLON, JENNIFER O'NEILL, KATRINA SMYTH, OONAGH TONER [Financial Controller] THOMAS JACKSON [Consultant].

- 2 -

(b)    All external reports or analysis commissioned or considered by the Respondent, its
subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, in
relation to the incorporation of the Company and including any budgets, estimates or
financial plans relating to the Company's organisation and operation.

(c)    All drafts or memos relating to the proposed and final forms of the Articles of Association
or other documents relating to the governance of the Company.

The dispute between the Petitioners and the Respondent relates to the manner in which the
Respondent has conducted the affairs of the Company. The Respondent denies that the affairs of
the Company have been conducted in a manner oppressive to the Petitioners or its members or in
disregard for same and has pleaded specifically that the Petitioners' claim represents an effort to
renegotiate the terms and conditions on which they originally participated in the Company. At
Point 5 of the Defence and Counterclaim, the Respondent has specifically asserted that they will
refer at the hearing of the proceedings to the circumstances in which the Petitioners determined
to invest in the Company, the documentation made available prior to that investment, the extent
of negotiations conducted prior to the Petitioners' decision to invest in the Company and the
documentation and agreements executed for the purpose of effecting and regulating that
investment.

In the circumstances, documentation relating to the incorporation of the Company and its form,
as set out above is necessarily relevant.

**Category 2:**

All documentation relating to the anticipated relationship and negotiations between the
Company, the Petitioners and the Respondent.

This should include any documentation and correspondence in the Respondent's possession and
control together with all memos, emails and minutes of meetings of the Respondent, its

- 3 -

*subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, whether*
*internal or otherwise, in relation to the anticipated relationship and, in particular, to the*
*operation of the Quota Share Agreements and the Shareholders Agreement, the negotiating or*
*drafting of the Quota Share Agreements and the Shareholders Agreement, the description of such*
*agreements in the Offering Memorandum and their intended operation and interrelationship*
*with each other.*

As stated in the previous category, there is a dispute between the parties in relation to the
underlying terms under which they agreed to engage with each other. The Respondent has
referred specifically to the necessity to examine documentation made available to the Petitioners
prior to the investment and to the negotiations which were conducted. The Respondent has also
specifically referred to, inter alia, the Quota Share Agreements and the Shareholders Agreement.
In the premises, documentation relating to the intended relationship and associated negotiation
between the parties is clearly relevant referring as it does to the intent of the parties and the
anticipated relationship which would exist between the Respondent, the Petitioners and the
Company.

### Category 3:

*All documentation relating to the preparation and submission of the Private Placement*
*Memorandum to include any correspondence, attendances or other communications between the*
*Respondent and Lazards in relation to the preparation or drafting of the Private Placement*
*Memorandum. This should include any back-up documentation and any communications to other*
*potential investors with reference to same, as well as any reports, whether internally produced*
*or produced by any third parties, as to the reserves, financial condition or actuarial*
*computations and systems of the Respondent, its subsidiaries and employees, officers or agents*
*of the Respondent and its subsidiaries, that were existing and in the possession of the Respondent*
*at the time the Private Placement Memorandum was delivered to the Petitioners, or any emails,*
*correspondence or other documentation with respect to any examinations, reviews or inspections*
*that were ongoing at such time, whether by insurance regulatory authorities or otherwise.*

- 4 -

This category again refers to documentation supplied or which was existing and available to the Respondent during the course of the negotiations and leading to the conclusion of the Private Placement Memorandum, Shareholders Agreement and the Quota Share Agreements. The Respondent has implicitly, if not explicitly, acknowledged the importance of the Private Placement Memorandum supplied as being a document on foot of which the Petitioners could place reliance. Further, it is alleged that the Respondent had held itself out as being a Company of substance which proved to be untrue. It is necessary, therefore, to have regard to the circumstances surrounding the representations made by the Respondent in the Private Placement Memorandum and its preparation and submission in order to establish the contents and circumstances under which the various Agreements pleaded by the Respondent, at Paragraph 5 of the Defence and Counterclaim, were entered into.

**Category 4:**

*Documentation relating to the business written by the Respondent and the market ratings designated in respect of the Respondent including, in particular, the following:*

    *(a) All financial information in relation to business written by the Respondent and its subsidiaries for the period of 12 months ending the 31st December 2001 and each of the calendar years following the incorporation of the Company to include the overall characteristics of the risks written by the Respondent. This should include the country ceding, the identity of the ceding companies and the general nature of the business operated, any changes in the characteristics of the risk offered to or written by the Respondent and any special terms required of the Respondent as a pre-condition to the ceding of risk.*

    *(b) All financial information in relation to loss reserves provided by the Respondent and its subsidiaries as of the 31st December 2001 and each of the calendar years thereafter, to include the information on prior year reserves, or the inadequacy of prior year reserves, that resulted in the reserves finally established for such year. This should include the*

- 5 -

country ceding, the identity of the ceding companies and the general nature of the business operated, any changes in the characteristics of the risk offered to or written by the Respondent and any special terms required of the Respondent as a pre-condition to the ceding of risk.

(c) All reports, analysis or memorandums, correspondence or other documentation reflecting, referring to, or relating to any finding, report or inquiry of any regulatory authority, or any report commissioned by, or for the use of any regulatory authority, made at any time after January 1, 2000, in relation to loss reports, loss reserves or associated actuarial computations of the Respondent or any of its Subsidiaries.

(d) All documentation and correspondence in the Respondent's possession/control together with all memos, emails and minutes of meetings, whether internal or otherwise, in relation to the financial strength and credit ratings of the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, for the period of 6 months prior to the investment by the Petitioners in the Company and continuing to date, including presentations made by the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, to Rating Agencies including, in particular, S & P, Fitches, AM Best and Moody's.

(e) All documentation and correspondence in the Respondent's possession and control together with all memos, emails and minutes of meetings of the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, whether internal or otherwise, relating to presentations made to Re-Insurance intermediaries for the period from 6 months prior to the incorporation of the Company to date particularly with reference to AON, Marsh, Guy Carpenter and Benfield.

This documentation is relevant in that the Petitioners have made the case that the Respondent held itself out as having, and continuing to have, strong market ratings and thus a strong position

- 6 -

in the Reinsurance Market and that it had highly developed and reliable actuarial and recordkeeping systems for estimating and establishing loss reserves. It is a core element of the claim made by the Petitioners that the Respondent has ought to use the Company's capital to buttress the Respondent's own weakened financial state brought on by losses which were, or should have been, foreseen by it, and that it will continue to do so in contravention of the interests of the Petitioners. One consequence is that the Respondent began to write riskier and more poorly priced Reinsurance business which the Respondent in turn has required the Company, as the operating company, to accept. In those circumstances the Company is exposed to a significant risk of loss because of the quality of business available to the Respondent and ceded in turn to the Company. The Respondent admits that at the time of incorporation of the Company it held itself out as having reliable financial systems and statements, strong credit ratings and being in a strong position. Its offering materials at this time presented its financial strength and stability as a material inducement to investment by the Petitioners. However, the Respondent has failed to acknowledge that its subsequent disclosure of substantial losses and financial deterioration has adversely impacted its business and as a result also the business of the Company. Documents that relate to the nature of the business written by the Respondent before and since the Company's incorporation, and the facts and reports available to the Respondent regarding its loss, reserves and financial systems, are necessarily relevant to the truth of the Respondent's assertion that it has never intended, nor acted, to use the Company's assets to bolster its own financially weakened state and thus to act oppressively of the Company's shareholders.

It is the case made by the Petitioners that the Respondent was exposed to a serious downgrade in its rating within the industry and that this in turn has significant effects on the type of business which is available to it. In particular, it is the case made by the Petitioners that the degradation in the financial rating of the Respondent made it unacceptable within the industry to principal reinsurance brokers so that, far from being the best underwriting available, the opposite was the case. These are all matters which are essential elements of the factual matrix of the dispute between the parties and the extent of which the Respondent's own needs prevailed over the

- 7 -

interests of the Petitioners and the Company.  The documentation which is sought in relation to the rating agencies and reinsurance intermediaries is fundamental information for establishing the capacity of the Respondent to generate or cede business of a suitable quality and the extent of the Respondent's increasingly difficult financial circumstances.  Furthermore, having regard to the assertion at Paragraph 22 of the Points of Defence and Counterclaim that, in effect, there are simply risks inherent in the insurance business which the Company undertook by executing the Quota Share Agreements, it is necessary to respond to this by establishing the extent to which it is not in fact due to any inherent risk in the insurance business but rather due to the collapse in the position of the Respondent which is the operative cause of the deterioration in the business of the Company.

**Category 5:**

All documentation/correspondence relating to the type of business written by the Company and ceded from the Respondent for the period since the Company's incorporation together with any documentation relating to the consequent exposure of the Company to risk.

*This should include back-up documentation in relation to the underlying contract written by the Respondent and ceded to the Company. It should include all correspondence and documentation in the Respondent's possession/control together with emails, memos and minutes of meetings of the Respondent, its subsidiaries and officers, employees or agents of the Respondent and its subsidiaries, whether internal or otherwise, relating to such underlying contract or to the type of risk being ceded including, where available, any external reports or analysis in respect of the underlying contracts as well as any correspondence between the Respondent and the Company. It should also include any information in relation to the return profile of the Company and any analysis in relation to its performance.*

This documentation is relevant in that it establishes the link between the degraded financial position of the Respondent and the type of business being ceded to the Company. It is necessary to establish the causal link between the exposure of the Respondent to business of a riskier nature

- 8 -

and the consequent exposure of the Company to same. This is documentation which is uniquely available to the Respondent both by virtue of its position as ceding reinsurer and also because of its de facto control of the affairs of the Company. Such documentation must of necessity exist as it refers to the standard type of documentation used by a reinsurer to establish its own exposure to risk and the quality of the business which it is accepting or ceding. Insofar, therefore, as it relates to the issue of the extent to which the Company is itself affected by the position of the Respondent, it is necessarily relevant.

## Category 6:

*All documentation and correspondence within the Respondent's possession/control together with all emails, memos and minutes of meetings of the Respondent, its subsidiaries and officers, employees or agents of the Respondent and its subsidiaries, whether internal or otherwise, in relation to the shareholding of the Petitioners in the Company or in relation to other shareholders and, in particular, in relation to the sale of shares held by BNP Paribas Ireland ("BNP"), Compagnie Ottomane Financiere ("COF") and Westdeutsche Landesbank Girozentrale ("WLG") and the Respondent's acquisitions of same, including any financial information, predictions, pro forma financial results or other information regarding the Company, the Respondent or its subsidiaries which was provided to such shareholders at any time from six months before their investment in the Company up to December 31, 2003.*

The Respondent has sought to assert that the position taken by the Petitioners is merely to avoid the terms and conditions under which they invested in the Company, whereas the Petitioners contend that the Respondent has acted with a purpose and effect to place its interests above those of the Company. It is likely, in the light of the complaints being made by the Petitioners, that there is documentation held by the Respondent in relation to the shareholding of the Petitioners and the means used by the Respondent to increase its control over the Company, particularly given that the Respondent's position in fact evolved into a majority and controlling shareholding of the Company which is highly relevant to the Respondent's purposes in acquiring such majority control and the benefits it sought in doing so. It is a particular complaint of the

- 9 -

Petitioners that they were misled by the Respondent in relation to its intentions in respect of the
sale of shares held by BNP and COF in the Company. It is pleaded that the Respondent, through
its Mr. Osouf, agreed to waive its pre-emptive rights to the BNP and COF shares to allow
purchase of such shares by the State of Wisconsin Investment Board, provided the Petitioners did
likewise. Having done so it is complained of by the Petitioners that the Respondents then
undertook to exercise the right of first refusal entirely for itself to purchase the entire
shareholding held by BNP and COF with the effect of immediately giving the Respondent
majority ownership of the Company, thus leaving the Petitioners with no alternative but to
preserve their own pre-emptive rights to prevent the Respondent becoming a majority
shareholder at that time. The Respondents have denied the existence of any representations
concerning the waiver of pre-emption rights and have asserted the acquisition of the BNP/COF
shares as being simply the exercise of pre-emption rights to which each party was entitled. It is
almost certain that documentation exists in relation to the shareholdings held by the various
shareholders in the Company, including the Petitioners and the exercise of pre-emption rights
and such is clearly material to the entire issue as to whether representations were made and the
purpose of same. It is also relevant in the context of the purchase of WLG shares where the
Respondent specifically refused to permit the amendment of the Articles of Association, contrary
to the sentiment of the Company Board of Directors to approve such amendment, to prevent the
Petitioners taking up their pro rata share of the WLG Shares. Finally, it would be relevant to the
claim of the Petitioners that the Respondent has sought to oppress the rights of the Petitioners as
a shareholder to review any information that was provided to the selling shareholders by the
Respondent and which may have been used to induce such selling shareholder to determine to
sell its interest.

## Category 7:

*All communications or correspondence passing between the Company (including its officers,
directors or other representatives) and the Respondent (including its subsidiaries, employees,
officers and agents of the Respondent and its subsidiaries) and, in particular, any documents
relating to the financial position of the Respondent, the business ceded by the Respondent to the*

- 10 -

*Company, the purchase by the Respondent of shares of the Company from any other Company shareholder, the reduction of capital of the Company the funds withheld arrangement, the operation or termination of the Quota Share Agreements or the operation and effect of the Shareholders Agreement*

(b) *All communications or correspondence passing between the Respondent (including its subsidiaries, employees, officers and agents of the Respondent and its subsidiaries) and any lender, financial advisor, or creditor, relating to the purchase by the Respondent of shares of the Company from any other Company shareholder, the exercise of any right of first refusal, the interrelationship of the Respondent's ownership of Company shares or the amount of the Company's capital and the financial position of the Respondent, the business ceded by the Respondent to the Company, the reduction of capital of the Company, the funds withheld arrangement, the operation or termination of the Quota Share Agreements or the operation and effect of the Shareholder Agreement.*

(c) *All correspondence and documents together with all reports, emails, agendas, minutes or other materials in relation to any potential sale of the Respondent's securities since the date of incorporation of the Company and which includes any reference or information about the Company, the Company's capital, agreements and dealings between the Respondent and the Company, or the Respondent's or Petitioners' interest in the Company, including any documents provided to, or received from, any underwriter, distributor, placement agent or purchaser of the Respondent's securities.*

It is a fundamental issue in the Proceedings and the case made by the Petitioners that the Respondent would not permit the Company to protect its own interests and that it has undertaken to influence the Company to take steps that are in the Respondent's own interests. It is likely that correspondence between the Company and the Respondent will describe both the position taken by the Respondent in relation to the various obligations of the Company and the extent to which the Respondent sought to use its position to frustrate the Petitioner's interests and the

- 11 -

independent interests of the Company. In addition, correspondence with financial advisors, underwriters of the Respondent's securities, lenders and other creditors and with the Respondent's own Board of Directors, can be expected to contain the Respondent's plans, motives and intentions with respect to the actions it has taken with respect to its ownership and influence over the Company, in particular, the effect on its financial ratings and condition or increasing its ownership and control over the Company, its position and interests in the Company, refusing to initially consent to a capital reduction of the Company and its unwillingness to permit any modification of the Quota Share Agreements. In addition, in satisfying the Respondent's need for capital it is likely that he Respondent took comfort or relied on the existence of the Company as a captive reinsurer in its dealings with third parties who had placed business or deal with it (in particular underwriters, distributors or placement agents). In the premises such documentation is clearly relevant.

## Category 8:

All documentation/correspondence relating to the reduction of capital of the Company. This should include all correspondence and documentation within the Respondent's control and possession together with all memos, emails and minutes of meetings of the Respondent (including its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries,) whether internal or otherwise.

This arises from the initial refusal of the Respondent to permit a reduction of the capital of the Company in the best interests of the Company. It is the case made by the Petitioners (and disputed by the Respondent) that this and other matters complained of are illustrative of a general proposition that the Respondent would not permit the Company to protect its own interests in furtherance of the Respondent's own commercial interests and this category of documentation illustrates a specific instance of this complaint. Accordingly such documentation is relevant.

- 12 -

**Category 9:**

*All documentation and correspondence relating to the Funds Withheld Agreement and its conclusion. This should include all documentation and correspondence in the possession/control of the Respondent together with all memos, emails and minutes of meetings of the Respondent (including its subsidiaries, employees, offices or agents of the Respondent and it's subsidiaries), whether internal or otherwise, with reference to the proposed Funds Withheld Agreement and the anticipated operation of same together with any documentation correspondence relating to the operation of this arrangement and the exposure of the Company as a consequence of such Agreement.*

The specific complaint made by the Petitioners relates to the operation of a Funds Withheld arrangement whereby the Respondent was permitted to withhold payment of unearned premium which was otherwise payable to the Company. The Respondent denies the arrangement as pleaded by the Petitioners and also denies the making of any representations leading to the Company entering into such arrangement. There are also denials in relation to the representations made in the course of the operation of the Funds Withheld Agreement. Furthermore, the Respondent has made assertions in relation to the composition of the Funds Withheld arrangement asserting that a substantial amount is charged directly against claims outstanding for which the Company is responsible, or claims incurred but not reported, thus disputing the entitlement of the Company to the return of these funds in any event. It is necessary not merely, therefore, to establish the history of the Funds Withheld arrangement but also its composition and any legitimate claims against same. In the premises, such documentation as is sought is clearly relevant particularly insofar as it relates to the exposure of the Company.

**Category 10:**

*All documentation and correspondence passing between the Respondent (including its subsidiaries) and directors of the Company relating to the business of the Company, and all correspondence, agreements, internal memos, emails and minutes of meetings of the Respondent*

- 13 -

*and its subsidiaries, in relation to any financial or contractual relationships, whether direct or indirect, existing at any time in the last five years between the Respondent or any of its subsidiaries or affiliates, and any person who is or has been a director of the Company since it's incorporation, including matters pertaining to the rights and potential claims of shareholders.*

The dispute between the Petitioners and the Respondent relates to the manner in which the Respondent has conducted the affairs of the Company and whether that conduct has been inconsistent with the interests of the Company's sole other shareholder. The Respondent has contradicted this claim by stating that the Company's directors have independently determined its course of conduct without influence of Respondent. The dispute also relates to the Petitioners view that the Company's affairs cannot properly be conducted, and that the directors of the Company are unable to effectively manage the Company's affairs, given that the Petitioners and the Respondent are lacking in trust and confidence in each other. It is accordingly relevant to establish whether the respondent permitted the directors to act independent of the Respondent's interests or require it to subordinate the Company's interests and the interests of the shareholders generally to those of the Respondent.

Please be further advised that the phrase "document" should be read as including documentation held in any electronic or other form and should be read in the context of S.I. 233/99.

We suggest that Discovery be completed within a period of 12 weeks but, in any event, we require you to respond indicating your position within 2 weeks from the date hereof failing which we will have no alternative but to proceed by way of Motion.

If your client is agreeable to make voluntary Discovery, such Discovery must be in the same manner and form as if directed by Court Order and to have the like effect. Any failure to comply with the terms of such Agreement renders the Respondent subject to enforcement pursuant to the provisions of Order 31 Rule 21 of the Rules of the Superior Courts and the Court may make appropriate Orders under Order 31 Rules 12, 19 and 21 or other Orders as it deems appropriate.

- 14 -

Yours faithfully,

**L.K. SHIELDS, SOLICITORS**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------- x
Highfields Capital Ltd., Highfields           :
Capital I LP, Highfields Capital II            :
LP,                                            :
                                               :    Case No. 04-10624 (MLW)
                          Plaintiffs,          :
               v.                              :
                                               :
SCOR, S.A.,                                    :
                                               :
                          Defendant.           :
------------------------------------------------- x
```

# **EXHIBIT I**

**As referred to in the Affidavit in Support of Motion to Dismiss or Stay
of Conor McDonnell**

**CONOR McDONNELL**

**COMMISSIONER FOR OATHS**
**PRACTISING SOLICITOR**

# ARTHUR COX

EARLSFORT CENTRE, EARLSFORT TERRACE, DUBLIN 2
TEL +353 1 618 0000  FAX +353 1 618 0618  DX 27 DUBLIN
mail@arthurcox.com    www.arthurcox.com

| BELFAST | LONDON | NEW YORK |
|---|---|---|
| CAPITAL HOUSE, 3 UPPER QUEEN STREET | 29 LUDGATE HILL | 570 LEXINGTON AVENUE, 28TH FLOOR |
| BELFAST BT1 6PU | LONDON EC4M 7JE | NEW YORK, NY 10022 |
| TELEPHONE +44 28 9023 0007 | TELEPHONE +44 20 7213 0450 | TELEPHONE +1 212 759 0808 |
| FAX +44 28 9023 3464 | FAX +44 20 7213 0455 | FAX +1 212 688 3237 |

OUR REFERENCE          YOUR REFERENCE
CMcD/no         4276001/LKS/JC/04051211
Direct Dial : 618 0460

4 June 2004

**BY FAX & POST:  661 2379**

L.K. Shields Solicitors
39/40 Upper Mount Street
Dublin 2

Re: **The High Court**
  **2003 Record No 576COS**
  **In the Matter of IRP Holdings Limited and in the Matter of the Companies Acts**
  **1963 to 2001**
  **Our Client – SCOR (the "Respondent")**
  **Your Client – Highfields Capital Limited & Ors (the "Claimants")**

Dear Sirs

We write this letter pursuant to the provisions of Order 31 Rule 12 of the Rules of the Superior Courts as substituted by Statutory Instrument No 233/99 Rules of the Superior Courts (2)(Discovery) 1999.

References in this letter to documents are to all documents within the possession power or procurement of the Claimants, their servants, agents or any other person over whom they have a legally enforceable right to procure same. Such documents include such notes, memoranda, reports (including draft reports), minutes, diary entries, tape recordings, computer generated files or communications, telecommunications records, microfilm and records of any kind however maintained whether electronically, in hard copy format or in any other manner.

References to the "Company" are to IRP Holdings Limited. References to the "Operating Company" are to Irish Reinsurance Partners Limited. References to "IRP" are to both entities collectively.

1. **All documents which pertain to or are relevant to the circumstances in which the**
  **Claimants were solicited to invest, or invested, at any point, in IRP in particular**

JAMES O'DWYER  DANIEL E. O'CONNOR  ROBERT BOLTON  JOHN V. O'DWYER  RONAN WALSH  DONOGH CROWLEY  JOHN S.WALSH  MICHAEL MEGHEN  JOSEPH LEYDEN  WILLIAM JOHNSTON
EUGENE McCAGUE  NICHOLAS G. MOORE  DECLAN HAYES  DAVID O'DONOHOE  COLM DUGGAN  CARL O'SULLIVAN  ISABEL FOLEY  JOHN MEADE  CONOR McDONNELL
PATRICK McGOVERN  GRAINNE HENNESSY  SEAMUS GIVEN  COLIN BYRNE  CAROLINE DEVLIN  CIARÁN BOLGER  GREGORY GLYNN  DAVID FOLEY  STEPHEN HEGARTY
DECLAN DRISLANE  SARAH CUNNIFF  KATHLEEN GARRETT  PÁDRAIG Ó RIORDÁN  ELIZABETH BOTHWELL  WILLIAM DAY  ANDREW LENNY  JOHN MENTON  PATRICK O'BRIEN  ORLA O'CONNOR
BRIAN O'GORMAN  MARK SAUNDERS  MARK BARR  JOHN MATSON  DEBORAH SPENCE  MARGARET MULDOWNEY  NIAMH CAFFREY  KEVIN MURPHY  CORMAC KISSANE
LIAM CARNEY  RAYMOND HURLEY  KEVIN LANGFORD  EVE MULCONEY  SIONA RAFFERTY  PHILIP SMITH  KENNETH EGAN  JOHN GLACKIN  BRYAN STRAHAN  HUGH O'DONNELL

CONSULTANTS:  PAUL McLAUGHLIN  IAN A. SCOTT  JOHN G. FISH  PETER McLAUGHLIN  DR. MARY REDMOND  DR. YVONNE SCANNELL  DR. ROBERT CLARK

by virtue of the following agreements set out hereunder, including all documentation which influenced the Claimants decision to invest therein:-

(a)     The Shareholders Agreement executed by the parties on 28th December 2001 ("the Shareholders Agreement")

(b)     The Memorandum and Articles of Association of IRP and of IRP Holdings (the "Memorandum and Articles of Association")

(c)     The Private Placement Memorandum for IRP dated 31st December 2001 ("The Private Placement Memorandum")

(d)     The Quota Share Agreements between IRP and each of 10 SCOR companies ("The QSA's") executed in January 2002

(e)     A Subscription Agreement executed by each of the initial investors in IRP on 21st December 2001 ("the Subscription Agreement")

Without prejudice to the generality of the foregoing, this includes all notes and memoranda made in connection with this investment, all drafts of the said Agreements, all notes of meetings held between the parties in connection with the said Agreements, all notes or minutes of meetings held by representatives of the Claimants, their servants or agents, between themselves and/or between the Claimants and their legal, commercial and professional advisers in respect of these Agreements.

<u>**REASON**</u>

In the Points of Claim, the Claimants refer on numerous occasions to the above-mentioned series of Agreements setting out the terms of their investment in IRP. One of the major issues in these proceedings is the level of knowledge available to the Claimants at the time of this investment, upon which they based the decision to invest in IRP, and the sources of that information. Such information relates to the financial condition of the Respondent at the time of investment, the precise circumstances in which the Claimants could exit their investment in IRP and the issue of whether or not the Claimants relied on any alleged misrepresentations made by the Respondent with regard to its financial position (or indeed any other relevant matters, including the exit mechanism) at the time of the investment. This category of documentation is required in order to determine the extent to which the Claimants relied on such alleged misrepresentations and the extent of professional and legal advice available to, and taken by, the Claimants at that time, and for the purposes of saving costs.

2.     All documents which pertain to the sale of shares in IRP held by Banque Nationale de Paris ("BNP") and Compagnie Ottoman Financier ("COF") in 2002/2003 and in particular all documentation relating to the subsequent exercise of pre-emption rights in these shares by the Claimants and Respondent.

<u>**REASON**</u>

The Points of Claim allege, in particular at paragraphs 21-23 inclusive, that the circumstances surrounding the sale of shares in IRP by two minority shareholders, namely BNP and COF, and the subsequent purchase of these shares by the Claimants and Respondent, provide specific evidence of oppression of the Claimants by the Respondent. They allege that this conduct represented an attempt by the Respondent to secure majority control of IRP, purportedly in oppression of the Claimants. This is denied in the Points of Defence, in particular at paragraphs 15 and 17 thereof. In the circumstances all documents which pertain to this issue are relevant or necessary for the purposes of these proceedings and for the purposes of saving costs and should be discovered.

3.     **All documents which pertain to the "funds withheld" arrangement alleged in the Points of Claim, including without limitation all documents which pertain to the amendment of the QSA's in mid 2002 to provide for a "funds withheld" arrangement whereby the Respondent was, subject to certain conditions, entitled to withhold payment of unearned premium otherwise payable to IRP. This includes all documentation relating to the original implementation of the "funds withheld" arrangement, all representations allegedly relied upon by the Claimants at that time and all subsequent documentation evidencing communications within the Claimants, and between the Claimants and IRP in respect of the operation of the "funds withheld" arrangement. Without prejudice to the generality of the foregoing, this specifically includes the Claimant's internal documentation in relation to the role of Credit Agricole Asset Management Ireland Limited ("Credit Agricole"), a third party asset management firm.**

**REASON**

The Points of Claim allege, particularly at paragraphs 24-27, that the creation and operation of the "funds withheld" arrangement constitutes a particular example of oppression of the Claimants by the Respondent. The Points of Defence, particularly at paragraphs 47-51 inclusive, take issue with the circumstances under which the "funds withheld" arrangement came into operation, the reasons for the creation of the "funds withheld" arrangement and the circumstances in the intervening period which lead to its continuing operation. The Points of Defence also allege that the role played by Credit Agricole in this issue is crucial. In the circumstances all documents which pertain to this issue are relevant or necessary for the purposes of these proceedings and for the purposes of saving costs and should be discovered.

4.     **All documents which pertain to the sale by Westdeutsche Landesbank Girozentrale ("WLG") in 2003 of its shares in IRP. Without prejudice to the generality of the foregoing, this category includes all documentation relating to the Claimants' request on 12 June 2003 for a pro rata allotment for the right of first refusal of WLG shares and a waiver or amendment to the prohibition under the Articles of Association of IRP which prohibit a US person owning 10% of the company shares.**

**REASON**

The Points of Claim allege, particularly at paragraphs 28-31 inclusive, that the circumstances surrounding the sale of WLG shares and in particular the circumstances surrounding the response to the Claimants' request to amend the Articles of Association of IRP, represent specific evidence of oppression of the Claimants by the Respondent. The Points of Defence, particularly at paragraphs 52 & 53, take issue with this and allege that the Claimants were unable to acquire their pro rata share of WLG shares due to tax related ownership restrictions and procedures contained in the IRP Articles of Association. In the circumstances all documents which pertain to this issue are relevant or necessary for the purposes of these proceedings and for the purposes of saving costs and should be discovered.

5.    **All documents which relate to any proposed reduction of the share capital of the Company including without limitation, all documents which pertain to the dispute between the Claimant and Respondent in relation to the proposed reduction of the share capital of the Company.**

      **REASON**

      The Points of Claim allege, in particular at paragraphs 18-20 inclusive, that the Respondent refused in November 2003 to consent to a capital reduction which was recommended by the management of IRP, on the basis that such a reduction was not in the interest of the Respondents. The Claimants cite this as a further specific example of the alleged oppression of the Claimants by the Respondent. The Points of Defence, particularly at paragraphs 33-40 inclusive, take issue with the Claimants version of events. In the circumstances all documents which pertain to this issue are relevant and necessary for the purposes of these proceedings and for the purposes of saving costs and should be discovered.

6.    **All documents which relates to any proposal to terminate the QSA's, including without limitation, the proposed termination of the QSA's in 2003/2004. Without prejudice to the generality of the foregoing this request includes all documents relating to the allegation that the Respondent has begun to write riskier and poorly-priced reinsurance business which in turn has exposed IRP to a significant risk of loss.**

      REASON

      The Points of Claim allege in paragraph 12 that the Respondent, as a result of its alleged weakened financial position, has begun to write riskier and more poorly-priced reinsurance business and that IRP has been exposed to a significant risk of loss as a result. It is on this basis the Claimants alleged they advocated a termination of the QSA's. These allegations are denied by the Respondent.

      The Points of Claim also allege that the circumstances of the decision taken by the Company to renew, and not to discontinue, the QSA's in 2003 represent a specific example of oppression by the Respondents of the Claimants. The Points of Claim suggest that such renewal took place only as a result of improper and oppressive behaviour on the part of the Respondents which threatened the exercise of so-called Super Majority Voting in respect of this issue. This is denied in the Points of Defence. In the circumstances all documents which pertain to this issue are relevant and

necessary for the purposes of these proceedings and for the purposes of saving costs and should be discovered.

7.     **All documents which Claimants contend support the allegations that the Respondent (i) made misstatements about, or omitted to state material facts concerning, the business, operations, prospects, financial condition or success of the Company or of the Respondent, or (ii) otherwise improperly induced the Claimants to acquire or retain any interest in the Company.**

**REASON**

The Respondent's Counterclaim seeks a declaration of this Court that the Respondent did not make any of the alleged misrepresentations as alleged in the Points of Claim. It is envisaged, given the nature of the Points of Claim, that this will be contested by the Claimants. All documents which pertain to this issue are relevant and necessary for the purposes of these proceedings and for the purposes of saving costs and should be discovered.

In addition to the above categories the Respondent requires discovery of all documents on which Claimants purport or intend to rely in support of any of the allegations in the Points of Claim which are not already covered by the above categories.

We require you to revert to us within **14 days** of the date hereof confirming that you are prepared to make Discovery as aforesaid. We would further suggest a period of 8 weeks from today's date from which Discovery should be made. If you agree to make Voluntary Discovery, such Discovery should be made in like, manner and form and will have such affect as if directed by Order of the Court. In the event that you do agree to make Voluntary Discovery of the aforesaid, we reserve the right to make application pursuant to Order 31 Rule 21 in the event of your failing to make Discovery in accordance with such an Agreement.

Please note that if your client refuses to agree to make Voluntary Discovery of the within categories of documents then the Defendants may apply to the High Court under the Rules of the Superior Courts Order 31 Rule 12 (1) for an Order directing the Plaintiff to make Discovery of the said documents and for the costs of the said application.

Yours faithfully

ARTHUR COX

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------- x
Highfields Capital Ltd., Highfields        :
Capital I LP, Highfields Capital II        :
LP,                                        :
                                           :      Case No. 04-10624 (MLW)
                        Plaintiffs,        :
              v.                           :
                                           :
SCOR, S.A.,                                :
                                           :
                        Defendant.         :
------------------------------------------------- x
```

# EXHIBIT J

**As referred to in the Affidavit in Support of Motion to Dismiss or Stay
of Conor McDonnell**

**CONOR McDONNELL**

~~COMMISSIONER FOR OATHS~~
PRACTISING SOLICITOR



## LK SHIELDS
### SOLICITORS

39/40 Upper Mount Street
Dublin 2, Ireland.

TELEPHONE: 353 + 1 661 0866
FACSIMILE: 353 + 1661 0883
D.D.E Box No: 123
E-MAIL: email@lkshields.ie
WEBSITE: www.lkshields.ie

VIA FACSIMILE & POST
618 0618

Arthur Cox,
Solicitors,
Earlsfort Centre,
Earlsfort Terrace,
Dublin 2.
F.A.O. Conor McDonnell Esq.

OUR REF:      4276-001/JC/MMcG/04061611

YOUR REF:     CMcD/NO

17th June, 2004

Re:    The High Court 2003 Record No. 576COS
       In the matter of IRP Holdings Limited and in the matter of the Companies Acts, 1963-2001
       Your Client: SCOR SA
       Our Client: Highfields Capital Management LP and Others

Dear Sirs,

We refer to your client's request for voluntary discovery dated 4th June, 2004.

We confirm that our client is prepared to make voluntary discovery of the following categories
of documentation as set out in your letter under reply:-

1   All documents which pertain to or are relevant to the circumstances in which the Claimants
    were solicited to invest, or invested, at any point, in IRP in particular by virtue of the
    following agreements set out hereunder, including all documentation which influenced the
    Claimants' decision to invest therein:-

    (a)   The Shareholders Agreement executed by the parties on 28th December, 2001

    (b)   The Memorandum and Articles of Association of IRP and of IRP Holdings

    (c)   The Private Placement Memorandum for IRP dated 31st December, 2001

    (d)   The Quota Share Agreements between IRP and each of 10 SCOR companies executed
          in January 2002.

    (e)   A Subscription Agreement executed by each of the initial investors in IRP on 21st
          December, 2001.

2.  All documents which pertain to the sale of shares in IRP held by Banque Nationale de Paris
    and Compagnie Ottoman Financier in 2002/2003 and in particular all documentation
    relating to the subsequent exercise of pre-emption rights in these shares by the Claimants
    and Respondent.

LAURENCE K. SHIELDS, EDMUND BUTLER, PATRICIA McGOVERN, HUGH GARVEY, KIERAN M. GAVIN, EMMET SCULLY, GERARD HALFPENNY,
JUSTIN McKENNA, MICHAEL KAVANAGH, DAVID I.N. WILLIAMS, FIONA THORNTON, NICOLA PALMER, PHILIP DALY, MARCO W. HICKEY.

ENDA BARRETT, AOIFE BRADLEY, STEPHEN BRENNAN, JILL CALLAMAN, INDA-JS CAREY, JENNIFER CLARKE, EILLAN CONNOLLY,
JONATHAN GILLEN, EOIN FLINNIEN, GILLIAN DULEY, JENNIFER HIGGINS, AINE MATHEWS, JENNIFER McGUIRE, ORLAIGH O'DWYER,
DONAL O'HALLORAN, GERARD O'HANLON, JENNIFER O'NEILL, KATRINA SMYTH, CORA C. J. SEPTON (Financial Controller), THOMAS JACKSON (Consultant).

- 2 -

3.  All documents which pertain to the "funds withheld" arrangement alleged in the Points of Claim, including without limitation all documents which pertain to the amendment of the QSAs in mid 2002 to provide for a "funds withheld" arrangement whereby the Respondent was, subject to certain conditions, entitled to withhold payment of unearned premium otherwise payable to IRP.   This includes all documentation relating to the original implementation of the "funds withheld" arrangement, all representations allegedly relied upon by the Claimants at that time and all subsequent documentation evidencing communications within the Claimants, and between the Claimants and IRP in respect of the operation of the "funds withheld" arrangement.  Without prejudice to the generality of the foregoing, this specifically includes the Claimant's internal documentation in relation to the role of Credit Agricole Asset Management Ireland Limited ("Credit Agricole"), a third party asset management firm.

4.  All documents which pertain to the sale by Westdeutsche Landesbank Girozentrale in 2003 of its shares in IRP.  Without prejudice to the generality of the foregoing, this category includes all documentation relating to the Claimants' request on 12th June, 2003 for a pro rata allotment for the right of first refusal of WLG shares and a waiver or amendment to the prohibition under the Articles of Association of IRP which prohibit a US person owning 10% of the company shares.

5.  All documents which relate to any proposed reduction of the share capital of the Company, including without limitation, all documents which pertain to the dispute between the Claimant and Respondent in relation to the proposed reduction of the share capital of the Company.

6.  All documents which relate to any proposal to terminate the QSAs, including without limitation, the proposed termination of the QSAs in 2003/2004.  Without prejudice to the generality of the foregoing, this request includes all documents relating to the allegation that the Respondent has begun to write riskier and poorly-priced reinsurance business which in turn has exposed IRP to a significant risk of loss.

7.  All documents which Claimants contend support the allegations that the Respondent: (i) made misstatements about, or omitted to state material facts concerning, the business, operations, prospects, financial condition or success of the Company or of the Respondent; or (ii) otherwise improperly induced the Claimants to acquire or retain any interest in the Company.

We confirm that our client is prepared to make voluntary discovery of the categories of documentation as referred to above within a period of eight weeks from the date hereof. Given that our client is prepared to make discovery within a period of eight weeks we presume that your client will be also be prepared to make discovery within a period of eight weeks from the

- 3 -

date hereof. . Accordingly, we propose that sworn affidavits of discovery be exchanged on or before 8th August 2004.

We would be obliged if you would confirm that this is in order.

Yours faithfully,


LK Shields Solicitors

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
----------------------------------------------- x
Highfields Capital Ltd., Highfields        :
Capital I LP, Highfields Capital II        :
LP,                                        :
                                           :        Case No. 04-10624 (MLW)
                        Plaintiffs,        :
              v.                           :
                                           :
SCOR, S.A.,                                :
                                           :
                        Defendant.         :
----------------------------------------------- x
```

## EXHIBIT K

**As referred to in the Affidavit in Support of Motion to Dismiss or Stay of Conor McDonnell**


CONOR McDONNELL

~~COMMISSIONER FOR OATHS~~
PRACTISING SOLICITOR

THE HIGH COURT

Record No. 2003/576COS

IN THE MATTER OF IRP HOLDINGS LIMITED

AND IN THE MATTER OF THE COMPANIES ACTS 1963 TO 2001

Between:-

**HIGHFIELDS CAPITAL LTD, HIGHFIELDS CAPITAL I LP HIGHFIELDS CAPITAL II LP AND HIGHFIELDS CAPITAL SPC**

**Petitioners**

- and -

**SCOR SA**

**Respondent**

## NOTICE OF MOTION

**TAKE NOTICE** that on the 5 day of July , 2004 at 10.30 a.m. in the forenoon or such time thereafter as he may be heard, Counsel on behalf of the Petitioners in the above-entitled proceedings will apply to the Master of this Honourable Court sitting at the Four Courts, Inns Quay, Dublin 7 for:-

1   An Order directing the Respondent to make discovery upon oath of the following categories of documentation:-

**Category 1:**

All documentation/correspondence (both internal and otherwise) relating to the incorporation of IRP Holdings Limited ("the Company") and all agreements relating to its incorporation including:

(a)   All documentation and correspondence in the Respondent's control and possession together with memos, emails and minutes of meetings of the Respondent, its subsidiaries, employees, officers or agents of the Respondent and its subsidiaries, whether internal or otherwise, in relation to the incorporation of the Company.

(b)   All external reports or analysis commissioned or considered by the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, in relation to the incorporation of the Company and including any budgets, estimates or financial plans relating to the Company's organisation and operation.

(c)   All drafts or memos relating to the proposed and final forms of the Articles of Association or other documents relating to the governance of the Company.

**Category 2:**

All documentation relating to the anticipated relationship and negotiations between the Company, the Petitioners and the Respondent.

This should include any documentation and correspondence in the Respondent's possession and control together with all memos, emails and minutes of meetings of the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, whether internal or otherwise, in relation to the anticipated relationship and, in particular, to the operation of the Quota Share Agreements and the Shareholders Agreement, the negotiating or drafting of the Quota Share Agreements and the Shareholders Agreement, the description of such agreements in the Offering Memorandum and their intended operation and interrelationship with each other.

**Category 3:**

All documentation relating to the preparation and submission of the Private Placement Memorandum to include any correspondence, attendances or other communications between the Respondent and Lazards in relation to the preparation or drafting of the Private Placement Memorandum. This should include any back-up documentation and any communications to other potential investors with reference to same, as well as any reports, whether internally produced or produced by any third parties, as to the reserves, financial condition or actuarial computations and systems of the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, that were existing and in the possession of the Respondent at the time the Private Placement Memorandum was delivered to the Petitioners, or any emails, correspondence or other documentation with respect to any examinations, reviews or inspections that were ongoing at such time, whether by insurance regulatory authorities or otherwise.

**Category 4:**

Documentation relating to the business written by the Respondent and the market ratings designated in respect of the Respondent including, in particular, the following:

(a)     All financial information in relation to business written by the Respondent and its subsidiaries for the period of 12 months ending the 31st December 2001 and each of the calendar years following the incorporation of the Company to include the overall characteristics of the risks written by the Respondent. This should include the country ceding, the identity of the ceding companies and the general nature of the business operated, any changes in the characteristics of the risk offered to or written by the Respondent and any special terms required of the Respondent as a pre-condition to the ceding of risk.

(b)     All financial information in relation to loss reserves provided by the Respondent and its subsidiaries as of the 1st December 2001 and each of the calendar years thereafter, to include the information on prior year

3

reserves, or the inadequacy of prior year reserves, that resulted in the reserves finally established for such year. This should include the country ceding, the identity of the ceding companies and the general nature of the business operated, any changes in the characteristics of the risk offered to or written by the Respondent and any special terms required of the Respondent as a pre-condition to the ceding of risk.

(c)    All reports, analysis or memorandums, correspondence or other documentation reflecting, referring to, or relating to any finding, report or inquiry of any regulatory authority, or any report commissioned by, or for the use of any regulatory authority, made at any time after January 1st, 2000, in relation to loss reports, loss reserves or associated actuarial computations of the Respondent or any of its Subsidiaries.

(d)    All documentation and correspondence in the Respondent's possession/control together with all memos, emails and minutes of meetings, whether internal or otherwise, in relation to the financial strength and credit ratings of the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, for the period of 6 months prior to the investment by the Petitioners in the Company and continuing to date, including presentations made by the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, to Rating Agencies including, in particular, S & P, Fitches, AM Best and Moody's.

(e)    All documentation and correspondence in the Respondent's possession and control together with all memos, emails and minutes of meetings of the Respondent, its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries, whether internal or otherwise, relating to presentations made to Re-Insurance intermediaries for the period from 6 months prior to the incorporation of the Company to date particularly with reference to AON, Marsh, Guy Carpenter and Benfield.

## Category 5:

All documentation/correspondence relating to the type of business written by the Company and ceded from the Respondent for the period since the Company's incorporation together with any documentation relating to the consequent exposure of the Company to risk.

This should include back-up documentation in relation to the underlying contract written by the Respondent and ceded to the Company. It should include all correspondence and documentation in the Respondent's possession/control together with emails, memos and minutes of meetings of the Respondent, its subsidiaries and officers, employees or agents of the Respondent and its subsidiaries, whether internal or otherwise, relating to such underlying contract or to the type of risk being ceded including, where available, any external reports or analysis in respect of the underlying contracts as well as any correspondence between the Respondent and the Company. It should also include any information in relation to the return profile of the Company and any analysis in relation to its performance.

## Category 6:

All documentation and correspondence within the Respondent's possession/control together with all emails, memos and minutes of meetings of the Respondent, its subsidiaries and officers, employees or agents of the Respondent and its subsidiaries, whether internal or otherwise, in relation to the shareholding of the Petitioners in the Company or in relation to other shareholders and, in particular, in relation to the sale of shares held by BNP Paribas Ireland ("BNP"), Compagnie Ottomane Financiere ("COF") and Westdeutsche Landesbank Girozentrale ("WLG") and the Respondent's acquisitions of same, including any financial information, predictions, pro forma financial results or other information regarding the Company, the Respondent or its subsidiaries which was provided to such shareholders at any time from six months before their investment in the Company up to December 31st, 2003.

5

**Category 7:**

(a)    All communications or correspondence passing between the Company (including its officers, directors or other representatives) and the Respondent (including its subsidiaries, employees, officers and agents of the Respondent and its subsidiaries) and, in particular, any documents relating to the financial position of the Respondent, the business ceded by the Respondent to the Company, the purchase by the Respondent of shares of the Company from any other Company shareholder, the reduction of capital of the Company, the funds withheld arrangement, the operation or termination of the Quota Share Agreements or the operation and effect of the Shareholders Agreement

(b)    All communications or correspondence passing between the Respondent (including its subsidiaries, employees, officers and agents of the Respondent and its subsidiaries) and any lender, financial advisor, or creditor, relating to the purchase by the Respondent of shares of the Company from any other Company shareholder, the exercise of any right of first refusal, the interrelationship of the Respondent's ownership of Company shares or the amount of the Company's capital and the financial position of the Respondent the business ceded by the Respondent to the Company, the reduction of capital of the Company, the funds withheld arrangement, the operation or termination of the Quota Share Agreements or the operation and effect of the Shareholder Agreement.

(c)    All correspondence and documents together with all reports, emails, agendas, minutes or other materials in relation to any potential sale of the Respondent's securities since the date of incorporation of the Company and which includes any reference or information about the Company, the Company's capital, agreements and dealings between the Respondent and the Company, or the Respondent's or Petitioners' interest in the Company, including any documents provided to, or received from, any

6

underwriter, distributor, placement agent or purchaser of the Respondent's securities.

## Category 8:

All documentation/correspondence relating to the reduction of capital of the Company. This should include all correspondence and documentation within the Respondent's control and possession together with all memos, emails and minutes of meetings of the Respondent (including its subsidiaries and employees, officers or agents of the Respondent and its subsidiaries,) whether internal or otherwise.

## Category 9:

All documentation and correspondence relating to the Funds Withheld Agreement and its conclusion. This should include all documentation and correspondence in the possession/control of the Respondent together with all memos, emails and minutes of meetings of the Respondent (including its subsidiaries, employees, offices or agents of the Respondent and its subsidiaries), whether internal or otherwise, with reference to the proposed Funds Withheld Agreement and the anticipated operation of same together with any documentation correspondence relating to the operation of this arrangement and the exposure of the Company as a consequence of such Agreement.

## Category 10:

All documentation and correspondence passing between the Respondent (including its subsidiaries) and directors of the Company relating to the business of the Company, and all correspondence, agreements, internal memos, emails and minutes of meetings of the Respondent and its subsidiaries, in relation to any financial or contractual relationships, whether direct or indirect, existing at any time in the last five years between the Respondent or any of its subsidiaries or affiliates, and any person who is or has been a director of the Company since it's incorporation, including matters pertaining to the rights and potential claims of shareholders.

7

2      Such further and other Orders as this Honourable Court shall deem fit.

3      An Order providing for the costs of this application.

**WHICH SAID APPLICATION** will be grounded upon the Affidavit of Jill Callanan, this Notice of Motion, the nature of the case and the reasons to be offered.

Dated this 22nd day of June, 2004.

Signed:      *LK Shields Solicitor:*

               LK Shields Solicitors,
               Solicitors for the Petitioners,
               39/40, Upper Mount Street,
               Dublin 2.

To:          The Registrar,
               Four Courts,
               Central Office,
               Inns Quay,
               Dublin 7.

To:          Arthur Cox Solicitors,
               Solicitors for the Respondent,
               Earlsfort Centre,
               Earlsfort Terrace,
               Dublin 2.

8

THE HIGH COURT

2003 No. 576COS


IN THE MATTER OF IRP HOLDINGS LIMITED

AND IN THE MATTER OF THE COMPANIES ACTS 1963 TO 2001

Between:-


HIGHFIELDS CAPITAL LTD, HIGHFIELDS CAPITAL I LP HIGHFIELDS
CAPITAL II LP AND HIGHFIELDS CAPITAL SPC

Claimants


- and -


SCOR SA

Respondent


NOTICE OF MOTION


LK Shields Solicitors,
39/40 Upper Mount Street,
Dublin 2.
4276-001/Docs/Notice of Motion


9