UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------------x
                                :

Highfields Capital Ltd., Highfields Capital I LP,   :
Highfields Capital II LP,                        :
                                :

          Plaintiffs,                :

                v.               :  Civ. No. 04-10624 (MLW)

                                :

SCOR, S.A.,                         :

          Defendant.           :

                                :
                                :
------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR STAY

FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel: (617) 832-1000
Fax: (617) 832-7000

*Of Counsel:*

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502

August 3, 2004

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ..............................................................................................3

    I.    The Solicitation And Misrepresentations................................................3

    II.    The Subscription Agreement ...............................................................4

    III.    The Shareholders Agreement................................................................5

    IV.    The U.S. And Irish Litigation ...............................................................6

ARGUMENT...................................................................................................................8

    I.    Defendants' Rule 12(b)(3) Motion Should Be Denied Because Venue Is Proper In The District Of Massachusetts .................................................8

    II.    Defendants' Rule 12(b)(6) Motion Should Be Denied Because The Forum Selection Clause In The Shareholders Agreement's Does Not Preclude This Court From Granting The Relief Sought In Highfields' Complaint...............9

        A.    Highfields' Claims Involve The Same Operative Facts As A Claim For Breach Of The Subscription Agreement, Not The Shareholders Agreement...............................................................................10

        B.    Highfields' Claims Do Not Involve The Same Operative Facts As A Claim Arising Under The Shareholders Agreement...............................10

        C.    The Shareholders Agreement Does Not "Trump" The Shareholders Agreement For Purposes Of The *Lambert* Analysis...................................11

        D.    Highfields Allegations Of Pre-Contractual Fraud Are Not Subject To The Shareholders Agreements' Forum Selection Clause.....................13

    III.    This Court Should Not Abstain In Favor Of The Irish Action ..............................15

        A.    Similarity Of The Parties And Issues Does Not Weigh In Favor Of A Stay......................................................................................16

        B.    The Convenience Of The Parties And Witnesses Weighs Against A Stay......................................................................................17

        C.    There Is A Possibility Of Prejudice To Highfields In Ireland ...................18

        D.    This Action Is The First-Filed Fraud Case ...............................................19

E.      The Relief Available In The Irish Action Is Not Adequate ........................19

F.      Promotion Of Judicial Efficiency .............................................................20

CONCLUSION..............................................................................................................20

REQUEST FOR ORAL ARGUMENT .........................................................................20

## TABLE OF AUTHORITIES

### Cases

*Abdullah Sayid Rajab Al-Rifai & Sons W.L.L. v. McDonnel Douglas Foreign Sales Corp.*, 988 F. Supp. 1285 (E.D. Mo. 1997)...................................................................................................... 18, 19

*Am. Stock Exch., LLC v. Towergate Consultants Ltd.*, No. 03 Civ. 856, 2003 WL 21692814 (S.D.N.Y. July 21, 2003) ....................................................................................................... 17

*American Dredging Co. v. Miller*, 510 U.S. 443 (1994) ............................................................ 15

*Amrco, Inc. v. N. Atlantic Ins. Co., Ltd*, 68 F. Supp. 2d 330 (S.D.N.Y. 1999) .................................................................................................... 13

*Anselmo v. Univision Station Group*, No. 92 Civ. 1471, 1993 WL 17173 (S.D.N.Y. Jan. 15, 1993)............................................................... 13

*Bay State Anesthesia, Inc. v. Mallinckrodt, Inc.*, No. Civ.A. 02-11174RWZ, 2002 WL 31761286 (D. Mass. Dec. 6, 2002) ................................................................................................................ 10

*Brennan v. Carvel Corp.*, 929 F.2d 801 (1st Cir. 1991) ............................................................ 11

*Camar Corp. v. N.R. Acquisition Corp.*, Civ. No. 96-40095, 1997 WL 118419 (D. Mass. 1997)............................................................................ 9

*Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234 (2d Cir. 2004).................................................................................................... 18

*China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987)...................................................................................................... 16

*Cole v. Central States*, 225 F. Supp.2d 96 (D. Mass. 2002) ........................................................ 18

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ............................................................................... 15

*Computer Express Int'l, Ltd. v. Micronpc, Inc*, No. 01-CV-4801, 2001 WL 1776162 (E.D.N.Y. Dec. 21, 2001) ................................................. 9

*DeMauro v. DeMauro*, 115 F.3d 94 (1st Cir. 1997)..................................................................... 15

*Euromarket Designs, Inc. v. Crate & Barrel Limited*, 96 F. Supp.2d 824 (N.D. Ill. 2000)............................................................................. 18, 20

*Farmland Indus. Inc., v. Frazier-Parrott Commodities,*
*Inc.*, 806 F.2d 848 (8th Cir. 1986)............................................................ 14

*Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349
(6th Cir. 1992)............................................................................................ 16

*General Motors Corp. v. Ignacio Lopez de Arriortua*, 948
F. Supp. 656 ............................................................................................... 19

*Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248
(D. Mass. 1999).......................................................................... 15, 16, 19

*Gruntal & Co., Inc. v. Kauachi,* No. 92 Civ. 2840, 1993
WL 33345 (S.D.N.Y. Feb. 5, 1993)............................................................ 9

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)............................................ 15

*Herbstein v. Bruetman*, 743 F. Supp. 184 (S.D.N.Y. 1986) ........................ 15

*I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F. Supp. 197
(E.D. Pa. 1981).......................................................................................... 15

*In re New England Mut. Life Ins. Co. Sales Practices*
*Litigation*, 236 F. Supp. 2d 69 (D. Mass. 2002) ........................................ 4

*Jacobson v. Mailboxes Etc. U.S.A. Inc.*, 419 Mass 572, 646
N.E.2d 741 ................................................................................................ 14

*Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993)........................... 10, 11, 13

*Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989)................................... 14

*Ludgate Ins. Co. v. Becker*, 906 F. Supp. 1233 (N.D. Ill.
1995) .......................................................................................................... 16

*Modern Computer Corp. v. Ma*, 862 F. Supp. 938
(E.D.N.Y. 1994)......................................................................................... 16

*Moses H. Cone Memorial Hospital v. Mercury*
*Construction Corp.*, 460 U.S. 1 (1983)..................................................... 15

*Netzky v. Fiedler*, No. 00 Civ. 4652, 2001 WL 521396
(N.D. Ill. May 15, 2001) ............................................................................. 9

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925
F.2d 1193 (9th Cir. 1991)........................................................................... 15

*Northeast Data Sys., Inc. v. McDonnell Douglas Computer*
*Sys. Co.*, 986 F.2d 607 (1st Cir. 1993)...................................................... 14

*Nowak v. Tak How Investments Ltd.*, 94 F.3d 708 (1st Cir. 1996) .................................................................................................... 15

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ........................... 15

*Root v. GERS, Inc.*, No. 8:01CV326, 2002 WL 809539 (D. Neb. Apr. 3, 2002)................................................................................. 14

*Sacody Technologies, Inc. v. Avant, Inc.*, 862 F. Supp. 1152 (S.D.N.Y. 1994) ............................................................................... 9

*Setco Enter. Corp. v. Robbins*, 19 F.3d 1278 (8th Cir. 1994).................... 9

*Smith v. Lucent Technologies, Inc.*, No. Civ.A. 02-0481, 2004 WL 515769 (E.D. La. March 16, 2004)................................. 11, 12

*Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688 (8th Cir. 1997)................................................................ 10

*Trent Partners and Associates, Inc. v. Digital Equip. Corp.*, 120 F. Supp.2d 84 (D. Mass. 1999) ...................................................... 14

*Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001) ................................................................................................... 8

## Statutes and Rules

28 U.S.C. § 1391.......................................................................................... 8

28 U.S.C. § 1391(a)(1).................................................................................. 8

28 U.S.C. § 1391(a)(2).................................................................................. 9

28 U.S.C. § 1391(c) ...................................................................................... 8

Fed. R. Civ. Proc. 12(b)(3) ....................................................................... 8, 9

Fed. R. Civ. Proc. 12(b)(6) .......................................................................... 9

## PRELIMINARY STATEMENT

SCOR is a French reinsurance company that earns 25% of its premium income in the United States, including Massachusetts. In the Fall of 2001, SCOR came to Highfields' principal offices in Boston and made a series of misrepresentations in which it portrayed itself as financially strong and with excellent prospects. SCOR's goal was to lure Highfields to invest in SCOR's new affiliate, to be named IRP. SCOR provided information to Highfields about its own financial health, on which IRP's success would depend, that SCOR knew to be false, and SCOR touted its strong AA credit ratings that it knew were a mirage. As a result, Highfields invested €125 million (approximately $150 million) in IRP. Only a few *days* after Highfields' investment was complete, SCOR began to disclose the actual state of its business to the world and to Highfields for the first time. This truth — mounting losses, depleted reserves, and precarious financials — caused SCOR's ratings to plummet from among the highest to the absolute lowest of all major reinsurers in the world, and a significant decrease in the value of Highfields' investment in IRP.

SCOR's fraudulent conduct took place in Massachusetts, was directed to Massachusetts residents, and will be judged under Massachusetts law. In electing not to argue that Highfields failed to state a claim in its motion pursuant to Rule 12(b)(6), SCOR has conceded as much. Yet, SCOR seeks to have this case heard in an Irish forum. SCOR should be required to answer to a Massachusetts jury for the damage caused Highfields here by SCOR's misrepresentations. SCOR should not be permitted to troll for victims of its fraud in Massachusetts, and then avoid a United States forum for subsequent litigation arising out of its wrong-doing. Plaintiffs' choice of venue — this Court — should prevail.

Plaintiffs' claims are based on pre-contractual torts and statutory violations by SCOR during 2001. To determine whether those non-contractual claims are nonetheless subject

to a contractual forum selection clause, the Court must evaluate whether they involve the same operative facts as would a hypothetical, parallel claim for breach of contract. Plaintiffs' claims *do not* involve facts that would establish a claim for breach of the Shareholders Agreement, on which SCOR relies. The Shareholders Agreement was signed on December 28, 2001, after the misrepresentations at issue, and concerns only the corporate governance of an Irish company that commenced operations on January 1, 2002. SCOR does not point to a single paragraph of the Complaint that seeks to vindicate any right or enforce any obligation under the Shareholders Agreement. Nor has it pointed to anything that concerns a dispute between the parties *qua* shareholders of IRP. Because the Shareholders Agreement has no real relation to the Massachusetts common law and statutory claims at issue here, this case is not subject to the Irish forum selection clause in the Shareholders Agreement, and it would be "unfair" under the governing case law to apply it to the pre-contractual fraud claims at issue in this case.

SCOR also has failed to make the clear showing necessary to allow this Court to take the extraordinary step of abstaining and refusing to exercise its jurisdiction over this case. SCOR's papers attach great weight to litigation in Ireland initiated by Highfields seeking, *inter alia*, dissolution of IRP and suggests this case should await the outcome of that proceeding. In the Irish Action, Highfields is seeking to force certain corporate actions by IRP (an Irish company), under Irish law, based on events that happened from January 1, 2002 to the present, after Highfields' investment was made. Highfields has not sought damages in Ireland and no damages are available in the Irish Action. The Irish Action is in its early stages. No discovery has been exchanged.

In contrast, Highfields asserts claims here based on fraudulent misrepresentations made in 2001 that violate Massachusetts statutory and common law, are unrelated to the

2

corporate governance of IRP and occurred prior to Highfields' investment. Highfields also seeks damages and other remedies not available in the Irish Action. Resolution of the claims here will not resolve the Irish Action and vice versa. In Ireland, SCOR has sought to take advantage of the distinction between this case and the Irish Action by refusing to produce data about its 2001 financial condition at the time it represented itself to Highfields as healthy and robust. That is the main issue in this proceeding. The risk of inconsistent judgments is nonexistent.

Furthermore, the record contains no evidence that proceeding in this Court will prejudice SCOR. But, a stay or dismissal of this case in favor of the Irish Action will prejudice Highfields because, among other things, it has no claim for fraud or damages pending in Ireland, and the former employee to whom many of SCOR's misrepresentations were made is not subject to process in Ireland. As demonstrated in more detail below, this Court is the most convenient one in which to litigate this dispute, and it is the one with the greatest interest in addressing SCOR's misrepresentations in Massachusetts under Massachusetts law. Moreover, as a matter of law, the Court may not properly dismiss a case on abstention grounds, like this one, in which damages are sought. Nor may it properly stay a case in favor of a foreign proceeding that, like the Irish Action, is in its early stages. Accordingly, SCOR's request for a discretionary dismissal or stay must be denied.

## STATEMENT OF FACTS

### I.    THE SOLICITATION AND MISREPRESENTATIONS

On November 12, 2001, SCOR sent a Private Placement Memorandum ("PPM") to Highfields' Boston office soliciting an investment in IRP, the success of which is tied to SCOR's own financial condition. Compl. ¶¶ 5, 6, 24, 30. At the time, and undisclosed to Plaintiffs, SCOR had inadequate reserves, was grossly undercapitalized, and was in a financially precarious position. *Id.* ¶¶ 2, 25. On November 14, 2001, Serge Osouf, a SCOR senior

3

executive, traveled to Boston to reiterate SCOR's sales pitch in person. *Id.* ¶¶ 31, 36. Although

Mr. Osouf was aware that SCOR's credit ratings did not reflect undisclosed losses in SCOR's

United States business, upon arriving in Boston he trumpeted SCOR's AA rating, endorsed the

false contents of the PPM, and misrepresented the financial position of SCOR to Highfields.

Compl. ¶ 31. Through the remainder of 2001, SCOR continued to perpetrate its scheme on

Highfields through telephone calls, emails, and faxes to Highfields in Boston. Compl. ¶ 19.[1]

## II.    THE SUBSCRIPTION AGREEMENT

On December 21, 2001, relying on SCOR's misrepresentations, Highfields

executed the Subscription Agreement by which it undertook to purchase 125,000 shares in IRP at

a cost of € 125 million. *See* Complaint ¶ 39; Ex. 1. The Subscription Agreement includes

warranties of the representations SCOR made to Highfields in Massachusetts prior to its

execution. *See* Subscription Agreement ¶ 9(c); Complaint ¶ 39. Those representations and

warranties survive the execution of the Shareholders Agreement (upon which SCOR relies):

> **10. Survival of Representations, Warranties and Agreements**. The representations,
> warranties and agreements of the Investor, the Company and SCOR contained in this
> Subscription Agreement and in any document delivered or to be delivered pursuant to
> this Subscription Agreement and in connection with the Closing hereunder shall survive
> the Closing.

Subscription Agreement ¶ 10.

The Subscription Agreement also contains a permissive forum selection clause,

which provides:

> **18. Applicable Law. THIS SUBSCRIPTION AGREEMENT SHALL BE
> GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF
> IRELAND. THE INVESTOR SUBMITS TO THE NON-EXCLUSIVE**

---

[1]    On this motion, Plaintiffs' allegations must be taken as true, *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 236 F. Supp. 2d 69, 73 (D. Mass. 2002). The affidavit of SCOR's current CEO, Denis Kessler, disputing them may not be considered. Moreover, Kessler did not become affiliated with SCOR until November 2002, one year after events at issue in this case and shortly after the CEO who directed the fraud was fired. *See* Ex. 3. Kessler's second-hand, untested assertions about the merits of Highfields' claims here and in Ireland should not be given any consideration.

**JURISDICTION OF THE COURTS OF IRELAND FOR ALL PURPOSES RELATING TO THIS AGREEMENT.**

Subscription Agreement ¶ 18.

Thus, the Subscription Agreement permits a suit in Ireland "for all purposes" relating to the Subscription Agreement (including its warranties) — but does not require a suit to be brought in that forum. All claims "relating to" the Subscription Agreement, including those "relating to" the warranty in paragraph 9(c), may be brought anywhere jurisdiction is proper, including this Court. Such claims also may be brought at any time, including after closing and execution of the Shareholders Agreement.

## III.    THE SHAREHOLDERS AGREEMENT

To avoid United States courts, SCOR invokes a mandatory Irish forum selection clause in the Shareholders Agreement. *See* Ex. 2. The Shareholders Agreement was executed one week after the Subscription Agreement and is wholly separate from it. As summarized in SCOR's PPM:

> [The Shareholders Agreement] which together with the Articles of Association of the Company, will define the rights and obligations of the SCOR Investor and such Investors concerning the transfer and ownership of Shares, corporate governance of the Companies, and related matters.... The Shareholders Agreement will provide for certain rights and obligations of the Shareholders (including the SCOR investor) as of the closing of this offering and thereafter. The Shareholders Agreement notably will contain details regarding the organization and capitalization of the Company, certain rights attaching to the Shares and specific aspects of the Company's management policy (including Supermajority provisions).

*See* PPM at 14, 74, annexed as Ex. 4. The Shareholders Agreement's forum selection clause requires an Irish forum for "all purposes relating to **this** Agreement." Shareholders Agreement ¶ 7.16 (emphasis added).

The claims in this case are not subject to the Shareholders Agreement forum selection clause because they do not "relate to" the Shareholders Agreement. They do not relate to transfer, voting, redemption or exchange of IRP shares and therefore do not relate to the issues

5

addressed in the Shareholders Agreement. They are tort claims that "relate to" the solicitation of

the Subscription Agreement, if they relate to any contract at all. Most importantly, the

Shareholders Agreement says nothing about forum selection for disputes relating to the

Subscription Agreement. Indeed, the Shareholders Agreement specifically provides that the

Subscription Agreement survives its execution, thereby acknowledging the distinction between

the two agreements:

> This [Shareholders] Agreement (including the Annexes, Schedule(s) and Exhibit(s)
> hereto) and the Subscription Agreement constitute the entire agreement between the
> parties hereto... .

Shareholders Agreement, ¶ 7.9(a) (emphasis added). Thus, the Shareholders Agreement does

not trump the Subscription Agreement and its permissive forum selection clause, and there is no

contractual language to support SCOR's contention to the contrary.

## IV.    THE U.S. AND IRISH LITIGATION

On December 1, 2003, Highfields commenced an action in Ireland seeking to

force certain corporate action by IRP, under Irish law. SCOR is party to that action as the

majority shareholder of IRP. Highfields is party to that action as the minority shareholder of

IRP. The Irish Action seeks an order dissolving IRP pursuant to Section 205 of the Companies

Act of 1963, an Irish law referable to Irish companies. *See* Affidavit of Laurence K. Shields,

dated August 3, 2002 ("Shields Aff.") ¶ 3, annexed as Ex. 12. The remedies in the Irish Action

relate to the corporate governance of an Irish company operating under Irish law. Damages are

not awardable to a litigant under Section 205. *See id* ¶ 4.

Highfields filed this action on March 31, 2004. In contrast to the Irish action,

Highfields brings claims here for damages arising out of SCOR's common law fraud, negligent

misrepresentation and violations of Mass. Gen. Laws ch. 93A, § 11. A copy of the Complaint

was sent to SCOR on that same day. *See* Ex. 10. Highfields *does not* seek any relief concerning

6

IRP in this case. The Complaint seeks monetary damages for a fraud perpetrated by SCOR on Highfields involving, among other things, SCOR's failure to disclose prior to the December 28, 2001 closing of Highfields' investment that SCOR: (a) had received a "massive upward revision" of losses and was in the midst of a thorough review of the accuracy of SCOR's prior financial accounts and projections; (b) had "negative factors" emerge at the end of the 2001, including the need to boost SCOR's reserves by hundreds of millions of Euros; (c) had shareholders' equity at least two-thirds (and possibly as much as 98%) less than represented; (d) had made inadequate provision for its "legacy" business; (e) was grossly under-reserved compared to its competitors in the industry; (f) was about to make a series of announcements and financial restatements indicating that it had overstated its financial strength by more than two-thirds; (g) was about to announce that its reserves were grossly inadequate; (h) would not be able to maintain a high credit rating after announcing these losses and the inadequacy of its reserves; and (i) would not be an adequately reserved, high quality, AA- rated reinsurer that was engaged in selective underwriting and avoiding adverse selection. Compl. ¶ 74.

On May 6, 2004, six weeks after Highfields filed this action and provided SCOR with a copy of the Complaint, SCOR filed a counterclaim in the Irish Action seeking a declaration that SCOR "is not and has not been guilty of any misrepresentation to [Highfields] in respect of its own financial position or performance or in respect of the business of [IRP]" and that the "Agreements were not induced by any alleged misrepresentation by or on behalf of the [SCOR] or its servants or agents." That counterclaim is subject to a dismissal motion as improper, *see* Shields Aff. ¶ 6, because SCOR's fraud on Highfields in the United States is not related to the current corporate governance of IRP to which the Irish Action is addressed.

The Irish Action has not proceeded beyond the initial stages and the Irish courts are essentially closed until October. *See* Shields Aff. ¶¶ 6, 8. Not a single piece of paper has been produced in discovery. *Id.* Ironically, SCOR has specifically refused to produce in the Irish Action data regarding SCOR's financial status for the last six months of 2001 — the very information that is at the heart of the instant case. *See* Letter from Arthur Cox (SCOR's Irish counsel) to L K Shields, Solicitors (Highfields' Irish counsel), dated July 6, 2004 at 2, annexed to Shields Aff. as Ex. A. Thus, SCOR speaks out of both sides of its mouth: to fight venue in Massachusetts, SCOR claims that the issues regarding SCOR's pre-investment financial condition in this case are identical to those in the Irish Action; to fight discovery in Ireland, SCOR claims the documents regarding SCOR's financial condition are irrelevant to the Irish Action. SCOR is simply trying to deprive Highfields of any remedy for the damages it has suffered from the fraud SCOR committed in Massachusetts. There are no "exceptional circumstances" warranting abstention from the exercise of jurisdiction in this case.

## ARGUMENT

### I.    DEFENDANTS' RULE 12(B)(3) MOTION SHOULD BE DENIED BECAUSE VENUE IS PROPER IN THE DISTRICT OF MASSACHUSETTS

By invoking Rule 12(b)(3), SCOR has implicitly challenged Plaintiffs' choice of venue under 28 U.S.C. § 1391. Section 1391(a)(1) provides that this case, founded on diversity jurisdiction, may be brought in "a judicial district where any defendant resides." For purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). SCOR has not challenged – and therefore has waived any challenge it may have to – this Court's jurisdiction over its person. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 40-41 (1st Cir. 2001). Therefore, venue in this district is proper under Section 1391(a)(1). *See,*

8

e.g., *Computer Express Int'l, Ltd. v. Micronpc, Inc.*, No. 01-CV-4801, 2001 WL 1776162 *4

(E.D.N.Y. Dec. 21, 2001) (venue proper when the corporate defendant failed to challenge the

courts exercise of personal jurisdiction).

Furthermore, Section 1391(a)(2) provides that a claim may be brought in a

"judicial district in which a substantial part of the events or omissions giving rise to the claim

occurred." 28 U.S.C. § 1391(a)(2). Venue under Section 1391(a)(2) is proper if "the district the

plaintiff chose ha[s] a substantial connection to the claim, whether or not other forums ha[ve]

greater contacts." *Setco Enter. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994). Here,

many of the events giving rise to Plaintiffs' claims took place in Massachusetts. They include: a

PPM sent by SCOR to Highfields' Boston office; a visit by a SCOR executive to Highfields'

Boston office; and numerous emails and telephone calls to Highfields in Boston in furtherance of

SCOR's fraudulent scheme. Compl. ¶¶ 22-31. These events are more than sufficient to establish

venue in this Court under Section 1391(a)(2). [2] Accordingly, Defendant's motion to dismiss,

pursuant to Rule 12(b)(3), should be denied.

## II.    DEFENDANTS' RULE 12(B)(6) MOTION SHOULD BE DENIED BECAUSE THE FORUM SELECTION CLAUSE IN THE SHAREHOLDERS AGREEMENT'S DOES NOT PRECLUDE THIS COURT FROM GRANTING THE RELIEF SOUGHT IN HIGHFIELDS' COMPLAINT

In the First Circuit, tort claims like those asserted in this Complaint are subject to

a contractual forum selection clause only if the claims involve the same operative facts as a

---

[2]    *See, e.g., Camar Corp. v. N.R. Acquisition Corp.*, Civ. No. 96-40095, 1997 WL 118419, at *6 (D. Mass. 1997) (venue proper under 28 U.S.C. § 1391(a)(2) where defendant corporations' president traveled to Massachusetts solicit sale; numerous communications occurred to and from Massachusetts); *Netzky v. Fiedler*, No. 00 Civ. 4652, 2001 WL 521396, at *2 (N.D. Ill. May 15, 2001) (in claim for fraudulent misrepresentation arising from an investment solicitation, venue proper under the language of 28 U.S.C. § 1391(a)(2) where solicitation took place in district); *Sacody Technologies, Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) ("The standard set forth in § 1391(a)(2) may be satisfied by a communication transmitted to or from the district in which the cause of action was filed. . . ."); *Gruntal & Co., Inc. v. Kauachi*, No. 92 Civ. 2840, 1993 WL 33345, at *2 (S.D.N.Y. Feb. 5, 1993) (proper venue in fraud established based on telephone calls made to district).

parallel claim for breach of contract. *See Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993); *see also Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (explaining First Circuit's test). Applying the *Lambert* test to Plaintiffs' claims, one could not conclude that a parallel claim exists for breach of the Shareholders Agreement. Indeed, it is the Subscription Agreement (and its permissive forum selection clause), *not* the Shareholders Agreement (and its mandatory Irish forum selection clause), that explicitly warrants the truth of many of the representations that are at the center of the fraud alleged in the Complaint. *Compare* Subscription Agreement ¶ 9(c) *with* Compl. ¶ 74. Under *Lambert*, suit in this Court is proper. *See Bay State Anesthesia, Inc. v. Mallinckrodt, Inc.*, No. Civ.A. 02-11174RWZ, 2002 WL 31761286, *1 (D. Mass. Dec. 6, 2002) (dismissal of tort claims denied because claims "ha[d] little, if anything, to do" with underlying contract containing forum selection clause).

### A.     Highfields' Claims Involve The Same Operative Facts As A Claim For Breach Of The Subscription Agreement, Not The Shareholders Agreement

SCOR gives short shrift to the forum selection clause in the parties' Subscription Agreement, which allows this case to be brought in this Court. Highfields' claims involve facts that could, theoretically, establish a claim for breach of the Subscription Agreement, not the Shareholders Agreement. In the Subscription Agreement, SCOR (i) warrants the truth of the very misrepresentations at issue here, and (ii) provides that those warranties survive closing. The Subscription Agreement contains a permissive forum selection clause that *allows* suit here.

### B.     Highfields' Claims Do Not Involve The Same Operative Facts As A Claim Arising Under The Shareholders Agreement

The Shareholders Agreement pertains to IRP share ownership and IRP corporate governance. A breach of contract arising from the Shareholders Agreement would involve an alleged violation of the "rights and obligations…concerning the transfer and ownership of Shares, corporate governance of the Companies, and related matters." PPM ¶ 14. This could

10

conceivably arise, for example, from an alleged illicit transfer of shares, an improper action by the Board of Directors, a wrongfully granted proxy, or oppression of a minority shareholder (which is the issue being litigated in Ireland). Such claims would necessarily require the court to interpret the Shareholders Agreement to determine if there was a breach. Here, to the contrary, Plaintiffs' fraud claims are unrelated to the parties' status as shareholders of IRP and do not require the Court to interpret the Shareholders Agreement to determine their merit. SCOR has pointed to nothing in the Complaint directed to the Shareholders Agreement. Manifestly, this case is not subject to the Shareholders Agreement's forum selection clause.[3]

### C.    The Shareholders Agreement Does Not "Trump" The Shareholders Agreement For Purposes Of The *Lambert* Analysis

Faced with an inapplicable forum selection clause, SCOR attempts to bootstrap this case to Ireland by pronouncing that the Shareholders Agreement's mandatory forum selection clause "in effect" subsumes the Subscription Agreement's permissive clause. If the parties had intended the Shareholders Agreement's forum selection clause to apply to claims relating to the Subscription Agreement they could have said so. They did not. They said the opposite. The Shareholders Agreement's forum selection clause states that it applies to only "this Agreement." Shareholders Agreement ¶ 7.16 (emphasis added). Likewise, if the parties had intended the Subscription Agreement and its permissive forum selection clause to terminate on the signing of the Shareholders Agreement they could have said so. They did not. They said

---

[3]    SCOR's reliance on the "integration clause" in the Shareholders' Agreement to trump the Subscription Agreement is misplaced because the clause explicitly provides that the Subscription Agreement is not superseded by the Shareholders Agreement. Ex. 2 ¶ 7.9(a). The integration clause in the Subscription Agreement contains the same language. Ex. 1 ¶ 11. Moreover, it is black letter law that a "'separate prior integrated writing,' [like the Subscription Agreement] is not among those agreements that are merged and superseded by a general merger clause." *Smith v. Lucent Technologies, Inc.*, No. Civ. A. 02-0481, 2004 WL 515769, at *17 (E.D. La. Mar. 16, 2004); *see generally Brennan v. Carvel Corp.*, 929 F.2d 801, 806 (1st Cir. 1991) (integrated agreement does not discharge separate integrated contract

11

the opposite. The Subscription Agreement states that it survives closing on the Shareholders Agreement. Subscription Agreement ¶ 10 ("The representations, warranties and agreements...contained in this Subscription Agreement...shall survive the Closing."). Further, if the parties intended the Shareholders Agreement to supersede the Subscription Agreement they could have said so. They did not. Again, they said the opposite. Both agreements specifically identify the Subscription Agreement and the Shareholders Agreement as surviving agreements between the parties. Shareholders Agreement ¶ 7.9(a) ("This Agreement...and the Subscription Agreement constitute the entire agreement between the parties hereto..."); Subscription Agreement ¶ 11 ("This Subscription Agreement and the Shareholders Agreement constitute the entire agreement between [the parties]").

   The distinctions between the Subscription Agreement and Shareholders Agreement and the differences in their forum selection clauses make commercial sense. SCOR solicited investors around the world. In addition to SCOR and Highfields, the initial investors in IRP were Westdeutsche Landesbank Girozentrale (a German company), BNP Paribas Ireland (a French company) and Compagnie Ottomane Financiere (a Luxembourgian company). *See* Affidavit of Richard L. Grubman, dated Dec. 2, 2003 ¶ 8, annexed as Ex. B to the Affidavit of Conor McDonnell in Support of SCOR's Motion to Dismiss or Stay, dated July 1, 2004 ("McDonnell Aff."). It was logical for these potential investors to maintain the option of enforcing their rights regarding the solicitation in their home jurisdiction. At the same time, suits involving ownership or governance of IRP — *i.e.*, suits involving facts arising from rights and obligations of ownership of an Irish corporation under the Shareholders Agreement — would be limited to an Irish forum. SCOR's motion seeks to upset this deliberate balance by forcing the

---

between the same parties). SCOR's argument was rejected in the forum selection clause context in *Smith*, 2004 WL 515769, at *17.

Shareholders Agreement's forum selection clause upon all dealings between the parties, even pre-contractual fraudulent dealings associated with the solicitation of the Subscription Agreement. Nothing in the record supports SCOR's assertion that the Shareholders Agreement "in effect" trumps the clear forum selection clause in the Subscription Agreement for purposes of the *Lambert* analysis.

### D. Highfields Allegations Of Pre-Contractual Fraud Are Not Subject To The Shareholders Agreements' Forum Selection Clause

Even if Highfields' claims arise from the same operative facts as would a parallel claim for a breach of the Shareholders Agreement for purposes of the *Lambert* analysis (which they do not), courts faced with allegations of pre-contractual fraudulent inducement have readily determined that it would be illogical and unjust to apply preclusive forum selection clauses in situations like the one here. For example, in *Amrco, Inc. v. N. Atl. Ins. Co., Ltd*, 68 F. Supp. 2d 330 (S.D.N.Y. 1999), a forum selection clause in a contract governing the sale of insurance subsidiaries required litigation in English Courts of "any dispute which may arise out of or in connection with this Agreement." *Id.* at 338. Faced with a complaint alleging a scheme to defraud "that included numerous pre-contract activities by defendant," the Court refused to apply the forum selection clause because "[t]he 'gist' of plaintiffs' claims is not the breach of a contractual relationship, but the series of acts by defendants resulting in the fraud." *Id.* at 339. The court emphasized that the basis of the dispute was not the contractual relationship, but the pre-existing fraudulent scheme, "of which the signing of the Sale Contract was merely one important aspect." *Id.* at 340; *see also Anselmo v. Univision Station Group*, No. 92 Civ. 1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) (forum selection clause for litigation "relating to" an agreement does not apply to tort claims grounded in pre-contractual events).

13

Similarly, in *Root v. GERS, Inc.*, No. 8:01CV326, 2002 WL 809539 (D. Neb. Apr. 3, 2002), the court refused to apply a contractual forum selection clause to tort claims of a shareholder who alleged that he was fraudulently induced to transfer his shares. The relevant agreement included a forum selection clause governing "any claim or action arising out of or related to this Agreement." *Id* at *3. Evaluating the agreement under the First Circuit's "same operative facts" test, the court held the claims at issue were not sufficiently related to the Agreement to require application of the forum selection clause:

> Resolution of the tort claims does not relate to an interpretation of the agreement, nor does it they (sic) involve the same operative facts as would a breach of contract claim brought under the Agreements. The rights and liabilities under the Agreements are not in dispute. Rather, the entire premise of the Agreements is under attack.

*Id.* Likewise, Highfields' claims of pre-contractual fraud should not be subject to the Shareholders Agreement's forum selection clause because the premise of the parties' agreements is under attack. *See also Farmland Indus. Inc., v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 851-52 (8th Cir. 1986) ("grossly unfair to force [plaintiff] to comply with an agreement which never would have been made had the existence of the fraud been known"), *abrogated on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989); *Jacobson v. Mailboxes Etc. U.S.A. Inc.*, 419 Mass 572, 579 646 N.E.2d 741, 745-56 (under California law, forum selection clause does not apply to wrongs committed before the parties entered into a contractual relationship, including allegations of pre-contract violations of M.G.L. ch. 93A); *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 611 (1st Cir. 1993) (93A claim based on fraud falls outside scope of contract's choice-of-law clause); *Trent Partners and Associates, Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 97-8 (D. Mass. 1999) (same).

14

## III.   THIS COURT SHOULD NOT ABSTAIN IN FAVOR OF THE IRISH ACTION[4]

"[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976)). Where, as here, plaintiffs seek damages, this Court may not dismiss the case on abstention grounds. *See DeMauro v. DeMauro*, 115 F.3d 94, 98 (1st Cir. 1997) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730-31 (1996)). Further, because "a stay is as much a refusal to exercise federal jurisdiction as a dismissal," staying an action in favor of a foreign proceeding is a conclusion by the court that "the parallel . . . litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. No such finding could be made here. The Irish Action will not resolve or adjudicate in any way Highfields' claims for damages. And, because the Irish Action "is still in its preliminary stages, [a] motion[] to stay must be denied." *Herbstein v. Bruetman*, 743 F. Supp. 184, 189 (S.D.N.Y. 1986) (citing *I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F. Supp. 197, 199 (E.D. Pa. 1981).[5] A full consideration of the factors identified by the

---

[4]    SCOR's argument for a stay relies on *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248 (D. Mass. 1999), and the doctrine of abstention applied by the Court in that case. The "abstention doctrine is of a distinct historical pedigree, and the traditional considerations behind dismissal for forum non conveniens differ markedly from those informing the decision to abstain." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722-23 (1996). In contrast to abstention, under the forum non conveniens doctrine, "when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994) (citations and internal quotation marks omitted) (alterations in original). But, whether analyzed under the abstention doctrine or the forum non conveniens factors identified in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) and *Nowak v. Tak How Investments Ltd.*, 94 F.3d 708 (1st Cir. 1996), this case should not be dismissed or stayed.

[5]    *See also Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991) (vacating stay pending outcome of parallel proceedings in Switzerland because "the mere fact that parallel proceedings may be further along" does not justify an exception to "the general rule that federal

court in *Goldhammer*, and relied on by SCOR, indicates that Massachusetts is a convenient forum, Highfields would be prejudiced by a dismissal or stay, and there are no "exceptional circumstances" warranting a stay of this proceeding in favor of the Irish Action.

**A.    Similarity Of The Parties And Issues Does Not Weigh In Favor Of A Stay**

The facts at issue here concern SCOR's misrepresentations in Boston, directed to Boston residents. Highfields' legal claims are for Massachusetts common law fraud and negligent misrepresentation, as well as violations of Mass. Gen. Laws ch. 93A. In contrast, the Irish Action seeks to force certain corporate actions by an Irish company under Irish law. Thus, the legal issues raised in this case, and the remedies available to Highfields here, are completely different than the issues raised and the remedies available in the Irish Action, which weighs heavily against a stay. *See, e.g.*, *Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 949 (E.D.N.Y. 1994) (court should not stay or dismiss the action pending resolution of the foreign proceeding where foreign proceeding will not resolve all issues in federal action).

While SCOR has pointed to the overlap of certain background facts between the pleadings in this case and the Irish Action, there is no overlap of the core issues. The core issue here is SCOR's financial condition in the Fall of 2001, before Highfields made its investment. SCOR itself maintains that this issue is not present in the Irish Action. To fight discovery in Ireland, SCOR claims the documents regarding SCOR's financial condition are irrelevant to the Irish Action. *See* Ex. A to Shields Aff., annexed hereto as Ex. 12. Given SCOR's conflicting positions, it is clear that this motion is nothing but a tactical maneuver seeking litigation

---

courts must exercise their jurisdiction concurrently with courts of other jurisdictions."); *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1352 (6th Cir. 1992) (parallel proceedings should be allowed to proceed simultaneously); *Ludgate Ins. Co. Ltd. v. Becker*, 906 F. Supp. 1233, 1242 (N.D. Ill. 1995) (same). The Court should apply the general rule of comity is that the domestic court should exercise jurisdiction concurrently with the foreign court. *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987).

advantage. *Cf. Am. Stock Exch., LLC v. Towergate Consultants Ltd.*, No. 03 Civ. 856, 2003 WL 21692814, at *2 (S.D.N.Y. July 21, 2003) (refusing to dismiss federal action on forum non conveniens grounds in favor of pending English action where issues are "identical").

## B.   The Convenience Of The Parties And Witnesses Weighs Against A Stay

Plaintiffs have chosen this forum because it is where their offices are located and it is where the fraud was committed. It is by far the most convenient forum for them and is the jurisdiction with the greatest interest in this proceeding. SCOR has not made any showing that its fraudulent conduct in Massachusetts should be adjudicated anywhere but Massachusetts, or that any other forum has an interest in this proceeding. And, SCOR's representation that it conducts "no activities" here is false. SCOR's Brief at 15, *see also* Affidavit of Arnaud Chneiweiss in Support of SCOR's Motion to Dismiss or Stay, dated July 1, 2004 ¶ 1. SCOR transacts business in and has regular and systematic contacts with the United States and Massachusetts. As its conduct in this case demonstrates, SCOR solicits business in Massachusetts. A chart detailing SCOR's U.S. operations is annexed as Ex. 5 at 13.[6] As of September 30, 2003, SCOR's activities in the United States accounted for approximately 25% of SCOR's gross premiums. *See* Ex. 6 ¶ 4.1.[7] Approximately 30% of SCOR's shareholders are in the United States. *See* Ex. 7. Discovery would likely show that tens of thousands of SCOR's shares are held in Massachusetts. SCOR's executives, who are potential witnesses in this case,

---

[6]      A review of filings with the New York Insurance Department also shows that SCOR did not disclose to Highfields that its U.S. operation was being examined by the Department, which ultimately was unable to verify SCOR's United States data and strongly criticized SCOR for its inability to produce documents to substantiate its financial figures. *See* New York State Insurance Department Report on Examination of SCOR Reinsurance Company, dated April 2, 2002 at 8, 15, annexed as Ex. 5.

[7]      Massachusetts-based Liberty Mutual Insurance Company's filings with the Division of Insurance indicate that it has more than $10 million outstanding recoverable from SCOR's U.S. operations. *See* Annual Statement for the Year 2003 of the Liberty Mutual Insurance Company at Schedule F-Part 3, annexed as Ex. 8. And, in 2000, SCOR Life U.S. Re Insurance Company became accredited in Massachusetts. *See* Letter, dated Dec. 12, 2000, annexed as Ex. 9.

sit on the boards of SCOR's U.S. subsidiaries and therefore must travel to the U.S. on a regular basis. *See* Ex. 11; Ex. 5 at 4. This Court is a *convenient* forum for SCOR.[8]

SCOR tries to turn the analysis on its head by arguing for Ireland (rather than against Massachusetts). SCOR contends that Ireland is reasonably convenient for the parties and is the "center of gravity" of this case. But, it has not identified a single Irish witness or a single document in Ireland. That the parties are engaged in other litigation in Ireland, does not allow the Court to find that this factor weighs in favor of a stay. Highfields' choice of a Massachusetts forum is entitled to great weight, *Cole v. Central States*, 225 F. Supp. 2d 96, 99 (D. Mass. 2002). Even if Ireland would be a more convenient forum for SCOR because of its geographic proximity to France, because Massachusetts is not an unreasonable forum for SCOR, a stay would be inappropriate. *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 842 (N.D. Ill. 2000) (stay inappropriate where even though litigation in domestic forum "not ideal," it did not present "an unreasonable burden."); *Abdullah Sayid Rajab Al-Rifai & Sons W.L.L. v. McDonnell Douglas Foreign Sales Corp.*, 988 F. Supp. 1285, 1293-94 (E.D. Mo. 1997) (refusing stay where domestic and foreign forums equally convenient and foreign parties had obtained experienced U.S. counsel).

## C.    There Is A Possibility Of Prejudice To Highfields In Ireland

Brian Chu, one of two people to whom many of SCOR's misrepresentations at issue were made, is no longer employed by Highfields. He is subject to process in Massachusetts. He is not subject to process in Ireland. Highfields will be prejudiced if Plaintiffs

---

[8]    *Carey v. Bayerische Hypo-und Vereinsbank AG*, 370 F.3d 234 (2d Cir. 2004), on which SCOR relies, is inapposite. *Carey* is a forum non conveniens case concerning the "complex terms of an investment in German real estate which plaintiff voluntarily entered into while living in Germany." Fortuitously, plaintiff moved back to the United States and brought suit in New York. This contrasts sharply with the facts here regarding SCOR, which came to Massachusetts and made its misrepresentations to Highfields here.

cannot subpoena Mr. Chu to testify at the trial of this matter. Highfields may also be prejudiced in Ireland by the absence of a right to a jury trial on its fraud claims, the circumscribed discovery process, absence of a ch. 93A remedy, and an Irish judge unfamiliar with Massachusetts law.

**D.    This Action Is The First-Filed Fraud Case**

Defendant's argument that the temporal sequencing of the filings warrants dismissal is without merit. This is the first-filed action concerning SCOR's misrepresentations. This case alleging fraud by SCOR was filed and a copy provided to SCOR's counsel on March 31, 2004. It was only thereafter, on May 6, 2004, that SCOR filed an improper counterclaim in Ireland seeking a declaration that Highfields' "involvement and participation in IRP was not induced by any alleged misrepresentation allegedly made by or on behalf of [SCOR]." Ex. G.to McDonnell Aff. ¶¶ 65, 69(d). Highfields has moved to dismiss the counterclaim in the Irish Action, because, among other things, SCOR's counterclaim regarding fraud in the United States has nothing to do with the Irish Action. Due to the Irish courts' lengthy summer recess, the motion likely will not be heard until October. *See* Shields Aff. ¶ 6. The counterclaim is plainly a tactical measure designed to support SCOR's argument for abstention. In any event, SCOR's request for a declaration does not weigh in favor of a stay in the face of Highfields' first-filed claim for damages in this Court. *See, e.g., General Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F. Supp. 656, 668 (E.D. Mich. 1996) (claim for damages in U.S. weighs against stay where claim abroad is for mere determination of liability); *Abdullah Sayid,* 988 F. Supp. at 1292-93 (potential for dismissal of claims in a foreign action weighs against issuance of a stay).

**E.    The Relief Available In The Irish Action Is Not Adequate**

The Irish Action arises under Section 205 of the Companies Act of 1963. No damages can be awarded to Highfields under Section 205. Therefore, Highfields will not be provided adequate relief in the currently pending Irish Action. *See, e.g., Goldhammer,* 59 F.

19

Supp. 2d at 254 (absence of 93A remedy in England weighs against stay); *Euromarket Designs, Inc.*, 96 F. Supp. 2d at 844-45 (stay not warranted where U.S. statutory rights involved).

### F.     Promotion Of Judicial Efficiency

As set forth above, the factual and legal issues in the Irish Action and the instant case are distinct.  SCOR itself has contended that its pre-IRP financial condition is not at issue in Ireland.  This is not a case where parts of the same suit are brought in different jurisdictions.  This case is different from the Irish Action.  Highfields here has separate and independent claims seeking a different remedy based on a different set of facts.  There is no danger of duplicative litigation or inconsistent judgments and the interests of judicial efficiency do not weigh in favor of a stay.  The balance of factors strongly favors allowing this action to proceed.

## CONCLUSION

For the reasons set forth above, Defendant's motion should be denied.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully join in Defendant's request for oral argument.

Respectfully submitted,

*Of Counsel:*

Mark G. Cunha
Bryce L. Friedman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel:  (212) 455-2000
Fax:  (212) 455-2502

HIGHFIELDS CAPITAL LTD.,
HIGHFIELDS CAPITALS I LP, and
HIGHFIELDS CAPITAL II LP,

By:  *Joshua A. McGuire*
     Lisa C. Wood, BBO # 5438111
     Ian J. McLoughlin, BBO # 647203
     Joshua A. McGuire, BBO # 651877

FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel:  (617) 832-1000
Fax:  (617) 832-7000

Dated:  August 3, 2004

*Attorneys for Plaintiffs*

20

## EXHIBITS TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR STAY

### Exhibit:

1. Relevant parts of Subscription Agreement, dated December 21, 2001.

2. Relevant parts of Shareholders Agreement, dated December 28, 2001.

3. SCOR Press Release, dated Nov. 4, 2002.

4. Private Placement Memorandum, dated Dec. 21, 2001.

5. New York State Insurance Department Report on Examination of SCOR Reinsurance Company, dated April 2, 2002.

6. Relevant parts of SCOR Offering Memorandum, dated December 2, 2003.

7. Relevant parts of SCOR Form 20-F for the fiscal year ended December 31, 2000, filed with the Securities and Exchange Commission.

8. Schedule F-Part 3 to the Annual Statement for the Year 2003 of the Liberty Mutual Insurance Company filed with the Massachusetts Division of Insurance.

9. Letter from Debra E. Southhard, (Senior Financial Analyst, Massachusetts Office of Consumer Affairs and Business Regulation, Division of Insurance), to Maxine H. Verne, (Associate General Counsel and Corporate Secretary, SCOR), dated Dec. 12, 2000.

10. Email from Joseph F. Mazella (General Counsel, Highfields Capital Management LP) to Arnaud Chneiweiss (General Secretary and Group Senior Vice-President of Group Legal Affairs, SCOR), dated March 31, 2004.

11. SCOR, S.A., Members of the Group Executive Committee, *available at* http://www.scor.fr/us/1_direction.asp (last visited July 30, 2004).

12. Affidavit of Laurence K. Shields, dated August 3, 2004.