UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---------------------------------------------------x
HIGHFIELDS CAPITAL LTD., :
HIGHFIELDS CAPITAL I LP, :
HIGHFIELDS CAPITAL II LP, :
:  Civ. No. 04-10624 (MLW)
                Plaintiffs, :
    v. :
:
SCOR, S.A., :
:
                Defendant. :
---------------------------------------------------x

**DEFENDANT SCOR'S MEMORANDUM ON THE
IMPLICATIONS OF THE CONCLUSION OF THE IRISH ACTION**

Douglas R. Meal, BBO # 340971
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Tel: 617-951-7000
Fax: 617-951-7050
Counsel for Defendant SCOR

August 12, 2005

Of Counsel:
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel: 212-558-4000
Fax: 212-558-3588

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF RELEVANT FACTS ............................................................................. 1

THE PARTIES' DIFFERING LEGAL POSITIONS ........................................................... 3

I.   THE IRISH FORUM SELECTION CLAUSE SHOULD BE ENFORCED. ... 4

II.  THIS ACTION SHOULD BE DISMISSED OR STAYED BECAUSE
     IRELAND IS THE MORE CONVENIENT FORUM ..................................... 9

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Doe* v. *Seacamp Assoc., Inc.*,
 276 F. Supp. 2d 222 (D. Mass. 2003) ............................................................................4

*Lambert* v. *Kysar*,
 983 F.2d 1110 (1st Cir. 1993) ..................................................................................4, 6

*M/S Bremen* v. *Zapata Off-Shore Co.*,
 407 U.S. 1 (1972) ................................................................................................4, 5, 7

*Royal Bed and Spring Co., Inc.* v. *Famossul Industria e Comercio de Moveis Ltda.*,
 906 F.2d 45 (1st Cir. 1990) ............................................................................................7

*Scherk* v. *Alberto-Culver Co.*,
 417 U.S. 506 (1974) ....................................................................................................4, 9

*Silva* v. *Encyclopedia Britannica Inc.*
 239 F.3d 385 (1st Cir. 2001) ........................................................................................5

## STATE CASES

*Cambridge Biotech Corp.* v. *Pasteur Sanofi Diagnostics*,
 433 Mass. 122 (2000) ......................................................................................5, 6, 7, 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------x
HIGHFIELDS CAPITAL LTD.,                     :
HIGHFIELDS CAPITAL I LP,                     :
HIGHFIELDS CAPITAL II LP,                    :
                                             :   Civ. No. 04-10624 (MLW)
                    Plaintiffs,              :
        v.                                   :
                                             :
SCOR, S.A.,                                  :
                                             :
                    Defendant.               :
---------------------------------------------x

DEFENDANT SCOR'S MEMORANDUM ON THE
IMPLICATIONS OF THE CONCLUSION OF THE IRISH ACTION

Defendant SCOR submits this memorandum, pursuant to the Court's Order of August 3, 2005, to address the implications of the conclusion of the action brought by certain of the Highfields Capital entities (collectively, "Highfields") against SCOR (the "Irish Action") for the pending motion to dismiss the action in this Court.

STATEMENT OF RELEVANT FACTS

Highfields first sued SCOR in the High Court in Dublin, Ireland on December 1, 2003 seeking various remedies under Irish law as a 46.65% shareholder in Irish Reinsurance Partners Limited ("IRP"), an Irish reinsurance company, against SCOR as the 53.35% shareholder. Highfields later filed a second, follow-on action in this Court on March 31, 2004, alleging that Highfields was fraudulently or negligently induced to invest in IRP's shares. (Highfields Complaint, dated March 31, 2004, at ¶¶ 3, 10-11 (cited herein as "Compl. at ¶ __.").) On May 6, 2004, SCOR counterclaimed in the Irish Action, seeking a declaration from the High Court in Dublin that there was no

misrepresentation in connection with Highfields' investment in IRP. On July 6, 2004 SCOR filed a motion to dismiss or stay this action on the grounds that: (i) the Irish forum selection clause should be enforced, and (ii) this action should be dismissed or stayed because Ireland is the more convenient forum.

The terms of Highfields' investment in IRP, which are set forth in a Shareholders Agreement that governed the relationship among IRP's investors (the Shareholders Agreement previously was submitted to this Court as Exhibit C to the Affidavit of Arnaud Chneiweiss, sworn to on July 1, 2004 (cited herein as "Chneiweiss Aff. __")), provided that the investment would be for a fixed duration and could be repurchased, at certain alternative points in time, based upon an agreed valuation methodology.

The Shareholders Agreement, and any disputes relating to it (including, for example, claims relating to the repurchase of Highfields' holdings in IRP), are governed by Irish law. The exclusive jurisdiction provision of that Agreement requires that they be heard in the courts of Ireland.

A few weeks ago, Highfields voluntarily elected to exit IRP and received a full return of its investment, plus a 38 percent profit, in a cash payment with a value of hundreds of millions of dollars. Since Highfields is no longer a shareholder in IRP, the basis upon which Highfields had filed the Irish Action no longer exists under Irish law, although other causes of action and potential remedies remain open to Highfields in Ireland should it wish to pursue any additional claims that it might contend that it has.

The parties therefore have agreed to terminate the Irish litigation, with Highfields paying a portion of SCOR's legal costs.

## THE PARTIES' DIFFERING LEGAL POSITIONS

Both parties have agreed that the "striking out" of the Irish Action is without prejudice to their rights in this Court. They differ, however, about the consequences of the events that have occurred. Highfields apparently is contending that it still may have two types of claims, both of which it reserves despite dismissal of the Irish action. Highfields has stated, in a letter from its Irish counsel, dated July 28, 2005 and previously submitted to this Court, that it (1) may claim that the calculation of the amount paid to Highfields under the Shareholders Agreement by which the share exchange occurred was not correct, and (2) continues to claim that it was defrauded and harmed in making its decision to enter into its profitable IRP investment.

SCOR maintains that the fact that Highfields' investment turned out to be very profitable undermines the basis for any claim of injury or any measurement of alleged damages. Further, Highfields' original claims – that it was fraudulently or negligently induced to invest in a doomed entity without "escape hatches" and in which "no reasonable investor" would have invested – no longer make sense in light of the 38 percent profit produced by Highfields' recent voluntary exit from its IRP investment. (Compl. at ¶¶ 10-11.) Whatever claims Highfields may assert with respect to how much more money it reckons it ought to receive are likely to be subject to summary dismissal.

Further, both of Highfields' contentions necessarily relate to the Shareholders Agreement, and the unambiguous exclusive jurisdiction clause in that

-3-

Agreement directs such matters to the Irish courts "for <u>all</u> <u>purposes</u> relating to" that Agreement. SCOR's position regarding the proper venue for resolution of these disputes remains that, whatever the merits may be, any and all claims must be brought in the courts of Ireland.

Both of the points asserted in SCOR's pending motion before this Court remain valid, regardless of the change in this matter's procedural posture. The exclusive Irish forum selection clause should be enforced. In addition, Ireland remains the more convenient forum, even though there is no present proceeding there. Highfields should be directed to bring its claims in Ireland.

### I.
### THE IRISH FORUM SELECTION CLAUSE SHOULD BE ENFORCED.

The Supreme Court has held that contractual forum selection clauses are *prima facie* valid and should be enforced unless the resisting party can show that to do so would be unreasonable under the circumstances. *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 10-13, 15 (1972) (a "forum clause should control absent a strong showing that it should be set aside"). The Court has further clarified that contractual forum selection clauses may still prevail in circumstances where one party has presented claims sounding in fraud or tort. *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 519, n.14 (1974) (enforcing forum selection clause in face of securities fraud allegations). The First Circuit, this Court and the courts of the Commonwealth of Massachusetts have adopted these views. *See, e.g., Lambert* v. *Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993) (applying contractual forum selection clause to claims of misrepresentation and violations of Mass. Gen. Laws ch. 93A); *Doe* v. *Seacamp Assoc., Inc.*, 276 F. Supp. 2d 222, 227-28

(D. Mass. 2003) (forum selection clause applied to non-contract claims where source of duty arose from "contractual relationship structured by the underlying agreement") (citation omitted); *Cambridge Biotech Corp.* v. *Pasteur Sanofi Diagnostics*, 433 Mass. 122, 130, n.7 (2000) (applying contractual forum selection clause to alleged violations of Mass. Gen. Laws ch. 93A).

The forum selection clause in the IRP Shareholders Agreement is mandatory and unambiguous, and it requires that each of Highfields' claims relating to its shareholding in IRP be brought in the courts of Ireland. The relevant clause provides: "Each shareholder hereby submits to the <u>exclusive jurisdiction</u> of the courts of Ireland <u>for all purposes relating to this Agreement</u>." (Chneiweiss Aff. Ex. C at Art. VII, cl. 7.16 (emphasis added).) The First Circuit has enforced exclusive forum selection clauses, such as the one in the Shareholders Agreement, under *Bremen v. Zapata* criteria. *E.g.*, *Silva* v. *Encyclopedia Britannica Inc.*, 239 F.3d 385, 388-89 (1st Cir. 2001) (specific language of contract followed; no "unreasonable" or "unjust" circumstances).

Highfields' investment in IRP, its status as an IRP shareholder and, most importantly, its recovery of its entire investment and a significant profit upon its exit from IRP, took place subject to provisions of the Shareholders Agreement. Whatever remaining claims Highfields wishes to assert against SCOR are also governed by the Shareholders Agreement and that document's mandatory forum selection clause. However dressed-up, Highfields' two reserved claims ultimately assert that Highfields is entitled to more than the 38 percent return on its investment that it received pursuant to the exit process set forth in Article VI of the Shareholders Agreement. Any such claims

necessarily "relate to" the Shareholders Agreement, and they should be pursued in that Agreement's designated forum.

As the First Circuit has observed, "artful pleading" cannot defeat a valid forum selection clause. *Lambert* v. *Kysar*, 983 F. 2d 1110, 1121 (1st Cir. 1993) ("We cannot . . . reward attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in context of a contract dispute.") (Citation omitted).

Nor do the courts of Massachusetts permit such pleadings. In *Cambridge Biotech Corporation* v. *Pasteur Sanofi Diagnostics*, an American technology licensing company ("CBC") sued a French technology firm ("Pasteur") with which it had a cross-licensing agreement. 433 Mass. 122 (2000). Prior to commencing suit, CBC, which was also involved in bankruptcy proceedings, engaged in a series of transactions that resulted in the assignment of some of Pasteur's patented technology to an unauthorized company. *Id*. at 123-127. Upon discovery of this, Pasteur informed CBC that it would terminate the cross-licensing agreement unless the breaches were cured. *Id*. at 127. CBC then sued Pasteur and several other entities, alleging, among other claims, that orders of the Bankruptcy Court prohibited Pasteur from terminating the cross-licensing agreement, and that Pasteur's termination of the agreement constituted violations of Massachusetts tort law that required resolution in Massachusetts courts. *Id*. at 127-28. Pasteur maintained that the forum selection clause in the cross-licensing agreement, which required that any dispute between the CBC and Pasteur be brought in the courts of the defending party, was unaffected by the concurrent bankruptcy proceedings and applied to the present controversy. *Id*. at 128.

The Supreme Judicial Court determined that the forum selection clause of the cross-licensing agreement applied and ordered that CBC's claims be litigated in the contractually-selected forum. *Cambridge Biotech Corp.*, 433 Mass. at 130. The Supreme Judicial Court also concluded that CBC's tort claims, including a claim arising under Massachusetts General Laws Chapter 93A, were "peripheral" to the underlying breach of contract claims and would not be allowed "to vitiate the effect of a forum selection clause . . .". *Id.* at 130, n.7 (citation omitted). Like CBC's claims, Highfields' allegations of misrepresentation and unlawful business conduct before this court are merely a gloss on what is, at bottom, a dispute concerning the operations of the Shareholders Agreement and the value Highfields derived from it.

Under the First Circuit's standards, a party opposing the enforcement of a forum selection clause must show that the particular clause was not freely negotiated or was the result of fraud, or contravenes a strong public policy of the forum where the suit is brought, or that trial in the contractual forum will be so gravely difficult and inconvenient that the party will, for all practical purposes, be deprived of its day in court. *See Royal Bed and Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 49 (1st Cir. 1999) (citing *M/S Bremen*, 407 U.S. at 15-18); *see also Cambridge Biotech Corp.*, 433 Mass. at 130-33. Highfields cannot demonstrate that any of these conditions exists here.

Highfields has not claimed that the forum selection clause was included in the Shareholders Agreement as a result of fraud, duress or other improper means. Highfields has not argued that enforcing the forum selection clause would be contrary to

Massachusetts public policy, or that it would be inconvenient to the point of depriving Highfields of its day in court. Indeed, any attempt by Highfields to do so, in light of Massachusetts' acceptance of the "modern view" embracing forum selection clauses, *Cambridge Biotech Corp.*, 433 Mass. at 130, and Highfields' own initiation of the Irish Action, would be untenable. Highfields only argues that its claims arise under the Subscription Agreement, a document that has had no operative force in the parties' relationship since the December 28, 2001 execution of the Shareholders Agreement. Highfields' recent exchange of its IRP shares for approximately $220 million was governed solely by the Shareholders Agreement, and any further claims with regard to how much more money Highfields thinks it is entitled to necessarily "relate to" that Agreement.

The direct relationship between Highfields' claims and the Shareholders Agreement is apparent from the face of Highfields Complaint in this action. Significantly, the only forms of relief that Highfields seeks here are those relating to its attempt to extract a larger purchase price for its IRP shares. (*See* Compl. at ¶¶ 71-93 & Prayer for Relief.) For example, Highfields does not seek to rescind its acquisition of IRP shares because of some alleged fundamental defect in its acquisition of those shares, but instead claims here that it should have received more money upon the repurchase of its IRP shares – claims that relate directly to the repurchase provisions of the Shareholders Agreement.

## II.
## THIS ACTION SHOULD BE DISMISSED OR STAYED BECAUSE IRELAND IS THE MORE CONVENIENT FORUM.

The striking out of the Irish Action does not alter that jurisdiction's status as the more convenient and appropriate forum (in addition to its status as the contractually designated forum). In commenting on the appropriate forum in *Scherk* v. *Alberto-Culver Company, supra*, the Supreme Court observed that the agreement at issue there, like the IRP Shareholders Agreement, was "truly international" and involved American plaintiffs and a foreign defendant, with the negotiations for and the signature, execution and closing of that agreement conducted primarily outside of the United States. 417 U.S. at 515. Also as in *Scherk*, the subject matter of the relevant Agreement and dispute here concern a business entity organized under the laws of and situated in a European country, whose activities are largely, if not entirely, directed toward European markets. *Id*. at 515 & 517, n.11 ("The only contact between the United States and the transaction . . . is an American [plaintiff] and the occurrence of some – but by no means the greater part – of the pre-contract negotiations in this country.").

Even if Highfields' assertion that the Subscription Agreement governs the dispute between the parties and the Shareholders Agreement does not even "relate" to it were true, the applicable law will be that of Ireland. In addition, and by Highfields' own calculations, most of the potential witnesses in this matter are located in Europe. By letter dated May 27, 2005, Highfields' U.S. counsel notified SCOR's U.S. counsel that Highfields intended to seek 47 depositions in connection with this matter. The majority of the listed people and companies are located outside the United States, and none appears to be located in Massachusetts.

Further, Highfields has notified SCOR that it is contemplating additional litigation in Ireland. In a letter dated July 28, 2005 that was previously submitted to this Court, Highfields' Irish counsel specifically reserved Highfields' rights in connection with the exchange process set forth in Article VI of the Shareholders Agreement. Highfields has acknowledged and does not dispute that the calculation of the share exchange ratio and the exit process by which it recently received hundreds of millions of dollars from its IRP investment are governed by the provisions of the Shareholders Agreement and its exclusive forum selection clause. Regardless of whether litigation goes forward in this Court, Highfields apparently will attempt to sue SCOR again in Ireland in connection with the calculation of the share exchange ratio, thereby re-creating concurrent Irish and U.S litigations and all of the attendant overlaps and inefficiencies. The more sensible course remains a direction that the parties resolve all of their claims in the Irish courts, which were contractually designated by the parties and whose law is applicable to all aspects of this dispute.

## CONCLUSION

SCOR respectfully requests that the Court dismiss this action because it is required to be brought in the courts of Ireland; or, in the alternative, that the Court stay this action for a period of time to permit Highfields to proceed in the High Court of Ireland; and that the Court grant to SCOR such other and further relief as to the Court may deem just and proper.

Respectfully submitted,

ROPES & GRAY LLP

By  /s/ Douglas R. Meal
 Douglas R. Meal
 One International Place
 Boston, MA 02110-2624
 Tel: 617-951-7000
 Fax: 617-951-7050

 Counsel for Defendant SCOR

August 12, 2005

Of Counsel:
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel: 212-558-4000
Fax: 212-558-3588