**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Highfields Capital Ltd., Highfields Capital I LP, Highfields Capital II LP, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SCOR, S.A., )<br><br>Defendant. ) | Civil Action No.  04-10624 MLW |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO**
**COURT'S SEPTEMBER 19, 2005 ORDER CONCERNING IRISH LAW**

The Court has asked how the Irish law of contract interpretation applies to this case and how Irish law differs from Massachusetts law in any other way that may be material to the merits of the underlying dispute.  Before answering these questions, it is important to place them in the context of the claims that Highfields has filed.

Highfields has not asserted any claims in this litigation for breach of contract.  Instead, Highfields has advanced three tort claims against SCOR for fraudulently inducing Highfields into investing in IRP -- fraud, negligent misrepresentation, and violation of chapter 93A.   SCOR has confused matters by attempting to recast Highfields' tort claims as contract-related claims. Further obscuring the issues, SCOR offers a convoluted reading of the two principal investment agreements in arguing that Highfields should be denied its choice of forum.  In arguing that the exclusive forum selection clause of an ancillary agreement (the Shareholders Agreement) should trump the non-exclusive forum selection clause of the Subscription Agreement, SCOR cites no authority and ignores, without explanation, explicit contrary language in both agreements. Highfields' choice of forum should not be disrupted on the basis of SCOR's tortured reading of

the agreements, which, in any event, are at most tangentially related to the tort and fraud claims of this case. This is particularly the case given that the non-exclusive forum selection clause of the Subscription Agreement demonstrates that, when SCOR set out to solicit investors, it anticipated, and accepted as necessary, that investors outside Ireland were entitled to a litigation forum outside Ireland.

To put the matter further in context, conflict of laws principles militate against sending this case to Ireland. This is because the law of Massachusetts, not the law of Ireland, governs Highfields' claims. Highfields suffered injury in Massachusetts; the conduct leading up to Highfields' investment, including SCOR's misrepresentations, occurred largely in Massachusetts; and Highfields' principal place of business is Massachusetts. Moreover, Massachusetts has a powerful interest in hearing claims made by a Massachusetts plaintiff for fraud perpetrated in Massachusetts. Ireland, in stark contrast, has no interest in resolving a dispute between a Massachusetts plaintiff and a French defendant for a tort that occurred in Massachusetts.

Although the Subscription Agreement and Shareholders Agreement contain narrow choice-of-law provisions indicating that they are to be "governed by, and construed in accordance with, the laws of Ireland," such provisions do not mean that Irish law applies to Highfields' claims. On the contrary, the plain language of the provisions is self-limiting and does not cover tort claims such as Highfields', particularly insofar as Highfields has advanced pre-contractual claims for fraudulent inducement. Therefore, Massachusetts law applies to Highfields' claims.

Against this backdrop, the answer to the specific contract law question posed by the Court in its September 19 Order is quite straightforward because of the clarity of the two

agreements in question.  Under Irish as well as Massachusetts law, the Shareholders Agreement does not supersede or modify the forum selection clause contained in the Subscription Agreement.  Highfields has submitted an affidavit of Laurence K. Shields, an experienced Irish attorney, to address Irish law on this point, and discusses the issue further at pages 8 and 9 below.

Finally, although the substantive law of Ireland does not appear to differ from Massachusetts law in any material respect, there are substantial differences in process that militate against robbing Highfields of its choice of forum.  For example, if Highfields were to litigate in Ireland, it would lose the right to a jury trial.  In addition, Highfields would lose the ability to take pre-trial depositions.  For these reasons, as well as the reasons contained in Highfields' previous briefs, SCOR's motion to dismiss should be denied.

<u>Discussion</u>

**I.      Massachusetts Law, Not Irish Law, Applies To Highfields' Claims.**

As an initial matter, Massachusetts law, not Irish law, governs Highfields' claims.[1] SCOR has yet to make any serious effort to challenge Highfields' contention that Massachusetts law controls.  SCOR has never expressly argued that Irish law applies and indeed has yet to cite a single Irish case in support of its motion to dismiss.  Moreover, during a recent conference of the parties' counsel, conducted in accordance with the Court's September 19, 2005 order, SCOR's counsel indicated that SCOR had not identified any unique issues of Irish law pertaining to this case.

A federal court sitting in diversity must follow the choice of law rules of the forum state. <u>See</u> <u>e.g.</u>, <u>Goebel and Strocke v. Schmid Brothers, Inc.</u>, 871 F.Supp. 68, 75 (D. Mass. 1994).

---

[1] <u>See</u> Plaintiffs' Proposed Memorandum of Law in Opposition to Defendant's Motion for Leave to File a Reply Memorandum in Further Support of Its Motion to Dismiss or Stay at 1, n. 2.

Massachusetts follows a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." Id.; Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 646-47 (1994). The functional approach considers, among other things, the place where the injury occurred, the place where the conduct causing the injury occurred, and the place of business of the parties, as well as the relative interests of the states and the justifiable expectations of the parties. See id.

Applying this approach, Massachusetts law governs. Highfields suffered injury in Massachusetts as a result of SCOR's fraud and negligent misrepresentation. Furthermore, the conduct leading up to Highfields' investment, including SCOR's fraudulent misrepresentations and omissions, occurred largely in Massachusetts. See Massachusetts Asset Financing Corp. v. Harter, Secrest & Emery, LLP, 220 F. Supp. 2d 20, 23 (D. Mass. 2002) (holding fraudulent misrepresentations in Massachusetts were governed by Massachusetts law). SCOR corresponded and communicated with Highfields in Massachusetts, and even sent a top-level executive to meet with Highfields in Massachusetts. See Complaint at ¶¶ 18-21. In addition, Highfields' principal place of business is Massachusetts. The parties therefore would have justifiably expected any claims arising from fraudulent misrepresentations or omissions made by SCOR prior to the investment to be governed by Massachusetts law. Moreover, Massachusetts has a strong interest in deciding a claim that a Massachusetts plaintiff was defrauded in Massachusetts, while Ireland has no interest in deciding a dispute between a Massachusetts plaintiff and a French defendant concerning a tort that occurred in Massachusetts.

The fact that the Subscription Agreement and Shareholders Agreement indicate that they "shall be governed by, and construed in accordance with, the laws of Ireland" does not change the conclusion that Massachusetts law, not Irish law, governs Highfields' claims. First, the

choice of law provisions state only that the agreements themselves shall be governed by and construed in accordance with the laws of Ireland, not that all claims arising out of or relating to the agreements will be governed by Irish law.[2]  Numerous courts have refused to apply such narrow choice of law provisions to claims such as Highfields'.  See Trent Partners and Assocs., Inc. v. Digital Equipment Corp., 120 F. Supp. 2d 84, 97 n. 12 (D. Mass. 1999) (refusing to apply Massachusetts law to all claims where "the choice of law provision in this contract merely provides that the Agreement itself shall be 'governed and construed' under Massachusetts law, not that all claims or disputes arising from the Agreement should be settled under Massachusetts law"); Jacobson v. Mailboxes, Etc. U.S.A., Inc., 419 Mass. 572, 578-80 n. 9 (1995) (indicating that choice of law provision stating that the agreement was to be governed by California law, but not that the rights of the parties were to be governed by California law, does not bar the application of 93A to the parties' dealings in Massachusetts); Kitner v. CTW Transport, 53 Mass. App. Ct. 741, 746 (2002) (affirming decision to ignore choice of law provision where the "language in the contract as to choice of law [was] expressly self-limiting [and stated] that North Dakota law would only 'govern the identity, construction, enforcement, and interpretation of the' contract [and did] not indicate that North Dakota law would also cover tortious conduct or unfair acts inducing a breach of contract"); Caton v. Leach Corp., 896 F.2d 939, 943, n. 3 (5th Cir. 1990) ("In contrast to broad clauses, which choose a particular state's law to 'govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract,' the instant clause denotes only that California law will be applied to 'construe' the contract.").

       Second, because Highfields' claims are tort claims, they are not subject to contractual

---

[2] In this regard, the language of the choice of law provisions of the agreements is to be contrasted with the language of the forum selection clauses, which do purport to apply "for all purposes relating to" the agreements.

choice-of-law provisions.  See Northeast Data Systems, Inc. v. McDonnell Douglas Computer

Systems, Co., 986 F.2d 607, 611 (1st Cir. 1993) (refusing to apply choice of law provision to

chapter 93A claim sounding in tort, in contrast to 93A claim sounding in contract; because the

claim, for fraud, concerned "the validity of the *formation* of the contract, it [could not] be

categorized as one involving the rights or obligations arising under the contract."); Kitner, 53

Mass. App. Ct. at 746-47 (holding chapter 93A claim survived North Dakota choice-of-law

provision because 93A claim "sounded in tort, and not entirely in contract"); Stagecoach Transp.,

Inc. v. Shuttle, Inc., 50 Mass. App. Ct. 812, 818-19 (2001) (refusing to give effect to choice of

law provision where "Shuttle's conduct in engaging in unfair and deceptive acts that resulted in

preventing the contract signing [was] not a dispute arising out of the agreement but more

properly resemble[d] a tort action of deceit."); Pizzeria Uno of Kingston, Inc. v. Independence

Mall Group, No. 94-5546, 1995 WL 419932, * 5, n. 3 (Mass. Super. 1995) ("Notwithstanding

the choice of law provisions in the Leases, the plaintiffs' fraud claims sound in tort, and the

contractual choice of law provisions do not govern tort claims.").

        Third, because Highfields' claims arise from conduct that took place *before* the execution

of the agreements, the choice-of-law provisions do not apply.  In a similar case, the United States

Court of Appeals for the Eighth Circuit refused to apply a choice of law provision to a fraudulent

concealment claim that arose during the formation of the contract:

> In this case, the BAA provides that the 'Agreement shall be
> governed by and construed in accordance with the laws of the State
> of Illinois, as applied to contracts made and to be performed solely
> within such state, without regard to conflict or choice of law rules,
> provisions or principles….'  While this provision adequately
> covers disputes concerning how to construe the BAA, the language
> is not broad enough to govern the choice of law for the fraudulent
> concealment claim, which sounds in tort.  Although the claim arose
> out of the circumstances surrounding the formation of the contract,
> there is no indication in the BAA that the parties intended to elect
> Illinois law as the forum for every contract-related claim.  The
> narrow contractual language that the BAA is to be governed and

> construed by Illinois law simply does not address the entirety of
> the parties' relationship.

*Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001).  Here, as in *Inacom*,

the narrowly drafted choice-of-law provisions were not intended to elect Irish law as controlling

for every conceivable purpose governing the relationship between SCOR and Highfields.

Finally, the two cases SCOR has cited for the proposition that courts may, in certain

instances, apply a choice of law provision to a tort claim, are distinguishable.[3]  First, in contrast

to McAdams, the source of the duty which SCOR owed to Highfields is NOT derived from any

contractual relationship, but is instead derived from tort law applicable to the conduct of the

parties *prior* to any contract.  Compare McAdams and Odom v. Massachusetts Mut. Life Ins.

Co., 2002 U.S. Dist. LEXIS 9944, * 40 (May 15, 2002).  In further contrast to McAdams,

Highfields has not asserted "parallel claims for breach of contract" involving the "same operative

facts" as its tort claims.  Highfields has not asserted any contract claims.

Second, the Lambert case cited by SCOR is also distinguishable.  Compare Lambert v.

Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993).  Even assuming a case concerning the

interpretation of a forum selection clause applies to choice-of-law analysis, which is not obvious

given the unique considerations Massachusetts employs analyzing conflicts-of-law under the

functional approach, Lambert is inapposite.  In Lambert, unlike the present case, there were both

contract claims and tort claims, and the Court was concerned that the tort claims were merely

disguised contract claims.  Here, however, Highfields has asserted no contract claims and its tort

claims for pre-contractual fraud relating to its investment in IRP would not involve the "same

operative facts" as a claim for a breach of contract.

Therefore, Massachusetts law applies to Highfields' claims, despite the choice-of-law

---

[3] See Defendant SCOR's Proposed Reply Memorandum of Law in Support of Motion to Dismiss or Stay at 3-4, n. 1.

provisions in the agreements.

## II.   To The Extent It Applies, Irish Law Dictates That The Forum Selection Clause In The Shareholders Agreement Does Not Supersede The Forum Selection Clause In The Subscription Agreement.

The principles of contract construction under Massachusetts and federal common law dictate that the forum selection clause in the Shareholders Agreement does not supersede the forum selection clause in the Subscription Agreement.[4] For this and other reasons contained in Highfields' briefs, the forum selection clause in the Shareholders Agreement does not apply, and Highfields' choice of forum should not be disturbed. This is especially true given that courts are reluctant to enforce forum selection clauses. See Cummings v. Caribe Marketing & Sales Co., Inc., 959 F.Supp. 560, 564-565 n. 7 (D. Puerto Rico 1997) ("Although enforceable, forum selection clauses have generally been disfavored by American courts…. Notwithstanding M/S Bremen, which overruled a long line of cases holding that 'agreements in advance of controversy whose object is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced,' courts are still reluctant to enforce such clauses unless clearly indicative of an unambiguous intent that controversies be litigated exclusively in a particular forum.").

The accompanying Affidavit of Laurence K. Shields ("Shields Aff.") confirms that, under Irish law, the result would be the same. Mr. Shields sets forth a number of reasons for his conclusion that the forum selection clause in the Shareholders Agreement does not supersede the forum selection clause in the Subscription Agreement, and cites several supporting Irish authorities, which are referenced in and attached to his affidavit. First, each agreement expressly defines *both* agreements as constituting the entire agreement of the parties. *See* Shareholders

---

[4] Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss or Stay at 9-14; Plaintiffs' Proposed Memorandum of Law in Opposition to Defendant's Motion for Leave to File a Reply Memorandum in Further Support of Its Motion to Dismiss or Stay at 1-3.

Agreement ¶ 7.9(a) ("This Agreement…and the Subscription Agreement constitute the entire agreement between the parties hereto…"); Subscription Agreement ¶ 11 ("This Subscription Agreement and the Shareholders Agreement constitute the entire agreement between [the parties]").  Under the Irish law of contract interpretation, this language demonstrates unequivocally that both agreements remain in force and exist side by side.  Shields Aff. ¶ 4.

Furthermore, as Mr. Shields explains, the language of the two forum selection clauses indicates that the clause in the Shareholders Agreement does not supersede the clause in the Subscription Agreement.  Indeed, the terms of the forum selection clauses are different, and both clauses confine their application to the specific agreement in which each clause is found.  The Subscription Agreement provides for the non-exclusive jurisdiction of the Irish courts, while the Shareholders Agreement provides for the exclusive jurisdiction of the Irish courts.  According to Mr. Shields, in light of the decisions of the Irish courts, this plain language would be interpreted under Irish law as evidence that the parties intended to provide for the *exclusive* jurisdiction of the Irish courts under the Shareholders Agreement, while preserving the ability of the parties to submit to courts outside Ireland under the Subscription Agreement.  Shields Aff. ¶ 5.

Mr. Shields' testimony is bolstered by the fact that it makes commercial sense for the forum selection clauses of *both* agreements to have survived the Shareholders Agreement.  The Subscription Agreement contains numerous representations and warranties, and it would have made business sense for an investor to reserve its right to litigate in its home forum if one of those representations proved to be false.  The Shareholders Agreement relates to the narrower issue of the corporate governance of IRP, an Irish company.  Accordingly, it would have made business sense for the parties to agree that both forum selection clauses survive the Shareholders Agreement.

The fact that the Subscription Agreement expressly states that it survives closing of the Shareholders Agreement further indicates that the forum selection clause of the Subscription Agreement survives the Shareholders Agreement under Irish law. *See* Subscription Agreement ¶ 10 ("The representations, warranties and agreements…contained in this Subscription Agreement…shall survive the Closing."). Shields Aff. ¶ 6. Moreover, neither agreement contains language suggesting that the parties intended the Shareholders Agreement to supersede the Subscription Agreement. Pursuant to Irish law, an intent to have one agreement supersede another will not be implied absent plain language to that effect. Id. ¶ 7.

Therefore, under Irish law, as under Massachusetts law, the forum selection clause of the Subscription Agreement survives the Shareholders Agreement. As a result, to the extent Highfields' tort claims "relate to" any agreement, it is the Subscription Agreement. Because the Subscription Agreement leaves Massachusetts open as a forum for resolving disputes between the parties regarding Highfields' investment, this litigation should proceed in Massachusetts.

## III.   Highfields Would Experience Several Disadvantages If It Were To Litigate In Ireland.

As set forth in paragraph eight of Mr. Shields' Affidavit, Highfields would experience several potential disadvantages if it were to litigate its Massachusetts tort claims in Ireland. First, Highfields would not have the right to a jury trial. Second, Highfields would only have the opportunity to take narrower discovery than in the United States. Third, Highfields would not be able to take any pre-trial depositions. In a fraud case such as this one, in which so much depends on what SCOR's officers and employees knew, what information SCOR kept from Highfields, and when, it is critical that Highfields take depositions. Finally, Highfields would have to litigate before an Irish judge unfamiliar with chapter 93A. An Irish court would require expert

evidence on 93A, which would be cumbersome.  Id. ¶ 8.[5]

Conversely, each of these additional obstacles to Highfields is a benefit to SCOR.

Indeed, the only interests of SCOR that would be served by litigating this dispute in Ireland

would be to disadvantage Highfields.  This is not a contest between the home forums of the two

parties, and it would not be any more convenient for SCOR to litigate in Ireland than in

Massachusetts.  Accordingly, the Court should deny SCOR's motion and proceed with this

litigation.

<u>Conclusion</u>

For the foregoing reasons, and the reasons contained in its briefs in opposition to the

motion to dismiss, plaintiffs respectfully request that the Court deny defendant's motion to

dismiss; allow discovery to proceed immediately; and grant such other and further relief as is just

and proper.


Respectfully submitted,

HIGHFIELDS CAPITAL LTD.,
HIGHFIELDS CAPITALS I LP, and
HIGHFIELDS CAPITAL II LP,

By: /s/ Ian J. McLoughlin
Lisa C. Wood, BBO # 5438111
Ian J. McLoughlin, BBO # 647203


FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel:  (617) 832-1000
Fax: (617) 832-7000

Attorneys for Plaintiffs

---

[5] Highfields also incorporates by reference its previous briefs, which advance a number of additional arguments
against litigating in Ireland, such as that the witnesses are located in the United States and France, not Ireland.