UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Highfields Capital Limited, Highfields Capital I LP, )
Highfields Capital II LP, )
  )
        Plaintiffs, )
  )
v. ) Civil Action No.  04-10624 MLW
  )
SCOR, S.A., )
  )
        Defendant. )

Exhibit "B" referred to in the Affidavit of Laurence K. Shields

Sworn on the  22  day of September, 2005

_____
LAURENCE K. SHIELDS

_____
COMMISSIONER FOR OATHS/PRACTISING SOLICITOR

[1988] I.L.R.M. 501
John Francis Kutchera v. Buckingham International Holdings Ltd (Formerly Allied Venture Properties Ltd);
1987 No. 94

**Date:** 1 March 1988
**Court:** Supreme Court
**Judge(s):** (Finlay CJ , Walsh , Henchy , Hederman and McCarthy JJ )

*Conflict of Laws—Contract—Proper Law—Terms of Contract stating that disputes be settled in accordance with Irish law—Contract having no connection with Ireland—Whether service out of jurisdiction permissible—RSC 1986 , O. 11, r. (1)(e)(iii), O. 12 r. 26*

## Facts

In a contract between the appellant, a non-Irish citizen, and the respondent, a Canadian public company, it was expressly provided that the proper law of the contract should be that of Ireland, and that the parties, in the event of any dispute, would irrevocably submit to the jurisdiction of the Irish courts exclusively. The appellant issued a plenary summons and served notice of it upon the respondent pursuant to *O. 11 r. 1 RSC* . The respondent, having entered an appearance *'for the purpose of contesting jurisdiction only'* , obtained in the High Court an order pursuant to *O. 12 r. 26 RSC* setting aside the service of the summons on the ground that Irish law was unconnected with the realities of the contract (Reported at [1988] ILRM 1 ). On appeal, it was

by the Supreme Court (Walsh and McCarthy JJ, Finlay CJ and Hederman J concurring, Henchy J dissenting,) in allowing the appeal,

(1) The proper law of the contract is Irish law because the contract expressly made it so. There is therefore no necessity to enquire whether or to what extent the contract is connected with Ireland.

(2) Agreement to submit to the jurisdiction of a foreign court is an unequivocal acceptance of its jurisdiction, whether or not the defendant appears or contests the case: *International Alltex Corporation v Lawlor Creations Ltd* [1965] IR 264 applied .

## Cases referred to in judgment

*Bula Ltd v Tara Mines Ltd* [1988] ILRM 149
*Carvalho v Hull Blythe (Angola) Ltd* [1979] 1 WLR 1228 ; [1979] 3 All ER 280
*The Chaparral* [1968] 2 Lloyds Rep.
*Fehmarn, The* [1958] 1 WLR 159 ; [1958] 1 All ER 333
*Grehan v Medical Incorporated and Valley Pines Association* [1986] IR 528 ; [1986] ILRM 27
*Hilton v Guyot* [1895] 159 US 113

**EXHIBIT B**
**TO AFFIDAVIT OF LAURENCE K. SHIELDS**

*International Alltex Corporation v Lawlor Creations Ltd* [1965] IR 264
*Kingston v Irish Dunlop Co Ltd* [1969] IR 233
*Lett v Lett* [1906] IR 618
*McNamara and Son v Owner of SS 'Hatteras'* [1933] IR 675 .
*O'Callaghan v O'Sullivan* [1925] 1 IR 90 ; 58 ILTR 110
*Overseas Food Importers and Distributors v Brandt* [1978] 93 DLR (3rd) 317
*Pergamon Press Ltd v Maxwell* [1970] 1 WLR 1167 ; [1970] 2 All ER 809

## Cases referred to in legal argument

*Boissevain v Weil* [1950] AC 387
*Tzorszis v Monarch Line* [1968] 1 WLR 406
*Herbert Wagg and Co Ltd's Claim, In re* [1956] 323
*Mackender v Feldia AG* [1967] 2 QB 590
*Limerick Corporation v Crompton* [1910] 2 IR 416
*Vista Food Products Inc. v Unus Shipping Co Ltd* [1939] AC 277

## Representation

*Nial Fennelly SC* and *William Shipsey* for the appellant
*Frank Clarke SC* and *Fergal Foley* for the respondent

**WALSH J** (Finlay CJ and Hederman J concurring) delivered his judgment on 1 March 1988 saying: By order of the High Court of 1 December 1986 the plaintiff was given liberty to issue an originating plenary summons against the defendants and, as it appeared to the court that the intended action fell within the class of actions set out in *O. 11, r. 1(e)(iii) of the Rules of the Superior Courts*, it was ordered that the plaintiff be at liberty to serve notice of the said summons on the defendants at suite 1,500, 324 8th Avenue, South West Calgary, Alberta in Canada. In an affidavit of service Roger Barrette of the city of Calgary in the province of Alberta, Canada swore that he personally served upon the defendants true copies of the order and the notice of the summons of the High Court referred to, and that the service was effected on 16 December 1986.

The defendants are a Canadian public company incorporated in the province of Alberta in Canada. The plaintiff lives in London, England. He is not an Irish citizen.

The contract the subject of the proceedings was an agreement for the loan of money to the defendants, described therein as *'the borrowers'*. In the contract Mr Brian Leigh with an address in Nassau in the Bahamas, and a limited company called Weybridge Properties Ltd, and having its registered office in the Bahamas were described as *'the lenders'*. Mr Michael Sylvester Birrane with an address in Dublin, Ireland, was referred to in the contract as *'the guarantor'*. In the agreement the borrowers acknowledged and the lenders declared that they the lenders acted as agents for the plaintiff, whose address at that time was given as being in Transvaal, South Africa. The defendants borrowed 150,000 Canadian dollars and as a consideration thereof, as well as agreeing to repay this sum, the defendants undertook to engage in certain transactions concerning the transfer of shares in their company to the plaintiff or his assignees. Paragraph 10 of the Agreement which is the final clause in the Agreement reads as follows:

> This Agreement and all aspects herein shall be construed and governed by the Laws of the Republic of Ireland (Eire) and shall be deemed to have been made in the Republic of Ireland and subject only to the jurisdiction of the Irish Courts and no other jurisdiction and the parties hereto irrevocably submit to the jurisdiction of the Courts of the Republic of Ireland in all or any matter of dispute arising out of this Agreement.

Notwithstanding the error in the English language version of the name of the State it was correctly named in the Irish language, there is no dispute as to the fact that the jurisdiction referred to was the jurisdiction and laws of this State which in the English language can be correctly described only as Ireland and the laws of Ireland.

On 11 February 1987 the defendants entered an appearance in the High Court which had written upon it *'for the purpose of contesting jurisdiction only.'* This appearance was entered on behalf of the defendants by a firm of solicitors carrying on business in Dublin.

On 12 February 1987 a notice of motion on behalf of the defendants was served seeking an order pursuant to *O. 12, r. 26 of the Rules of the Superior Courts* to set aside the service of the notice of the plaintiff's summons upon the defendants. The motion was heard by Carroll J who delivered judgment on the 22 February 1987 and made an order discharging the previous order of the High Court granting liberty to serve notice of the plenary summons upon the defendants. Against this order of Carroll J the present appeal to this Court has been taken.

The grounds upon which the learned judge discharged the order were that the High Court should refuse to accept jurisdiction on the ground that Irish law *'... is unconnected with the realities of the contract. It has no function to determine the validity of this contract which must be determined by reference to Canadian law'*.

In my view the opinion of the learned High Court judge was incorrect. It would appear from her judgment that because of the fact that it might become necessary to consider some aspects of Canadian law in the course of the case with reference to the capacity of the defendants to enter into the contract she thought this was tantamount to saying that Canadian law was the proper law of the contract, *'thus contradicting clause 10'*.

There is no dispute between the parties as to what is the proper law of the contract. It is quite clearly Irish law because that is the express provision of the contract according to the agreement of the parties. The proper law of the contract in this case is Irish law and the parties have expressly agreed that their rights and obligations under the contract are to be determined in accordance with Irish law, and to be determined by an Irish court. So far as the proper law of the contract is concerned there is therefore no question of having to try to discover whether the contract has, or to what extent it has, a connection with this country. Irish law is applicable because the parties have chosen it and, in the absence of strong evidence to the contrary, of which there is none, the parties must be deemed to have intended to refer to the domestic rules of Irish law, and not to the conflict rules of Irish law. It is well established that in the absence of any such strong evidence the doctrine of *renvoi* is not applicable in the law of contract. This unfortunate doctrine, which has been variously described as being the result of a series of accidents and as the *bête noire* of private international law, happily does not have to be considered by any Irish court in the present case, nor will our courts have to consider to what extent, if any, this doctrine is part of Irish private international law. The contract therefore falls to be construed and interpreted by no law save Irish law, and therefore there is no question of the Irish courts being called upon to apply any foreign law in so far as the construction or interpretation of the contract is concerned. It

may well be necessary at some stage to refer to the law of Alberta in so far as any issue may arise concerning the constitution of the defendant company, because under the conflict of law rules matters concerning the constitution of a corporation are governed by the laws of the place of the incorporation of the company. In so far as the case may be concerned with the capacity of the corporation to enter into any legal transaction this is a question which would be governed by the constitution of the company itself and by the law which governs the transaction, namely, Irish law.

If an Irish court is called upon to apply any part of a foreign law the procedures for doing so are already well settled. See the decisions of the former Supreme Court of Justice in *O'Callaghan v O'Sullivan* [1925] 1 IR 90 and *McNamara and Son v The Owner of the Steamship 'Hatteras'* [1933] IR 675 . These cases quite clearly establish that in Irish law foreign law must generally be proved by expert evidence. The burden of proving foreign law lies upon the party who bases a claim or a defence upon the foreign law, and if that party produces no evidence, or only insufficient evidence of the foreign law, the court applies Irish law. These cases also establish that if there is any conflicting evidence as to what is the foreign law, or what is the correct interpretation of the foreign law, then it is a matter for the Irish court to decide as between the conflicting expert testimonies. The possibility that some foreign law may need to be applied in a case cannot be a justification for an Irish court refusing to hear the case.

The parties to the present contract clearly and expressly chose Irish law and it has not been disputed by the parties in this Court that Irish law is the applicable law or the proper law of the contract. While Irish law is a foreign law to all the parties to this contract it may not be particularly surprising that they have chosen it in view of the diversity of laws to which they might have been subject. In the course of this case it appeared that while the company was registered in Alberta under the laws of Alberta, apparently its principal place of business is Ontario, and most of its directors live in Hong Kong.

In this Court the case was really contested on the basis of the defendants' claim that the case should not be submitted to an Irish jurisdiction. In other words the defendants are seeking to avoid the terms of the contract to which they agreed in respect of this matter. As in the case of the proper law, the parties to this contract expressly chose that Irish courts should have exclusive jurisdiction, notwithstanding that the Irish courts constitute a foreign jurisdiction for all of the parties.

*O. 11, r. 3(1) of the Rules of the Superior Courts* provides at paragraph 3(1) that:

> the parties to any contract may agree—
>
> > **(a)** that the court shall have jurisdiction to entertain any proceeding in respect of such contract, and also, or in the alternative;
> >
> > **(b)** that service of any summons in any such proceeding may be effected at any place within or out of the jurisdiction on any party or on any person on behalf of any party or in any manner specified or indicated in such contract.

In the present case the contract did not provide the special provision relating to service of summons, etc., but that is irrelevant to the present case.

The fact that the parties in this case have submitted in their contract to the jurisdiction of an Irish court would be a most important factor in the enforcement of any judgment abroad. It is well established in a series of decisions, not merely in this jurisdiction but in the jurisdiction of other common law countries that agreement by contract to submit to the jurisdiction of a foreign court is an unequivocal acceptance of the jurisdiction of that court, irrespective of whether the defendant fails to appear or fails to contest the case. See the judgment of Kenny J in *International Alltex Corporation v Lawlor Creations Ltd* [1965] IR 264 . It would appear that this is also the law in Canada according to the decision of the *Overseas Food Importers and Distributors v Brandt* [1978] 93 DLR 317 . The United States Supreme Court in the case of *Hilton v Guyot* [1895] 159 US 113 at pp. 202–204 held that even when there has not been an express submission to jurisdiction of a foreign court once the court was satisfied that the system of the jurisprudence in question was likely to secure an impartial administration of justice between the citizens of that country and those of other countries, and where there was nothing to show prejudice or fraud in procuring the judgment or any other special reason why the comity of the nation should not allow its full effect, recognition would not be withheld. Other and similar questions have arisen in several English and U.S. cases concerning the effect of entering a conditional appearance in a foreign court. However, one does not have to consider the latter matter in the present case because the defendants clearly and expressly agreed to the Irish courts having sole and exclusive jurisdiction. It is however of interest to note that *Art. 18 of the EEC Judgments Convention* does permit of conditional appearances not amounting to a submission to jurisdiction.

At no stage have the defendants suggested that a judgment of the Irish court would not be obeyed by them, nor indeed, have they suggested that it would not be enforced abroad. Indeed the defendants could scarcely have expected to impress any Irish court by telling it in advance that it did not propose to obey any order made by that court, notwithstanding the fact that the defendants had agreed to its jurisdiction. In so far as the defendants may be thought to have been arguing that the Irish courts do not constitute a convenient forum, they have not indicated what foreign court, if any, would have jurisdiction. Indeed it is not at all improbable that if proceedings were undertaken in Alberta, Ontario, Hong Kong or anywhere else that the courts there might refuse jurisdiction in view of the express acceptance by the defendants of the Irish jurisdiction.

The notion that an order should not be made by an Irish court where it is unlikely to be obeyed is an erroneous one. It is obvious that in many cases where the court permits service abroad under *O. 11* resulting in judgment in favour of the plaintiff, the judgment will not be capable of enforcement if the foreign defendant has decided that the better course for him is not to participate in the Irish proceedings at all where he had not made any submission to Irish jurisdiction. Such an event would certainly reduce the chances of a judgment being enforced abroad against the defendant. The idea that an Irish court should on this account decline jurisdiction is quite unacceptable. In the present case the defendants have accepted jurisdiction and for the reasons I have already given that enables a judgment to be enforced abroad. In the present case the plaintiff has invoked the Irish jurisdiction, pursuant to the contract, to seek a declaration from the Irish courts. It is really the plaintiff's business to decide whether this is the most practical step for him to take. I do not believe it is the function of the Irish courts to try to be wiser than he is and to frustrate his expectations. There is in fact no reason to believe that the plaintiff is probably not acting well in his own interest. Because of the clear choice of Irish jurisdiction there is no certainty that proceedings initiated in any other jurisdiction would not fail because of that choice. If he gets judgment in Ireland in any form then it is a matter for him to endeavour to have it enforced in any other jurisdiction. The nature of his remedy in that jurisdiction is determined by the law of that jurisdiction. Thus if he sought to enforce his Irish judgment in Alberta the nature of the remedy the Albertan courts might give him would be determined by Albertan law. Remedies are procedures and there is no vested right in a particular

cause of action. The plaintiff must take the remedies available in the forum as he finds them. Furthermore there was no reason offered in this Court as to why a court in Alberta or Ontario or anywhere else would not be willing to give effect to an Irish judgment. In this connection it is of value to recall the statement of Fitzgibbon LJ in *Lett v Lett* [1906] IR 618 at pp. 639–640 where he quoted as a correct statement of the law the following passage from *Fry on Specific Performance* 4th Ed. p. 52, *ss. 126 and 127* :

> A contract made abroad may be enforced against a defendant within the jurisdiction of this country, and, as the remedies for breach of a contract are clearly governed by the *lex fori* , it follows that it is no objection to the specific performance in England of a foreign contract that the foreign law might have given no such remedy.

While the Irish courts probably would not enforce a foreign decree for specific performance they would certainly enforce one in Ireland, if one was made by an Irish court, even though the contract was a foreign contract.

However in the present case the plaintiff is not seeking specific performance. The principal remedies which he seeks are declarations and the injunction relief which he seeks is more the nature of a *quia timet* injunction, and would not, even in conjunction with the declaration which he seeks as his primary remedy, amount to specific performance. Even if one were to assume that the courts of Alberta or any other foreign jurisdiction would not enforce that part of an Irish judgment prescribing an injunction, they should have no similar difficulty so far as declarations are concerned. It is up to the Alberta courts applying the *lex fori* to translate these declarations into actual relief. No reason has been shown for the plaintiff to apprehend that he will in fact get no relief in a foreign court on foot of his Irish judgments. In my opinion there is certainly no basis for this Court for this reason to decline to permit his case to be considered here on the very threshold of the proceedings in this jurisdiction. Apart from that it may also be of considerable importance to the plaintiff to have a record of what the Irish Court determined in accordance with Irish law were his rights under the contract regardless of the question of enforcing the judgment. He might, for example, seek to avail himself of his contractual entitlements, on the basis of the Irish declarations, in a manner which does not involve direct enforcement of the Irish judgment, but which is consistent with them as a statement of his rights under Irish law as the proper law and declared by an Irish court.

I am not aware of any decision in Ireland or indeed in England in which the choice of an Irish, or an English jurisdiction as the case may be, has been set aside in favour of permitting litigation elsewhere. Even if the proper law of this contract was not Irish law I believe that a court in Ireland would have jurisdiction to deal with this matter because of the express choice of the Irish jurisdiction by the parties concerned. In the present case the parties have not merely chosen an Irish jurisdiction but have also agreed and chosen Irish law as the proper law of the contract. Where better can Irish law be interpreted and applied than in an Irish court?

There is quite a number of decisions in courts of various common law countries, including England, to the effect that a person who has agreed to a foreign jurisdiction, and then in breach of that agreement seeks to institute proceedings in England has had his action stayed. There are also many decisions of English courts to show that English courts are most reluctant to permit service out of the jurisdiction in the face of an agreement by the parties to submit their dispute to the exclusive jurisdiction of a foreign court. This is particularly so when the foreign jurisdiction clauses are *'exclusive jurisdiction'* clauses. It appears from the English case law that the principles underlying the English decisions are to the effect that where a plaintiff elects to sue in

England in breach of an agreement which referred the dispute to a foreign court, there is a very heavy burden upon such plaintiff to prove that there is a strong cause for the court not to exercise its jurisdiction to stay the proceedings. Admittedly there are also English decisions which indicate that English courts are often quite ready to assume jurisdiction in such cases by refusing a stay where the matter is one which would otherwise fall into the English jurisdiction. Such was the decision in one of the cases cited in the arguments before this Court, namely, the case of *Fehmarn, The* [1958] 1 All ER 333 . In fact that case is the converse of the present case. In that case the agreed law was Soviet Union law, and the agreed jurisdiction was Soviet Union jurisdiction. In my opinion, there is nothing in that decision to indicate that the English court would have declined to exercise jurisdiction in the face of a choice of English jurisdiction clause, nor have I been able to discover any commentator ever to have so understood it or so interpreted that decision.

As was stated recently by this Court in *Grehan v Medical Incorporated and Valley Pines Associated* [1986] IR 528 the permission to issue notice of proceedings out of the jurisdiction is within the discretion of the court. There is nothing whatever in the present case to show that discretion was not properly exercised and the case appears to have fallen squarely within the cases permitted by *O. 11* . The application by the defendants to have that order set aside is in effect asking the court to act in aid of the defendants in their efforts to act in breach of their own contract by endeavouring to avoid the Irish jurisdiction which they had expressly chosen and agreed to. In general the court should act in a way calculated to make people honour their contracts save where there is shown to exist some very grave cause to do otherwise. No such cause has been shown in the present case. This case is still only at its beginning and it would be a matter for the trial judge when it comes to trial to decide what, if any relief, he deems to be the appropriate relief. It will be a matter for him in the light of the case made and of the submissions made to him to decide whether or not he should grant the declarations sought and whether or not he should grant any injunctions. What is clear beyond all doubt is that the law, and the only law, which he shall be guided by in these decisions is Irish law.

I would allow this appeal and set aside the order of Carroll J.

**HENCHY J:** The plaintiff has the rights of the lenders named in the loan agreement entered into in May 1978, and the defendant company, for the purposes of that agreement, stands in the shoes of the borrower named in the agreement. The borrower having defaulted in the repayment with interest of the money lent, the plaintiff has sought to assert in this jurisdiction his rights under the agreement. He relies on *clause 10* of the agreement, which provides in effect that the agreement is to be construed and governed by the law of this State, that it is to be deemed to have been made in this State and that any dispute arising out of it is to be dealt with exclusively in the courts of this State. The parties plainly chose Irish law as the law governing the agreement and an Irish court as the proper and exclusive forum for the resolution of any dispute under the agreement.

The problem presented in this appeal arises from the fact that, save for that clause, the agreement, the parties to it and the subject matter of it have no connection with this State. (A guarantor who was a party to the agreement then had a Dublin address, but as he is not involved in the present proceedings, he may be ignored). The uncontroverted facts show that the agreement was made in Canada; that the defendant company was incorporated under the laws of Alberta, where its registered office is situated; that the plaintiff then had an address in South Africa but apparently is now based in London; and that the plaintiff's rights in and over the shares in the defendant

company will involve the application of the relevant laws of the province of Alberta. Aside from the wishes of the parties as expressed in the agreement, Ireland has no connection, direct or indirect, with the parties to or the subject matter of the agreement. That being so, should the choice of this State as the venue for the resolution of the dispute that has arisen be allowed to prevail?

The matter has come to a head in the following way. The plaintiff was granted *ex parte* an order in the Irish High Court giving him liberty to serve notice of an originating summons on the defendant company at a named address in Calgary, Alberta. The response of the defendant company was to apply under *R.S.C. O. 12, r. 26*, to the High Court for an order setting aside the service of the notice of the summons. Such an order was made by Caroll J, and this is the plaintiff's appeal against that order.

In so far as the main point at issue is governed by rules of court, *R.S.C. O. 11, r. 1(e)(iii)* provides that service out of the jurisdiction of a summons or of notice of a summons *'may be allowed'* when the dispute has arisen out of a contract which is *'by its terms or by implication to be governed by Irish law'*. It was plainly intended by the framers of the rule that even when the parties to the contract have expressly chosen Irish law as the proper law of the contract, liberty to serve the originating summons, or notice of it, out of the jurisdiction will not necessarily be allowed. The rule says it *may* be allowed. This connotes a discretion in the court. What requires to be decided now is how that discretion should be exercised in the particular circumstances of this case.

When one turns to principle rather than rules of practice or procedure, it has to be first pointed out that the defendant has not sought to avoid the provision in the contract that it is to be *'construed and governed'* by Irish law. So much is common case. What the defendant does contend for is that the provision in the contract giving exclusive jurisdiction to the Irish courts should not be enforced and that, having regard to all the circumstances, the plaintiff should be left to seek in Alberta the relief claimed in the present proceedings.

I consider it to be well-established law that an exclusive jurisdiction clause in a contract is *prima facie* binding as representing the contractually expressed agreement of the parties, but that the courts have a discretion, to be exercised in the light of the particular circumstances of the case, as to whether to hold the parties bound to accept that jurisdiction. While that statement of principle is not in dispute, it is submitted by counsel for the plaintiff that it is only in the most exceptional circumstances that a defendant should be held to have discharged the onus (which plainly lies on him) of showing that the exclusive jurisdiction clause should be disregarded.

It was suggested in the course of the hearing in this Court that there is no reported case in which an exclusive jurisdiction clause was disregarded. That, however, is not correct. I find cases in England and in other jurisdictions in which the courts have refused to hold the exclusive jurisdiction clause to be binding: see, for example, *Fehmarn, The* [1958] 1 All ER 333 and *Carvalho v Hull Blyth (Angola) Ltd* [1979] 3 All ER 280. The general effect of such decisions seems to be that, while the exclusive jurisdiction clause should generally be upheld, it should not be enforced if in all the circumstances of the case it would not be just and proper to do so.

Take for instance the case of *Fehmarn, The* in which Willmer J in the High Court and Lord Denning MR and Hodson and Morris LJ in the Court of Appeal all refused to apply an exclusive jurisdiction clause. It was a shipping case in which cargo-owners issued a writ in London against the owners of a ship, claiming damages in respect of a breach of the contract of carriage as

evidenced by the bill of lading. The contract provided that all claims and disputes should be judged in the U.S.S.R. and in accordance with U.S.S.R. law. The shipowners brought a motion to have the writ set aside for want of jurisdiction. In affirming the dismiss of that motion, Lord Denning MR said (at p. 335):

> The next question is whether the action ought to be stayed because of the provision in the bill of lading that all disputes are to be judged by the Russian courts. I do not regard this provision as equal to an arbitration clause, but I do say that the English courts are in charge of their own proceedings: and one of the rules which they apply is that a stipulation that all disputes should be judged by the tribunals of a particular country is not absolutely binding. Such a stipulation is a matter to which the courts of this country will pay much regard and to which they will normally give effect, but it is subject to the overriding principle that no one by his private stipulation can oust these courts of their jurisdiction in a matter that properly belongs to them ...
>
> It has been said by counsel for the shipowners that this contract is governed by Russian law and should be judged by the Russian courts, who know that law, and that the dispute may involve evidence from witnesses in Russia about the condition of the goods on shipment. Then why, says counsel, should not it be judged in Russia as the condition says? I do not regard the choice of law in the contract as decisive. I prefer to look to see with what country the dispute is most closely concerned.

I refer to that case as an example of the rejection of both the law and the jurisdiction chosen by the parties to the contract. There Lord Denning MR applied the test of which country the contract is most closely concerned with, but I for my part would adopt the general test appearing from the decided cases, namely, whether the party seeking to have the exclusive jurisdiction clause rejected has satisfied the court that in the circumstances of the particular case it would be just and proper to do so.

I turn therefore to the particular circumstances of this case. The loan agreement giving rise to this litigation provided that, in consideration of the loan of 150,000 Canadian dollars to the defendant company by the plaintiff, the defendant company would repay on a named date that capital sum with compound interest as specified in the loan agreement. The defendant company would seem to have defaulted in that repayment. The loan agreement went on to provide that in the event of that default the defendant company would, on request, allot to the plaintiff a number of its ordinary shares to be calculated by dividing the number of Canadian dollars representing the principal and compound interest then owing by 60 cents. The plaintiff reckons the number of shares thus computed to be 1,847,380. He complains that the defendant company has failed to allot those shares to him and (as the loan agreement also provided in the event of default in repayment) to allow him to nominate up to four persons as directors of the defendant company.

The relevant parts of the relief claimed in the originating summons which the plaintiff wishes to serve are as follows:

> 1. A declaration that the plaintiff is entitled to have allotted to him 1,847,380 ordinary shares in the defendant.
>
> 2. A declaration that the defendant do all such acts and execute all such documents as may be necessary to allot 1,847,380 ordinary shares in the defendant to the plaintiff.

> **3.** A declaration that the plaintiff is entitled to nominate four persons to be appointed as directors of the defendant.
>
> **4.** An order that the defendant do all such acts and execute all such documents as may be necessary to appoint the plaintiff's nominees as directors of the defendant.
>
> **5.** If necessary, that an account be taken of (1) the defendant's indebtedness to the plaintiff and (2) the number of ordinary shares to which the plaintiff is entitled.
>
> **6.** An order that the defendant do permit the plaintiff and/or his agents to inspect all books, records and accounts of the defendant.
>
> **7.** An injunction restraining the defendant its servants or agents or otherwise howsoever from charging selling or disposing of its assets or entering into any agreement which would reduce the value of the said.

The first thing to be noted is that there is no claim in that endorsement for the payment of the principal and interest due under the loan agreement. If that were the claim, the High Court in Dublin, as the mutually chosen forum, could readily and properly give judgment, and the plaintiff could then seek to sue abroad on foot of that judgment.

But the true nature of the claim made is quite different. The relief claimed, by means of declarations and injunctions (both negative or prohibitory and positive or mandatory) is for the purpose of implementing the contractual consequences of the defendant's breach of the duty of repayment. The claim is in effect one for specific performance of the contract in the events that have happened. The purpose of the claim is to compel the defendant company to allot to him 1,847,380 of its shares and to effectuate his nomination of four directors. That is the central relief sought and each of the specified reliefs sought in the summons is either directly or indirectly for the purpose of achieving that purpose. It has not been suggested, nor could it reasonably have been, that some of the relief sought should be dealt with by an Irish court and some by a court in Alberta. Neither convenience nor the choice of the parties points to such a splitting of the venue. The jurisdiction of the trial must be either Ireland or Alberta.

Let us consider the legal position that would arise if an Irish venue were provided in accordance with the contract. What would then come before the High Court in Dublin would be a claim by a plaintiff who has no contact, by residence, domicile, citizenship or otherwise, with Ireland, against a company registered in Alberta and whose trading is now carried on in Hong Kong, and which has no Irish connection, in respect of shares and directorships in that company. According to the contract giving rise to the action, the contract is to be *'construed and governed'* by Irish law. But a component of Irish law is private international law, which has been defined as *'that part of law which comes into play when the issue before the court affects some fact, event or transaction that is so closely connected with a foreign system of law as to necessitate recourse to that system'* : Cheshire and North's *Private International Law*, 11th edn., pp. 4–5. The claim being pursued by the plaintiff, necessarily involving the disposition of shares and directorships in the Alberta-based defendant company, clearly could not be disposed of in the Irish court without having recourse to the law, particularly the company law, of Alberta. Indeed, the main facts and the interpretation of the contract being hardly in dispute, an Irish judge would be largely concerned with ascertaining and applying Albertan law. That law could be ascertained only by means of the evidence of properly qualified witnesses, and if those witnesses disagreed, an impasse would be reached. However, even if the relevant Albertan law were clearly and

unequivocally proved, much of the claim would have to be decided by the application of Albertan law. Thus it might be thought that there would be a frustration of the contractually-expressed intention of the parties, for it may be that the provision in the contract for the mandatory application of Irish law and for the recourse exclusively to the Irish jurisdiction was intended to ensure that in the resolution of disputes arising under the contract the resulting court proceedings would not involve the application of the law of Alberta or of that of any other non-Irish jurisdiction.

However, even if that interpretation of the intention of the parties is not correct, there is a further and more fundamental reason for refusing to grant a hearing in Ireland of the plaintiff's claim. As I have pointed out, the plaintiff's claim is in essence one for the specific performance of the contract in the terms laid down by the contract in the event of default in repayment. This end is sought to be achieved by the grant of declarations and injunctions aimed primarily at compelling the defendant company to allot to the plaintiff 1,847,380 of its shares and to give effect to his nomination of four directors. But I fail to see how an Irish court could effectuate such injunctions.

I understand it to be a fundamental principle of our law that a court, in the exercise of its equitable jurisdiction, should not make orders which it is unable to carry into effect. A court exercising such a jurisdiction is said to act *in personam*. Where the defendant is a limited company, it is nonetheless amenable to the court's jurisdiction if it is registered in this State, or even if it only has assets within the State, for in such event the court could give effect to its orders by processes such as attachment for contempt, or the sequestration of the company's assets, or the nomination of persons to give effect to the court's order. But the defendant company is registered in Alberta, it does not trade in this State, its personnel do not seem to have any connection with this State, and it apparently has no assets in this State.

An order of an Irish court seeking to compel the defendant company to allot shares to the plaintiff and to give effect to his nomination of directors would be outside the legitimate range of the court's jurisdiction. Apart from the risk of seeking to compel a performance which might not be consistent with the laws of Canada or of the province of Alberta, an Irish court's order would be bad for being in excess of what the court can legitimately and effectually seek to compel. The court would have acted to no effect, for those required to act in conformity with requirements could with impunity ignore the court's order. They would be far beyond the court's capacity to compel performance by them or to punish them for nonperformance. In other words, the court would have acted in vain. And, as the legal aphorism goes, equity never acts in vain.

The plain fact of the matter is that the relief sought by the plaintiff could be effectively granted only by a court in Alberta. As a matter of practicality, apart from purely legal considerations, it is difficult to see how the defendant company could be made amenable to specific performance of the contractual obligations, save in Alberta.

However, it is not strictly necessary to go that far. It is sufficient to say that, for the reasons I have given, considerations of justice, fairness, practicality and convenience rule out an Irish court as the venue for the disposition of the plaintiff's claim.

I would dismiss this appeal.

**McCARTHY J:** On 1 December 1986 Murphy J ordered that the plaintiff be at liberty to issue an originating plenary summons against the defendant. Due notice was given to the defendant which moved pursuant to *O. 12, r. 26 of the Rules of the Superior Courts* and

obtained, *per* Carroll J an order that the order of 1 December 1986 be discharged. The plaintiff appeals against the order of Carroll J.

**The Facts**

By a loan agreement made 26 May 1978 Allied Venture Properties Ltd (now *'Buckingham'* ), a company formed under the laws of the Province of Alberta, Canada, and having its registered office premises in Calgary, Alberta, and its business office in Toronto, Ontario, Canada, upon the terms contained in the agreement, borrowed one hundred and fifty thousand Canadian Dollars (C$150,000) from Brian Leigh and Weybridge Properties Ltd, a Bahamian company, both of Nassau, Bahamas, and both acknowledged to be lending as agents for John Francis Kutchera and his assignees of Transvaal, South Africa, (the plaintiff — *'Kutchera'* ). Michael Sylvester Birrane, the then chairman and president/managing director of Buckingham, having his address in Dublin, entered into the loan agreement as a guarantor. The repayment of the sum borrowed was to be made to Leigh and Weybridge Properties at Johnson Matthey Bankers Ltd London, England to the account of J.F. Kutchera on or before 26 May 1983. Further provisions of the loan agreement, if binding, in the events which have happened, entitled Kutchera, as he did, to demand of Buckingham that it should allot 1,847,380 shares in Buckingham to him, being the share equivalent, at C$0 60 per share of the total sum due as an accumulation of principal and interest as set out in the agreement, to inspect all books, records and accounts of Buckingham, and to nominate up to four persons to be appointed as directors of Buckingham.

*Clause 10* of the loan agreement provided as follows:

> This agreement and all aspects herein shall be construed and governed by the Laws of the Republic of Ireland (EIRE) and shall be deemed to have been made in the Republic of Ireland and subject only to the jurisdiction of the Irish Courts and no other jurisdiction and the parties hereto irrevocably submit to the jurisdiction of the Courts of the Republic of Ireland in all or any matter of dispute arising out of this Agreement.

Robert Robertson, a director of Buckingham, has stated on affidavit that Buckingham has approximately 500 to 600 shareholders, the majority of whom reside in Canada and the United States of America. Approximately 81.23 per cent of all the issued and outstanding shares of Buckingham are held by Overseas Union Realty Ltd (formerly known as Hong Kong Barge Ltd) a Hong Kong company, now in liquidation. As far back as October 1978, as appears from minutes of Buckingham exhibited in the proceedings, meetings of the Board of Buckingham were held in Hong Kong, where at least five of the directors live. In an action instituted in the Court of Queen's Bench of Alberta by David Cowper on behalf of minority shareholders, suing Buckingham, certain directors, and the majority shareholder, Overseas Union Realty Ltd, it was ordered that the action be stayed but that in the event that the Supreme Court of Hong Kong refuses to assume jurisdiction over an action similar to that action then the plaintiffs should have leave to apply to set aside the Order.

From this statement of facts it will be seen that of the parties to the loan agreement the lender (Kutchera) then had an address in South Africa (his address in the plenary summons being stated to be in London, England), his agents had addresses in the Bahamas, the borrower had been formed under the laws of the Province of Alberta, Canada, had its registered office in Alberta but its business office in Ontario and its business in Hong Kong, that the guarantor, the chairman and president/managing director of the Alberta company had his address in Dublin, that the money lent was in Canadian dollars but repayable to a banking company in London. Whilst it does not so

appear from the affidavits, it has been stated without contradiction that the loan agreement was executed in Canada; it may fairly be said that the transaction had an international flavour.

Assuming, as for the purpose of this appeal one must, that Kutchera advanced the money to Buckingham, which defaulted in payment, and that Kutchera is therefore entitled to relief on the terms of the agreement, he seeks relief in two forms, declaratory and injunctive. It is not questioned that the agreement must be construed according to Irish law, since it so provides. The contest is one of venue. Kutchera asks that *clause 10* be enforced, that the parties be held to the bargain; Buckingham, whilst acknowledging the provisions of *clause 10* , says that the jurisdiction provision should not be enforced. For my part, I would hold the parties to their bargain.

**The Law**

No Irish decision directly in point has been cited on the hearing of the appeal. Counsel on both sides agree, however, that the correct legal principle is that the parties' choice of jurisdiction should be upheld and the necessary procedural orders granted unless there are strong reasons to the contrary. Counsel for Buckingham argues that the injunctive relief sought involves interference in the internal management of a foreign company, a form of relief which a court in Ireland can neither enforce nor supervise, relying upon the observations of Pennycuick J in *Pergamon Press Ltd v Maxwell* [1970] 2 All ER 809 . In that case the English company (*'limited'* ), which had removed the defendant from its own Board, sought an order requiring him to call a meeting of the American company (*'incorporated'* ) for the purpose of removing certain directors, including himself. This the High Court refused to do. Pennycuick J said at 813(j):

> It is accepted on behalf of Limited that the power under *section 1.02* is a fiduciary power of a discretionary nature, vested in the defendant in the capacity of an officer of Incorporated. It follows that the defendant is bound to exercise that power in good faith in the interest of Incorporated as a whole. There is no suggestion that the law of New York is different in this respect from that of England. That being the position, it seems to me, in the first place, that the New York Court is the only proper tribunal in which the members of Incorporated could seek to control the exercise of this power. It cannot be open to an English court to control the exercise of a fiduciary power of a discretionary nature arising in the internal management of a foreign company. But even if this difficulty were overcome, the court would not, at the instance of some only of the members of Incorporated, make a mandatory order on the defendant directing him to exercise his discretion in a certain manner. That would, I think, be contrary to the principles on which the court acts in controlling trustees or others in the exercise of fiduciary discretionary powers. I observe, in parentheses, that if this were an English company, other remedies might be available. In any event, it seems to me that Incorporated would be a necessary party to proceedings seeking such an order ...

Later, at 814(e) he says:

> I am only indirectly concerned with the question whether the New York Court would give effect to the order now sought if it were made. On this point there is a difference of opinion between the American lawyers who have sworn affidavits on either side. I have no doubt that if the position were reversed and a foreign court directed one of its own nationals who is an officer of an English company to exercise in a certain manner

> discretionary power vested in him for the benefit of the English company, this court would not feel bound to give effect to the order.

These observations seem to me to fall far short of supporting Buckingham's case. It seems to me to go no further than stating that the court will not seek to control the exercise of a fiduciary power of a discretionary nature, not because it is in the internal management of a foreign company, but rather because it was a fiduciary power of a discretionary nature. Yet, Pennycuick J contemplated that that difficulty might be overcome and reflected that in a case where a foreign court directed one of its own nationals who was an officer of an English company to exercise in a certain manner discretionary power that court would not feel *bound* to give effect to the order. In *Bula Ltd (In Receivership) and Others v Tara Mines Ltd and Others* [1988] ILRM 149 (under appeal to this Court) Murphy J refused an application by foreign defendants, made pursuant to *O. 12, r. 26*, for the discharge of an order granting liberty to serve notice of the plenary summons in the action on such defendants where the relief claimed against them was for a declaration as to the duty to enter into negotiations of a particular kind. In the course of argument in this appeal attention was drawn to *Kingston v Irish Dunlop Co Ltd* [1969] IR 233 a decision of this Court, in which the plaintiff claimed a declaration of rights under the compromise of an action for personal injuries originally brought against the defendants. It was not a case in which any problem would have arisen about enforcement as such, the defendants being within the jurisdiction, but it contains a significant statement of the law and a convenient summary of the case law on such an issue. At p. 241 Ó Dalaigh CJ, with whom Walsh and FitzGerald JJ expressly agreed, said:

> In my opinion *clause 2* of the consent did entitle the plaintiff to be employed by the defendants in the scrap section while they were willing to maintain him in their employment and while they had a scrap section in which employment was available and while, as I have already said, his disability continues. This is the right which the defendants, both in the correspondence preceding the initiation of proceedings and by their defence in the action, contended that the plaintiff did not have.

> Is the plaintiff entitled to have a declaration of his rights? The plaintiff relies on *Order 19, r. 29, of the Rules of the Superior Courts*, which states that:- *'No action or pleading shall be open to objection on the ground that a merely declaratory judgment or order is sought thereby, and the Court may, if it thinks fit, make binding declarations of right whether any consequential relief is or could be claimed or not.'* This rule, save for the addition of the words *'if it [i.e. the court] thinks fit'* is a transcription from *Order XXV, r. 5*, of the Rules of 1905 which, in its turn, was taken from the Rules of 1877. This rule has been common to English and Irish jurisdictions since the passing of the respective Judicature Acts and its wide scope has long been settled. Bankes LJ, in *Guaranty Trust Company of New York v. Hannay & Co* at p. 568 of the report, discussed the background to the rule and then says:

>> It is obvious from a mere reading of the language of the rule that it introduces a considerable extension into the practice previously existing. It enables the Court to make the declaration irrespective of whether consequential relief could be claimed or not. Lindley M.R. in *Ellis v Duke of Bedford* [1899] 1 Ch 494, 515 refers to this as an innovation of an important kind; Farwell L.J. in *Chapman v Michaelson* [1909] 1 Ch 238, 243 refers to it as a novel practice created by the *Judicature Act*, which cannot be limited by the old equitable practice; and Warrington J. in *Burghes v Attorney-General* [1911] 2 Ch 139, 155, differing in this apparently from what he had previously said in *Offin v Rochford Rural*

> *Council* [1906] 1 Ch 242 , 358, says that the Order is intended to deal with the very case — that is, one in which no relief can be claimed either by way of damages for the past or an injunction for the future — and that several cases had occurred where declarations had been made under the Order where there was no cause of action in the proper sense, and he cites *Jenkins v Price* [1907] 2 Ch 229 as an example. A later and still more forcible instance of the same view is to be found in *Dyson v Attorney-General* [1912] 1 Ch 158 , the question being as to validity of a Form IV notice. Fletcher Moulton L.J. says (at p. 168) *'that an action thus framed'* (that is, asking for a declaration of right) *'is the most convenient method of enabling the subject to test the justifiability of proceedings on the part of permanent officials purporting to act under statutory provisions.'* In *Jenkins v Price* Swinfen Eady J. granted the declaration of right asked for, but without costs because the plaintiff had no cause of action, and Eve J. followed the same course in *Evans v. Levy* .

See also the observations, in the same case, of Pickford LJ at pp. 558–9.

> In my judgment the court should make the declaration sought. The declaration is not valueless. If the position in the defendants' factory changes and work again becomes available in the scrap section then, other things being equal, the plaintiff will be entitled to be employed there; and this declaration will have established for the plaintiff, against the defendants' contrary assertions, what his rights are under the agreement.
>
> I shall add that I am also of opinion that it is an implied term of the consent that the defendants will give the plaintiff comparable light work if work in the scrap section is not available. There is some evidence that the defendants did not do so and some evidence of loss arising therefrom. The plaintiff, however, is content to have his rights declared without more. I would make a declaration in the terms I have indicated.

*O. 19, r. 29 of the Rules of the Superior Courts, 1986* , is identical with the rule quoted in the extract.

## Conclusion

The essence of the defendant's argument appears to me to include the bald statement that if the court entertains the action, finds for the plaintiff and grants the declaratory relief sought, the defendant which has expressly consented to the jurisdiction in the contract sought to be enforced will then flout the order of the court. I do not find such an argument attractive nor do I deem it good in law. In the course of argument, a number of references were made to issues of public policy; in my view, in actions concerning commercial contracts the first principle of public policy should be that the parties should be held to their terms.

It is self-evident that, if this dispute is tried in Ireland, evidence will have to be given as to the law of Alberta and, possibly, the federal law of Canada as to the powers, etc., of a company incorporated in Alberta, but the contract must be construed according to Irish law, which would be the fact whether the action is tried in Ireland, in Alberta, in Hong Kong or elsewhere. In my view, the learned trial judge placed too much emphasis upon the legal capacity of Buckingham; Buckingham did not seek to support the reasoning of the trial judge on the hearing of the appeal

but relied upon the argument that I have sought to outline, which argument was advanced in the High Court, but is not reflected in the judgment. An amount of authority *[ Dicey and Morris — Conflict of Laws — 11th edition at pp. 304, 320–321 Halsbury's Laws of England — Vol. 8 para. 584 Grehan v Medical Incorporated [1986] ILRM 627 Vita Food Products Inc. v Unus Shipping Company Ltd [1939] AC 277 Boissevain v Weil [1949] 1 KB 482 : 1950 AC 387 Fehmarn, The [1958] 1 WLR 159 Tzorszis v Monarch Line [1968] 1 WLR 406 In Re Herbert Wagg and Company Ltd's Claim [1956] Ch. 323 Unterweser Reederei v Zapata Off-Shore Company (the 'Chapparral') [1968] 2 II LR 158 Mackender and Others v Feldia A.G. [1967] 2 QB 590 Limerick Corporation v Crompton [1910] 2 IR 416 ]* was cited but none, and there are apparently none, in which a choice of English jurisdiction clause had not been enforced. There is, therefore, no opportunity of comparing like with like. In *'The Chaparral '* the Court of Appeal in England stated the policy of the court to hold parties to the bargain into which they have entered; that was not an inflexible rule; and the court had a discretion which, in the ordinary way and in the absence of strong reason to the contrary would be exercised in favour of holding parties to their bargain; that it had not been shown that the High Court judge's exercise of his discretion had been plainly wrong; and that, therefore, the court should not interfere. The latter reasoning would not apply in this jurisdiction but I would prefer to express what I conceive to be the correct approach in different terms. In my view, it must be the policy of this and other courts to hold parties to the bargains into which they enter. Whilst that remains the policy, there may be circumstances of a compelling nature in the light of which the court may permit a part to renege upon his bargain. In my view, no such reason has been established in the instant case. In her judgment, Carroll J. stated that the defendant (Buckingham) queried the *bona fides* of the plaintiff (Kutchera) but she did not consider that this question could be decided on affidavit. I share that view.

I would allow the appeal and dismiss the motion.

**Representation**

Solicitors for the appellant: *Ronan Daly Jermyn & Co.*
Solicitors for the respondent: *Eugene F. Collins & Son*
Noreen Mackey Barrister