**[1997] 2 I.L.R.M. 499**
**Carna Foods Ltd and Edmund Mallon v. Eagle Star Insurance Co. (Ireland) Ltd;**
**1995 Nos. 217/226**

**Court:** Supreme Court
**Judge(s):** (Nem. Diss.) **(Hamilton CJ , Keane** and **Lynch JJ )**
**Date:** 28 May 1997

*Contract—Implied terms—Insurance—Whether obligation to give reasons for cancellation and/or refusal to renew policy—Whether court should imply term—Whether there is an implied obligation to restore the appellants to the position they enjoyed prior to their contracting with the defendant*

*Competition—Concerted practice—Dominant position—Competition Act 1991 (No. 24) , ss. 4,5*

## Facts

Both plaintiffs had insurance policies with the defendant covering several premises and the businesses carried on therein. The second named plaintiff was the managing director of the first named plaintiff. On 24 August 1993 the defendant wrote to the plaintiffs stating that it would not be renewing three of the policies. Similar letters on the same day cancelled two other policies which were not up for renewal. The plaintiffs demanded that the defendant should give reasons for their letters of 24 August 1993, but the defendant declined to do so. The plaintiffs then instituted proceedings seeking a declaration that the defendant was wrong in failing to disclose the reasons for the cancellation of policies and they sought to direct the defendant to disclose the reasons. The plaintiffs also sought a declaration that the defendant was in breach of the *Competition Act 1991* . The plaintiffs contended that the defendant was acting pursuant to a concerted practice which restricted or distorted trade, contrary to *s. 4* , or that it was abusing a dominant position, contrary to *s. 5* . In a judgment delivered on 9 June 1995 McCracken J dismissed the plaintiffs' claim for a declaration and consequential orders and the plaintiffs appealed against this decision (see [1995] 1 IR 526 ; [1995] 2 ILRM 474 ). The plaintiffs submitted, *inter alia* , that all insurers include a question in their proposal form as to whether the risk proposed has been declined or cancelled by any other insurer. If it has and the proposer cannot give reasons for the declinature or cancellation to the alternative insurer, it will be impossible for him to obtain alternative cover in respect of the risk. The plaintiffs' argument was, therefore, that there must be an implied term in the defendant's policy that in the event of a declinature or cancellation, reasons must be given. They also claimed that there was an implied term that the defendant would do nothing to prevent the plaintiffs from obtaining alternative insurance for the risk which the defendant had declined or cancelled, and that the plaintiffs should be returned to the position they were in prior to the defendant insuring them. It was further argued that the fact that all insurers want to know the reasons for a declinature or cancellation is in itself a concerted practice contrary to *s. 4 of the Competition Act 1991* . The defendant argued that the implication of a term such as that sought could have startling ramifications. It also denied that there was any evidence of concerted conduct or of any agreement restricting or distorting the market.

**EXHIBIT C - PART II**
**TO AFFIDAVIT OF LAURENCE K. SHIELDS**

by the Supreme Court (Lynch J; Hamilton CJ and Keane J concurring) in dismissing the appeal:

**(1)** If it was sought to include the proposed implied term in the insurance policy at the time when the plaintiffs were seeking insurance, the defendant would not have contracted with the plaintiffs at all. *Shirlaw v. Southern Foundries (1926) Ltd* [1939] 2 KB 206 considered .

**(2)** The following basic principles precluded the implication of a term into the policies to the effect that in the event of a declinature or cancellation the defendant must state its reasons:

**(i)** A term can be implied if and only if the court finds that the parties must have intended that term to form a part of their contract.

**(ii)** It is not enough for the court to find that such a term would have been adopted by the parties as reasonable men if it had been suggested to them.

**(iii)** The term must have been one that went without saying, a term necessary to give business efficacy to the contract, and a term which although tacit, formed part of the contract which the parties made for themselves. *Trollope and Colls Ltd v. North West Metropolitan Regional Hospital Board* [1973] 2 All ER 260 approved .

**(3)** There was no basis for the claim that a term that the defendant should give its reasons for a declinature and/or cancellation should be implied in policies of insurance. *Sun Fire Office v. Hart* (1889) 14 App Cas 98 approved .

**(4)** The claim that the plaintiffs should be put back into the same position that they enjoyed before they entered into contracts of insurance with the defendant was an impossibility and that such a term should not be implied.

**(5)** There was no evidence to support the contention that the defendant was in breach of *ss. 4 or 5 of the Competition Act 1991* .

### Cases referred to in judgment

*Glover v. BLN Ltd* [1973] IR 388
*Liverpool City Council v. Irwin* [1977] AC 239 ; [1976] 2 WLR 562 ; [1976] 2 All ER 39
*Moorcock, The* (1889) 14 PD 64
*Murphy v. Hibernian Insurance Co.* High Court 1993 No. 8146P (Keane J ) 13 December 1993
*Rajah v. Royal College of Surgeons in Ireland* [1994] 1 IR 384 ; [1994] 1 ILRM 233
*Shirlaw v. Southern Foundries (1926) Ltd* [1939] 2 KB 206
*Siney v. Dublin Corporation* [1980] IR 401
*Sun Fire Office v. Hart* (1889) 14 App Cas 98

*Trollope and Colls Ltd v. North West Metropolitan Regional Hospital Board* [1973] 1 WLR 601 ; [1973] 2 All ER 260

**Representation**

*James Connolly SC* , *Patrick Hanratty SC* and *Paul McMorrow* for the appellants
*Paul Sreenan SC* and *John Gleeson* for the respondent
**LYNCH J** (Hamilton CJ and Keane J concurring) delivered his judgment on 28 May 1997 saying: This is an appeal by both plaintiffs against the dismissal by the High Court (McCracken J) on 9 June 1995 of their claim for a declaration and consequential orders that the defendant is bound to give to the plaintiffs reasons why the defendant by letters dated 24 August 1993 cancelled two policies of insurance and declined to renew three other policies of insurance which at that time were operative to indemnify the plaintiffs against certain risks (see [1995] 1 IR 526 ; [1995] 2 ILRM 474 ).

**The facts**

**(1)** By a policy of insurance number 72242479/5 the defendant provided indemnity to the first named plaintiff against certain risks in respect of the first named plaintiff's abattoir and meat factory premises and the business carried on therein situate at Main Street, Castleblayney in the County of Monaghan. This policy first came into operation on 9 September 1988.

**(2)** By another policy of insurance number 60210003 the defendant provided employer's liability indemnity to the first named plaintiff in respect of the first named plaintiff's business carried on in the premises at Main Street, Castleblayney aforesaid. This policy replaced similar provisions included, *inter alia* , in the policy described at number 1 above and this policy first became operative on 9 September 1992.

**(3)** By a third policy of insurance number 72242480 the defendant provided indemnity to the second named plaintiff in respect of the second named plaintiff's public house premises and the business carried on therein situate at Main Street, Castleblayney in the County of Monaghan. This policy first became operative on 9 September 1988.

**(4)** By a fourth policy of insurance number 72245540 the defendant provided indemnity to the second named plaintiff in respect of the second named plaintiff's shop and retail units and the business carried on therein situate at Monaghan Road, Castleblayney in the County of Monaghan. This policy first became operative on 2 April 1992.

**(5)** By a fifth policy of insurance number 72245542 the defendant provided indemnity to the second named plaintiff in respect of the second named plaintiff's premises and the business carried on therein situate at number 87 Clanbrassil Street, Dundalk in the County of Louth. This policy first became operative on 27 April 1992.

The second named plaintiff is the managing director of the first named plaintiff and is also the major shareholder in the first named plaintiff and at all material times had absolute control of the business and affairs of the first named plaintiff.

Between the dates when the said policies first became operative and the month of August 1993 the plaintiffs made claims on foot of the said policies of insurance in respect of which the defendant ultimately paid sums totalling in or about £1,000,000. On 24 August 1993 the defendant wrote in respect of the first three policies described above separate letters in identical terms to the insured named in each policy as follows:

> I note that this policy falls due for renewal on 9 September 1993. I regret to advise however that we will not be inviting renewal. All cover will automatically cease with effect from 12 noon, 9 September 1993.

The fourth and fifth policies described above each contained the following condition:

> **13.** Cancellation
>
> The insurer may cancel this policy or any section thereof at any time by sending 14 days' notice by registered post to the insured at the insured's last known address and in such event the insured shall become entitled to a return of premium in respect of the unexpired portion of the period of insurance.

On 24 August 1993 the defendant wrote in respect of the fourth and fifth policies described above separate letters in identical terms to the second named plaintiff being the insured in each of those policies as follows:

> In accordance with our rights under the cancellation condition, we hereby advise that all cover shall cease under this policy on 7 September 1993.
>
> There will be no return allowed as we note that the renewal premium has not in fact been paid.

The plaintiffs demanded that the defendant should give reasons for its letters of 24 August 1993 to the plaintiffs, which the defendant declined to do. The plaintiffs accordingly instituted these proceedings by the issue of a plenary summons on 26 August 1994 and in their statement of claim delivered on 20 September 1994 the plaintiffs claimed, *inter alia*, as follows:

> **(a)** A declaration that the defendant has wrongfully failed to disclose the reason(s) for the cancellation of several policies of insurance held not only by the company but also by its principal, Edmund Mallon on substantial property that he holds in his own name, regarding the policies and premises detailed at paragraph 4 of this statement of claim.
>
> **(b)** An order directing the defendant to disclose the reason(s) for the cancellation of each of those several policies of insurance forthwith.
>
> **(c)** ...
>
> **(d)** A declaration that the defendant is in breach of the provisions of the *Competition Act 1991*, as a result of:

**1.** Its failure to assist the plaintiffs to obtain replacement insurance.

**2.** Its anti-competitive policies.

**3.** Its abuse of its dominant position.

**Submissions**

Counsel for the plaintiffs/appellants submitted:

(1) All insurers include in their proposal forms a question as to whether the risk proposed has been declined or cancelled by any other insurer. If it has and the proposer cannot give the reasons for such declinature or cancellation to an alternative insurer then it will be impossible for him to obtain alternative cover in respect of the risk. Therefore there must be an implied term in the defendant's policies that in the event of a declinature or cancellation the reasons therefor must be given.

(2) There must also be an implied term in the policies that the defendant will do nothing to prevent the plaintiffs from obtaining alternative insurance in respect of the risk which the defendant has declined or cancelled.

(3) Furthermore the defendant must have an implied obligation to restore the plaintiffs to the position which they enjoyed regarding obtaining insurance cover prior to their contracting with the defendant.

(4) All insurers want to know the reasons for a declinature or cancellation and this in itself is a concerted practice or activity contrary to *s. 4 of the Competition Act 1991*.

Counsel for the defendant/respondent submitted:

(1) There can be no difference between the suggested obligation to give reasons for a declinature or a cancellation of a policy. If such an obligation exists where does it stop? Is the obligation confined to questions of insurance or could it extend to other contracts such as contracts of employment? The ramifications of such an implied term are startling.

(2) The case of *Glover v. BLN Ltd* [1973] IR 388 is of no assistance to the plaintiffs in this case. In that case the contract of employment specifically provided for an enquiry before the plaintiff could be dismissed from his position in the defendant company: the decision was that such an enquiry must be fairly conducted. In the present case the defendant can cancel their policies or decline to renew them for any reason good, bad or indifferent or indeed for no reason at all. This state of affairs completely negates the need for an advance hearing or enquiry and therefore one cannot review the reasons or procedures leading to such a decision. Authorities in regard to public law enquiries and the like are of no relevance or assistance in this case.

(3) In regard to the *Competition Act 1991* the learned trial judge found that there was no concerted conduct nor any agreement restricting or distorting the market and there was evidence to support such decision.

Counsel for the various parties referred to quite a large number of authorities the principal ones being: *Glover v. BLN Ltd* [1973] IR 388 ; *Sun Fire Office v. Hart* (1889) 14 App Cas 98 ; *The*

*Moorcock* (1889) 14 PD 64 ; *Liverpool City Council v. Irwin* [1977] AC 239 ; *Siney v. Dublin Corporation* [1980] IR 401 ; *Rajah v. Royal College of Surgeons in Ireland* [1994] 1 IR 384 ; [1994] 1 ILRM 233 ; *Murphy v. Hibernian Insurance Co.* , High Court No. 8146P (Keane J ) 13 December 1993 .

**Conclusions**

The plaintiffs say that one must imply a term into the policies of insurance issued by the defendant to the plaintiffs in this case to the effect that if a policy is cancelled or its renewal is declined the defendant must give its reasons for so doing. Apart from cases where the law implies some terms into certain kinds of contract, whether by statute or by common law (for example sale of goods, hire purchase, landlord and tenant, sale of lands *etc.* ) one can imply a term into a contract only when the implied term gives effect to the true intentions of all the parties to the contract who might be affected by such implied term. The learned trial judge in his judgment in this case which is now reported in [1995] 1 IR 526 ; [1995] 2 ILRM 474 quoted from the well known *dictum* of MacKinnon LJ in *Shirlaw v. Southern Foundries (1926) Ltd* [1939] 2 KB 206 at p. 227 and I also quote that *dictum* here:

> *Prima facie* that which in any contract is left to be implied and need not be expressed is something so obvious that it goes without saying: so that if while the parties were making their bargain an officious bystander were to suggest some express provisions for it in their agreement, they would testily suppress him with a common *'oh of course'* .

Here the evidence before the learned trial judge is quite clearly to the effect that if such a term were sought to be included in the insurance policies at the time when the plaintiffs were seeking insurance the defendant would not have contracted with the plaintiffs at all. If the officious bystander had interrupted in relation to condition 13 of the policies and had asked the defendant *'If you do cancel, will you give your reasons for cancelling?'* The defendant's answer would have been an emphatic *'No'* whereas to imply such a term into the policies the answer would have to be by both parties *'Yes, of course'* expressed rather testily to discourage the officious bystander from further interrupting.

It is also helpful to quote what Lord Pearson said in 1973 in the case of *Trollope and Colls Ltd v. North West Metropolitan Regional Hospital Board* [1973] 2 All ER 260 at p. 268:

> An unexpressed term can be implied if and only if the court finds that the parties must have intended that term to form part of their contract: it is not enough for the court to find that such a term would have been adopted by the parties as reasonable men if it had been suggested to them: it must have been a term that went without saying, a term necessary to give business efficacy to the contract, a term which although tacit, formed part of the contract which the parties made for themselves.

These basic principles of law preclude the implication of a term into the policies to the effect that in the event of a declinature or cancellation the defendant must state its reasons therefor.

Specifically in relation to insurance law this question of an obligation to give reasons has long since been decided in the case of *Sun Fire Office v. Hart* referred to above. The relevant clause in that case read:

> If by reason of such change, or from any other cause whatever, the society or its agents should desire to terminate the insurance effected by the said policy, it shall be lawful for the society or its agents so to do, by notice to the insured or to the authorised representatives of the insured and to require the policy to be given up for the purpose of being cancelled: provided that in any such case the society shall refund to the insured a rateable proportion for the unexpired term thereof of the premium received for the insurance.

A question arose as to whether the words *'or from any other cause whatever'* were governed and restricted by the reference to *'such change'* which had been described earlier in the clause. It was decided that they were not so governed or restricted and stood on their own. At p. 103 of the report of the judgment of Lord Watson he states as follows:

> The condition does not involve the avoidance of the policy *ab initio*, or forfeiture of the premium paid to the insured. There may be many circumstances calculated to beget, in the mind of a fair and reasonable insurer, a strong desire to terminate the policy, which it would be inconvenient to state and difficult to prove: and it must not be forgotten that the whole business of fire insurance offices consists in the issue of policies, and they have no inducement, and are not likely to curtail their business, without sufficient cause. On the other hand the insured gets all the protection which he pays for, and when the policy is determined, can protect his own interests by effecting another insurance.

Of course the plaintiffs in this case say that having been refused renewal of three policies and had another two policies cancelled and not being aware of what the reasons are for such an attitude by the defendant it is not possible for them to effect alternative insurance. A curious feature of the case of course is that no effort was made either by the plaintiffs themselves or by their insurance brokers to negotiate with an alternative insurer with a view to getting insurance cover again. Undoubtedly it makes it more difficult to get alternative cover when policies have not been renewed or have been cancelled but that would have been so to some extent at any rate at the time of the *Sun Fire Office* case just as it is today.

If the court were to imply such a term into the contracts of insurance the consequences would be very far reaching. Supposing for example that in the present case the defendant although not having evidence to support its suspicions in fact genuinely believe that the fire in the abattoir and the meat factory at Castleblayney was a case of arson committed by or at the behest of the plaintiffs and that that is the real reason for its rejecting the plaintiffs as insured parties. This appears to be what the plaintiffs themselves are suggesting at question 187 of the transcript of 31 May and question 29 of the transcript of 1 June 1995. If the defendant is bound to give reasons it must do so truthfully. One can scarcely imagine the litigation that such a situation would spawn especially when one recalls the plaintiffs' solicitors suggestion in their letter of 19 April 1994 that the defendant's mere silence was defamatory of the plaintiffs.

For all the foregoing reasons I would reject the claim by the plaintiffs that a term that the defendant should give its reasons for a declinature and/or cancellation should be implied in the policies of insurance.

It is also claimed that the defendant in addition to stating reasons should have an implied obligation to put the plaintiffs back into the same position that the plaintiffs enjoyed regarding obtaining insurance cover before they entered into the contracts of insurance with the defendant. This is an impossibility. The fact is that the plaintiffs did contract with the defendant as its

insurers and that the defendant cancelled two of the policies and declined to renew the other three policies and that will always be the position. One recalls the often quoted lines of the poet Edward Fitzgerald:

> The moving finger writes: and having writ,
>
> moves on: nor all thy piety nor wit
>
> shall lure it back to cancel half a line,
>
> nor all thy tears wash out a word of it.

I reject therefore the submission that such a term should be implied into the contracts between the parties.

Finally there remain the claims made of breaches of the *Competition Act 1991 . S. 4(1) and s. 5(1) and (2)* of that Act provide as follows:

### 4

**(1)** Subject to the provisions of this section, all agreements between undertakings, decisions by associations of undertakings and concerted practices which have as their object or effect the prevention, restriction or distortion of competition in trade in any goods or services in the State or in any part of the State are prohibited and void, including in particular, without prejudice to the generality of this subsection, those which:

**(a)** directly or indirectly fix purchase or selling prices or any other trading conditions;

**(b)** limit or control production, markets, technical development or investment;

**(c)** share markets or sources of supply;

**(d)** apply dissimilar conditions to equivalent transactions with other trading parties thereby placing them at a competitive disadvantage;

**(e)** make the conclusion of contracts subject to acceptance by the other parties of supplementary obligations which by their nature or according to commercial usage have no connection with the subject of such contracts.

### 5

**(1)** Any abuse by one or more undertakings of a dominant position in trade for any goods or services in the State or in a substantial part of the State is prohibited.

**(2)** Without prejudice to the generality of *subs. (1)* such abuse may, in particular, consist in — [and there follow four particularised abuses corresponding to *paragraphs (a) (b) (d) and (e) of s. 4(1)* quoted above.]

What the learned trial judge found in his judgment is set out at pp. 532 and 533/479–480 of the report as follows:

> With regard to the *Competition Act 1991*, it is necessary for the plaintiffs to establish either a concerted practice which restricts or distorts trade (*s. 4*) or an abuse of a dominant position (*s. 5*). On the evidence I am satisfied that there was no concerted practice between the insurance companies nor was there any practise organised by the Insurance Federation of Ireland. Furthermore even if it was established that the refusal to give reasons was in some way agreed between the companies or done on the advice of the Insurance Federation, I cannot see how such a refusal distorts or restricts trade.
>
> A claim under *s. 5* is even more difficult to establish. The defendant itself is clearly not in a dominant position, having only 6–7% of the market. To claim that two or more undertakings are abusing a dominant position, it would be necessary to show collusion, but I am satisfied that there is no common policy and no collusion on the evidence before me.

These findings by the learned trial judge are clearly supported by evidence adduced before him and for that reason must be upheld by this Court. Apart from that however the declinature or cancellation of insurance is virtually the opposite of what is being spoken about in *s. 4 and s. 5* which are aimed at large undertakings trying to get control of more and more of a market into which to sell their goods or services. That is not what the defendant is doing: far from trying to sell its insurance services by unfair means and abuse of a dominant position it is declining to sell those services and so far as a perceived danger of an inadequate supply of insurance services is concerned it was pointed out over a hundred years ago in the *Sun Fire Office* case that *'it must not be forgotten that the whole business of fire insurance offices consists in the issue of policies, and that they have no inducement, and are not likely, to curtail their business, without sufficient cause'*.

If the failure to give reasons for a declinature or cancellation of an insurance policy were to cause undue difficulty for persons requiring such insurance in general then it may be that the appropriate minister would take steps to deal with the problems so created for the public. It is significant that there is in existence so far as motor insurance is concerned a regime to deal with cases where people have undue difficulty in obtaining such motor cover. The fact that no such regime exists in relation to other insurance policies is no reason why the courts should seek to invent some such sort of regime by implying terms into insurance policies which it was never the intention of insurers should be undertaken by them as an obligation.

For all the foregoing reasons I would dismiss this appeal.

**Representation**

Solicitors for the appellants: *Seamus Mallon & Co.*
Solicitors for the respondent: *A. & L. Goodbody*
Niall B.M. Hill Barrister