674                    THE IRISH REPORTS.                    [1933]

High Court.
1933.
MacDonagh
v.
Tapey.
Hanna J.

calculate the actual injury sustained; and 4, excessive or punitive damages, which may be given when malice is proved.

In this case I do not think that the damages were contemptuous. I think the jury intended to give nominal damages to the plaintiff to clear his character. He had stated that he did not wish to make money; there had been some suggestion of a withdrawal, and, though that was contradicted later, the jury might not attach importance to that; they gave a nominal sum and it is not for me to say that they were wrong in doing so; though it might have been more satisfactory if the amount had been larger. If they had given a farthing, the plaintiff's case would have been stronger because the damages would have been contemptuous. It is settled that, if there has been misconduct on the part of the jury, the amount may be altered; the jury may show by their conduct in the box that they have not acted properly, and in that case the Judge may indicate in his note that their verdict was perverse. That being the state of the law, it is difficult for me to give the plaintiff any relief, although in this case I might have given a larger sum myself; but it has been laid down that the mere fact that the Court would have given a larger sum than the jury has given is no reason for interfering with the verdict of the jury. This application for an alteration of the amount of damages by the Court is quite different from an application for a new trial, where the Court, if it thinks the amount inadequate, can send the case back for a new trial. In this case the difficulty seems insuperable. We have not heard the witnesses and we have no material facts before us to enable us estimate the injury done to the plaintiff. Accordingly we could not increase the amount.

The defendant's appeal as to costs is allowed, and the plaintiff's application fails.

O'BYRNE J. concurred.

Solicitor for the appellant: *M. J. Walshe.*
Solicitors for the respondent: *T. Dillon-Leetch & Sons.*

M. E. D.

---

I.R.]                    THE IRISH REPORTS.                    67

Meredith J.
1932.
Feb. 2, 3, 4, 5, 25.
—
Supreme Court.
1933.
May 15, 16, 22, 23.

MICHAEL MacNAMARA & SON, PLAINTIFFS, v. THE OWNERS OF THE STEAMSHIP, "HATTERAS," DEFENDANTS. (No. 2.)

(1930. No. 28.)

*Shipping—Bill of lading—Subject to the provisions of the Harter Act—American contract—Construction—Clause of exemption from "negligence, fault or failures in proper loading or stowage—Loss arising from "faults or errors in the management of the vessel"—Faulty stowage—Foreign law—How construed—Expert evidence.*

Defendants, who were shipowners, by two bills of lading (which were similar) agreed to carry certain hogsheads of leaf tobacco from the port of Norfolk, U.S.A., to the port of Dublin, and there to deliver same to the plaintiffs in good order and condition. The bills of lading stated that the shipments were subject to all the terms and provisions of, and all the exemptions from liability contained in, an Act of Congress of the United States of America. That Act, by sect. 1, provides that it shall not be lawful for the owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading, any clause whereby he shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery, of merchandise committed to his charge; and any words or clauses of such import inserted in bills of lading shall be null and void and of no effect. Each of the bills of lading provided that neither the vessel, her owner, nor agent should be liable for loss or damages resulting from (*inter alia*) insecure vice, nature, defect, or change of character in the goods, and that "except when caused by negligence on the part of the vessel," neither the vessel nor the agent should be liable for loss or damage resulting from (*inter alia*) vermin. It was admitted: 1, that the hogsheads from any other goods, or vermin. It was admitted: 1, that the hogsheads of tobacco had been delivered to the defendants in good order and condition, and were so shipped, but that on arrival at the port of Dublin they were found to be damaged by vermin, which had penetrated into the hogsheads and had been stowed in the same part of the vessel as the hogsheads of tobacco, and warm on arrival at Dublin found to contain vermin of the same species; and 3, that the vermin were not due to, or caused by, anything inherent in the hogsheads of tobacco, but came from the rabbit skins. The plaintiffs sued the defendants for damages for breach of contract contained in the bills of lading, and, alternatively, for negligence. The defendants relied on the clause in the bills of lading exempting them from liability for loss or damage resulting from vermin, except when caused by negligence on the part of the vessel. The plaintiffs contended that the clause was invalid since there was excepted out of the clause only loss or damages caused by negligence, whereas the Harter Act required the shipowner to accept liability for loss or damage arising not only from "negligence," but also from "fault or failure" in the proper loading, stowage, etc., of the merchandise. Both parties concerned in stating two questions of law in the form of a Special Case for the opinion of the Court.

The Special Case had already come before Meredith J. who had decided both questions in favour of the plaintiffs (reported [1931] I. R. 73), but on appeal the Supreme Court had held that the bills of lading were American contracts, and as such should be construed by American law, and that law must be proved or admitted before the Court would be competent to decide the questions of law submitted in the Special Case, and that the Court had, therefore, discharged the order of Meredith J. and remitted the Special Case to him to be determined accordingly (reported [1931] I. R. 337).

EXHIBIT D - Part II
TO AFFIDAVIT OF LAURENCE K. SHIELDS

22-09-05   14:16   From-THE-LAW-SOCIETY-                    +35316724895      T-195  P.03   F-669

Meredith J.
1932.
———
Owners of
the S.S.
"Hatteras."

*held* by the Supreme Court, reversing Meredith J., in answer to the first question submitted, that, according to American law as proved in evidence, the exemptions from liability in the bills of lading were valid, and, therefore, in the absence of negligence on the part of the defendants, they were not liable for the damage caused to the plaintiffs' tobacco (*see* also *held* by Meredith J., in answer to the second question submitted (no appeal being taken in respect of this question), that the defendants were not exempt from liability by virtue of sect. 3 of the Harter Act, which relieves a shipowner from responsibility from damage or loss resulting from faults or errors in navigation or in the management of the vessel, since there was no fault or error in the management of the vessel, and faulty stowage was not a fault or error in the management of the vessel.

TRIAL OF ACTION.

This action had previously been decided by Meredith J. on the 26th November, 1930. The parties had, to save expense, agreed to state the facts in the form of a Special Case. Meredith J. had answered the two questions of law submitted in the Special Case in favour of the plaintiffs (reported [1931] I. R. 73). These two questions of law were as follows:—

"1. Whether, on the true construction of the said bills of lading, and in the absence of negligence as alleged on the part of the defendants, their servants, or agents, the defendants are exempt from liability for the damage caused to the plaintiffs' tobacco by vermin as aforesaid.

"2. Whether, on the true construction of the said bills of lading, the defendants are exempt from liability for the damage caused to the plaintiffs' tobacco by vermin as aforesaid, notwithstanding negligence as alleged on the part of the defendants, their servants, or agents."

The defendants had appealed from the decision of Meredith J. to the Supreme Court, and that Court had held that the bills of lading were American contracts, and as such should be construed by American law, and that the law must be proved or admitted before the Court would be competent to decide the questions of law submitted in the Special Case. The Supreme Court therefore discharged the order of Meredith J. and remitted the Special Case to him to be determined accordingly (reported [1931] I. R. 337).

The Special Case, therefore, now came again before Meredith J. in pursuance of the order of the Supreme Court.

At this hearing expert evidence was given as to American law, and this evidence is sufficiently referred to in the judgment of Meredith J. Mr. Lucius Fairchild Crane was the expert called on behalf of the plaintiffs, and Mr. Arthur

John Bassett K.C. was the expert called on behalf of the defendants. The facts have been summarised in the head-note, and are fully stated in the report of the previous hearing ([1931] I. R. 73).

*A. K. Overend K.C.*, *W. H. Carson K.C.* and *E. S. Robinson* for the plaintiffs.

*F. FitzGibbon K.C.*, *K. B. Dockrell K.C.* and *T. F. Monks* for the defendants.

The arguments were similar to those in the Supreme Court reported *post*.

*Cur. adv. vult.*

MEREDITH J.:—

February 26.

In order to avoid the expense of a trial of issues of fact which may be immaterial, a Special Case has been stated by counsel in this action for the purpose of obtaining from the Court a decision on certain questions of law. The facts which the Court is asked to assume for the purpose of its decision on the questions of law are stated in the Special Case as follows:—

"1. That the defendants, 'Hatteras,' are the owners of the said steamship 'Hatteras.'

2. That the said steamship is a general cargo ship regularly trading between ports in the United States of America and (*inter alia*) ports in the Irish Free State.

3. That the defendants by two bills of lading, both dated the 28th day of October, 1927, agreed (subject to the conditions therein contained) to carry 10 hogsheads and 59 hogsheads, respectively, of leaf tobacco (therein stated as having been 'received on board in apparent good order and condition,') *per* the said steamship from the port of Norfolk, United States of America, to the port of Dublin, and there to deliver same to the plaintiffs in like good order and condition.

4. That the plaintiffs are the indorsees of the said bills of lading to whom the property in the goods therein mentioned has passed.

5. That the said 69 hogsheads of tobacco were delivered to the defendants at the port of Norfolk, United States of America, in good order and condition, and were so shipped in the said steamship.

6. That the said steamship proceeded to the port of Dublin (*via* the port of New York), and arrived in Dublin on or about the 27th day of November, 1927.

7. That on arrival at the port of Dublin the said 69

678                           THE IRISH REPORTS.                    [1933

Meredith J.
1932.
———
Owners of
THE S.S.
"HATTERAS"
v.
MacNAMARA.

hogsheads of tobacco were found to be damaged by vermin, which had penetrated into the hogsheads during the voyage.

8. That 21 bales of rabbit skins, which had been shipped at the port of New York in the said steamship and stowed in the said ship as the said 69 hogsheads of tobacco, were on arrival at the port of Dublin found to contain vermin of the same species.

9. That the said vermin were not due to or caused by anything inherent in the said hogsheads of tobacco but originated in and came from the said rabbit skins.

I gave my decision on the questions of law raised in the Special Case as far back as November, 1930, and the defendants appealed. When the appeal came on for hearing before the Supreme Court the Court took the point that the contract was an American contract and that the matters in issue should be determined in accordance with American law. So the case was sent back to me for rehearing. As a result. I have had the advantage of hearing the case very ably argued by counsel on both sides, and in addition I have had the advantage of having American law expounded to me by eminent American lawyers; the expert in American law produced as witness for the defendants giving evidence which, if I entirely accepted the view of my functions urged by counsel for the defendants, would leave me nothing to do, at least as regards the major question, but to accept the expert's decision and give judgement accordingly. I refer to the Court Reporter's note of the evidence given by Mr. Crane and Mr. Barrett and incorporate same in my report.

The case is one of considerable interest for two reasons. First, it calls attention to the fact that, as in England, no Act similar to the Harter Act, which was passed by Congress in 1893, is in force in Saorstát Éireann, although the policy of the Act has met with general approval all the world over, several countries passing similar Acts. I hope that the desirability of Saorstát Éireann following suit in this matter will receive due consideration. Secondly, because the case is one of the construction of a contract to which American law applies, and, although there are important and helpful decisions as to the precise functions of a judge in such a case, this case presents some peculiar features, which may occasion some difficulty as to the proper application of the principles that have been established. Perhaps, however, I may be able to steer clear of all difficulties; and I shall certainly not court any

I.R.]                         THE IRISH REPORTS.                          6

                                                          Meredith J.
                                                             1932.
                                                          ———
                                                          Owners of
                                                          THE S.S.
                                                          "HATTERAS"
                                                          v.
                                                          MacNAMARA.

unnecessarily—though avoiding difficulty of this kind is not always an easy matter. It is like a cyclist trying to avoid a stone on the road. If he gets clear of it with his front wheel he generally runs straight over it with the back.

The first question upon which an answer is sought is: "Whether, on the true construction of the said bills of lading and in the absence of negligence as alleged on the part of the defendants, their servants, or agents, the defendants are liable for the damage caused to the plaintiffs' tobacco by vermin as aforesaid?" The question arises in this way. The defendants had agreed to carry per S.S. "Hatteras" 69 hogsheads of leaf tobacco from Norfolk, U.S.A., and there received on board in apparent good order and condition, to Dublin, and there to deliver the same to the plaintiffs in like good order and condition. During the voyage the tobacco became damaged by vermin, which came from rabbit skins forming part of the same exgo. The defendants contend that under the excepted perils clause in the bills of lading they are exempted from liability for loss or damage resulting from the cause specified, unless it was "caused by negligence on the part of the vessel." The plaintiffs, however, contend that damage resulting from vermin not originating in the tobacco itself but coming from other goods is not included in the "excepted perils". They further contend that, if it is, the whole clause is null and void as offending against the provisions of the Harter Act, 1893.

The question of whether damage resulting from vermin is, or is not, within the exceptions is a simple question of construction and involves no special principle of American law. To my mind it is quite plain that the clause covers vermin such as rats or the vermin in question though not originating in the goods, and I see nothing to support the strained construction for which Mr. Overend contended.

Consequently, the damage arising from one of the excepted perils, the question is whether the clause is valid, having regard to the Harter Act. The argument against the validity of the clause is that the clause provides for exemption of liability from the specified causes "except when caused by negligence on the part of the vessel," and that this exception is not co-extensive with the exception specified in the Harter Act; that consequently exemption of liability is provided for in respect of all the perils in cases within the prohibited exception of "negligence, fault or failure" specified in the Harter Act and outside the exception "negligence on the part of the vessel" contained

Case 1:04-cv-10624-MLW    Document 40-8    Filed 09/23/2005    Page 4 of 18

22-09-05  14:17   From-THE-LAW-SOCIETY-              +35316724885       T-185  P.05  F-669

Meredith J.
1932.
MacNamara
v.
Owners of
the S.S.
"Hatteras."

In the bills of lading, and that accordingly the clause is null and void.

The main argument on behalf of the defendants, as I understood it, was to the effect that their expert American lawyer, Mr. Barrett K.C., said that, having studied all the relevant American decisions, he was satisfied that an excepted peril clause in the form in question is good according to American law, and that that ends the matter, since the expert on the plaintiffs' side did not give direct evidence to a contrary effect, but merely left the question to the Court to decide, having explained that the principles and rules of construction applicable are the same by the law of the American law and the law of Saorstát Éireann. Mr. Barrett further gave evidence to the effect that the expressions "negligence" and "negligence, fault or failure" are equivalent.

The precise words of sect. 1 of the Harter Act are as follows:—

"(1) That it shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement, whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words and clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect."

Mr. Barrett did not suggest that it is settled by decisions of the American Courts that the words "fault or failure" in sect. 1 of the Harter Act are to be treated as superfluous, and I am satisfied that according to the rules of construction which, on Mr. Crane's evidence, are recognised in American law, they cannot be regarded as superfluous. Both on the positive side of fault and the negative side of failure, the expression "fault or failure," strictly speaking, extends beyond the expression "negligence." No doubt in many of the cases to which Mr. Barrett referred the exception specified in the Harter Act is, to avoid circumlocution, referred to as an exception in the case of negligence. But that is a very different thing from saying that the American authorities draw no distinction between negligence, fault and failure, and I consider that I am not transgressing the functions of a Judge who has to decide

a case according to foreign law in referring to the case of *The Kensington* (1) which was decided by the Circuit Court of Appeals for the Second Circuit, Mr. Justice White, in delivering the opinion of the Court said (p. 269):— "Testing the exemptions found on the ticket by the rule of public policy, it is apparent that they were void, since they unequivocally sought to relieve the carrier from the initial duty of furnishing a seaworthy vessel, for all neglect in stowing, and indeed for any and every fault of commission or omission on the part of the carrier or his servants. And seeking to accomplish these results, it is equally plain that the conditions were void if their legality be considered solely with reference to the modifications of the general rule created by the Act of 1893." The words "and indeed" show that the words that immediately follow, viz., "any and every fault of commission or omission," which words are obviously intended to be co-extensive with "fault or failure"—failure being a fault of omission—are regarded as more comprehensive than the simple word "negligence." That being so, it is clear to me that if in the exception in the bills of lading the word "negligence" in the exception: "Except when caused by negligence on the part of the vessel" is to be strictly construed, and, therefore, as not covering all that is covered by the expression "fault or failure," the clause must be treated as null and void. For there is nothing in the Harter Act which would enable the words "except when caused by negligence on the part of the vessel" to be struck out, since they are not good as far as they go. The trouble is that they are not comprehensive enough. So there would be nothing to do but to treat the whole clause as null and void.

I am quite satisfied on the evidence of Mr. Barrett, which is confirmed in my mind by reference to the authorities which he cites, that an "excepted perils clause," which is entirely silent as to any exception in respect of negligence on the part of the vessel is good. The decisions to that effect are certainly not surprising, since it would seem that even before the Harter Act such a merely silent clause was not construed so as to exempt the owner from liability in case of negligence on the part of the vessel: *Compagnie de Navigazione La Flèche* v. *Brasser* (2) (on *certiorari* to the Circuit Court of Appeals for the Second Circuit, October 25th, 1897), why, then, should it be differently construed for the mere purpose of making it null and void under the Harter Act which had

(1) (1901) 183 U.S. Rep. 263.           (2) (1897) 168 U.S. Rep. 104.

682   THE IRISH REPORTS.   [1933

Meredith J.
1932.

Owners of
THE S.S.
"HATTERAS"
v.
MACNAMARA

to be incorporated? The following observations of Bankes L.J. in *Butler v. Palmer* (1), are illuminating in this connection:—"A common carrier is liable for the acts of his servants whether they are negligent or not; an ordinary bailee is not liable for the acts of his servants unless they are negligent. If a common carrier would protect himself from responsibility for all acts of his servants he must use words which will include those acts which are negligent; because words which would suffice to protect him from liability for acts properly done by his servants in the course of their service may fall short of protecting him from their negligent acts. But if an ordinary bailee uses words applicable to the acts of his servants, insomuch as he is not liable for their acts unless negligent, the words will generally cover negligent acts, although such acts are not specifically mentioned, because otherwise the words would have no effect."

But decisions such as *The Siamese Prince* (2), which follows previous decisions to a like effect, on a clause that is silent as to negligence, do not cover the case of a clause in which there is an express exception co-ordinate, but not co-extensive, with the exceptions specified in the Harter Act. Suppose that instead of the words "except when caused by negligence on the part of the vessel," the words had been "except when caused by wilful default on the part of the vessel," could there be any doubt that the maxim *expressio unius est exclusio alterius* would apply? I think not. To my mind such a clause would clearly be null and void under the Harter Act. The present clause only differs in degree not in kind. Consequently, unless there is some ground for construing the words "except when caused by negligence on the part of the vessel," as equivalent, in these bills of lading, to the words "negligence, fault, or failure," etc., in the Harter Act, I am of opinion that the clause must be treated as null and void.

Mr. Barrett cited *The Hog Island* (3) as supporting his view. It does not, however, seem to me immediately to decide the point in issue, since the wording of the excepted perils clause was different from that in these bills of lading, and, probably owing to that difference, the validity of the clause was not questioned. The clause began as in the present case with "except when caused by negligence on the part of the vessel," but it concluded with the following words: "and neither the vessel nor her owner shall be liable for

(1) [1922] 2 K. B. 87, at p. 90.   (3) [1931] 48 Fed. (2nd) 101 (Circuit
(2) [1913] 218 Fed. Rep. 355.         Court of Appeals, Second Circuit).

I.R.]   THE IRISH REPORTS.   683

any loss of, or damage to, such goods, unless caused by negligence from which the vessel and her owner are not relieved by the provisions of the Act of Congress of February 13th, 1893, known as the Harter Act." The last words make it clear that in this clause the simple word "negligence" is loosely used to cover the complete description of the exception contained in the Harter Act.

Reliance was also placed on the case of *Cunard S.S. Co., Ltd. v. Kelly* (Circuit Court of Appeals, First Circuit, April 18th, 1902) (1). In that case there was an excepted perils clause which, taken by itself, was on the authorities inoffensive, but it was followed by a clause that expressly extended the exceptions to loss caused by "wrongful act, default, negligence, or error of judgment." The Court gave effect to the Harter Act by simply striking out the latter clause and left the main clause standing, but the Court did so expressly on the ground that the latter clause was severable. "As the clauses exempting from negligence are separable, they do not entirely invalidate the exemption." In the present case there is simply a single integral clause. In the case cited the offending words could, and had to be, struck out under the Harter Act. In the present case the words that cause the trouble cannot be cut out, because, as I have already pointed out, they are good as far as they go.

On the evidence which has been adduced as to American law it appears to me that it cannot be said that an excepted perils clause in which the excepted perils are excepted save in a class of cases which leaves perils excepted in certain cases covered by sect. 1 of the Harter Act is good, and the maxim *expressio unius est exclusio alterius* would not apply, and that an excepted perils clause, for instance, introduced by the words: "except when caused by wilful default on the part of the ship" would not be null and void. That being so, it seems to me clear that the present clause is null and void unless I can hold that the expression "negligence on the part of the ship" covers the same ground as "negligence, fault or failure," etc., in sect. 1 of the Act.

If the difference were confined to the case of "wilful default," then, remembering that the maxim *expressio unius est exclusio alterius* has been often said to be one to be used cautiously, and that it is a good servant but a dangerous master, I might treat the clause as simply silent in respect of wilful default, and I might refuse to apply the maxim on the ground that "wilful default" is obviously an *a fortiori* case, and could not

(1) (1902) 115 Fed. Rep. 678.

Meredith J.
1932.

Owners of
THE S.S.
"HATTERAS"
v.
MACNAMARA

684                                   THE IRISH REPORTS.                        [1933

Meredith J.
1932.
MacNamara
v.
Owners of
the S.S.
"Hatteras."

have been intended to be included. But in the section of the Harter Act it is obvious that simple failure in certain matters is put on the same footing as negligence, so that when such failure by the plaintiff need go no further. negligence arises—the plaintiff need go no further. An error of judgment in respect of the specified matters is another case in point. Hence it is clear that, even apart from the question of wilful default, the expression "negligence on the part of the ship" cannot, if strictly construed, be regarded as co-extensive with "negligence, fault, or failure," etc.

I must confess, however, that I have always held an uneasy suspicion in my mind that probably the expression was intended to have the same effect as the more complex expression in sect. 1. That is certainly a plausible conjecture, but I must construe the clause according to settled rules of construction. The only principle that, as far as I can see, could help the plaintiffs' conjecture is that that was only invoked on behalf of the plaintiffs, the principle, namely, that: "exceptions in a bill of lading or charter party, inserted by the shipowner for his own benefit, are unquestionably to be construed most strongly against him": *Compania de Navigazione La Flecha v. Brauer* (1). The more broadly and comprehensively the exception from the exception of perils is construed the more strongly it is construed against the carrier. The clause should not be construed with undue strictness in favour of the carrier, simply in order that, as a result, it may be penalised by the clause being declared void. I have recognised that. But the word "negligence" is a technical word used in a carefully prepared document, and I see no ambiguity that would justify me in not construing the word in its ordinary sense and in the same sense as used in sect. 1 of the Act, in which section I cannot regard the words "fault or failure" as superfluous. But what seems to me to clinch the matter is that the plausible conjecture is only plausible if it is supposed that the simple expression "negligence" on the part of the vessel was used for short, as a compendious reference to the longer and more complex expression in the Act, viz.: "negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery." But if the draftsman desired to avoid the use of unnecessary words the thing to do was to leave the words out altogether. Mr. Barrett has shown that for many years it has been decided that if the "excepted perils clause" says nothing about negligence an exception in conformity with sect. 1 will be read in. The authorities

(1) (1897) 168 U.S. Rep. 104.

---

I.R.]                    THE IRISH REPORTS.                                    685

show that, such being the law, "silent" clauses are common. How, then, acting on settled rules of construction, can I avoid construing the expression in its ordinary sense when the plaintiffs' conjecture would only give the expression a meaning which would make its insertion quite unnecessary? Mr. Barrett's view that this clause is good according to American law does not appear to me to be evidence as to how American law but only a learned anticipation as to how American Courts would construe this contract if it came before them. The American law having been proved, the authorities are clear that the task of construing the contract devolves upon me.

As to analysing American authorities, I may say that they are in no different position from recent English decisions—since English law since the passing of the Constitution is as much foreign law as American law. Yet recent English cases, though not binding, have been frequently cited with approval and followed in judgments both in this Court and in the Supreme Court. It would be paradoxical if a Court of Saorstát Éireann could not deal as freely with a recent English authority on a question that it has to decide according to English law, as it could if the question were one to be decided according to the law of Saorstát Éireann.

The second question is as follows:—"Whether on the true construction of the said bills of lading the defendants are exempt from liability for the damage caused to the plaintiffs' tobacco by vermin as aforesaid, notwithstanding negligence as alleged on the part of the defendants, their servants or agents?" What brings this question to the fore is sect. 3 of the Harter Act, the first limb of which provides: "That if the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation, or in the management of the said vessel." In the present case no fault or error in navigation of the vessel is suggested. The question argued before me was whether a fault or error in the management of the vessel, if the facts as stated or fault or error even in the stowage is alleged, unless the mere fact of carrying the rabbit skins in the same part of the ship is to be regarded as in itself a fault or error, whether the defendants, their

Meredith J.
1932.
MacNamara
v.
Owners of
the S.S.
"Hatteras."

Meredith J.
1932.
———
Owners of
THE S.S.
"HATTERAS"
v.
MacNamara.

agents or servants were aware that the rabbit skins were infected or not. That being so, the faulty stowage that in the contention that this *per se* is mismanagement of the ship, there would have been nothing to argue about in the many cases in which difficult questions have arisen as to what precise acts or omissions which resulted in damage to cargo might be regarded as mismanagement of the ship. Take the case of the vessel that brought Cleopatra's Needle to London, or the case of The Great Eastern laying the Atlantic cable, and it is easy to see how ambiguous certain acts might be. I have read the instructive judgment of Wright J. in *Foreman and Ellams, Ltd. v. Federal Steam Navigation Co.* (1), and also the numerous other authorities cited to me, and all the judgments, including dissenting judgments, show that there is nothing to bring this case into the region of difficulty. For a defendant to claim the protection of the provision of sect. 3 of the Harter Act he must show that the damage or loss results from some specified fault or error in navigation or in the management of the vessel, and the admitted facts of this Special Case specify nothing that could be regarded as such a fault or error. The most that can be said is that an error in stowage pure and simple is suggested, which, even if specifically alleged, would not be a fault or error in the management of the ship. I must, therefore, answer the second question in the negative.

As to the first question, I take it to mean: whether the plaintiff can succeed on the bills of lading, notwithstanding the absence of negligence on the part of the defendants? There is no reference in paragraphs 13 and 14 of the Special Case to such defences as those raised in paragraphs 13 and 14 of the defence, and an affirmative answer to the question does not mean that the defendants may not escape liability on some ground of defence other than that of absence of negligence. So understood, I answer the first question in the affirmative.

S. V. K.

The defendants appealed to the Supreme Court (2) from so much of the order of Meredith J. as answered the first question of law submitted in the Special Case in the affirmative.

(1) [1928] 2 K. B. 424.
(2) Before Kennedy C.J., FitzGibbon and Murnaghan JJ.

---

*F. FitzGibbon* K.C. and *K. B. Dockrell* K.C. (with them *T. F. Monks*) for the appellants:—

The policy of the Harter Act was to prohibit stipulations in contracts of carriage by sea of such a character as would relieve shippers of liability for negligence in loading, stowing, etc. But there is a difference between the law of the United States and our common law in regard to clauses exempting shipowners from claims arising from negligence. Even before the Harter Act the American Courts regarded as void any clause exempting a shipowner from the consequence of his own negligence. The Harter Act gave statutory effect to what was the pre-existing law of the United States. In construing the two bills of lading and in the application of the Harter Act, Meredith J. adopted a wrong principle. It is settled that foreign law must be proved as a fact by skilled witnesses, and when such witnesses differ in their evidence the Judge must choose between them; but it is only when such a difference does occur that the Judge is at liberty to consult and examine for himself any authorities, cases, or text-books, to which the experts have referred in their evidence. Where there is no conflict between the opinion of the experts as to what the foreign law is, the Judge is in the same position as where any other question of fact has to be determined, and undisputed evidence must be accepted. [They referred to *Nelson (Lord) v. Bridgport (Lord)* (1); *Di Sora v. Phillips* (2); *O'Callaghan v. O'Sullivan* (3); *Sussex Peerage Case* (4).]

The expert evidence in this case is all one way, viz.:— that the exemption clause in these bills of lading is valid according to American law, as the words "negligence" therein is equivalent to "negligence, fault or failure" in the Harter Act. Nevertheless Meredith J. did not act upon that evidence. He was of opinion that the exemption "except when caused by negligence" in these bills of lading was co-ordinate with, and not co-extensive with, the words in the Harter Act, and that the words "fault or failure" in the Harter Act must have some meaning other than "negligence." By so interpreting the word "negligence" himself he rejected the evidence of the witnesses. [They also cited *The Toronto* (5); *Calderon v. Atlas Steamship Co.* (6); *United States v. Cobb* (7); *The Tongoksei Maru* (8).

Supreme Court.
1933.
———
Owners of
THE S.S.
"HATTERAS"
v.
MacNamara.

(1) 8 Beav. 547.
(2) 10 H. L. C. 624.
(3) [1925] 1 I. R. 90.
(4) 11 Cl. & F. 85.
(5) [1909] 174 Fed. Rep. 632, 634.
(6) [1898] 170 U. S. Rep. 272.
(7) [1905] 163 Fed. Rep. 791.
(8) [1921] 13 Fed. (2nd), 871.

688                            THE IRISH REPORTS.                    [1933

Supreme Court.
1933.

MacNAMARA
v.
Owners of
the S.S.
"Hatteras."

The Henry B. Hyde (1); George N. Pierce Co. v. Wells, Fargo & Co. (2); The Hog Island (3).]

A. K. Overend K.C. and W. H. Carson K.C. (with them E. S. Robinson,) for the respondents:—

No such unanimity exists between the opinions of the two skilled witnesses as is alleged on behalf of the appellants. On the contrary, differences occur in the construction of the material words of the Harter Act, viz., "negligence, fault, or failure," and Meredith J. adopted the correct procedure in dealing with the evidence. Where a witness giving evidence on foreign law bases his opinion on a case, which he cites, that case becomes part of his evidence, and the Court is entitled to look at it. [They referred to *Gouchu v. Murrieta* (4); *O'Callaghan v. O'Sullivan* (5); *Di Sora v. Phillips* (6). The words, "fault or failure," in the Harter Act must be taken to have a meaning different from the meaning of the word "negligence," as otherwise they would have no meaning; and a meaning should be attributed to them if possible. Both experts agree upon this. In this event, the exemption clause is repugnant to the Harter Act and hence void and of no effect. In a bill of lading, which contained an exemption clause, but which was silent as to the liability of the ship in the event of negligence, it was held that where there was gross negligence the exemption clause was of no avail to the shipowners: *Phillips v. Clark* (7). A bill of lading which must make the ship liable in the event of negligence, fault or failure, is *pro tanto* void and of no effect when it contains an exemption clause cutting down liability to the case of negligence alone. [They also cited *Lewis v. Great Western Railway Co.* (8); *Hordern v. Commonwealth and Dominion Line, Ltd.* (9); *Calderon v. Atlas Steamship Co.* (10); *The Hog Island* (3); *Compania de Navigazion La Fleche v. Brauer* (11).]

*Cur. adv. vult.*

July 29.

KENNEDY C.J.:—

This is an appeal from the order and decision of Mr. Justice Meredith on a Special Case stated under Or. XXXIV of the Rules of the Supreme Court, 1905. The Case was

(1) [1898] 90 Fed. Rep. 114.
(2) 189 Fed. Rep. 561.
(3) [1931] 46 Fed. (2nd) 101.
(4) 40 Ch. D. 641.
(5) [1926] I. R. 90.
(6) 10 H. L. C. 624.

(7) 2 C. B. N. S. 156.
(8) 3 Q. B. D. 195.
(9) [1917] 2 K. B. 420.
(10) [1898] 170 U.S. Rep. 272.
(11) [1897] 168 U.S. Rep. 104-107, 117-124.

---

T.R.]                    THE IRISH REPORTS.                    689

submitted in an action brought by the plaintiffs as indorsees of two bills of lading relating to the carriage of a quantity of leaf tobacco from the Port of Norfolk, U.S.A., to the Port of Dublin.

Supreme Court.
1933.

MacNamara
v.
Owners of
the S.S.
"Hatteras."

Kennedy C.J.

The action was brought by plenary summons on the part of the plaintiffs claiming damages for breaches by the defendants, the owners of the S.S. "Hatteras" (the United States Shipping Board), of contracts contained in two bills of lading, dated respectively the 28th of October, 1927, or, alternatively, for damages for the negligence of the defendants in and about the loading, stowage and carriage of certain leaf tobacco mentioned therein. The plaintiffs are the indorsees of the bills of lading. The facts, as agreed for the purpose of obtaining the opinion of the Court, are set out in the Case Stated to which I refer as if incorporated in its entirety in this opinion. The appeal is taken against the decision of Mr. Justice Meredith in answer to the following question:—

(1) "Whether on the true construction of the said bills of lading and in the absence of negligence as alleged on the part of the defendants, their servants, or agents, the defendants are liable for the damage caused to the plaintiff's tobacco by vermin as aforesaid."

[*Note*: The second question submitted in the Case Stated is not a subject of this appeal.]

The Case was heard and considered on a former occasion, when Mr. Justice Meredith delivered an opinion upon the question I have just read which was carried on appeal to this Court. On that occasion this Court, finding that the learned Judge had considered the contracts in question on the basis that they were English contracts and to be so construed, held, on the contrary, that the contracts were American contracts and, as such, to be construed by American law to be proved or admitted before the Court was competent to decide the questions, and accordingly this Court discharged the former order of the learned Judge and remitted the Case Stated to him to be determined in accordance with the declaration as to the law applicable thereto. (Reported [1931] I. R. 337.)

Upon the re-hearing of the Special Case, expert evidence on American law tendered by both parties was heard by the learned Judge, who then pronounced the opinion and made the declaration from which the present appeal has been taken, namely, a declaration that

"On the true construction of the bills of lading in the said Special Case mentioned, and in the absence of negligence as alleged on the part of the defendants, their

2x

590                    THE IRISH REPORTS.                    [1933

Supreme
Court.
1933.
——
Owners of
THE S.S.
"HATTERAS"
v.
MacNAMARA

Kennedy C.J.

servants, or agents, the defendants are liable for the damage caused to the plaintiffs' tobacco by vermin as in the said Special Case mentioned."

The question involved in the matters submitted for the opinion of the Court is the application of what is known as the Harter Act to the bills of lading, and the validity of the express exceptions from liability purported to be made in the bills of lading, having regard to the provisions of that Act.

The Harter Act is an Act of Congress of the United States of America, passed on the 13th of February in the year 1893, and intituled as follows:—

"Fifty-Second Congress, Session 2, Chapter 105 (1893). An Act relating to the navigation of vessels, bills of lading, and to certain obligations, duties, and rights in connection with the carriage of property."

It will be convenient in the first place to cite the relevant section of the Harter Act from the text of that Act referred to in the Special Case—that in Lloyd's Calendar for 1932. It is as follows:—

"Be it enacted . . . etc.

"That it shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby he, or they shall be relieved from liability for loss or damage arising from negligence, failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect."

The bills of lading are in the shippers' own printed form, which contains express exceptions from liability in the following words, upon which the case turns:—

"Except when caused by negligence on the part of the vessel, neither the vessel, her owner, nor agent, shall be liable for loss or damage resulting from: heat, frost, decay, putrefaction, rust, sweat, breakage, leakage, smell, taint, or evaporation from any other goods, drainage, ullage, vermin, or by explosion of any of the goods, whether shipped with or without disclosure of their nature; nor for risk of craft, hulk, or trans-

I.R.]                    THE IRISH REPORTS.

shipment; nor for any loss or damage caused by the prolongation of the voyage.

Supreme
Court.
1933.
——
Owners of
THE S.S.
"HATTERAS"
v.
MacNAMARA

Kennedy C.J.

The first of a series of special clauses in the bill of lading reads as follows:—

(1). "This shipment is subject to all the terms and provisions of, and all the exemptions from liability contained in, the Act of Congress of the United States, approved on the 13th day of February, 1893, and entitled 'An Act relating to the navigation of vessels, etc.' This shipment is subject to the provisions of sections 4281-4286, inclusive, of the Revised Statutes of the United States."

The plaintiffs contend that the whole of the exemptions clause which I have quoted is invalid, null and void by reason of the fact that there is excepted out of that exemptions clause only loss or damage caused by negligence, whereas, they say, that the provisions of the Harter Act require the owners of the ship to accept liability for loss or damage arising not only from "negligence," but also from "fault or failure" in the proper loading, stowage, custody, care or proper delivery of the merchandise committed to their charge. They say that the legal effect of expressly accepting liability only for loss or damage caused by "negligence" was to exclude loss or damage caused by "fault or failure" within the meaning of that Act and, therefore, that the section which I have read operates to invalidate the entire clause leaving the shipowners liable for loss or damage in every one of the cases of exemption and whether caused by "negligence," "fault or failure" or not. That is the question of law for decision which was determined by Mr. Justice Meredith against the defendants in the declaration which I have read.

The question before the Court may be analysed in this way. In the first place, we have a foreign contract to be interpreted and its true meaning and construction to be ascertained, which is for the Court, being first properly informed by the evidence of experts in the foreign law as to the rules and canons of construction and principles which, according to its interpretation as a contract governed by that foreign law. In the second place, the legal effect and validity of the contract so interpreted is to be determined according to the foreign law of which the Court is to be informed as a fact in the same way by evidence of experts in that foreign law. The law on this subject was exhaustively examined and considered by this

692   THE IRISH REPORTS.   [1933

Supreme
Court,
1933.

MACNAMARA
v.
OWNERS OF
THE S.S.
"HAUREKA."

Kennedy C.J.

Court in O'Callaghan v. O'Sullivan (1), where the established principles are reviewed with the authorities and fully stated for the plaintiffs, so far at least as regards a case where there is no conflict in the evidence of the experts as to what the foreign law is in fact. It is not necessary to add anything to what was laid down in O'Callaghan v. O'Sullivan (1), unless we find in the present case (as O'Sullivan suggested in argument), that there is a conflict of testimony as to what the foreign law is in fact, between the two expert witnesses called for the plaintiffs and the defendants, respectively.

Mr. Lucius Fairchild Crane was the expert called on behalf of the plaintiffs. He is a solicitor practising in England, but he is also a member of the New York Bar and practised as such for some years. He specialises in advising on American statutes and Federal Law. His evidence was largely a cautious statement of the principles of interpretation applied to American statutes and contracts. The expert witness called on behalf of the defendants was Mr. John Arthur Barrett K.C., a member of the Bar of the Supreme Court of the United States and a member of the Bar of the Supreme Court of New York, and also a King's Counsel in England. He specialises in American Law, including shipping cases and the Harter Act, upon which he frequently gives evidence. His evidence was very much fuller than Mr. Crane's and was supported by copious citation of reported cases. His evidence was extended by interrogation by the Court to matters which, with all respect, appear to me quite outside the subject in hand. The learned Judge introduced and pressed the witness on the topic of "wilful default," which does not arise in the case, and which is not mentioned in the section of the Harter Act upon which the question submitted turns, until at length the witness, quite properly, I think, protested that he had not been called as a witness on that topic, which did not arise, and upon which he had not prepared himself to give evidence. The Judge seems to me to have regarded him as a personally hostile witness and to have almost reduced him to the position of an advocate arguing for a certain legal contention rather than that of a witness to the relevant law of the United States as matter of fact.

After careful examination of the evidence of both these American legal gentlemen, I can find but one instance of a conflict of testimony between them. It was educed in a curious way. Notwithstanding the objection, taken and

(1) [1925] I.L.R. 90.

I.R.]   THE IRISH REPORTS.

frequently pressed by the plaintiffs' counsel, to the admission in evidence of the opinions of the two legal expert witnesses, as distinguished from their evidence in proof of the American law as matter of fact, the plaintiffs' witness, Mr. Crane, was pressed in cross-examination by the defendants' counsel as to his opinion upon the validity of the bill of lading under which the cargo was carried in the case of The Hog Island, Sigbel and Day v. Leyport S.S. Corporation (1), cited by the defendants' witness, Mr. Barrett. The report sets out extracts from the exemptions-from-liability clause in the bill of lading with a saving for loss or damage "caused by negligence" (as in the present case), which was treated by that Court as a valid and effective clause. Mr. Crane, however, said (reply to question No. 94) that "the Court in that case never had it quite presented to them as to the distinction between the words in sect. 1," and then, when asked at No. 96—"Do you suggest to his Lordship that the contract which contained according to American law?" replied "I think it is." If he meant to convey "fault or failure" after the word "omission" of the words "fault or failure" he would be, in so far as "negligence" had that effect, he would be, in so far as in conflict with Mr. Barrett, but he has nowhere in his evidence committed himself to that specific proposition as a proposition of American law.

In his answer on cross-examination to which I have referred, Mr. Crane expressed an opinion on the exemption clause abstracted from the bill of lading in the report of the Hog Island Case (1). His direct examination, which seems to me to have been conducted with great skill, was very cautious and conservative and rather notable for what it avoided. It is very satisfactory, then, to find that, when we compare the evidence of the two experts as to the law to be proved as matter of fact for the purposes of the case, the rules and principles of American law governing the document under consideration and its interpretation, there is practically a complete absence of conflict between them, the cautious Mr. Crane and the rather copious Mr. Barrett. An instance is the very important rule that:— "a construction which makes the contract lawful or valid or possible or fair, will be preferred to one which makes the contract unlawful or void or impossible or harsh." Mr. Crane, who explained that the Harter Act was enacted to meet and stop a growing tendency to contract out of liability for "negligence" and to

(1) [1931] 48 Fed. (2nd) 101. (Circuit Court of Appeals, Second Circuit.)

Case 1:04-cv-10624-MLW    Document 40-8    Filed 09/23/2005    Page 11 of 18

694                          THE IRISH REPORTS.                        [1933

Supreme
Court.
1933.
—
MacNamara
v.
Owners of
the S.S.
"Hatteras."
—
Kennedy C.J.

whittle down the common law rules which put the carrier in the position of an insurer, stated the law under the Harter Act and its legal effect. His statement does not differ from the evidence of Mr. Barrett. Both Mr. Crane and Mr. Barrett have failed to discover any reported case, and neither of them knows of any case, in which the meaning of the words "negligence, fault or failure" was the subject of judicial determination in any American Court. Mr. Crane did not suggest that there is in American law or legal usage any difference between the three words "negligence," "fault," and "failure," nor did he offer any definition of any of the three. Mr. Barrett, on the other hand, said that all the three words mean the same thing, and that no judicial determination of the matter could be found because no competent counsel would raise such a question in an American Court. Mr. Crane appears to accept a number of important propositions such as the following:—"It is not to be presumed that the parties intended to make a contract which the Harter Act does not allow." "An exemption clause extending the exemptions to negligence of the ship will be separated, if separable, from the rest of the exemption, and struck out, and effect given to the rest." Again, some of the most important statements of law by Mr. Barrett stand uncontradicted and unquestioned—his statement, for example, that the maxim *expressio unius exclusio alterius* has no application to sect. 1 of the Harter Act, which, indeed, follows as a mere matter of logic from Mr. Crane's propositions, inasmuch as any other view would have the effect of a rule requiring us to imply illegality and violation of the Harter Act into the contract. Mr. Barrett also stated, and again without contradiction or question, that in the case of a "silent contract" (i.e., one which does not expressly refer to or mention the Harter Act or expressly qualify its exemption clause as required by that Act) the Court will in America read into the document such a limitation as may be necessary to make it valid under the Harter Act. In the absence of any evidence conditioning with it, I think we are bound to accept this evidence of this expert witness as stating the American rule governing the interpretation of such documents, and, that being so, nothing is added to its value as expert evidence by the fact that it appears to be supported clearly by the case of *The Toronto* (1) cited by Mr. Barrett.

It requires, therefore, according to the American law, as so stated, an express exclusion of liability under the

(1) (1909) 174 Fed. Rep. 632-634. (Circuit Court of Appeals, Second Circuit.)

---

I.R.]                        THE IRISH REPORTS.                          695

Harter Act to bring an instrument into conflict with the Act (in *The Toronto Case* (1) the words "from whatsoever cause" were held not to raise such a conflict) and, if such express exclusion of the Act be separable, it will be severed and deleted so as not to invalidate the other stipulations for exemption from liability contained in the document. If not severable, such attempted express exclusion may of course render void the clause in which it is indissolubly bound up.

In my opinion the main body of the evidence of Mr. Barrett relevant to the question before us, as stating the American law applicable to the interpretation of the document under consideration here, is neither contradicted nor even questioned, but is in part expressly approved by Mr. Crane, and I am of opinion that we must accept it pursuant to the principles stated in *O'Callaghan v. O'Sullivan* (2). Thus we get the following rules which, according to American law, must be applied in the interpretation and construction of this bill of lading:—1. We must construe the contract in such a way as to uphold it as legal and valid if possible under its terms; 2. therefore we must not imply or read into the contract a clause or stipulation invalid because contrary to American law, as an exclusion of liability under the Harter Act would be: we cannot presume that the contracting parties had such an unlawful intention; 3. the Harter Act (if not attempted to be excluded in express terms) is not to be presumed to be violated by the contract, and, therefore, the contract and every stipulation in it is to be interpreted as subject to the Harter Act, and accordingly exemptions from liability contained in it are to be read subject to the provisions and limitations of sect. 1 of the Act and with such qualifications as are thereby rendered necessary. These rules of construction, as I have said, appear to me to be established by evidence in this case in such a way as not to leave anything for us to inquire into and determine so far as they go, as we should have had to do if there were a conflict of evidence as to them.

The only difficulty in the case is the opinion expressed by Mr. Crane in cross-examination that the exemption clause in *The Hog Island Case* (3), which resembles the exemption clause in the present case, was invalid because the Harter Act mentions only the saving of liability under the

(1) (1909) 174 Fed. Rep. 632-634. (Circuit Court of Appeals, Second Circuit.)
(2) [1925] 1 I. R. 90.
(3) (1931) 48 Fed. (2nd) 101. (Circuit Court of Appeals, Second Circuit.)

Supreme
Court.
1933.
—
MacNamara
v.
Owners of
the S.S.
"Hatteras."
—
Kennedy C.J.

698   THE IRISH REPORTS.   [1933

Supreme
Court,
1933.

MacNamara
v.
Owners of
the S.S.
"Hatteras."

Kennedy C.J.

"negligence" and does not expressly mention "fault or failure," from which it follows that his opinion would be that, for the same reason, the exemption clause under consideration here is invalid. That opinion is in direct conflict with the opinion of Mr. Barrett, and the Court has to decide the actual question of validity of the clause for itself, which indeed, it was argued, is in any case the question for determination by the Court according to the American law when proved as fact. I must say that I am quite at a loss to understand how Mr. Crane arrived at the opinion to which he gave expression in his answer as to *The Hog Island Case* (1). It seems to me to be in conflict with one of the rules for the construction of contracts which he himself stated as American law, the rule that the construction is to be preferred which makes the contract lawful and valid. In my opinion, if we accept and apply the three rules of American law for interpretation of such contracts which I stated above as proved in evidence and not questioned, we must reject the opinion of Mr. Crane on *The Hog Island Case* (1) as a contribution to the interpretation of the contract before us, and we must seek a construction which will, if possible, uphold the clause as legal and valid, refusing to presume that the contracting parties had the unlawful intention of violating the express legislative provisions of the Harter Act, and therefore rejecting the application of the maxim *expressio unius exclusio alterius* for the purpose of importing into the contract an exemption from liability expressly prohibited by the Harter Act (which, if expressed in the contract, the Act would require to be deleted). We must take it that the whole contract is subject to the Harter Act and that the provisions of sect. 1 of the Act govern the exemptions clause so as to import into the exception from the exemptions whatever (if anything) is denoted by the terms "fault" and "failure," which is not already comprised in the term "negligence" in proper loading, stowage, custody, care, or proper delivery of the merchandise or property, in conformity with the requirements of the Act. That I understand from the evidence to be the effect of the rule of American law in the absence of an express exclusion of the Harter Act.

It is not necessary, therefore, for the purposes of the present case to determine whether according to American law "fault" and "failure" are comprised in, or more extensive than, or together not the equivalent of, or each a mere synonym for "negligence" as these several terms

(1) (1931) 48 Fed. (2nd) 101. (Circuit Court of Appeals, Second Circuit.)

---

I.R.]   THE IRISH REPORTS.   699

are used in the Harter Act. Before that question is raised again in our Courts, let us hope some counsel—greatly daring—no doubt in Mr. Barrett's opinion—will suggest to an American Court that these words do not denote the same thing and obtain judicial definition of their meaning.

For these reasons, I am of opinion, that, according to American law as proved in evidence, the exemptions from liability in this bill of lading are valid and effective in the absence of negligence, the onus of proving which rests on the plaintiffs. I am of opinion, therefore, that the determination by the learned Judge of the question submitted in the Special Case was erroneous and should be set aside and that, in lieu thereof, a declaration should be made answering the question in the negative, as follows:—

That, on the true construction of the bills of lading in the Special Case mentioned and in the absence of negligence as alleged on the part of the defendants, their servants or agents, the defendants are not liable for the damage caused to the plaintiffs' tobacco by vermin as in the Special Case mentioned.

FitzGIBBON J.:—

This is an appeal from an order of Meredith J., dated February 25th, 1932, made upon a Special Case stated for the opinion of the Court, by which it was declared that on the true construction of the bills of lading set out in the Special Case, and in the absence of negligence as alleged on the part of the defendants, their servants, or agents, the defendants are liable for the damage caused to the plaintiffs' tobacco by vermin as in the Special Case mentioned.

The question to be decided is whether a clause of exemption contained in the bills of lading under which the plaintiffs' tobacco was shipped for carriage from Norfolk, Va., to Dublin is "null and void and of no effect" upon the ground that it contravenes the provisions of sect. 1 of the Act of Congress, approved on February 13th, 1893, commonly known as the Harter Act.

The parties endeavoured, in the first instance, to treat this question as one of law, to be decided according to the laws of Saorstát Eireann, and Meredith J. decided that the clause of exemption was invalid, treating the bills of lading as if they were contracts to be interpreted in accordance with the laws of the Saorstát, into which the provisions of the Harter Act had been introduced by way of incorporation.

Supreme
Court,
1933.

MacNamara
v.
Owners of
the S.S.
"Hatteras"

Kennedy C.

698                    THE IRISH REPORTS.                    [1933

Supreme Court.
1933.

MacNamara
v.
Owners of
THE S.S.
"HATTERAS."
FitzGibbon J.

When an appeal was taken from his decision it was pointed out at once by this Court that the contract of carriage was an American contract, which must be interpreted in accordance with the law of the United States, and that that law must be proved or admitted as a matter of fact, in order that the Court might be in a position to apply it to the contract in question, and the Case was remitted to Meredith J. to be dealt with by him upon that basis. These proceedings are reported in the Irish Reports (1).

Meredith J. has now reheard the case, with the assistance of two American lawyers, each of whom follows the profession of the law in London, one as a solicitor, and the other as a King's Counsel, who gave evidence as experts upon the subject of the laws of the United States, and in particular upon the interpretation placed by the Courts of that country upon the Harter Act, and upon contracts of carriage to which its provisions apply, and he decided, as a matter of fact, that the clause in question in these proceedings is null and void and of no effect by the law as administered in the Courts of the United States. From that decision the present appeal has been taken.

Before I deal with the appeal itself I think it is well that I should state my view upon the real issue of fact which the learned Judge had to decide. Foreign Law, i.e., the law of a foreign country, must be proved as a matter of fact in our Courts, if a question depending upon that law is in dispute. This principle applies not only to the laws of foreign countries but to those of the colonies: *The Peerless* (2), the Channel Islands: *Brenan's Case* (3) (per Patteson J.), Scotland: *Dalrymple v. Dalrymple* (4) (where the question is considered exhaustively by Lord Stowell), and is now not open to question. The same principle prevails in the United States (5).

But the expression "Foreign Law" is an ambiguous one, as it may mean either (a) the text of the written law of the foreign country, or (b) the body of law as administered by the Courts there. It is settled that the latter is the true meaning for the purpose of such a question as that which we are now considering. In the *Sussex Peerage Case* (6) Lord Campbell expressed the view, during the argument, that the Court could examine the text of the foreign law, and come to its own conclusion upon it, but this opinion was challenged at once by his colleagues, the

(1) [1931] I. R. pp. 73 & 337.          (5) Story, "Conflict of Laws,"
(2) Lush. 103, 13 Moo. P. C. 484.            7th Ed, § 842.
(3) 10 Q. B. 492, at p. 498.             (6) 11 Cl. & F. 85, at p. 114.
(4) 2 Hag. Con. 54, at pp. 80-83.

---

I.R.]                    THE IRISH REPORTS.                    699

Supreme Court.
1933.

MacNamara
v.
Owners of
THE S.S.
"HATTERAS."
FitzGibbon J.

Lord Chancellor (Lyndhurst) and Lords Brougham and Denman, and was withdrawn by him (1), and the opinion of Lord Stowell in *Dalrymple v. Dalrymple* (2) was expressly adopted. In the *Sussex Peerage Case* (3) the question at issue was the validity, by the law of the Roman Church, of a marriage between two Protestants celebrated in Rome by a clergyman of the Church of England. The Right Rev. Dr. Nicholas Wiseman, Coadjutor to the Bishop, Vicar-Apostolic of the central district of England, was examined, first, as to his qualification to give evidence as an expert in the law administered in the Court of Rome, when it was decided that he came within the description of a person *peritus virtute officii*. He then stated that the question at issue was not dealt with in the text of the Canon Law, but his evidence as an expert was that he, if he had to deal with it as a Judge, or the Court of Rome if the question were to come before it for decision, would hold the marriage in question to be valid. The question propounded to him put it in effect : "In your opinion would the Roman Court hold this marriage valid ?" and both Lord Lyndhurst and Lord Campbell, the latter against his strong previous impression to the contrary, held that the evidence of Dr. Wiseman established the marriage as a marriage in fact (p. 162).

In my opinion, if an expert in the law of a foreign country, whose qualifications and credibility are unimpeached, gives evidence upon oath that the law of that country is so, or that a particular contract, or clause in a contract, is, or is not, valid according to the law as administered in the Courts of that country, and his testimony is not contradicted by the evidence of another expert, or broken down by cross-examination, the Court which has to decide the question is just as much bound to accept and act upon that evidence as it would be to accept and act upon the evidence of any credible and uncontradicted witness upon any other question of fact or opinion. In the words of Lord Stowell, *oportet disentum credere*. The Court cannot reject the evidence of the expert because it would itself have come to a different conclusion on perusal of the text of the foreign law or on consideration of the terms of the document which is to be interpreted or whose validity is to be decided in accordance with that law.

But if the evidence of the experts is conflicting, either as to the text of the law, or as to its interpretation, or as

(1) At p. 116.          (2) 2 Hag. Con. 54.          (3) 11 Cl. & F. 85.

22-09-05   14:22   From-THE-LAW-SOCIETY-       +35316724885        T-185  P.15/37  F-669

700                        THE IRISH REPORTS.                    [1933

Supreme Court.
1933.
MACNAMARA
v.
OWNERS OF
THE S.S.
"HATTERAS."
FitzGibbon J.

to the way in which the question at issue would be decided by the foreign court which might have to administer the law, then the Court must make up its own mind as best it can, using the material at its disposal, and deciding between the experts as it would have to do if they were giving their opinion upon any scientific question. Lord Stowell has discussed this matter also in *Dalrymple v. Dalrymple* (1), and in *Crosley v. Thomas* (2), Neville J. had to decide for himself whether letters of administration were void *ab initio* under the Indian Succession Act of 1865, as a retired Judge of the High Court of Madras and a member of the Calcutta Bar considered they were, or whether they were voidable only, in accordance with the opinion of an eminent King's Counsel who practised in Indian appeals before the Privy Council.

Applying these principles to the present case, it appears to me, in the first place, that there is scarcely any conflict of testimony, even upon matters of opinion, between the two experts who were examined, and certainly no question arises as to the credibility of either. Mr. Crane, who was called by the plaintiffs, refrained from expressing any opinion at all, in the course of his evidence in chief, upon the question whether the clause of exemption in these particular bills of lading was, or was not, null and void by the law as administered in the United States. It was only when the defendants attempted to prove their case by cross-examination of a presumably hostile witness that they at last succeeded in forcing him to say that he thought that a similar clause of exemption in what was referred to as *The Hog Island Case* (3) was an invalid contract according to American law. But for this single answer, I should have thought that the evidence in this case was all one way, and that there was no ground even for a suggestion that the law of the United States was otherwise than as it was categorically stated to be by Mr. Barrett, who gave evidence on the question for the defendants, and whose positive opinion, stated in many places, most clearly at the conclusion of his evidence at questions 481 and 489 to counsel and 492 and 493 to the Court, that this particular clause of exemption in this particular contract would not be treated as contravening the provisions of the Harter Act, I should have felt bound to accept as null and void, and of no effect as contravening the provisions of the Harter Act, I should have felt bound to accept without further question.

(1) 2 Hag. Cons. 54.    (2) [1909] 2 Ch. 548.
(3) 48 Fed. (2nd) 101.

I.R.]                      THE IRISH REPORTS.                      701

I agree, however, that the evidence of Mr. Barrett cannot be regarded as absolutely uncontradicted, having regard to the solitary expression of opinion, hesitating though it was, of Mr. Crane, and therefore I must decide for myself as a matter of fact, whether I should adopt the opinion of Mr. Barrett or the doubt of Mr. Crane. Many of the reasons given by Mr Barrett in support of his conclusion do not appeal to me, and the passages cited by him from Bouvier's American Law Dictionary are inconclusive, but I see no good ground for refusing to accept the opinion to which he has pledged himself, that this particular clause of exemption in this particular bill of lading would be regarded in the United States Court as valid, and as not tending, or intended, to relieve the vessel, its manager, agent, master or owner, "from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge."

I am not prepared to assume, as I should have to do in order to affirm the decision under appeal, that the Judge in the District Court of the United States for the Eastern District of New York, and the three Circuit Judges for the Circuit Court of Appeals, Second Circuit, and all the counsel who appeared before them in *The Hog Island Case* (1), in which a clause, indistinguishable in my opinion from the present one, was held to be good, overlooked an obvious objection to its validity, nor am I disposed to assume that an obviously invalid clause of exemption has been printed in the leading United States text-book on Admiralty Practice and Forms, and has been adopted by the United States Shipping Board, and used apparently without any challenge in the Courts of that country for many years.

Most of us can recall blunders in English and Irish text-books of Forms and Precedents, but that does not justify us in assuming—without evidence—that any particular clause in a precedent in a text-book of a foreign country, upon the law of that country is an instance of a similar blunder, especially when it is cited without contradiction or challenge as authoritative by an expert in the law of that country.

In dealing with *The Hog Island Case* (1), Meredith J. refers to the exemption clause, "the validity of which was not questioned," in these words:—"The clause began as in the present 'except when caused by negligence on the

(1) 48 Fed. (2nd) 101.

Supreme Court.
1933.
MACNAMARA
v.
OWNERS OF
THE S.S.
"HATTERAS."
FitzGibbon J.

Supreme Court.
1933.

MACNAMARA
v.
OWNERS OF
THE S.S.
"HATTERAS."

FitzGibbon J.

part of the vessel,' but it concluded with the following words: 'and neither the vessel nor her owner shall be liable for any loss of, or damage to, such goods, unless caused by negligence,' from which the vessel and her owner are not relieved by the provisions of the Act of Congress of February 18th, 1893, known as the Harter Act." The last words make it clear that in this clause the simple word "negligence" is loosely used to cover the complete description of the exception contained in the Harter Act. That is precisely what Mr. Barrett says the simple word "negligence" does in the clause in the "Hatteras" bill of lading. That is what he says the Courts of the United States would hold if the "Hatteras" bill of lading came before them. If "it is clear," as Meredith J. says it is, that the simple word "negligence" in *The Hog Island* bill of lading covers the complete description of the exception contained in the Harter Act, I confess my inability to follow the reasoning by which it is contended that "it is clear that, even apart from the question of wilful default, the expression 'negligence' on the part of the ship, negligence, fault or failure," etc., nor do I see why the word "negligence" should be regarded as co-extensive with "negligence" contained in the Harter Act," nor do I see why the word "negligence" in the "Hatteras" bill of lading should be regarded as "a technical word used in a carefully prepared document," when the same word is construed by this Court as "loosely used" in *The Hog Island* bill of lading as having been dragged into this case, to cover the complete description of the exception contained in the Harter Act.

I do not understand why "wilful default" should have been "loosely used" in *The Hog Island* case, and I sympathise with Mr. Barrett's protest that "we have not wilful default in this case. We are not discussing it," nor can I find any reference to "wilful default" in the case which was decided by Horridge J. We have heard argument on a footing of wilful default, in occupying a fiduciary position, but the expression seems to me more analogous to "Barratry of master or crew" to have been imported into the present case by a supposed analogy to the "wilful misconduct" which was the subject of an exception to an exemption clause in a railway consignment note in the case of *Lewis v. Great Western Railway Co.* (1). "Wilful misconduct" or "wilful default" in the case of bills of lading and shipping documents seem to me no more analogous to "Barratry of master or crew" than to "negligence, fault or failure," though I am aware that Molloy (2), who wrote in 1676, did say "Barratry of the *Mariners* is a Disease so Epidemical on Shipboard,

(1) [1917] 2 K. B. 429.
(2) "De Jure Maritimo et Navali," Lib. 2, Chap. iii § xiii.

---

that it is very rare for a Master, be his Industry never so great, to prevent it; a Span of Villany on Shipboard soon spreads out to a Cloud; for no other Cause but of that circular Encouragement that one knavish Mariner gives another." However the Law does in such Cases impute *Offences and Faults* committed by them to be *Negligences* in the *Master*; and were it otherwise, the Merchant would be in a very dangerous Condition." I am well acquainted with Lord Stowell's opinion of Molloy, and I do not rely on him as a writer of very high authority, though his work ran through an unusual number of editions—for a law book of that time—in the century after its first publication, but the passage I have cited shows that Mr. Barrett was not alone in his view that "negligence" might include "fault" or even "wilful default." The case of *Hordern (Anthony) & Sons v. Commonwealth and Dominion Line, Ltd.* (1), decided by Horridge J., appears to me to have no bearing on the question which we have to decide. In that case the provisions of the Harter Act were treated as having been incorporated in a contract to be decided by English law, and no evidence was given, nor, in construing an English contract, would it have been admissible, as to the law of the United States upon the Act. Horridge J. referred in support of his decision to one American case, *Calderon v. Atlas Steamship Co.* (2) in which it was held by the Supreme Court of the United States that a clause which clearly exempted a carrier from all responsibility for goods exceeding the value of $100 per package was invalid, and he accordingly decided that the exemption, with which he was concerned, and which was equally wide in the case of non-delivery of goods valued at over £100 for any one package, was null and void and of no effect. In each of these cases there was a clear and express provision, giving *total* exemption from all liability in the events which had happened. There is no such clear or express exemption in the present case. There is an express admission of liability in the case of "negligence," which Mr. Barrett has sworn would be interpreted by a United States Court as including "fault or failure," and I see no good ground for rejecting his testimony to that effect.

For these reasons I am of opinion that the word "negligence" in the clause exempting the vessel from liability must be construed in accordance with what I believe, upon the evidence, to be the law of the United

(1) [1917] 2 K. B. 429.
(2) 170 U.S. 272.

704   THE IRISH REPORTS.   [1933

Supreme Court. 1933.

MacNamara v. Owners of the S.S. "Hatteras."

States upon the point, as including "fault or failure," and that the vessel will be liable, if the shippers or the companies under the bill of lading establish a loss occasioned by negligence, fault or failure of the vessel, her manager, agent, master or owner, but not otherwise.

MURNAGHAN J.:—

This appeal is concerned with a question of construction of a bill of lading. The consignee claims damages for injury to a cargo of tobacco which was carried on the ship and which was injured by vermin. On a previous occasion this Court decided that, as the bill of lading was an American contract, it was governed by American law which should be proved by experts.

The material portion of the bill of lading reads:—
"Except when caused by negligence on the part of the vessel, neither the owner, nor agent shall be liable for loss or damage resulting from:—Heat, frost, decay, putrefaction, rust, sweat, breakage, leakage, smell, taint or evaporation from any other goods, drainage, ullage, vermin, or by explosion of any of the goods, whether shipped with or without disclosure of their nature; nor for risk of craft, hulk, or transhipment; nor for any loss or damage caused by the prolongation of the voyage." The consignee asserts that it is not necessary for him to prove negligence, although on the literal reading of the clause the owner of the ship would be protected apart from negligence, as he contends that the clause referred to is bad in law, according to the law of America. Accordingly, in order to avoid the expense of litigating the question of negligence, a preliminary point of law has been tried as to whether the clause is, or is not, valid in American law.

Evidence was given by Mr. Lucius Fairchild Crane, an expert witness, who referred to an Act of Congress called the Harter Act, and who explained the general rules of construction applicable to it. In order to appreciate the ef[f]ect, having regard to the manner in which this witness gave his evidence, it is necessary to quote the actual text of this Act. It reads: [Reads the Act to the end of the first section.]

In his direct evidence Mr. Crane did not positively state that, in his opinion, the clause above quoted was bad in law, but he stated the rules of construction which he considered applicable; that there was no decision in the American reports on the meaning of the words "negligence, fault or failure" in the Harter Act; that these words had the same meaning as in English law, and he sought to

---

I.R.]   THE IRISH REPORTS.   705

Supreme Court. 1933.

MacNamara v. Owners of the S.S. "Hatteras."

Murnaghan J.

refer to the decision of Horridge J. in *Hordern & Son, Ltd., v. Commonwealth and Dominion Lines, Ltd.* (1). The material passage in that judgment is at p. 424, where Horridge J., construing the Act as embodied in an English contract, said:—"In sect. 1 of the Act negligence, fault or failure are placed alternatively, and any one of the three is a matter in respect of which the owner's liability cannot be so limited as to contravene the provisions of the Act." Mr. Crane was, however, cross-examined at length, and he was confronted with an excerpt from a bill of lading in the case of *The Hog Island* (2) heard in the Circuit Court of Appeals, Second Circuit, New York, on March 16th, 1921, which contained an exception almost identical with that in the present case. At Question 96 he expressed his opinion that the clause was invalid, but he had to admit that no objection was taken on this ground in the case before the Circuit Court of Appeals. He also admitted that the identical clause with which we are dealing was found as a precedent in a standard work, Benedict's "Admiralty Practice"—but his criticism in reply was that the form was one in use by the United States Shipping Board—just as the bill of lading in the present case.

For the defendants an expert, John Arthur Barrett K.C., gave evidence, and he expressed his definite opinion that the clause in the bill of lading was valid. He justified himself with citations of American authorities and sought to prove that in American law negligence, fault and failure are identical in meaning. His reasoning on this point was not to my mind such as to carry conviction. He admitted that the Harter Act prevented the owner from expressly exempting himself from the consequences of wilful default, but he at times seemed to think negligence, as explained by him, included wilful default, while at other times he pointed out the obvious distinction. The substance of his opinion, however, was that an exception of negligence amounted to an exception of negligence, fault or failure, as used in the Harter Act.

We were asked to say that there was no diversity of opinion between the experts, and that Mr. Justice Meredith was wrong in not accepting Mr. Barrett's opinion without any further investigation. I think it is clear from what has been stated that there was a substantial divergence of opinion on the point in question. The proof of foreign law was dealt with very exhaustively by the Chief Justice

(1) [1917] 2 K. B. 420.   (2) [1921] 48 Fed. (2nd) 101.

2 Y

22-09-05  14:24  From-THE-LAW-SOCIETY-  +35316724885  T-185  P.18/37  F-669

706   THE IRISH REPORTS.   [1933

Supreme Court.
1933.

MacNamara
v.
Owners of
THE S.S.
"Hatteras."

Murnaghan J.

in *O'Callaghan* v. *O'Sullivan* (1), and the passages cited from the judgment in that case explain how the question should be approached by the Court. In that case, as pointed out by the Chief Justice, there was no diversity of expert evidence, but the Chief Justice pointed out that where such diversity does exist the Court must decide the matter for itself. I think that I am entitled to do no more than balance the authority of the experts; and, as the House of Lords considered the code of Peru in *Concha* v. *Concha* (2), and, as Bankes L.J. considered the Decrees of the Russian Socialist Federal Soviet Republic in *Russian Commercial and Industrial Bank* v. *Comptoir d'Escompte de Mulhouse* (3), that I am entitled to form my own opinion of the Hunter Act. There was considerable argument as to the functions of the Court, where expert witnesses disagree, as to the foreign law and no established practice appears to have been arrived at. For myself I entirely agree with the view of Bankes L.J. in the case cited (*Russian Commercial and Industrial Bank* v. *Comptoir d'Escompte de Mulhouse* (4)). He says:—"To a large extent, and in the main, the question is, however, one of construction of the decrees themselves, of which there are agreed translations, and which, as translated, are to a large extent free from technical terms. Under such circumstances this Court is, I think, free to put its own interpretation upon the language and is not bound to accept the view of either set of witnesses—see the speech of Lord Chelmsford in *Di Sora* v. *Phillipps* (5). The Court must, I think, be guided by the views of these witnesses as to the meaning of the documents called respectively orders, decrees, resolutions, or instructions have the force of law, and as to the meaning of any technical terms."

In the first place, on the evidence given in the case, I accept the view that negligence, fault or failure are not identical in their meaning as used in the Harter Act. The attempt to show that these terms had the same exact meaning was not to my mind convincing and it led to many inconsistencies. But this view does not dispose of the case. As argued, the matter was treated as a pure question of logic. It was said that excusing liability for loss or damage except when caused by negligence excused liability when caused by the fault or failure of the master, and that accordingly the entire clause was bad. As a piece of purely logical reasoning the inference is correct.

(1) [1925] I. L. R. 90.
(2) [1892] A. C. 67L.
(3) [1923] 2 K. B. 630.
(4) [1923] 2 K. B. at p. 643.
(5) 10 H. L. C. at p. 636.

I. R.]   THE IRISH REPORTS.   707

Supreme Court.
1933.

MacNamara
v.
Owners of
THE S.S.
"Hatteras."

Murnaghan J.

But the point that requires to be established is that bills of lading are to be construed on the basis of strict logic. Although not very clearly expressed, Mr. Barrett's evidence repudiated that such was the rule of construction in the United States. Question 193 reads:—"Is it the law of America that exemptions contained in bills of lading are never construed to cover negligence or default of the carrier unless it is expressly stipulated?" "Yes. As to that I cite the case of *The Toronto* (1) in the Circuit Court of Appeal." It is clear from numerous citations brought forward by Mr. Barrett that a general exception from liability for loss or damage, e.g., by breakage, is not interpreted as meaning breakage caused by negligence, fault or failure. Can it be said that exemption from liability, except when caused by negligence, is to be interpreted as an exemption when caused by the fault or failure of the owner? For it is upon this point ultimately that the plaintiffs' contention rests.

In the case of *The Toronto* (1) the bill of lading exempted the carrier from delay occasioned by strikes or stoppage of labour "from whatever cause" (the Toronto Circuit Court of Appeals, Second Circuit, New York, 7th December, 1900). Logically, such delay would cover delay occasioned by the negligence of the owner, and this point was taken in Court. Ward, Circuit Judge, dealing with the bill of lading, which he described as an execrable document, but nevertheless this contract of carriage, came to this point at p. 634:—"The claimant relies upon the exception of strikes or stoppages of labour 'from whatever cause.' The libellant says that these last words are broad enough to include the claimant's own negligence and therefore the whole exception is void under the Harter Act. Even if that were so, the words apply only to stoppage of labour, leaving strikes as an independent category. But on familiar principles exemptions contained in bills of lading are never construed to cover the negligence or default of the carrier unless it is expressly stipulated for. We do not think the Harter Act has any application at all."

As there is a rule of construction of bills of lading by which delay occasioned by strikes or stoppage of labour "from whatever cause" does not include such stoppage of labour when caused by negligence or default of the carrier, the more logical reading of the words cannot be insisted upon. In the present case the ship is freed from liability for loss or damage when caused by vermin—from

(1) (1909) 174 Fed. Rep. 632.

708                    THE IRISH REPORTS.                    [1933

Supreme  this provision, loss caused by negligence is excepted. Can
Court.   it be said that the clause expressly stipulates that the
1933.    carrier is not to be liable for his fault or failure?
MacNamara  Having regard to the rule of construction stated in
   v.    *The Toronto* (1), in my opinion the clause should not be
OWNERS OF interpreted as meaning that the carrier escapes liability
THE S.S.  for loss of the kind mentioned when caused by his act or
"HATTIE'S."  default.
Murnaghan J.
           In my opinion the clause does not offend against the
         Harter Act and is valid.

         Solicitors for the appellants: *D. and T. Fitzgerald*.
         Solicitors for the respondents: *Hayes & Sons*.

                                                       M. J. L.

         (1) (1909) 174 Fed. Rep. 832.

---

I.R.]                  THE IRISH REPORTS.                      70

IN THE GOODS OF SIR WILLIAM TAYLOR, DECEASED.

*Will—Defective attestation—Only one witness—Will deposited in* Hanna J.
*his Bank's in sealed envelope—Testator subsequently obtaining commission* 1933.
*in the Army—Subsequent memorandum referring to will written by* May 25;
*testator on envelope containing will—Memorandum signed by testator* June 1.
*but not witnessed—Whether memorandum written while "in actual*
*military service"—Validity of memorandum as soldier's testamentary*
*disposition—Incorporation of insufficiently attested will—Admission of*
*documents to probate—Surgeon a "soldier"—Wills Act, 1837 (1 Vict. c. 26),*
*sect. 11.*

  On the 31st July, 1916, T., a surgeon, who resided in Dublin, made his
will, which he wrote out himself and signed, but in the presence of one
witness only. He put this will in a sealed envelope endorsed "Will," and
deposited it in his bank in Dublin. During the Great War he received a
Commission in the Royal Army Medical Corps (viz., on the 3rd November,
1916), which he held until the 29th September, 1920. On the 12th October,
1917, just prior to returning to France to join his unit there, he wrote on
the front of the envelope containing his will a memorandum with reference
to the bequests in the will, which he dated and signed but his signature
was not witnessed. This envelope was in the Bank at the time of his
death in 1933.

  *Held* that T. was a "soldier" and "in actual military service" within
the meaning of sect. 11 of the Wills Act, 1837, when he wrote the
memorandum on the envelope containing his will, and accordingly that
memorandum was a valid testamentary disposition, and its effect was to
incorporate his insufficiently executed will and make it valid, and accordingly
both be admitted to probate.

  MOTION to the Probate Judge in respect of the goods
of Sir William Taylor, deceased. The application was
made on behalf of Lady Taylor, the widow of Sir William
Taylor.

  The notice of motion, having stated that the deceased
resided at No. 47 Fitzwilliam Square, Dublin, for many
years and died there on the 29th of January, 1933,
leaving him surviving his widow, Lady Taylor (hereinafter
called "the applicant"), and four children, namely,
Charles Morrison Taylor M.D., Elinor Mary Ridlington,
William Hamilton Hepburn Taylor, and John Howard
Taylor, continued as follows:—

  "And whereas amongst the papers of the deceased at
the time of his death was found:—

  "(a) A paper writing dated the 31st day of July, 1916.
  "(b) A paper writing dated the 24th day of October, 1917,
both in the handwriting of the deceased and signed by
the deceased, purporting to be together the last will of
the said deceased, or, alternatively, the last will and
codicil thereof, of the said deceased;

  "And whereas by the said paper writing of the 31st July,