**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|   |   |
|---|---|
| Highfields Capital Ltd., Highfields Capital I LP, Highfields Capital II LP,<br><br>    Plaintiffs,<br><br>v.<br><br>SCOR, S.A.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.  04-10624 MLW<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO AFFIRM SUBJECT MATTER JURISDICTION OR,
IN THE ALTERNATIVE, TO REFER CASE TO STATE COURT**

  Plaintiffs Highfields Capital Ltd., Highfields Capital I LP, and Highfields Capital II LP (collectively, "Plaintiffs" or "Highfields"), submit this memorandum of law in support of their request for a ruling from this Court as to whether the Court has subject matter jurisdiction over the present action under 28 U.S.C. § 1332(a) or, in the alternative, to refer this case to Massachusetts Superior Court.  A January 2006 First Circuit ruling, as well as certain document requests propounded recently by defendant SCOR, S.A. ("SCOR" or "Defendant"), has alerted Plaintiffs' current lead counsel to the fact that the basis for federal subject matter jurisdiction over Plaintiffs' claims may be questionable.  Any party can raise the issue of subject matter jurisdiction at any time, as can the Court on its own accord.  Because this issue has only recently surfaced, this case is in its infancy, the Court has the authority to attempt to transfer this case to state court, and Highfields can recommence this case in state court, if necessary, Plaintiffs are raising this issue before additional resources are expended by the Court in this matter.

## **Introduction**

Plaintiffs are all investment funds whose only business is investment in, and trading of, securities and other financial instruments and assets. The investment operations, assets and business of all three Plaintiffs are managed by Highfields Capital Management LP, a Delaware limited partnership whose principal office is in Boston, Massachusetts. Plaintiffs are, respectively, a Cayman Islands "exempted company" and two Delaware limited partnerships. Defendant is a French corporation with a principal place of business in Paris, France. Plaintiffs' claims for fraud, negligent misrepresentation, and violation of Mass. Gen. Laws ch. 93A, arise entirely under Massachusetts state law. Accordingly, federal subject matter jurisdiction is based solely on diversity jurisdiction under 28 U.S.C. § 1332 and, more specifically, on the alienage jurisdiction provisions of 28 U.S.C. § 1332(a)(2), which grant federal courts jurisdiction over state law causes of action between plaintiffs who are deemed United States citizens under such jurisdictional provisions and foreign citizens or subjects. Although the First Circuit has not addressed the precise question, as Plaintiffs understand the current state of law as set forth in those cases to address the issue, in order to have diversity jurisdiction under section 1332(a)(2), if all defendants are citizens of foreign nations, as is the case here, then all plaintiffs must be citizens, for jurisdictional purposes, of a U.S. state.

Here, answering the question of whether all of the Plaintiffs are citizens of U.S. states for jurisdictional purposes is not necessarily easy. As set forth more fully below, Plaintiffs believe that all of the limited partners of the two limited partnership Plaintiffs -- Highfields Capital I LP, and Highfields Capital II LP -- are citizens of various U.S. states with the exception of possibly one limited partner that is also the general partner of both entities. The sole general partner of each of the Plaintiff limited partnerships is a limited liability company organized in the state of

Delaware, Highfields Associates LLC.  At the time of the filing of the complaint, it is believed that all of the members of Highfields Associates LLC were either citizens of the United States, or United States taxpayers resident in the United States, with the possible exception of one individual, who was a Canadian citizen at that time, though he resided in Massachusetts (under a lawful work visa) and was a United States taxpayer, and one Delaware limited partnership that had a Barbados company as one of its limited partners.  Accordingly, under recent First Circuit precedent, Highfields Associates LLC, the general partner of plaintiffs Highfields Capital I LP, and Highfields Capital II LP, may have been a citizen of Canada and Barbados, among other places, at the time of the filing of the complaint. *See Pramco, LLC v. San Juan Bay Marina, Inc.*, 2006 U.S. App. LEXIS 1183, *7–8 (1st Cir. 2006).  Thus, both of the partnership Plaintiffs may likewise be deemed to be Canadian and Barbados citizens (in addition to U.S. citizens) for diversity purposes.

The question of how Plaintiff Highfields Capital Ltd. should be treated for purposes of alienage jurisdiction has additional factors for consideration.  Highfields Capital Ltd. is considered under Cayman law to be a corporate type entity for tax and governance purposes, and so should be considered a corporation under 28 U.S.C. § 1332(c).  In a jurisdictional analysis under 28 U.S.C. § 1332(c), a corporation may be deemed a citizen of both its jurisdiction of incorporation (here, the Cayman Islands) and the location of its principal place of business.  As stated above, Highfields Capital Ltd. is solely an investment entity and all of the investment operations of Highfields Capital Ltd. are managed, executed by and conducted through Highfields Capital Management LP, from its offices in Boston, Massachusetts.  These facts present two questions for which Plaintiffs have not found controlling case law.  First, will the principal office of Highfields Capital Management LP, the investment manager of Plaintiff

Highfields Capital Ltd., from which it manages all the investment operations of Highfields Capital Ltd. satisfy the jurisdictional requirement of 28 U.S.C. § 1332(c) for a principal place of business in the United States?  Second, if such principal place of business test under 28 U.S.C. § 1332(c) is so satisfied, will complete diversity for purposes of alienage jurisdiction still be present or will diversity be destroyed because one of the Plaintiffs could be deemed to be a citizen of both a U.S. state and a foreign state?

Because of the ambiguity in the law, the complexity of alienage jurisdiction, and the high stakes in this case, Plaintiffs respectfully submit that it is important for the Court to make specific findings as to the presence or absence of subject matter jurisdiction at this early stage in the litigation.

**Procedural Background**

Plaintiffs filed their complaint in this case on March 31, 2004, alleging that SCOR committed fraud, misrepresentation, and violations of Mass. Gen. Laws ch. 93A in connection with Plaintiffs' investment in Irish Reinsurance Partners ("IRP"), an Irish reinsurance company created by Defendant.  On July 6, 2004, Defendant filed a Motion to Dismiss or Stay (the "Motion to Dismiss"), putting forth two arguments in favor of dismissal -- that an Irish forum selection clause in one of the parties' agreements controlled this litigation and that the present action should have been stayed or dismissed out of deference to a litigation that was pending at the time in Ireland between the parties.  The Irish litigation has since been dismissed.  Defendant did not raise any objection to the Court's subject matter jurisdiction over this matter in the Motion to Dismiss.

On September 28, 2005, the Court denied the Motion to Dismiss and issued a Scheduling Order.  In accordance with that order, SCOR filed its answer on November 18, 2005 (the

"Answer"). In the Answer, SCOR again raised no defense based on a lack of subject matter jurisdiction. Shortly thereafter, discovery began. On January 31, 2006, Defendant served its First Request for the Production of Documents to Highfields, in which Defendant requested detailed information concerning the residence and principal place of business of each of the Plaintiffs, and of each of the partners, owners and/or investors in the Plaintiffs. *See* Requests Nos. 34–37. These requests for detailed information concerning Plaintiffs' ownership, apparently relevant primarily to a determination of subject matter jurisdiction, prompted Plaintiffs to research the issue.[1] That research has raised sufficient ambiguity so that Plaintiffs are requesting that the Court clarify the presence or absence of subject matter jurisdiction over this case.

## Legal Analysis

### I. Requirements of Alienage Jurisdiction

The specific basis for diversity jurisdiction over Highfields' state law claims is found in 28 U.S.C. § 1332(a)(2), a provision commonly termed "alienage jurisdiction." That provision provides, in relevant part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between…(2) citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a).

As is well familiar, in the context of "domestic" diversity jurisdiction under 28 U.S.C. § 1332(a)(1), no plaintiff may be from the same state as any defendant. *Stawbridge v. Curtiss*, 7

---

[1] Defendant's counsel have since sent a letter to Plaintiffs' counsel dated March 21, 2006 in which Defendant explained the rationale for its document requests numbers 34 to 37 and related those requests specifically to subject matter jurisdiction issues. The parties also met in person to discuss document production issues which included a discussion about subject matter jurisdiction, exchanged letters in early April 2006 regarding this issue and had a telephone conference on April 18, 2006.

U.S. (3 Cranch) 267 (1806). If any plaintiff is from the same state as any defendant, subject matter jurisdiction fails, such is the requirement of "complete diversity." *See id.*

### A.        Diversity in Alienage Cases

With respect to the "complete diversity" requirement in alienage jurisdiction cases, the rule appears to be that "the presence of at least one alien on both sides of an action precludes diversity jurisdiction." *See China Nuclear Energy Industry v. Arthur Andersen, LLP*, 11 F. Supp. 2d 1256, 1257 (D. Col. 1998). In other words, it is not enough that all the plaintiff aliens and defendant aliens are of different nations, even though this rule might not make any sense. *See Allendale Mutual Insurance Co. v. Bull Data Systems,* 10 F.3d 425, 428 (7th Cir. 1993) ("[W]hy should the presence of citizens of foreign states destroy diversity unless…they are citizens of the same foreign state? …Exactly what sense this makes rather eludes us."); *see also Vaka v. Maka*, 303 F. Supp. 2d 1333, 1334–35 (S.D. Fl. 2003) (dismissing diversity case where plaintiff was a citizen of Tonga and one of the defendants was a citizen of Brazil). The First Circuit has not yet expressly adopted this form of the complete diversity requirement for alienage jurisdiction, and Plaintiffs are aware of no binding precedent adopting this interpretation of 28 U.S.C. § 1332(a)(2). At the same time, neither have Plaintiffs found any contrary law. *See also* 15 *Moore's Federal Practice,* § 102.77 (Matthew Bender 3d ed.).

If the Court adopts the law embraced in other circuits, and also concludes that at least one of the Plaintiffs is an alien for diversity purposes, then complete diversity would be lacking and there would be no federal subject matter jurisdiction over this case. Determining whether one of the Plaintiffs is an alien for subject matter jurisdiction purposes, however, is a difficult task and the case law is limited and unresolved with respect to the requirements of complete diversity in alienage jurisdiction cases.

**B.     Citizenship of the Parties**

1.     <u>Citizenship of SCOR</u>

On information and belief, defendant SCOR is a "societé anonyme" organized under the laws of France with its principal place of business in France. Thus, SCOR is a citizen of France for purposes of 28 U.S.C. § 1332. *See* 28 U.S.C. § 1332(c); *see also Chick Kam Choo v. Exxon Corp.,* 764 F.2d 1148, 1152 (5th Cir. 1985).

2.     <u>Citizenship of Highfields Capital I LP and Highfields Capital II LP</u>

Highfields Capital I LP and Highfields Capital II LP are Delaware limited partnerships. *See* Affidavit of Joseph Mazzella ("Mazzella Aff."), ¶ 3. The citizenship of limited partnerships is determined in the same manner as the citizenship of general partnerships; that is, a limited partnership is a citizen in every state in which one of its general or limited partners is a citizen. *Carden v. Arkoma Assoc.,* 494 U.S. 185, 195–96 (1990). If a limited partnership has foreign partners, then, according to the only case to analyze the issue that Plaintiffs have found, it is a citizen of each and every country in which one of its general or limited partners is a citizen. *China Nuclear*, 11 F. Supp. 2d at 1257–58.

As of the date of the commencement of this case, the limited partners of Highfields Capital I LP comprised 86 individuals and entities, including corporations, trusts, partnerships, and limited liability companies. Highfields Capital I believes that each of these individuals and entities other than perhaps one partner[2] were resident in various U.S. states since all the limited partners have U.S. mailing addresses and have informed Highfields Capital I that they are United States persons for tax purposes. *See* Mazzella Aff. ¶ 5. The same is true for 140 of the 146

---

[2] One of the limited partners of both Highfields Capital I LP and Highfields Capital II LP is Highfields Associates LLC, which is also the general partner of both entities. *See* Mazzella Aff. ¶¶ 5, 6. The impact on subject matter jurisdiction of Highfields Associates LLC's state (or country) of residence, whether as a general or limited partner of these Plaintiffs, is discussed below.

limited partners of Highfields Capital II LP. *See* Mazzella Aff. ¶ 6. With respect to the remaining six limited partners of Highfields Capital II LP, five of these partners were in turn limited partnerships organized under the laws of the Cayman Islands and one was a limited liability company organized in the state of Delaware with a mailing address in Bermuda. Each of the Cayman limited partnerships has advised Highfields Capital II LP that its owners are U.S. persons for tax purposes with a mailing address in the United States, and the Delaware limited liability company has advised Highfields Capital II that its owners are U.S. persons for tax purposes. Accordingly, it is believed that each of those six entities would be a U.S. citizen because of how the diversity rules with respect to LPs and LLCs work. *See Carden, Pramco, cited supra*; *see also* 26 U.S.C. § 7701(a)(30) (defining a "United States person" under the Internal Revenue Code to mean "(A) a citizen or resident of the United States, (B) a domestic partnership, (C) a domestic corporation, (D) any estate (other than a foreign estate …), and (E) any trust if (i) a court within the United States is able to exercise primary supervision over the administration of the trust and (ii) one or more United States persons have the authority to control all substantial decisions of the trust.").

At the time of filing, the sole general partner of each of Highfields Capital I LP and Highfields Capital II LP was Highfields Associates LLC, a limited liability company organized in the state of Delaware, the members of which were Highfields employees resident in various U.S. states, one Highfields employee who was a Canadian national residing in the United States who paid U.S. taxes and possessed a H-1B visa, and one limited partnership organized in the state of Delaware whose two limited partners are a Delaware corporation and a Barbados company. *See* Mazzella Aff. ¶ 4. The recent First Circuit decision in *Pramco,* in which the First Circuit held that the citizenship of a limited liability company is determined by its members,

raises the fact that the Canadian member of Highfields Associates LLC could destroy this Court's subject matter jurisdiction over this case, even though that individual was a legal resident of the United States at the time of the filing. *See Pramco,* 2006 U.S. App. LEXIS 1183, *7–8; *see also, e.g., Kristensen v. Dampierre,* 1990 U.S. Dist. LEXIS 8976, *5 (S.D.N.Y.) (only foreign nationals who are lawful permanent residents of the United States can be deemed U.S. citizens for subject matter jurisdiction purposes). If Highfields Associates LLC is therefore deemed to be a citizen of Canada, among other places, for purposes of determining diversity jurisdiction, then Highfields Capital I LP and Highfields Capital II LP would likewise be treated as citizens of Canada, as well as various U.S. states. If the Court so holds, then complete alienage diversity would be lacking and the Court would not possess subject matter jurisdiction over this case.[3]

        3.    <u>Citizenship of Highfields Capital Ltd.</u>

Highfields Capital Ltd. is organized as an exempted company registered under the Companies Law of the Cayman Islands. An "exempted company" is an ordinary "company limited by shares" under Cayman Islands law, with the distinctive characteristic that its activities are "carried out mainly outside the [Cayman] Islands." *See* Cayman Islands Companies Law §§ 8, 182.[4] Cayman Islands companies, including exempted companies, are very similar to United States corporations -- they issue shares and have a board of directors. *See id.* at §§ 6, 81; *see also* Investing in Cayman, http://www.caymanchamber.ky/investing/business.htm.

---

[3] For the same reason, it is possible that the Barbados company that is a limited partner of the Delaware limited partnership member of Highfields Associates LLC could destroy this Court's subject matter jurisdiction. The analysis as to whether the citizenship of the Barbados company would be imputed to the Delaware limited partnership, and therefore to Highfields Associates LLC, depends on whether the Barbados company is a corporation for purposes of 28 U.S.C. § 1332(c). *See* Section I.B.3, *infra*.

[4] A copy of the Companies Law is available from the website of the Cayman Islands Monetary Authority. *See* http://www.cimoney.com.ky/uploadedFiles/Regulatory_Framework/Laws_and_Regulations/CL2004.pdf.

Highfields Capital Ltd. has issued shares to its owners and has a board of directors. *See* Mazzella Aff. ¶ 7.

In determining how to treat a foreign business entity for jurisdictional purposes, courts analogize the foreign entity to business entities commonly found in the United States, such as corporations or limited liability companies. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2004) (concluding that a Bermuda company limited by shares is "equivalent in all legally material respects to a corporation under state law" because of the common features of corporations and Bermuda companies, such as share issuance, perpetual existence, and governance by boards of directors). Because a Cayman Islands exempted company is likewise similar to a corporation under state law, Highfields Capital, Ltd. should be deemed a corporation for jurisdictional purposes.[5]

a. *Jurisdictional Analysis for Highfields Capital Ltd.*

Under the diversity statute, a corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c). Highfields Capital Ltd.'s principal place of business for tax and similar purposes is the Cayman Islands, as evidenced by its SEC and other tax and regulatory filings. *See* Mazzella Aff. ¶ 7. Under the terms of the relevant organizational, offering and investment management documents for Highfields Capital Ltd., however, Highfields Capital Management, LP which is located in Boston, Massachusetts, has sole discretion to manage the assets of Highfields Capital

---

[5] It is possible, however, that under prevailing First Circuit law, a Cayman Islands exempted company would not be a corporation under 28 U.S.C. § 1332(c). *See Pramco, LLC v. San Juan Bay Marina, Inc.*, 2006 U.S. App. LEXIS 1183 (1st Cir.). In *Pramco*, the Court of Appeals held that a limited liability company, or LLC, was not a corporation for purposes of diversity jurisdiction, but should instead be treated like a limited partnership, that is, its state of citizenship was determined by the citizenship of each of its members. *Id.* at *7–8 . The Court reasoned that Congress specifically used the term "corporation" in section 1332(c), thus precluding LLCs. It is unclear whether the First Circuit would rule similarly with respect to foreign "companies" that are not corporations in name, but are organized more like corporations than partnerships or LLCs.

Ltd. and make investment decisions on its behalf. *Id*. It is clear under 28 U.S.C. § 1332(c) that an entity may be a citizen of multiple locations for purposes of a jurisdictional analysis. At the least, Highfields Capital Ltd. is a citizen of the Cayman Islands, its jurisdiction of incorporation. Plaintiffs also contend that for purposes of the jurisdictional analysis necessary in this case Highfields Capital Ltd. may be deemed a resident of Massachusetts under section 1332(c), as that state is the "principal place of business" of its investment operations, as such investments are solely and entirely managed by Highfields Capital Management LP from its office in Boston, Massachusetts.

The First Circuit utilizes "three distinct, but not necessarily inconsistent tests" for determining a corporation's principal place of business pursuant to 28 U.S.C. § 1332(c): (i) the "nerve center" test, which searches for the location from which the corporation's activities are controlled and directed; (ii) the "center of corporate activity" test, which searches for the location of the corporation's day-to-day management; and (iii) the "locus of the operations of the corporation" test, which searches for the location of the corporation's actual physical operations. *Taber Partners I v. Merit Builders, Inc.,* 987 F.2d 57, 60-61 (1st Cir. 1993).

Applying First Circuit precedent, specifically the nerve center test, the principal place of business of Highfields Capital Ltd. for purposes of federal diversity jurisdiction analysis should be Massachusetts, despite Highfields Capital Ltd.'s Cayman Islands principal office, its tax status as a foreign entity and its SEC filings. *See* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3625 ("Notably, although the Internal Revenue Service regulations require that corporate income tax returns be filed where a corporation has its principal place of business, this factor is not determinative for purposes of federal diversity jurisdiction. Similarly, a statement in the corporate charter regarding the location of a corporation's principal place of

business is not controlling in applying Section 1332(c)."); *see also Uniroyal v. Heller*, 65 F.R.D. 83, 87 (S.D.N.Y. 1974) ("Defendants contend that Uniroyal's designation of a New York City address as the site of its principal executive offices on certain forms required to be filed with the Securities and Exchange Commission constitutes an admission foreclosing this issue. Although significant, such designation is not dispositive of the issue.").

The principal place of business analysis for a passive investment fund such as Highfields Capital Ltd. is necessarily different from that of other corporations. A fund has no day-to-day business in the traditional sense. *See Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998). Rather, though its books and records are maintained in the offshore situs (as they are for Highfields Capital Ltd., in the Cayman Islands office of a third party fund administrator, *see* Mazzella Aff. ¶ 7), a fund has investments that are managed by a fund manager, usually a separate legal entity acting as an independent contractor. Accordingly, neither the center of corporate activity nor the locus of operations test is easily applied since there are no physical operations to measure, and instead the nerve center test is the most appropriate. *Id.* at 184 (holding that nerve center test, instead of place of operations test, is more applicable to a "corporation engaged primarily in the ownership and management of investment assets").

Massachusetts is the most apparent nerve center for Highfields Capital Ltd. Its investments are managed entirely by a Boston-based investment advisor, Highfields Capital Management LP; therefore its activities are "controlled and directed" from Boston. *Taber Partners.,* 987 F.2d at 60-61. Neither the First Circuit, nor any Court in this District, has had the opportunity to apply the nerve center test, nor the other two tests, to a passive investment fund whose affairs are managed entirely by another entity. The Eleventh Circuit, however, in applying both the "nerve center" and "place of activities" test to a passive investment fund, held

that a fund incorporated in the Dutch Antilles had a principal place of business in Ecuador because, among other activities, "all corporate decisions were made in Ecuador." *See Vareka Investments, N.V. v. American Investment Properties, Inc.*, 724 F.2d 907, 910 (11th Cir. 1984). The court reached this decision even though the fund had registered to do business in Florida and listed an address in Miami as its "principal office." *Id.* at 909. Similarly, the Fourth Circuit has held that the principal place of business of a "passive investor" should be determined based on where its investments are controlled and directed. *Peterson*, 142 F.2d at 185. Here, that place is Boston, making Highfields Capital Ltd. a citizen of Massachusetts for diversity jurisdiction purposes.

      b.  *Diversity Requirements for Corporations in the Context of Alienage Jurisdiction*

  Determining the citizenship of Highfields Capital Ltd. does not end the inquiry, however. For purposes of determining "domestic" diversity jurisdiction, a corporation has dual citizenship, each citizenship being capable of destroying diversity jurisdiction if an adversary shares that citizenship. *See Toste Farm Corp. v. Hadbury, Inc.,* 70 F.3d 640, 644 n.8 (1st Cir. 1995). But, in the context of alienage jurisdiction, the rule is not as clear. Some courts have concluded that a foreign corporation with a principal place of business in a U.S. state is not a foreign corporation for purposes of § 1332(a)(2), but instead, only a citizen of that U.S. state. *See Trans World Hosp. Supplies Ltd. v. Hospital Corp. of America,* 524 F. Supp. 869, 878–79 (M.D. Tenn. 1982) (finding that where an alien sues a foreign-chartered but locally based corporation, the dual citizenship of the alien corporation should not deny the alien access to the federal courts to avoid local bias); s*ee also Bergen Shipping Co. v. Japan Marine Svcs.,* 386 F. Supp. 430, 433 (S.D.N.Y. 1974) (finding a foreign corporation, with its principal place of business in a state in the United States, was solely a citizen of that state for diversity purposes); *but see Int'l Shipping*

*Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391–92 (2d Cir. 1989) (noting that a subsequent Second Circuit decision "vitiated" the force of *Bergen*'s holding). In contrast, other courts have held that the dual citizenship concept applies to foreign corporations for purposes of the analysis under § 1332(a)(2). *See, e.g., Chick Kam Choo,* 764 F.2d at 1152; *see also Simon Holdings PLC Group of Companies U.K. v. Klenz,* 878 F. Supp. 210, 213 (M.D. Fla. 1995). The First Circuit has not resolved this question and Plaintiffs have found no case law in this District on the subject.

If the Court determines that Highfields Capital Ltd. is a corporation under 28 U.S.C. § 1332(c), and if the Court adopts the authority that the dual citizenship concept applies to foreign corporations in connection with alienage jurisdiction, then Plaintiffs believe that Highfields Capital Ltd. would be considered a citizen of both the Cayman Islands and Massachusetts for purposes of section 1332. In such event, complete alienage diversity would be absent and the Court would lack subject matter jurisdiction over this case. If, however, the Court does not adopt the authority that imposes the dual citizenship concept in connection with alienage jurisdiction, and instead follows the reasoning in the *Bergen* or *Trans World* decisions, then Highfields Capital Ltd. would be a citizen of Massachusetts for jurisdictional purposes and complete alienage diversity would be present.

**II.     Massachusetts Renewal Statute and Referral Procedure**

Should this Court find that it lacks diversity jurisdiction, Highfields respectfully requests that, as an alternative to outright dismissal, the Court undertake a referral procedure whereby the docket from this case would be forwarded to a Massachusetts state court. That procedure was suggested and used once before in this District, by Judge Keeton. *See Pallazola v. Rucker,* 621 F. Supp. 764, 769–71 (D. Mass. 1985) (holding that where a federal district court finds it lacks

subject matter jurisdiction over state law claims, the court has inherent power to offer to refer the case to a state court willing to take it).  Venue of and jurisdiction over this case would be present in Suffolk Superior Court.  *See* Mass. Gen. L. ch. 223 §§ 1, 8.  Because Defendant has been served and answered the complaint, and because the parties have already begun discovery, exchanged documents, and answered interrogatories, among other activities, referring this case to the Suffolk Superior Court would avoid needless duplication of efforts caused by the recommencement of a subsequent lawsuit in Massachusetts state court alleging the exact same claims.

Such a procedure would not prejudice the defendant.  Any claim that the statute of limitations would prevent Plaintiffs from proceeding in state court would be defeated by Massachusetts' "renewal statute" that allows a plaintiff to re-file in state court a claim that has been dismissed for a matter of form, notwithstanding the expiration of any applicable statute of limitations.  *See* Mass. Gen. Laws ch. 260 § 32.

The renewal statute provides, in relevant part: "If an action duly commenced within the time limited in this chapter is dismissed for….any matter of form…the plaintiff or any person claiming under him may commence a new action for the same cause within one year after the dismissal or other determination of the original action."  Mass. Gen. Laws ch. 260 § 32.  This provision would provide Highfields with one year to file a new claim in Massachusetts state court, should this case be dismissed for lack of subject matter jurisdiction, irrespective of the running of any statute of limitations on the underlying claims.  *Boutiette v. Dickinson,* 54 Mass. App. Ct. 817, 818 (2000) ("It is settled that a dismissal for want of jurisdiction is for a 'matter of form' within the meaning of the statute.").

**Conclusion**

Plaintiffs respectfully request that the Court affirm that it has subject matter jurisdiction over Highfields' state law claims and, if not, initiate a referral of this case to the Massachusetts Superior Court, Suffolk County, consistent with the process utilized in *Pallazola v. Rucker,* and grant Plaintiffs such other and further relief as is just and proper in the circumstances.

FOLEY HOAG LLP

/s/   *Ian J. McLoughlin*
Lisa C. Wood, BBO# 543811
Kenneth S. Leonetti, BBO #629515
Ian J. McLoughlin, BBO # 647203
Patrick J. Vallely, BBO # 663866 (admission to D. Mass. pending)
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: (617) 832-1000
Fax: (617) 832-7000
e-mail - lwood@foleyhoag.com

Attorneys for Plaintiffs

April 19, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of April, 2006, a true copy of the above document was served by facsimile and first class United States mail upon Douglas H. Meal, the attorney of record for Defendant at Ropes & Gray LLP, One International Place, Boston, MA 02110-2624.

/s/   *Kenneth S. Leonetti*
Kenneth S. Leonetti, BBO# 629515