# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————x

HIGHFIELDS CAPITAL LTD.,      :

HIGHFIELDS CAPITAL I LP,      :

HIGHFIELDS CAPITAL II LP,      :

                       :  Civ. No. 04-10624 (MLW)

          Plaintiffs,   :

       v.          :

                       :

SCOR, S.A.,              :

                       :

          Defendant.   :

—————————————————————x

## DEFENDANT SCOR'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO AFFIRM SUBJECT MATTER JURISDICTION, <u>OR IN THE ALTERNATIVE, TO REFER CASE TO STATE COURT</u>

Douglas H. Meal
Giselle J. Joffre
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Tel:  617-951-7000
Fax:  617-951-7050

Of Counsel:
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel: 212-558-4000
Fax:  212-558-3588

*Counsel for Defendant SCOR*

Boston, Massachusetts
May 2, 2006

10014409_1.DOC

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF RELEVANT FACTS ............................................................2

ARGUMENT .......................................................................................................5

I.    THIS COURT CANNOT "AFFIRM" ITS SUBJECT MATTER
      JURISDICTION BECAUSE HIGHFIELDS HAS FAILED TO
      SUBSTANTIATE ITS ALLEGATIONS. ...............................................6

      A.    The Diversity Jurisdiction Analysis In Alienage Cases Requires
            "Complete Diversity"..................................................................7

      B.    The Facts Alleged In Highfields' Complaint And Motion Papers
            Are Insufficient To Permit The Court To "Affirm" Subject Matter
            Jurisdiction.................................................................................7

      C.    This Court Should Order The Discovery Necessary To Substantiate
            Subject Matter Jurisdiction And Stay All Other Proceedings Until
            This Dispute Is Resolved ...........................................................15

II.   IF AND WHEN THE COURT HAS BEFORE IT A SUFFICIENT RECORD
      TO CONCLUDE THAT IT DOES NOT HAVE SUBJECT MATTER
      JURISDICTION, IT MAY DO NOTHING MORE THAN DISMISS
      HIGHFIELDS' COMPLAINT. ...............................................................16

REQUEST FOR ORAL ARGUMENT .............................................................20

CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Page*

*Air Line Pilots Ass'n* v. *Miller*,
    523 U.S. 866 (1988)...............................................................................................16

*Air Routing Int'l Corp.* v. *Promotora Internacional de Aviacon S.A. de C.V.*,
    826 F. Supp. 1070 (S.D. Tex. 1993). ....................................................................10

*Amarillo Oil Co.* v. *Mapco, Inc.*,
    99 F.R.D. 602 (N.D. Tex. 1983) ..............................................................................9

*Arbaugh* v. *Y&H Corp.*,
    -- U.S. --, 126 S. Ct. 1235 (Feb. 22, 2006). .......................................................5, 17

*Carden* v. *Arkoma Assoc.*,
    494 U.S. 185 (1990)..............................................................................................7, 11

*Chick Kam Choo* v. *Exxon Corp.*,
    764 F.2d 1148 (5th Cir. 1985) ...............................................................................10

*Coury* v. *Prot*,
    85 F.3d 244 (5th Cir. 1996) ...................................................................................13

*Dalkon Shield Claimants* v. *MacLeod*,
    197 B.R. 575 (E.D.Va. 1995).................................................................................11

*Dantes* v. *Western Found. Corp.*
    614 F.2d 299 (1st Cir. 1980)..................................................................................17

*Dewhurst* v. *Telenor Invest AS*,
    83 F. Supp. 2d 577 (D. Md. 2000) .........................................................................10

*Doidge* v. *Cunard S. S. Co.*,
    19 F.2d 500 (1st Cir. 1927)......................................................................................7

*Dynamic Image Techs., Inc.* v. *United States*,
    221 F.3d 34 (1st Cir. 2000)....................................................................................16

*Espinal-Dominguez* v. *Commonwealth of Puerto Rico*,
    352 F.3d 490 (1st Cir. 2003).....................................................................................6

*Fafel* v. *DiPaola*,
    399 F.3d 403 (1st Cir. 2005).....................................................................................5

- ii -

*Flast* v. *Cohen*,
    392 U.S. 83 (1968)................................................................................................15

*Foy* v. *Schantz, Schatzman & Aaronson, P.A.*,
    108 F.3d 1347 (11th Cir. 1997) ...........................................................................13

*Funygin* v. *Yokon Oil Co.*,
    No. Civ. A.H.-05-0785, 2005 WL 1840147 (S.D. Tex. July 28, 2005).....................13

*Grupo Dataflux* v. *Atlas Global Group, L.P.*,
    541 U.S. 567 (2004)..........................................................................................5, 7

*Heineken Tech. Servs.* v. *Darby*,
    103 F. Supp. 2d 476 (D. Mass. 2000) .....................................................................7

*Int'l Shipping Co.* v. *Hydra Offshore, Inc.*,
    875 F.2d 388 (2d Cir. 1989)................................................................................8, 11

*JMTR Enters., L.L.C.* v. *Duchin*,
    42 F. Supp. 2d 87 (D. Mass. 1999) .......................................................................11

*JPMorgan Chase Bank* v. *Traffic Stream (BVI) Infrastructure Ltd.*,
    536 U.S. 88 (2002)..................................................................................................8

*Joy* v. *Hague*,
    175 F.2d 395 (1st Cir. 1949) ...............................................................................18

*Kato* v. *County of Westchester*,
    927 F. Supp. 714 (S.D.N.Y. 1996).......................................................................13

*Kokkonen* v. *Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)...............................................................................................5

*Kontrick* v. *Ryan*,
    540 U.S. 443 (2004)...............................................................................................5

*Kramer* v. *Caribbean Mills, Inc.*,
    394 U.S. 823 (1969)...............................................................................................7

*LeBlanc* v. *Salem*,
    196 F.3d 1 (1st Cir. 1999)......................................................................................5

*Lincoln Prop. Co.* v. *Roche*,
    -- U.S. --, 126 S. Ct. 606 (Nov. 29, 2005)............................................................11

*Lovelace* v. *Rockingham Mem. Hosp.*,
    299 F. Supp. 2d 617 (W.D. Va. 2004) ..................................................................18

- iii -

*Lundquist* v. *Precision Valley Aviation, Inc.*,
    946 F.2d 8 (1st Cir. 1991) ...........................................................................6

*McBee* v. *Delica Co.*,
    417 F.3d 107 (1st Cir. 2005) .......................................................................6

*Ex parte McCardle*,
    7 Wall. 506 (1869) ...................................................................................16

*Mills* v. *Maine*,
    118 F.3d 37 (1st Cir. 1997)....................................................................17, 18

*Nike, Inc.* v. *Comercial Iberica de Exclusivas Deportivas*,
    20 F.3d 987 (9th Cir. 1994) .........................................................................8

*Pallazola* v. *Rucker*,
    621 F. Supp. 764 (D. Mass. 1985) .....................................................17, 18, 19

*Pancan Int'l Mgmt. Consultants, Inc.* v. *STS Microscan, Inc.*,
    848 F.Supp. 1321 (E.D. Mich. 1993)...........................................................10

*Peterson* v. *Cooley*,
    142 F.3d 181 (4th Cir. 1998) ........................................................................9

*Pramco, LLC* v. *San Juan Bay Marina, Inc.*,
    435 F.3d 51 (1st Cir. 2006).........................................................................11

*Rouhi* v. *Harza Eng'g Co.*,
    785 F. Supp. 1290 (N.D. Ill 1992) ...............................................................10

*Simon Holdings PLC Group of Cos. U.K.* v. *Klenz*,
    878 F. Supp. 210 (M.D. Fla. 1995).............................................................10

*Skwira* v. *United States*,
    344 F.3d 64 (1st Cir. 2003)...........................................................................5

*Steel Co.* v. *Citizens for a Better Env't*,
    523 U.S. 83 (1998)................................................................................16, 18

*Strawbridge* v. *Curtiss*,
    3 Cranch 267 (1806) ....................................................................................7

*Topp* v. *CompAir Inc.*,
    814 F.2d 830 (1st Cir. 1987)..........................................................................9

*Trans World Hosp. Supplies Ltd.* v. *Hosp. Corp. of Am.*,
    542 F. Supp. 869 (M.D. Tenn. 1982)...........................................................10

- iv -

*U.S.* v. *Fruehauf*,
    365 U.S. 146 (1961) .................................................................................................15

*United States Catholic Conference* v. *Abortion Rights Mobilization*,
    487 U.S. 72 (1988).............................................................................................5, 15

*Valentin* v. *Hosp. Bella Vista*,
    254 F.3d 358 (1st Cir. 2001)....................................................................................13

*Vareka Invs., N.V.* v. *American Inv. Props., Inc.*,
    724 F.2d 907 (11th Cir. 1984) .................................................................................10

## STATE CASES

*Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*,
    781 N.E.2d 787 (Mass. 2003) ..................................................................................14

## FEDERAL STATUTES

28 U.S.C. § 1332.............................................................................................7, 8, 12, 13

28 U.S.C. § 1447...................................................................................................17

28 U.S.C. § 1631...................................................................................................17

Fed. R. Civ. P. 12(h) .........................................................................................2, 5, 17

Defendant SCOR opposes Plaintiffs' Motion to Affirm Subject Matter Jurisdiction or, In the Alternative, Refer Case to State Court.  Insofar as Plaintiffs' motion seeks to "affirm" subject matter jurisdiction, SCOR submits that the motion is inadequately supported and that additional facts and information – which are solely in control of the Plaintiffs – are necessary to determine whether this Court has subject matter jurisdiction over this litigation.  And insofar as Plaintiffs' motion seeks a "referral" to state court, SCOR submits that the motion is not ripe for adjudication – because neither party is yet contending that subject matter jurisdiction is lacking and no record has been made that would enable the Court to make such a finding on its own motion – and in any event would have to be denied if and when it became ripe for adjudication, because in that event the Court would have no authority to do anything with the case except dismiss it.

## PRELIMINARY STATEMENT

Highfields Capital Ltd., Highfields Capital I LP and Highfields Capital II LP (collectively, "Highfields" or the "Plaintiffs") have asked this Court to issue what amounts to an advisory opinion "affirming" diversity of citizenship jurisdiction over their state law claims.  The burden is on Highfields to demonstrate that it has legitimately invoked this Court's diversity jurisdiction (and to substantiate the allegations of Paragraph 17 of the Complaint that such jurisdiction, in fact, exists).  Yet Highfields has submitted only sketchy and obviously inadequate information about who Plaintiffs are and what their citizenship is.

Highfields has attempted to justify its request for an "affirmance" of jurisdiction by claiming that the relevant law has become apparent only recently.  But the applicable *legal principles* were established well before Highfields filed its complaint, and it is only the *relevant facts* that remain in doubt.  When SCOR sought documents and information needed to flesh out Highfields' bare allegations of subject matter jurisdiction, Highfields declared that information

– 1 –

irrelevant and declined to provide it. In response to SCOR's attempts to convince Highfields that it must provide the requested documents, Highfields continued to resist and instead submitted its present motion. Highfields then coupled its stubborn refusal to provide the information that would clarify the Plaintiffs' citizenship with an extensive wave of merits discovery addressed to non-parties, even in the face of what Highfields itself regards as a serious question surrounding this Court's power to adjudicate its claims. In other words, Highfields is both refusing to provide the information necessary to substantiate its assertion that this Court has jurisdiction and attempting to proceed as though jurisdiction were clear, despite its explicit acknowledgement to the contrary.

This case should not progress under a jurisdictional cloud. The Court should deny Highfields' motion, require the production of documents and information necessary to establish whether or not there is jurisdiction, and stay all other proceedings, including Highfields' subpoenas to third parties. If and when the factual record has been sufficiently developed to enable this Court to conclude that it lacks subject matter jurisdiction (a conclusion that *neither* party is urging the Court to reach at this juncture), the Court's only permissible course would be to dismiss the action pursuant to Fed. R. Civ. P. 12(h)(3). A court without subject matter jurisdiction does not have the power to employ the highly unusual "referral" procedure suggested by Highfields, and even if it did, that course would be totally unwarranted on the facts presented here.

## STATEMENT OF RELEVANT FACTS

**Procedural Background. –** Highfields filed a complaint against SCOR on March 31, 2004, alleging fraud, misrepresentation and violations of Massachusetts General Laws Chapter 93A in connection with Highfields' investment in Irish Reinsurance Partners Limited ("IRP"), an Irish reinsurance company in which it was a co-investor with SCOR. Highfields

previously had filed closely related litigation against SCOR in Ireland, pursuant to an exclusive forum selection clause in the agreements governing IRP, and SCOR moved to dismiss Highfields' complaint on that ground and on the basis of *forum non conveniens.* In June 2005, Highfields exchanged its interest in IRP for approximately $220 million in cash that, together with a prior dividend payment, represented both a full return of its initial investment and a profit of nearly $78 million. Upon Highfields' exit from IRP, the parties agreed to a voluntary dismissal of the Irish lawsuit. This Court denied SCOR's motion to dismiss on September 28, 2005, and the parties have been engaged in discovery since December 2005.

**SCOR's First Request for the Production of Documents. –** On January 31, 2006, SCOR served its First Set of Requests for the Production of Documents by Plaintiffs ("SCOR's Document Request"), which included seven requests related to Highfields' allegations of subject matter jurisdiction.[1] On March 2, 2006, Highfields served a Response in which it objected to the relevance of each of the seven requests, undertook to provide a partial response to only two of them and refused to provide any response at all to the remaining five. On March 16, counsel for SCOR requested a meeting to discuss Highfields' objections and responses. In advance of the meeting, counsel for SCOR wrote to explain that certain of the document requests were intended to clarify the alleged basis of subject matter jurisdiction. (Meal Decl. Ex. 4.)[2] At the meeting in Boston on April 4, counsel for Highfields acknowledged that there were substantial questions

---

[1] Copies of SCOR's Document Request and Highfields' Response are annexed to the Declaration of Douglas H. Meal, subscribed to May 2, 2006 (cited herein as "Meal Decl."), as Exhibits 2 and 3.

[2] As SCOR's counsel indicated in that letter and in the subsequent meeting with Highfields' counsel, the requested discovery is directly relevant to other—merits-based—claims and defenses in the litigation and, therefore, that Highfields' refusal to comply with the requests would be unwarranted even if there were no questions as to whether this case had been filed in the wrong court. In view of the jurisdictional questions, which even Highfields has acknowledged are substantial, it is premature to request that the Court address these other reasons why Highfields should provide the requested discovery, and SCOR does not press that matter in connection with the pending motion. Rather, SCOR reserves all rights to raise those matters, if necessary, on an appropriate occasion in the future.

concerning the existence of subject matter jurisdiction and proposed that Highfields would file a motion, asking the Court either to "affirm" this Court's subject matter jurisdiction over the action or to dismiss and "refer" the case to state court.  (Meal Decl. Ex. 5.)  Counsel agreed to confer with their respective clients regarding these developments and then determine how to approach this Court to inform it of this matter.

**Highfields' Issuance of Third Party Subpoenas. –** Immediately thereafter, on April 7, Highfields served broad subpoenas *duces tecum* on seven third parties (the "April 7th Subpoenas").  (Meal Decl. Ex. 6.)  The next business day, counsel for SCOR requested that the April 7th Subpoenas be withdrawn or deferred pending resolution of the questions surrounding subject matter jurisdiction, as well as prompt confirmation of Highfields' intention to provide full jurisdictional discovery.  (Meal Decl. Ex. 7.)  On April 12, in the absence of any further communication from Highfields' counsel, counsel for SCOR requested a Rule 37.1(a) conference.  (Meal Decl. Ex. 8.)  In reply, Highfields' counsel again acknowledged "a significant question surrounding subject matter jurisdiction in federal court."  (Meal Decl. Ex. 9.)  On April 14, counsel for SCOR informed Highfields' counsel that SCOR could not agree to attempting the proposed referral procedure and also stated that SCOR would continue to prepare documents for production, but, consistently with the requirements of French law applicable to discovery from SCOR, could not produce additional materials until the dispute surrounding subject matter jurisdiction is resolved.  (Meal Decl. Ex. 10.)

**Summary of Local Rule 37.1 Conference. –** On April 18, counsel for the parties conducted a meeting by telephone conference pursuant to Rule 37.1(a) of the Local Rules. Counsel for Highfields confirmed Highfields' refusal to provide the jurisdictional discovery requested by SCOR and their intention to file a motion seeking to "affirm" subject matter jurisdiction.  Counsel for Highfields also agreed to inform the recipients of the April 7th

– 4 –

Subpoenas that the validity of the Court's subject matter jurisdiction was not clear, although he did not do so for another eight days.  (Meal Decl. Ex. 11.)

## ARGUMENT

A plaintiff must plead facts sufficient to establish a federal court's subject matter jurisdiction, *LeBlanc* v. *Salem*, 196 F.3d 1, 5 (1st Cir. 1999); *see also Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (party seeking the jurisdiction of the federal courts bears the burden of demonstrating its existence), and the presence of that jurisdiction is determined from the facts as they existed at the time of the filing of the complaint.  *Grupo Dataflux* v. *Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004).  A court always has the "inherent and legitimate authority" to rule on its own jurisdiction and to issue discovery orders necessary to facilitate that determination.  *United States Catholic Conference* v. *Abortion Rights Mobilization*, 487 U.S. 72, 79-80 (1988) ("recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters"); *see also Fafel* v. *DiPaola*, 399 F.3d 403, 410 (1st Cir. 2005) (courts "have jurisdiction for at least the limited purpose of determining whether they have jurisdiction"); *Skwira* v. *United States*, 344 F.3d 64, 72 (1st Cir. 2003) (district court has broad authority to order discovery necessary to determine its own jurisdiction).

The validity of a federal court's subject matter jurisdiction may be challenged at any time, *Kontrick* v. *Ryan*, 540 U.S. 443, 455 (2004), and a federal court must dismiss an action in the absence of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3); *see also Arbaugh* v. *Y&H Corp.*, -- U.S. --, 126 S. Ct. 1235, 1244 (Feb. 22, 2006) ("[W]hen a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety."). Indeed, if the Court lacks subject matter jurisdiction over the action, outright dismissal is the only permissible action that may be taken:  Subject matter jurisdiction implicates the

"fundamental institutional competence of the court," *McBee* v. *Delica Co.*, 417 F.3d 107, 127

(1st Cir. 2005), and without it, a federal court is "powerless." *Espinal-Dominguez* v.

*Commonwealth of Puerto Rico*, 352 F.3d 490, 495 (1st Cir. 2003).

Rather than comply with SCOR's efforts to develop the factual record necessary to

determine whether the Court has subject matter jurisdiction over this action, Highfields has

declined to provide the information—which is uniquely in its control—that is critical to that

inquiry (or even to produce to SCOR the information on which Highfields relied in alleging in

Paragraph 17 of the Complaint that diversity jurisdiction exists in this case).  Instead, Highfields

has engaged in an obvious "dodge"—filing a motion that takes no strong position on the

jurisdictional question and essentially "dumps into the lap" of the Court a tortured mass of veiled

allegations (that are denuded of critical identifying information and are made largely on

information and belief) and (on-the-one-hand/on-the-other-hand) arguments in the hope that the

Court will sort all this out without requiring Highfields to shoulder its burdens of production and

proof.  Highfields' motion papers raise more questions than they answer, and certainly fail to

provide a predicate for this Court to resolve the threshold jurisdictional issues that have arisen.

I.    **THIS COURT CANNOT "AFFIRM" ITS SUBJECT MATTER JURISDICTION BECAUSE HIGHFIELDS HAS FAILED TO SUBSTANTIATE ITS ALLEGATIONS.**

A federal court's assessment of its diversity jurisdiction necessarily involves a factual

inquiry, *see Lundquist* v. *Precision Valley Aviation, Inc.*, 946 F.2d 8, 11 (1st Cir. 1991), and this

Court cannot "affirm" its diversity jurisdiction over the litigation unless and until Highfields

satisfies its burden to allege and provide proper evidence of significant facts notably absent from

the current record.

**A.    The Diversity Jurisdiction Analysis in Alienage Cases Requires "Complete Diversity."**

Since the enactment of 28 U.S.C. § 1332, the Supreme Court has interpreted that provision to require "complete" diversity of citizenship between the parties. *Carden* v. *Arkoma Assoc.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge* v. *Curtiss*, 3 Cranch 267 (1806) ("*Carden*")). A federal court cannot exercise subject matter jurisdiction founded on diversity of citizenship if there are "citizens or subjects of a foreign state" on both sides of the litigation. *See* 28 U.S.C. § 1332(a); *see also Kramer* v. *Caribbean Mills, Inc.*, 394 U.S. 823, 824 (1969).[3]

**B.    The Facts Alleged in Highfields' Complaint and Motion Papers are Insufficient to Permit the Court to "Affirm" Subject Matter Jurisdiction.**

It is clear from Highfields' pleadings, submissions in support of its motion and limited materials produced in discovery that far more information is required before this Court could "affirm" subject matter jurisdiction over this litigation.

It is undisputed that SCOR, as a French company, is a foreign citizen and the sole defendant. (Compl. ¶ 14 (Meal Decl. Ex. 1).) Consequently, if any of the Plaintiffs is also a foreign citizen, complete diversity is lacking and the Court does not have a basis upon which to exercise subject matter jurisdiction under 28 U.S.C. § 1332. On the current record, however, the citizenship of the three named Plaintiffs – "a company organized under the laws of the Cayman Islands" and "limited partnerships organized under the laws of Delaware" (Compl. ¶¶ 12-13 (Meal Decl. Ex. 1)) – is unknowable, first because Highfields has failed to plead or otherwise

---

[3]    Highfields' professed uncertainty concerning whether the presence of aliens on both sides of the litigation destroys complete diversity is unjustified. (Pls.' Mem. 6 ("this rule might not make any sense" . . . "the case law is limited and unresolved").) The law in the First Circuit, and elsewhere, is very clear, and it has been for a long time. *See, e.g.*, *Grupo Dataflux*, 541 U.S. at 569 ("[A]liens were on both sides of the case, and the requisite diversity was therefore absent."); *Doidge* v. *Cunard S.S. Co.*, 19 F.2d 500, 502 (1st Cir. 1927) ("[O]ne alien cannot sue another alien in federal court unless a federal question is raised"); *Heineken Tech. Servs.* v. *Darby*, 103 F. Supp. 2d 476, 477 n.1 (D. Mass. 2000) (no diversity jurisdiction over suit between alien and mixture of aliens and U.S. state citizens). Federal jurisdiction is authorized for disputes involving non-diverse foreign litigants if there are also citizens of different U.S. states on both sides of the litigation; however, that provision is inapplicable here because SCOR is the sole defendant in this action. *See* 28 U.S.C. § 1332(a)(3).

– 7 –

demonstrate the facts necessary to establish the citizenship of these entities for diversity
jurisdiction purposes, and second because Highfields has stonewalled SCOR's efforts to take the
discovery that would be necessary, among other things, to verify Highfields' allegations as to the
citizenship of the Plaintiffs.

   **Highfields Capital Ltd.** – For the purpose of diversity jurisdiction, a corporation is a
citizen of (1) every U.S. state or foreign nation in which it is incorporated and (2) the one U.S.
state or foreign nation that constitutes its principal place of business.  *See* 28 U.S.C. § 1332(c);
*see also JPMorgan Chase Bank* v. *Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 98 n.3
(2002) (every Circuit that has addressed the issue has applied § 1332(c) to foreign corporations).
Courts confronting this issue have almost universally held that a foreign corporation whose
principal place of business is in a U.S. state is considered a dual citizen of the foreign nation *and*
the U.S. state, even if application of this rule destroys complete diversity in an action against a
foreign citizen.  *See, e.g.*, *Nike, Inc.* v. *Comercial Iberica de Exclusivas Deportivas*, 20 F.3d 987,
990-91 (9th Cir. 1994) (Bermudian corporation with principal place of business in Oregon was
citizen of both locations, even though that destroyed diversity in action against alien); *Int'l
Shipping Co.* v. *Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989) (corporation organized
under foreign law remains "alien corporation under § 1332, even if its principal place of business
is in one of the States").

   The Plaintiffs suggest that this Court treat Highfields Capital Ltd. as a corporation,[4] admit
that the entity is "at least" a citizen of the Cayman Islands and acknowledge that the principal

---

[4]   In the very next breath, however, Highfields asserts that it might be error for the Court to follow Highfields'
suggestion, (Pls.' Mem. 10 n.5), given the possibility that it may instead be appropriate to treat Highfields
Capital Ltd. as an LLC for diversity jurisdiction purposes.  Thus, *by Highfields' own admission*, the only way
for this Court to "affirm" subject matter jurisdiction at this juncture would be for the Court to conclude that
Highfields Capital Ltd. meets not only the test for being a non-foreign corporation, but also the test for being a
non-foreign LLC.  Yet Highfields has made no factual showing that Highfields Capital Ltd. would be non-
foreign if it were treated as an LLC, and Highfields has refused to permit any relevant discovery on that issue.
This reason alone is sufficient to require denial of Highfields' motion.

– 8 –

place of business of Highfields Capital Ltd., for "tax and similar" purposes, is the Cayman

Islands.  (Pls.' Mem. 10-11; Mazzella Aff. ¶ 7.)  Plaintiffs argue, nonetheless, that Highfields

Capital Ltd. could be deemed solely a citizen of Massachusetts for diversity jurisdiction purposes

because it is a "passive investment fund" whose affairs are managed from a "nerve center" in

Boston, Massachusetts.  (Pls.' Mem. 12-14; Mazzella Aff. ¶ 7.)  In this Circuit, the principal

place of business of a corporation without physical operations is indeed its "nerve center,"

*Topp* v. *CompAir Inc.*, 814 F.2d 830, 835 & 837-38 (1st Cir. 1987) (citing factors relevant to

nerve center test), but contrary to Highfields' contentions, the "nerve center" test does not

consider "the home of the economic tsar who ultimately dominates [] the entity in question [] *as*

*long as the entity's corporate form is entitled to credibility*."  *Id*. at 835 (emphasis supplied)

(nerve center test "looks for the localized nerve center from which the corporation in issue is

directly run").[5]  In other words, Highfields' "nerve center" argument can only prevail if

Highfields shows that the "corporate form" of Highfields Capital Ltd. is not entitled to

credibility.

      Highfields has not begun to provide the information necessary to establish the principal

place of business, or to assess the credibility of the corporate form, of Highfields Capital Ltd.  In

both of the decisions cited by Highfields, the courts considered an extensive factual record

concerning the attributes and activities of the relevant corporations (not of their affiliates) in

determining their principal places of business.  *See Peterson* v. *Cooley*, 142 F.3d 181, 184

(4th Cir. 1998) (principal place of business of corporation was state of incorporation because its

---

[5]    In *Topp*, the First Circuit recognized that "where the corporate separation between a parent and subsidiary, though perhaps merely formal, is real and carefully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control . . . ." *Id.* at 836 (citation omitted); *see also Amarillo Oil Co.* v. *Mapco, Inc.*, 99 F.R.D. 602, 605 (N.D. Tex. 1983) ("the creation of diversity jurisdiction is one of the least compelling reasons for disregarding the corporate entity").

president, corporate office and corporate records were located there); *Vareka Invs., N.V.* v. *American Inv. Props., Inc.*, 724 F.2d 907, 910 (11th Cir. 1984) (discussing, among other things, identities and locations of corporation's investors, board meetings, and corporate records). No such record has been made here, and Highfields has obstinately refused to provide the discovery that would establish such a record. That being so, the Court cannot possibly rely – at least not yet – on the "nerve center" theory to "affirm" subject matter jurisdiction, as Highfields requests.

Highfields follows up its factually unsustained argument that Highfields Capital Ltd. qualifies as a Massachusetts citizen for diversity purposes by arguing that Highfields Capital Ltd. should not be considered to be a dual Massachusetts/Cayman Islands citizen under Section 1332. This latter argument relies on *Trans World Hospital Supplies Ltd.* v. *Hospital Corporation of America*, 542 F. Supp. 869 (M.D. Tenn. 1982), which appears to be the only reported decision with any continuing validity holding that a foreign corporation with a principal place of business in a U.S. state was exclusively a citizen of the U.S. state.[6] There is no need whatever for this Court to tackle the thorny issue of whether to follow *Trans World's* isolated holding, however, unless and until Highfields first makes the *factual* showing required to bring the *Trans World*

---

[6] As Highfields acknowledges, there is no Supreme Court or First Circuit decision directly on point, and there are a number of decisions from other jurisdictions holding, contrary to *Trans World*, that an alien corporation remains an alien corporation, even if its principal place of business is located in the United States, regardless of the consequences for complete diversity. (Pls.' Mem. 13-14.) *See, e.g.*, *Chick Kam Choo* v. *Exxon Corp.*, 764 F.2d 1148, 1150-53 (5th Cir. 1985) (analyzing text and legislative history of 1332(c) and holding that defendant incorporated in Liberia with its principal place of business in New Jersey was a citizen of both, destroying diversity jurisdiction in suit with alien plaintiffs); *Dewhurst* v. *Telenor Invest AS*, 83 F. Supp. 2d 577, 596 (D. Md. 2000) (no diversity jurisdiction over suit between alien plaintiffs and defendant incorporated in Norway with principal place of business in Maryland); *Simon Holdings PLC Group of Cos. U.K.* v. *Klenz*, 878 F. Supp. 210, 213 (M.D. Fla. 1995) (agreeing with the "greater weight of authority" and holding that plaintiff incorporated in the U.K. with principal place of business in Florida was citizen of both and could not maintain suit against aliens); *Air Routing Int'l Corp* v. *Promotora Internacional de Aviacon S.A. de C.V.*, 826 F. Supp. 1070, 1071-72 (S.D. Tex. 1993) (plaintiff incorporated in Canada with principal place of business in Texas was citizen of both and could not maintain suit against aliens); *Pancan Int'l Mgmt. Consultants, Inc.* v. *STS Microscan, Inc.*, 848 F. Supp. 1321, 1323-25 (E.D. Mich. 1993) (no diversity between two Canadian corporations, one with its principal place of business in the U.S.); *Rouhi* v. *Harza Eng'g Co.*, 785 F. Supp. 1290, 1294-95 (N.D. Ill. 1992) (alien corporation with principal place of business in a U.S. state cannot be diverse to an alien party or a party from the state of the corporation's principal place of business).

holding into play (*i.e.*, the factual showing required for the Court to conclude that Highfields Capital Ltd. does, indeed, have its principal place of business in a U.S. state). Instead, for now all the Court need do is order the discovery necessary to ascertain whether (assuming Highfields' legal theory is valid) the factual predicate for Highfields' assertion of subject matter jurisdiction could be sustained.

**Highfields Capital I LP and Highfields Capital II LP.** – The Supreme Court recently confirmed that for the purpose of assessing diversity jurisdiction when limited partnerships are parties, the citizenship of a limited partnership encompasses the citizenship of *each* of its general *and* limited partners. *Lincoln Prop. Co.* v. *Roche*, __ U.S. __, 126 S. Ct. 606, 610 & n.1 (Nov. 29, 2005) ("[T]o meet the complete diversity requirement, all partners, limited as well as general, must be diverse from all parties on the opposing side") (citing *Carden* at 189). This same rule applies to all forms of unincorporated associations and artificial entities, including limited liability companies and trusts. *See Carden* at 195; *Pramco, LLC* v. *San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006) ("citizenship of a limited liability company is determined by the citizenship of all of its members"); *Dalkon Shield Claimants* v. *MacLeod*, 197 B.R. 575, 579-80 (E.D. Va. 1995) (the *Carden* rule applies to trusts suing in their own name).[7]

---

[7]    Highfields' erroneously contends that the *Pramco* decision broke new ground, (Pls.' Mem. 8-9), and curiously attempts to use that contention to justify its belated concern about this Court's jurisdiction (Pls.' Mot. 1). *Carden*, which the United States Supreme Court decided more than 15 years before *Pramco*, itself unequivocally applies to all unincorporated associations, and its specific application to limited liability companies is not new to this jurisdiction. *See JMTR Enters., LLC* v. *Duchin*, 42 F. Supp. 2d 87, 94 (D. Mass. 1999) (applying *Carden* and holding that "unless and until Congress speaks as to the citizenship of limited liability companies, they are taken to be citizens of the state or states of which their members are citizens"). Thus, the applicable jurisdictional law was well-settled prior to the filing of the Complaint. *See Int'l Shipping Co.,* 875 F.2d at 390-91 ("Regardless of the validity of any argument [plaintiff's counsel] can now conjure to justify overlooking a well-established principle of law, he was required to conform with the law or be prepared to challenge it at the time he signed the complaint.").

10014409_1.DOC

Highfields has offered a convoluted explanation for what it claims to be the non-foreign citizenship of Highfields Capital I and Highfields Capital II, and Highfields' submissions in support of that explanation merely highlight the gaps in the facts it has alleged (but refused to provide discovery about).  Plaintiffs assert that there were 232 limited partners of Highfields Capital I and Highfields Capital II, combined, when the complaint was filed, including individuals, corporations, trusts, partnerships and limited liability companies.  (Pls.' Mem. 7; Mazzella Aff. ¶¶ 4-6.)  However, Highfields has offered no information as to the citizenship (or even the legal nature) of those various partnerships, limited liability companies, trusts or individuals.  Indeed, the only information provided for 225 of the limited partners is Highfields' assertion that they had U.S. mailing addresses and that they were "United States persons for tax purposes."  Similarly, the only information provided for five of the remaining seven limited partners is Highfields' claim that they are limited partnerships organized under the law of the Cayman Islands and that their unidentified "owners" were "U.S. tax persons with U.S. mailing addresses."  One of the two remaining limited partners is identified only as a "limited liability company organized in the state of Delaware with a mailing address in Bermuda." (Pls.' Mem. 7-8; Mazzella Aff. ¶¶ 4-6).

Even if Highfields' allegations were true (which neither SCOR nor this Court has any way of knowing at this point because of Highfields' stonewalling discovery tactics), those explanations would plainly be insufficient to establish the non-foreign citizenship of Highfields Capital I and Highfields Capital II for diversity purposes.  The "test" for "U.S. tax person" status, *i.e.*, whether a taxpayer must file as a "resident," presumably, is clearly not equivalent to the test for citizenship under Section 1332, and citizenship for diversity jurisdiction purposes is not based on the address at which a litigant receives its mail.  For diversity jurisdiction purposes, an unincorporated association is nothing more than the sum of its parts, and information concerning

– 12 –

the citizenship of those sub-units is therefore the information Highfields is required to provide if it truly desires that the Court "affirm" subject matter jurisdiction.  The tax status or mailing address of a corporation or limited partnership may or may not be indicative of its place of incorporation or organization or its principal place of business, but alone it does not address the important issues raised on Highfields' motion.  The citizenship of an individual, which is defined by immigration law and domicile, likewise is not synonymous with residence or post office box location.

In addition, Highfields' assertion regarding the remaining investor in Highfields Capital I LP and Highfields Capital II LP—their general partner, Highfields Associates LLC—complicates the jurisdictional inquiry.  According to Highfields' submission, all but two of the members of Highfields Associates LLC were "Highfields employees resident in various U.S. states."  (Pls.' Mem. 8.)  Again, this does not establish the citizenship of these individuals or entities.  One of the two non-U.S. members was a "Canadian national residing in the United States . . . who possessed a H-1B visa," and the other was a "limited partnership . . . whose two limited partners are a Delaware corporation and a Barbados company."  Highfields has offered no explanation of how the Court could "affirm" its subject matter jurisdiction in spite of the "Canadian national" member, whose H-1B visa alone demonstrates that he or she cannot have been a citizen of a U.S. state.[8]  Similarly, Highfields has not provided any information

---

[8]    To be a "citizen of a State" under 28 U.S.C. § 1332(a), "a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of [a] state."  *Coury* v. *Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *see also Valentin* v. *Hosp. Bella Vista*, 254 F.3d 358, 366-67 (1st Cir. 2001).  Section 1332(a) also provides that, for the purpose of assessing diversity of citizenship, "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled."  A citizen of a foreign nation in the United States on a work visa, which is by definition temporary, is therefore not considered a citizen of any U.S. state.  *See, e.g., Foy* v. *Schantz, Schatzman & Aaronson, P.A.*, 108 F.3d 1347, 1349 (11th Cir. 1997) (Section 1332(a) "plainly directs courts to refer only to an alien litigant's official immigration status to determine if the alien was admitted to the United States for permanent residence"); *Kato* v. *County of Westchester*, 927 F. Supp. 714, 716 (S.D.N.Y. 1996) ("aliens who have been accorded lawful permanent resident status under the immigration laws are considered aliens 'admitted for permanent residence,' while aliens admitted to the United States on temporary nonimmigrant visas are not"); *Funygin* v. *Yukon Oil Co.*, No. Civ. A.H-05-0785, 2005 WL 1840147,

– 13 –

concerning the principal place of business of the Delaware corporation, or the form of
organization, principal place of business or constituent membership of "the Barbados company."

During the course of discovery, Highfields produced documents that appear to be print-
outs from "investor databases" apparently listing the limited partners of Highfields Capital I and
Highfields Capital II.[9]  (Meal Decl. Exs. 12-13.)  However, the lists are dated after the complaint
was filed and provide only each limited partner's name and an identifying "state" or "country" (it
is not clear if these refer to citizenship, residence or tax status).  This information does not
establish the citizenship of each of the limited and general partners or members of the assorted
artificial entities on the list.  One of the limited partners of Highfields Capital II, which is
affiliated with a SCOR competitor and whose identity is highlighted in Exhibit 13 of the Meal
Declaration, appears to be the "limited liability company . . . with a mailing address in Bermuda"
identified in Highfields' submissions.  (Pls.' Mem. 8; Mazzella Aff. ¶ 3.)  These lists ultimately
raise more questions than they answer, but they do demonstrate that providing the answers could
be as simple as a more extensive database inquiry.[10]

---

at *2 (S.D. Tex., July 28, 2005) (no diversity jurisdiction over suit between alien and another alien in the United
States on an H-1B temporary work visa).

[9]   Plaintiffs also have produced an apparent print-out from an "investor database" apparently listing the
shareholders of Highfields Capital Ltd. as of August 23, 2004.  (Meal Decl. Ex. 14.)  The document postdates
the complaint and is deficient for the purpose of establishing subject matter jurisdiction, but as Highfields
Capital Ltd. is a "passive investment fund," (Pls.' Mem. 12), the document is relevant to who, if anyone,
suffered an injury as a result of SCOR's alleged conduct, and thus, whether the "center of gravity" of the
circumstances allegedly giving rise to Plaintiffs' claim under Chapter 93A of the Massachusetts General Laws
was in Massachusetts.  *See Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 781 N.E.2d 787, 799-800
(Mass. 2003) (announcing "center-of-gravity" test to determine whether alleged misconduct occurred "primarily
and substantially within the commonwealth," a foundational prerequisite to application of Chapter 93A).
According to this document, the center of gravity for the Plaintiffs' Chapter 93 allegations tilts away from
Massachusetts:  approximately 70% of Highfields Capital Ltd.'s investors were located outside of the
Commonwealth.

[10]   Belatedly, on April 27, 2006, Highfields provided SCOR with heavily modified versions of the investor lists,
purportedly as of March 30, 2004, that identify for each investor merely the "investor type" and state of
"mailing address" and, for non-individuals, "country of formation."  (Meal Decl. Ex. 15.)  This information is
patently all but useless to the resolution of the jurisdictional questions in this case.

**C.    This Court Should Order the Discovery Necessary to Substantiate Subject Matter Jurisdiction and Stay All Other Proceedings Until This Dispute is Resolved.**

Highfields has the obligation to substantiate this Court's subject matter jurisdiction, and its equivocal "request for a ruling" from this Court seeks what is, in essence, an impermissible advisory opinion. (Pls.' Mem. & Mot. 1.) *See U.S.* v. *Fruehauf*, 365 U.S. 146, 157 (1961) ("[Advisory] opinions . . . we have consistently refused to give."); *see also Flast* v. *Cohen*, 392 U.S. 83, 97 n. 14 (1968) ("The rule against advisory opinions was established as early as 1793 . . . and the rule has been adhered to without deviation."). Highfields admits sheepishly that the burden it imposed upon itself is "not necessarily easy" to carry, (Pls.' Mem. 2), but that burden belongs to Highfields alone. As discussed above, the sparse information Highfields grudgingly has provided thus far concerning the Plaintiffs' citizenship is largely irrelevant and in any event is wholly inadequate to enable this Court to "affirm" the complete diversity required by Congress in alienage cases. Accordingly, this Court should exercise its discretion to order discovery necessary to determine its own jurisdiction.[11]

In light of Highfields' demonstrated unwillingness to refrain from pressing merits discovery under authority of this Court while jurisdiction is in doubt[12], SCOR respectfully urges that the Court stay all discovery and other proceedings not related to its subject matter jurisdiction. "[T]he power to stay proceedings is incidental to the power inherent in every court

---

[11]  For example, certain of SCOR Document Requests (*see* Meal Decl. Exs. 2 and 3 at Nos. 34-37 & 65-67) with which Highfields has largely refused to comply, seek the information Highfields is required to provide to substantiate its assertion of this Court's jurisdiction. The documents and information sought by these requests are necessary to identify: (i) the types of entities that the Plaintiffs are; (ii) the entities whose citizenship is determinative for assessing whether diversity jurisdiction exists; and (iii) the citizenship of the general partners, limited partners, owners and members of the named Plaintiffs and entities related to the named Plaintiffs that are relevant to determining the citizenship of the named Plaintiffs.

[12]  Significantly, it is well-established that a subpoena *duces tecum* issued in connection with a federal court action over which subject matter jurisdiction is lacking is a nullity. *See United States Catholic Conference* v. *Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (recognizing that subpoenas *duces tecum* are void in absence of subject matter jurisdiction).

– 15 –

to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel and for litigants." *Air Line Pilots Ass'n* v. *Miller*, 523 U.S. 866, 880 n.6 (1988) (citation omitted). District courts in this and other Circuits routinely order stays of proceedings, including discovery proceedings, pending the resolution of jurisdictional questions. *See*, *e.g.*, *Dynamic Image Techs., Inc.* v. *United States*, 221 F.3d 34, 38-39 (1st Cir. 2000) (upholding district court's use of its "broad discretion" to stay discovery unrelated to jurisdictional facts pending resolution of a question concerning the court's subject matter jurisdiction). When a matter as fundamental as this Court's jurisdiction is clouded by what Highfields acknowledges to be "significant" questions, (Meal Decl. Ex. 9), proceeding with substantive discovery, either between the parties or involving third parties, makes no sense, because proceeding with discovery other than the production of documents by Highfields necessary to establish jurisdiction is inefficient and potentially duplicative.

## II.   IF AND WHEN THE COURT HAS BEFORE IT A SUFFICIENT RECORD TO CONCLUDE THAT IT DOES NOT HAVE SUBJECT MATTER JURISDICTION, IT MAY DO NOTHING MORE THAN DISMISS HIGHFIELDS' COMPLAINT.

Neither Highfields nor SCOR currently is asserting that this Court lacks subject matter jurisdiction, and as shown above, the factual record is, as of yet, nowhere near complete enough for the Court to conclude on its own motion that subject matter jurisdiction is lacking. As a result, the "referral" prong of Highfields' motion is unripe for adjudication. Moreover, if and when the Court has before it a factual record sufficient to determine that it lacks subject matter jurisdiction, the consequences of such a finding are clear, and have been for more than 130 years: "'Without jurisdiction the court cannot proceed at all on any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining in the court is announcing the fact and dismissing the cause.'" *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1869)).

In spite of this well-established principle, Highfields has proposed that this Court "refer" the litigation to a state court, rather than dismiss it outright, if subject matter jurisdiction is found wanting, using a procedure invented in *Pallazola* v. *Rucker*, 621 F. Supp. 764, 769-71 (D. Mass. 1985) ("*Pallazola*").  (Pls.' Mem. 14-15.)  No other court has attempted to utilize this procedure in the 20 years since *Pallazola*, at least in any reported decision, and the only authority Highfields cites for its proposal is *Pallazola* itself.  But in the years following that decision, the U.S. Supreme Court and the First Circuit have reinforced the settled principle that the absence of subject matter jurisdiction deprives a federal court of its power to do anything but dismiss a jurisdictionally defective action, at least without explicit statutory authority to the contrary.  *See Arbaugh*, 126 S. Ct. at 1244; *Mills* v. *Maine*, 118 F.3d 37, 51 (1st Cir. 1997) (dismissal is the "one course of action left open to" a court lacking subject matter jurisdiction).[13]

Plaintiffs' proposed "referral" attempts to circumvent established First Circuit precedent prohibiting transfer of a jurisdictionally defective complaint to state court.  Although the First Circuit declined to rule on the referral issue in an appeal of the *Pallazola* decision and deemed it moot, it strongly hinted that it did not approve.  797 F.2d 1116, 1128-29 & n. 32 (1st Cir. 1986) ("A more troubling question [than whether jurisdiction existed] is whether the district court erred in referring the action to a state court and, if it did, what can be done about the error").  The First Circuit thereafter held that a court without subject matter jurisdiction cannot transfer an action to a state court.[14]  *Mills*, 118 F.3d at 51 (1st Cir. 1997); *see also Dantes* v. *Western Found. Corp.*,

---

[13]    Federal statutes empower federal courts lacking subject matter jurisdiction to transfer actions within the federal court system, 28 U.S.C. § 1631, and to remand improvidently removed actions to state court, 28 U.S.C. § 1447(c), but no federal statute authorizes this Court to "refer" an action to state court that was originally— incorrectly—filed in a federal court without jurisdiction.  *See Mills*, 118 F.3d at 51 (recognizing that 28 U.S.C. § 1631 prohibits transfer to state court).  Absent this authority, the mandate of Federal Rule of Civil Procedure 12(h)(3) is unambiguous:  "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

[14]    Notably, the *Mills* court refused to find support for the plaintiff's proposed transfer procedure in the Maine savings statute, because it authorized plaintiffs only to re-file an action in state court that had been "defeated for

– 17 –

614 F.2d 299, 301 (1ˢᵗ Cir. 1980) ("'Where, as here, the court lacks jurisdiction over the subject matter . . . (a defect) which precludes it from acting at all, *a fortiori* a court lacks power to transfer.'") (citations omitted).  In *Mills*, the court recognized that the First Circuit has rejected the proposition "that a court bereft of jurisdiction has 'inherent power to transfer' a case." 118 F.3d at 52 n. 4 (citation omitted); *see also Lovelace* v. *Rockingham Mem. Hosp.*, 299 F. Supp. 2d 617, 622 (W.D. Va. 2004) ("[F]ashioning a transfer procedure would be contrary to . . . *Erie's* doctrinal underpinning that federal courts have no business expanding their jurisdictional borders by creating rights, remedies and procedures in diversity cases.").

The *Pallazola* court attempted to distinguish between the concepts of "transfer" and "referral" by reasoning that "transfer" implies a power to place a case on the transferor court's docket, while referral involves merely offering the case to a state court willing to accept it. 621 F. Supp. at 770.  However, the broad prohibition imposed by the Supreme Court and the First Circuit against *any* action by a court without subject matter jurisdiction suggests that the distinction is not a meaningful one.  *See*, *e.g.*, *Steel Co.*, 523 U.S. at 94 ("'Without jurisdiction, the court cannot proceed at all'"); *Joy* v. *Hague*, 175 F.2d 395, 396 (1ˢᵗ Cir. 1949) ("it is the duty of the trial court, if it finds that jurisdiction does not exist, to proceed no further but to dismiss the suit").  Moreover, the proposed "referral" to state court is essentially another name for the same "transfer" procedure specifically rejected by the First Circuit in *Mills*; the analysis in that decision did not turn on whether the court sought permission from the state court before it transferred the case.[15]  *See* 118 F.3d at 51.  Even Highfields fails to maintain the distinction.

---

any matter of form," which is virtually the same language found in the Massachusetts savings statute.  *See Mills*, 118 F.3d at 51-52.

[15]    Significantly, the district court's decision in *Pallazola* does not explain the purported legal significance of the state court's agreement to accept the referral.  Principles almost as venerable as the Republic, itself, required the court to dismiss that action irrespective of whether the state courts provide an available forum following dismissal, and the court in *Pallazola* did not suggest otherwise.

(Pls.' Mem. 1 ("the Court has the authority to attempt to *transfer* this case to state court") (emphasis added).)

The *Pallazola* procedure apparently has not been used since *Pallazola* itself, which suggests that, if it has any merit, it is, at best, an extraordinary exception that should be limited to the facts of that decision. The *Pallazola* court presented three principal justifications for employing its purported inherent power to refer the case to state court: (1) the court was concerned that the plaintiff may be barred from re-filing the action in state court if the court dismissed the complaint outright; (2) the issue had been raised only after four years of extensive proceedings; and (3) some of those proceedings had already involved referral to state malpractice tribunals. *See* 621 F. Supp. at 770. Highfields does not argue, however, that any of these justifications is present here. This litigation has not involved any proceedings before any state tribunal. In addition, Highfields does not claim that it is in danger of being left without a forum if this action were dismissed; rather, Highfields asserts that the Massachusetts "savings statute" would allow Highfields to "commence a new action for the same cause" within one year of such a dismissal. (Pls.' Mot. 1; Pls.' Mem. 14-15.) Further, Highfields explicitly contends that "this case is in its infancy." (Pls.' Mot. & Mem. 1.) Unlike in *Pallazola*, then, the subject matter jurisdiction issue has not been raised at a "late stage" and "years of litigation effort" will not have to be replicated if the case is dismissed and re-filed. *See* 621 F. Supp. at 770.

In any event, any prejudice Highfields might suffer from an outright dismissal of the case, rather than a "referral" to state court, is a result of its own negligence. Highfields was required to investigate the requisite jurisdictional facts before it commenced this action in federal court, and alleged affirmatively in the Complaint that diversity jurisdiction existed. If Highfields failed to make the requisite inquiry, and if that failure gives rise to a dismissal of the action at this point, Highfields has itself – and only itself – to blame for any consequent prejudice. This

Court, therefore, should dismiss the action outright if and when it concludes that it lacks subject matter jurisdiction.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts, SCOR hereby submits a request for oral argument.

## CONCLUSION

For the foregoing reasons, SCOR respectfully requests that the Court deny Plaintiffs' Motion to Affirm Subject Matter Jurisdiction and deny Plaintiffs' Motion In the Alternative to Refer Case to State Court, that the Court order the parties to proceed with the discovery necessary to resolve the jurisdictional issue, that the Court stay all other proceedings in this matter, including discovery sought by the April 7th Subpoenas, pending the resolution of the jurisdictional question, and that the Court grant to SCOR any such other and further relief that the Court may deem just and proper.

|  | Respectfully submitted, |
|---|---|
| Of Counsel:<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, NY 10004-2498<br>Tel:  212-558-4000<br>Fax:  212-558-3588 | ROPES & GRAY LLP<br><br>By:   /s/  Douglas H. Meal<br>        Douglas H. Meal (BBO#340971)<br>        Giselle Joffre (BBO#658047)<br><br>        One International Place<br>        Boston, MA 02110-2624<br>        Tel:  617-951-7000<br>        Fax:  617-951-7050<br>        Counsel for Defendant SCOR |

Dated: May 2, 2006
        Boston, Massachusetts

– 20 –

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of May, 2006, I caused true and correct

copies of (i) Defendant SCOR's Memorandum of Law in Opposition to Plaintiffs' Motion to

Affirm Subject Matter Jurisdiction or, In the Alternative, to Refer Case to State Court, and

(ii) the Declaration of Douglas H. Meal and its accompanying exhibits to be served by hand

upon:

Lisa C. Wood, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts  02210

_/s/ Giselle J. Joffre_
Giselle J. Joffre, Esq.

10014409_1.DOC