# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

—————————————————————X

HIGHFIELDS CAPITAL LTD.,     :
HIGHFIELDS CAPITAL I LP,     :
HIGHFIELDS CAPITAL II LP,    :
                               :  Civ. No. 04-10624 (MLW)
             Plaintiffs,   :
       v.               :
                               :
SCOR, S.A.,               :
                               :
            Defendant.   :

—————————————————————X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SCOR'S MOTION TO DECLARE HIGHFIELDS' INVESTOR LISTS NOT "PRIVILEGED MATERIAL"

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................5

ARGUMENT .................................................................................................................9

I.     THE INFORMATION IN THE INVESTOR LISTS IS NOT
       PRIVILEGED. ...................................................................................................12

       A.     The Attorney-Client Privilege Does Not Apply to the Information
              in the Investor Lists....................................................................................12

       B.     Highfields Has Failed to Carry its Burden to Prove That the
              Information in the Investor Lists is Privileged. .........................................15

II.    EVEN IF THE INFORMATION CONTAINED IN THE INVESTOR
       LISTS WOULD OTHERWISE BE PRIVILEGED, HIGHFIELDS
       WAIVED THE PRIVILEGE BY INVOKING THE COURT'S SUBJECT
       MATTER JURISDICTION. ................................................................................17

REQUEST FOR ORAL ARGUMENT .........................................................................19

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Abel* v. *Merrill Lynch & Co.*,
  No. 91 Civ. 6261, 1993 WL 33348 (S.D.N.Y. 1993) ..................................................15

*Am. Elec. Power Co.* v. *United States*,
  191 F.R.D. 132 (S.D. Ohio 1999) ..............................................................................15

*Cavallaro* v. *United States*,
  284 F.3d 236 (1st Cir. 2002) ................................................................................10, 12

*Com. of Mass.* v. *First Nat'l Supermarkets, Inc.*,
  112 F.R.D. 149 (D. Mass. 1986) .................................................................................9

*Command Transport., Inc.* v. *Y.S. Line (USA) Corp.*,
  116 F.R.D. 94 (D. Mass 1987) ...................................................................................10

*Computer Network Corp.* v. *Spohler*,
  95 F.R.D. 500 (D.D.C. 1982) .....................................................................................19

*Dorokee Co.* v. *United States*,
  697 F.2d 277 (10th Cir. 1983) ....................................................................................13

*Fisher* v. *United States*,
  425 U.S. 391 (1976) ..............................................................................................12, 13

*Gov't Guar. Fund of the Republic of Finland* v. *Hyatt Corp.*,
  177 F.R.D. 336 (D.V.I. 1997) .....................................................................................18

*Greater Newburyport Clamshell Alliance* v. *Public Serv. Co. of N.H.*,
  838 F.2d 13 (1st Cir. 1988) ...................................................................................10, 17

*Ken's Foods, Inc.* v. *Ken's Steak House*,
  213 F.R.D. 89 (D. Mass. 2002) ..................................................................................10

*In re Kidder Peabody Securities Litigation*,
  168 F.R.D. 459 (S.D.N.Y. 1996) ...............................................................................18

*Open Software Found.* v. *United States Fid. & Guar. Co.*,
  191 F.R.D. 325 (D. Mass 2000) .................................................................................17

Page

*SCM Corp.* v. *Xerox Corp.*,
    70 F.R.D. 508 (D. Conn. 1976)..................................................................13

*Savoy* v. *Richard A. Carrier Trucking, Inc.*,
    178 F.R.D. 346 (D. Mass. 1998)...............................................................17

*Sax* v. *Sax*,
    136 F.R.D. 542 (D. Mass. 1991).................................................................10

*Trevino* v. *ACB Am., Inc.*,
    232 F.R.D. 612 (N.D. Cal. 2006)..............................................................15

*United States* v. *Bilzerian*,
    926 F.2d 1285 (2[d] Cir. 1991) .................................................................18

*United States* v. *Bisanti*,
    414 F.3d 168 (1st Cir. 2005)...................................................................12

*United States* v. *Davis*,
    131 F.R.D. 391 (S.D.N.Y. 1990) ..............................................................13

*Upjohn Co.* v. *United States*,
    449 U.S. 383 (1981)...................................................................9, 10, 14

*XYZ Corp.* v. *United States*,
    348 F.3d 16 (1st Cir. 2003)................................................................10, 12

## STATE CASES

*Darius* v. *City of Boston*,
    433 Mass. 274, 277 (2001) .......................................................................11

*G.S. Enters.* v. *Falmouth Marine, Inc.*,
    410 Mass. 262, 270-71 (1991) ..................................................................19

*In re Grand Jury Investigation*,
    437 Mass. 340 (2002) ................................................................................9

*Purcell* v. *District Attorney for the Suffolk District*,
    424 Mass. 109, 115 (1997) .......................................................................12

*In re Reorganization of Elec. Mut. Liab. Ins. Co.*,
    425 Mass. 419 (1997) .................................................................10, 12, 15, 16

Page

## STATUTES

Fed. R. Civ. P. 26(b)(5)........................................................................................................15

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

——————————————————X
HIGHFIELDS CAPITAL LTD.,          :
HIGHFIELDS CAPITAL I LP,          :
HIGHFIELDS CAPITAL II LP,         :
                                  :   Civ. No. 04-10624 (MLW)
                  Plaintiffs,     :
            v.                    :
                                  :
SCOR, S.A.,                       :
                                  :
                  Defendant.      :
——————————————————X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SCOR'S MOTION TO DECLARE HIGHFIELDS' INVESTOR LISTS NOT "PRIVILEGED MATERIAL"

Pursuant to Rule 7(b) of the Federal Rules of Civil Procedure, Rule 7.1(b) of the Local Rules of the United States District Court for the District of Massachusetts, and Paragraph 21 of the *Stipulation and Protective Order*, entered in this litigation on February 27, 2006 (the "Protective Order"), Defendant SCOR respectfully submits this Memorandum of Law and the accompanying Declaration of Douglas H. Meal, subscribed to on June 8, 2006, in support of its motion opposing the attempt by Plaintiffs Highfields Capital Ltd., Highfields Capital I LP and Highfields Capital II LP (collectively, "Highfields" or the "Plaintiffs") to designate and recover certain documents as inadvertently produced "Privileged Material."

## PRELIMINARY STATEMENT

Highfields has attempted to designate as Privileged Material under the Protective Order three documents that it claims were inadvertently included in an installment of Highfields' production to SCOR of documents in response to SCOR's

document requests in this action.[1]  Those documents apparently consist of tables containing, primarily, the names, "State" and "Country" of certain investors in Highfields (the "Investor Lists") drawn from an "Investor Database" to which Highfields' General Counsel, Mr. Joseph Mazzella, referred in two affidavits that Highfields submitted in ostensible support of its pending motion to "affirm" this Court's subject matter jurisdiction over this action.[2]  Paragraph 21 of the Protective Order permits the party receiving notice of the inadvertent disclosure of Privileged Material to move for an order challenging an assertion of privilege, and accordingly SCOR has brought this motion. (Protective Order ¶ 21 (Meal Decl. Ex. 7).)

The Investor Lists do not contain or reflect any legal advice or any request for legal advice, and nothing on the face of the documents suggests that any of them is subject to any privilege.  Highfields has refused to make more than a conclusory statement substantiating its claim of privilege for the lists.  The roots of Highfields' privilege assertions might well lie elsewhere, for, as is discussed below, Highfields has tried various other possible excuses to prevent SCOR from learning the identities and

---

[1]  The original versions of these documents are attached to the Declaration of Douglas H. Meal, subscribed to on June 8, 2006 (cited herein as "Meal Decl. Ex. __"), as Exhibits 1, 2 and 3.  The replacement documents supplied by Highfields are attached to the Meal Declaration as Exhibits 4, 5 and 6.  SCOR does not address in this memorandum Highfields' simultaneous attempt to designate as Privileged Material nine other documents as to which Highfields also has asserted a claim of inadvertent disclosure.  Those documents appear to relate to merits-based issues, which, SCOR submits, should not be addressed until after the resolution of the serious jurisdictional questions that Highfields has raised in its motion to "affirm" subject matter jurisdiction.  Accordingly, SCOR reserves all rights with respect to, including, among other things, the right to challenge in the future, Highfields' attempt to re-designate those documents as Privileged Material.  Inasmuch as the Investor Lists are highly relevant to, albeit not dispositive of, the jurisdictional questions before this Court, SCOR submits that it is necessary for SCOR to raise at this juncture its challenge to Highfields' privilege assertions regarding those lists.

[2]  *See* Affidavit of Joseph F. Mazzella in Support of Plaintiffs' Motion to Affirm Subject Matter Jurisdiction, Or, In the Alternative, To Refer Case to State Court, dated April 19, 2006 (cited herein as "Mazzella Aff. ¶ __") at ¶¶ 4-6; Supplemental Affidavit of Joseph F. Mazzella in Support of Plaintiffs' Motion to Affirm Subject Matter Jurisdiction, Or, In the Alternative, To Refer Case to State Court, dated April 28, 2006 (cited herein as "Mazzella Sup. Aff. ¶ __") at ¶ 2.

citizenship of Highfields' investors – even though Highfields has placed that information squarely at issue in connection with Highfields' pending motion to "affirm" subject matter jurisdiction.  Indeed, in various communications with SCOR regarding SCOR's document requests relating to, among other things, the allegation in the Complaint that the Court has diversity jurisdiction over this action, Highfields has essentially taken the position that information about the Highfields investors is far too sensitive for Highfields to provide, irrespective of the allegations that Highfields has included in the Complaint or the motions that Highfields has made before the Court.

When Highfields produced copies of the Investor Lists to SCOR, Highfields designated them "Confidential" under the Protective Order.  Now Highfields is seeking to re-designate and recover the lists as Privileged Material, by claiming that they had been produced inadvertently.  In between those two designations – when SCOR alerted Highfields to SCOR's intention to file the Investor Lists under seal in connection with SCOR's opposition to Highfields' jurisdictional motion – Highfields took the position that the lists should be designated "Highly Confidential," but not that they were somehow privileged.  Notwithstanding the absence from the lists of any hint that they could in some sense be privileged, Highfields has refused SCOR's request to provide more than bare-bones information to support Highfields' sudden supposed realization that the lists are subject to the attorney-client privilege.  Rather, Highfields appears to contend that the Investor Lists are privileged because Highfields' General Counsel referred to them, or the database from which they were derived, in providing some form of legal advice at some point in time.

Highfields' re-designation effort must fail, however, because it is fundamental that non-privileged factual information does not become subject to a

privilege and immune from discovery merely because the information was provided to counsel. The information in the Investor Lists does not contain, or disclose the substance of, any legal advice provided or sought by any lawyer or client. They appear to be simply print-outs from a database that Highfields maintains for business reasons. Consequently, these documents cannot somehow morph into privileged materials merely because, at some point in time, Highfields' General Counsel used them in the course of providing some form of legal advice.

To the contrary, even if the information in the Investor Lists could at some point have been subject to the attorney-client privilege, they no longer could be subject to that protection because Highfields waived any such privilege by submitting two affidavits from Mr. Mazzella that appear to be based on the lists, or at least the database from which they appear to have been generated. Highfields' position with respect to the discoverability of the Investor Lists reflects that classic "sword-and-shield" invocation of the attorney-client privilege that courts and commentators alike condemn. On the one hand, Highfields seeks to rely on its investor database to argue (without having accorded to SCOR even the minimum discovery relevant to the issue) that there is a basis for the Court to affirm its subject matter jurisdiction over this action. On the other hand, Highfields seeks to prevent SCOR from obtaining access to that database, contending that its contents are privileged because Mr. Mazzella used the database in connection with the provision of certain legal advice. The applicable legal principles and considerations of fundamental fairness require rejection of Highfields' cynical efforts to stymie legitimate and necessary discovery regarding so fundamental an issue as whether this Court has the power to adjudicate this case.

## STATEMENT OF RELEVANT FACTS

The disagreement between the parties concerning the relevance of information relating to Highfields' investors has been well-documented in previous submissions, and SCOR respectfully refers the Court to the "Statement of Relevant Facts" set out in SCOR's *Memorandum of Law in Opposition to Plaintiffs' Motion to Affirm Subject Matter Jurisdiction, Or In The Alternative, Refer Case to State Court*, filed May 2, 2006, for a brief description of the procedural and factual history of that aspect of the litigation. However, a few key facts do bear repetition or introduction here.

*First*, Highfields alleged in its Complaint that this Court has subject matter jurisdiction over Plaintiffs' claims by virtue of the diversity of citizenship between the parties. (*See* Compl. ¶17.) When SCOR sought to take discovery with respect to that allegation, Highfields objected on multiple grounds, including asserting that the information sought by SCOR's requests was "not relevant," "calculated to harass," "prohibited by law," "confidential and irrelevant," or "[sought] information not within Highfields' knowledge." At that time, Highfields did not suggest that information about its investors was shielded from disclosure on the basis of any privilege.

*Second*, on April 6, 2006, Highfields produced copies of the Investor Lists to SCOR as part of an installment of documents that Highfields provided in response to SCOR's document requests in this action. Each of the documents relates, respectively, to one of the three plaintiffs in this action, and each bears the date August 23, 2004. The Investor Lists include various columns apparently relating to the name of the "Company," "State" and "Country" of each of the listed investors.[3] Each of the Investor

---

[3]     The Investor List relating to Highfields Capital Ltd. also includes a column headed "Last Results," which contains certain non-privileged notations.

Lists bears handwritten tick- or check-marks and certain minimal handwritten notations –
which appear to be in two distinct handwritings and at least some of which appear to
relate to the assertions in the Mazzella Affidavits regarding the U.S. and non-U.S.
citizenships of Highfields' investors.  The documents appear to be print-outs of a
database maintained by Highfields because a header at the top of each list includes the
reference "Investor Database.dbf."  (Meal Decl. Exs. 1-3 and 4-6.)

Highfields must have subjected those lists to some scrutiny because it
designated them "Confidential" under the Protective Order; but did Highfields not at that
time assert that the Investor Lists were protected by any privilege.  This lack of a timely
assertion of privilege is not surprising inasmuch as there is no hint of either a conveyance
of, or a request for, legal advice on the face of these documents.  The lists do not include
the customary heading or file stamp of "Attorney Client Privilege" or "Advice of
Counsel,"  and the handwritten notes and tick-marks on the Investor Lists appear merely
to tally the numbers of U.S. and non-U.S. investors in each of the Plaintiff Highfields
funds.  In addition, the documents were produced in free-standing form; they do not
appear to be attached or appended to any other documents provided by Highfields.

On April 18, 2006, during a Rule 37.1 conference requested by SCOR to
address Highfields' objections to SCOR's document requests, counsel for Highfields
acknowledged that there are serious questions as to whether the Court has subject matter
jurisdiction over this action and undertook to provide to SCOR information concerning
the investors in Highfields.  The following day, Highfields filed its motion to "affirm" the
Court's subject matter jurisdiction over the action.  On April 27, 2006, only days before
the deadline for SCOR to file its response to Highfields' motion, Highfields provided to
SCOR documents that Highfields represented were "investor lists" for Highfields Capital

I LP and Highfields Capital II LP that included "a description of the type of each investor," as well as columns entitled "mailing address" (under which Highfields listed only abbreviations for various states) and "formation country." (Meal Decl. Ex. 8.) Noticeably absent from the new lists were any names of, or other identifying information for, the investors to whom the lists supposedly relate. Instead, the sanitized documents include representations merely as to the investors' "type." Highfields subsequently has claimed that "all" the information it has concerning its investors is their "names and addresses [] and certain tax declarations," an admission that raises serious questions not only about the accuracy and usefulness of these documents, but also about the basis for the allegations of Paragraph 17 of the Complaint. (Proposed Reply Memorandum of Law in Support of Plaintiffs' Motion to Affirm Subject Matter Jurisdiction or, in the Alternative, to Refer Case to State Court, filed May 12, 2006 ("Proposed Rep. Mem.") 4 n.2.) Notwithstanding the absence from the new lists of essentially any useful information, Highfields requested that SCOR note that these "investor lists" were "designated as *Highly Confidential* pursuant to the [Protective Order] and the documents should be treated in accordance therewith." (Meal Decl. Ex. 8 (emphasis in original).) Still at this point, Highfields did not suggest that information concerning its investors constituted Privileged Material under the Protective Order.

*Third*, Highfields provided two affidavits from Mr. Joseph Mazzella, a Managing Director and General Counsel of Highfields Capital Management, in support of Highfields' motion to "affirm" subject matter jurisdiction. Those affidavits purported to attest to facts necessary to establish, for purposes of the subject matter jurisdiction inquiry, the citizenship of the Highfields Plaintiffs. In Mr. Mazzella's words, the affidavits were made on his personal knowledge and were based on his "review of

Highfields Capital Management's records database, as of March 30, 2004." (Mazzella Aff. ¶¶ 1, 4-6; Mazzella Sup. Aff. ¶¶ 1-2.) Highfields did not provide any documentary support for the facts attested in Mr. Mazzella's affidavits, although the affidavits recited that Mr. Mazzella had reviewed certain investor records in preparing his testimony.

*Fourth*, when SCOR alerted Highfields that SCOR intended to file the Investor Lists with the Court—under seal because Highfields had designated them "Confidential"—in support of SCOR's opposition to Highfields' motion to "affirm" subject matter jurisdiction, counsel for Highfields requested that SCOR delay filing its submission while Highfields reviewed the eight pages comprising the Investor Lists, and later asserted that these "sensitive" documents "should be designated as 'Highly Confidential' and not 'Confidential'" (as Highfields had designated them upon their production to SCOR). (Meal Decl. Exs. 9 and 13.) Even at that point, Highfields did not contend that the Investor Lists were privileged.

*Fifth*, Highfields' assertion that the Investor Lists are protected from disclosure by the attorney-client privilege was made for the first time on May 5, 2006. In a letter from its counsel, Highfields represented that the Investor Lists were produced from "an unlabeled sub-file" belonging to Mr. Mazzella that had been removed from his files and co-mingled with the files of "a non-legal employee" at some undisclosed point in time. Highfields' counsel also admitted that "it was not initially apparent during our review that the files [including the Investor Lists] were privileged," and that it was only after a review of "[SCOR's] filing with the client" that counsel realized that the contents of the Investor Lists were somehow subject to the attorney-client privilege. (Meal Decl. Ex. 10.) By return letter dated May 9, 2006, SCOR objected to Highfields' attempt to designate the Investor Lists as Privileged Material under Paragraph 21 of the Protective

Order and requested that Highfields provide additional information concerning the nature

and basis for Highfields' attempt to designate those documents as Privileged Material, as

well as additional information concerning the circumstances of the inadvertent disclosure.

(Meal Decl. Ex. 11.)  In response, counsel for Highfields declined to elaborate further,

citing the Protective Order and stating that Highfields had "no further obligation at this

stage to explain or prove to [SCOR's] satisfaction the nature of the privilege or the

inadvertence of the production."  (Meal Decl. Ex. 12.)  With much fanfare and invective,

counsel for Highfields also provided replacement pages for the Investor Lists, which

consist essentially of blank pages (omitting even the types of information that Highfields

had included in the sanitized lists that it had provided to SCOR on April 27).[4]  (Meal

Decl. Ex 13.)  In addition, counsel for Highfields claimed, during a Local Rule 7.1

conference requested by SCOR with respect to the present motion, that Mr. Mazzella

made at least some of the handwritten notations on the Investor Lists.

## ARGUMENT

In *Upjohn Company* v. *United States*, the Supreme Court held that the

attorney-client privilege protects disclosure of confidential communications between an

attorney and his or her client, but does not prevent disclosure of the underlying facts

communicated between the parties to the privilege.  449 U.S. 383, 395-96 (1981)

("*Upjohn*"); *In re Grand Jury Investigation*, 437 Mass. 340, 354 n.25 (2002)

(Massachusetts Supreme Judicial Court has "often cited with approval the broad language

of *Upjohn*"); *see also Com. of Mass.* v. *First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149,

---

[4]    Curiously, Highfields designated those essentially blank pages "Highly Confidential" under the
Protective Order.  As a result of those designations, Highfields has placed SCOR in the ridiculous
position of having to file a motion to file the blank pages under seal, while concurrently submitting a
public version of those pages that differs not one iota from the ones that Highfields designated Highly
Confidential.  (*See* Protective Order ¶15 (Meal Decl. Ex. 7.).)

152 (D. Mass. 1986) ("[A]n adverse party cannot decline to disclose relevant facts merely

because the facts were related to an attorney."); *Command Transp., Inc.* v. *Y.S. Line*

*(USA) Corp.*, 116 F.R.D. 94, 95 (D. Mass. 1987) (Massachusetts Supreme Judicial Court

has demonstrated willingness to follow federal precedent through reliance on *Upjohn*).

        The scope of the attorney-client privilege is a fact-based inquiry that

courts address on a case-by-case basis. *Upjohn* at 396-97. Assertions of privilege are

construed narrowly in the First Circuit and in the Commonwealth of Massachusetts,

under the rationale that privilege presents an exception to the rule that parties are entitled

to discover all relevant evidence. *XYZ Corp.* v. *United States*, 348 F.3d 16, 22 (1st Cir.

2003) ("[T]he attorney-client privilege must be narrowly construed because it comes with

substantial costs and stands as an obstacle of sorts to the search for truth."); *Cavallaro* v.

*United States*, 284 F.3d 236, 245-46 (1st Cir. 2002) (privilege applies only to the extent

necessary to achieve underlying goal of ensuring effective representation through open

communication between lawyer and client); *In re Reorganization of Elec. Mut. Liab. Ins.*

*Co.*, *Ltd.*, 425 Mass. 419, 421 (1997) (attorney-client privilege is "strictly construed" and

"existence of the [privilege] and the applicability of any exception . . . is a question of

fact for the judge").

        The attorney-client privilege "'was intended as a shield, not a sword,'"

and may not be used as both. *Sax* v. *Sax*, 136 F.R.D. 542, 543 (D. Mass. 1991) (applying

Massachusetts law) (citation omitted); *see also Greater Newburyport Clamshell Alliance*

v. *Public Serv. Co. of N.H.*, 838 F.2d 13, 17 (1st Cir. 1988). By its own actions, a party

may waive the attorney-client privilege when that party makes the protected information

relevant to the case. *Sax*, 136 F.R.D. at 543; *see also Ken's Foods, Inc.* v. *Ken's Steak*

*House*, 213 F.R.D. 89, 97 (D. Mass. 2002) ("[A]ctions undertaken by counsel generally

will control whether the privilege has been waived."); *Darius* v. *City of Boston*, 433 Mass. 274, 277 (2001) ("[A] litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case.").

Here, it is impossible to conclude that production of the Investor Lists necessarily results in, or even relates to, the disclosure of protected attorney-client communications. The Investor Lists themselves do not reflect any such communications, and they certainly do not reveal the contents, aims or results of in-house counsel's supposed confidential communications of legal advice. Business information, such as that relating to the number of U.S. and non-U.S. investors in a hedge fund, or a hedge fund investor's "Company," "Country," and "State," is not privileged, even if communications between client and counsel, which is not the case here, also touch on those subjects, and at least where, as here, the business information does not reveal or reflect the substance of the communication between attorney and client. Indeed, under the rationale stated (but not supported) by Highfields, the telephone directory would be considered Privileged Material if a lawyer consulted the directory in connection with providing advice to his or her client.

Furthermore, even if the information in the Investor Lists were subject to a privilege that may at one point have existed – although that supposition is wholly unimaginable from a review of those documents – Highfields waived that privilege when it relied on the information in those lists to support its motion to "affirm" this Court's subject matter jurisdiction. Fundamental fairness prohibits Highfields from arguing – let alone alleging in its Complaint – that, on the basis of the contents of its "investor database," subject matter jurisdiction exists over this action, while simultaneously obscuring and concealing the contents of that database from SCOR and this Court.

### I.    THE INFORMATION IN THE INVESTOR LISTS IS NOT PRIVILEGED.

In the First Circuit, the essential elements of the attorney-client privilege are well-established:  "'(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6)  are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.'" *United States* v. *Bisanti*, 414 F.3d 168, 171 (1st Cir. 2005); *Cavallaro*, 284 F.3d at 245 (1st Cir. 2002).  The formulation under Massachusetts law is essentially identical.  *See In re Reorganization of Elec. Mut. Liab. Ins. Co., Ltd.*, 425 Mass. at 421. The party asserting the privilege bears the burden of demonstrating that the privilege properly applies to the communications at issue and that the privilege has not been waived.  *See XYZ Corp*., 348 F.3d at 22; *Purcell* v. *District Attorney for the Suffolk Dist.*, 424 Mass. 109, 115 (1997).

The *sine qua non* of the attorney-client privilege is that it applies only to communications made in connection with the solicitation or provision of legal advice from a licensed attorney that the client intends to keep confidential.  Other information provided to, or received from, counsel is not privileged – at least where the disclosure of that information does not reveal the substance of the legal advice sought or provided. *Fisher* v. *United States*, 425 U.S. 391, 403-405 (1976).  It is apparent from the face of the Investor Lists that they fail to satisfy this standard.

### A.    The Attorney-Client Privilege Does Not Apply to the Information in the Investor Lists.

Highfields claims that the Investor Lists are protected from disclosure by the attorney-client privilege because "they were *used* by Highfields' General Counsel, Joe Mazzella, to provide confidential legal advice to Highfields, including advice relating

to certain tax matters, and to conduct the analysis necessary to render that advice." (Meal Decl. Ex. 10 (emphasis added).) Highfields also asserts that the minimal handwritten notations on the Investor Lists render the entire documents privileged and protected from disclosure. Highfields' claims are unsubstantiated (*see* Part I.B, *infra*) and its position is unsupportable.

Highfields cannot transform discoverable information contained in a pre-existing database into privileged material by giving it to an attorney. Providing business records to corporate counsel, even for the purpose of seeking legal advice, does not render those otherwise discoverable documents immune from disclosure. *See Fisher*, 425 U.S. at 403-404 ("[P]re-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."); *Dorokee Co.* v. *United States*, 697 F.2d 277 (10th Cir. 1983) ("When [attorney-client privilege] is raised as a bar to the production of preexisting documents given by a client to his attorney to aid in legal representation, it protects only that material which would have been privileged in the hands of the client."); *United States* v. *Davis*, 131 F.R.D. 391, 401 (S.D.N.Y. 1990) ("[I]n-house counsel's law degree and office are not to be used to create a 'privileged sanctuary for corporate records.'") (citation omitted); *SCM Corp.* v. *Xerox Corp.*, 70 F.R.D. 508, 515 (D. Conn. 1976) ("Legal departments are not citadels in which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality.").

Highfields is either unwilling or unable to distinguish between privileged advice or communications and the facts that may underlie that advice or those communications. The Investor Lists do not disclose (and SCOR is not seeking) the

communications or work product of Mr. Mazzella.  What the Investor Lists do contain are facts that are corporate knowledge and are not shielded from disclosure by any legal privilege.  These purely factual documents, which are relevant to the jurisdictional questions that Highfields itself raised in its pending motion, are not shielded from discovery merely because they may have been provided to Mr. Mazzella—even if he received those purely factual documents in connection with some legal analysis that he might have performed.   That Mr. Mazzella might have referred to the Investor Lists to render some unknown and undisclosed legal advice does not transform those documents into material protected by the attorney-client privilege.  SCOR is entitled to learn of the existence of non-privileged facts even if they were at some point conveyed to or from Mr. Mazzella.  *See, e.g.*, *Upjohn* at 396 (a client "cannot be compelled to answer the question 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to this attorney"); *Com. of Mass.*, 112 F.R.D. at 152 ("a party cannot ask an adverse party what he said or wrote to his attorney, but [] an adverse party cannot decline to disclose relevant facts merely because the facts were related to an attorney").

The handwritten notations on the Investor Lists – which appear to have been made by two different people (*see* Meal Decl. Exs. 1-3) and in any event do not reflect whatever advice Mr. Mazzella presumably provided – cannot serve as a basis for an assertion of privilege.  Even if the notations somehow reflect privileged communications, they easily could be redacted without obscuring or withholding completely the other information in the Investor Lists.  *See Ass'n for Reduction of Violence* v. *Hall*, 734 F.2d 63, 66 (1ˢᵗ Cir. 1984).  Alternatively, Highfields could provide

clean print-outs from the database,[5] and if those records no longer exist, the copy

provided to Mr. Mazzella should not be withheld.  *See Abel* v. *Merrill Lynch & Co.*, No.

91 Civ. 6261, 1993 WL 33348, at *3 (S.D.N.Y. Feb. 4, 1993) (corporation cannot

insulate itself by funneling data to in-house counsel, eliminating the underlying records,

and then claiming that the data in counsel's file is privileged).

        **B.**        **Highfields Has Failed to Carry its Burden to Prove That the Information in the Investor Lists is Privileged.**

A party asserting attorney-client privilege bears the burden of proving that

the privilege is applicable.  *In re Reorganization of Elec. Mut. Liab. Ins. Co., Ltd.*, 425

Mass. at 421. In addition, Rule 26(b)(5) of the Federal Rules of Civil Procedure requires

a party withholding information that is otherwise discoverable based on an assertion of

attorney client privilege to describe the nature of the communication being withheld in a

manner that enables the adverse party to assess the applicability of the privilege.  Thus, it

is up to Highfields, not SCOR, to prove that the information in the Investor Lists is

privileged, and that, if the privilege ever applied to that information, that privilege was

not waived.

Highfields has utterly failed to establish that the attorney-client privilege is

applicable to either the Investor Lists or the information in those documents, apparently

concluding that the Protective Order supersedes both the common law and Federal Rules

and relieves it of any such responsibility.  (Meal Decl. Ex. 12.)  Highfields has rejected

---

[5]    If Highfields provides clean print-outs, it should not be permitted to redact the investors' names from those print-outs on the basis that they are irrelevant or confidential.  *See Trevino* v. *ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (prohibiting redaction of confidential information from relevant, non-privileged documents covered by standard protective order); *Am. Elec. Power Co.* v. *United States*, 191 F.R.D. 132, 140-41 (S.D. Ohio 1999) (refusing to permit redaction of non-privileged client identities from relevant documents, based, in part, on the protection already afforded under confidentiality agreement between the parties).

SCOR's request that Highfields provide the background information necessary to determine whether the information in the Investor Lists constitutes confidential communications to or from counsel in connection with the provision of privileged legal advice. (Meal Decl. Exs. 11 and 12.) Instead, Highfields offers mere conclusory assertions that the Investor Lists were "used" in some way by Highfields' general counsel to provide some form of legal advice to someone. Such transparent obfuscation is patently inadequate to satisfy Highfields' burden to establish that the contents of its investor database are privileged. *See In re Reorganization of Elec. Mut. Liab. Ins. Co., Ltd.*, 425 Mass. at 421-22 (burden encompasses establishment of existence of attorney-client relationship and all other elements involved in determining the existence of the privilege, including that the communications were made in confidence and that the privilege was not waived). Far from sustaining Highfields' burden to establish that the contents of the investor lists satisfy the elements of privileged communication under Massachusetts (or any other) law, Highfields' perfunctory generalizations raise more questions than answers and tend to refute Highfields' assertions of privilege. For example, Highfields certainly has not explained how, when or even why the files of its General Counsel came to be dispersed amongst those of a "non-legal employee," or what use that employee made of those materials. (Meal Decl. Ex. 10.) Highfields also has failed to identify the handwritten notes that were made by Mr. Mazzella, or the circumstances under which the legal advice to which those notes purportedly refer was provided.

**II.    EVEN IF THE INFORMATION CONTAINED IN THE INVESTOR LISTS WOULD OTHERWISE BE PRIVILEGED, HIGHFIELDS WAIVED THE PRIVILEGE BY INVOKING THE COURT'S SUBJECT MATTER JURISDICTION.**

"In a civil damages action, [] fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend.  That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." *Greater Newburyport*, 838 F.2d at 20; *see also Open Software Foundation* v. *United States Fidelity & Guar. Co.*, 191 F.R.D. 325, 327 (D. Mass 2000) (attorney-client privilege can be waived "when a party seeking the privilege has affirmatively placed the subject matter of the privilege in issue for its own benefit").  Under this rule, a party waives attorney-client privilege when the following conditions are met:  "'(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.'"  *Savoy* v. *Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 350 (D. Mass. 1998) (citation omitted).

Highfields placed the citizenship of its investors at issue in this action by affirmatively invoking this Court's diversity jurisdiction in the Complaint and seeking to "affirm" that jurisdiction through its recently-filed motion.  Highfields cannot now withhold the basic factual information necessary for this Court to determine whether the Court has subject matter jurisdiction over this action by claiming that the only information under Highfields' control that relates to the jurisdictional allegations and questions that Highfields has raised is privileged.  Highfields has admitted that it does not

have the entirety of the information necessary to establish the citizenship of the various

individuals and entities whose citizenship must be determined in order to validate

jurisdiction.  (Proposed Rep. Mem. 4 n.2.)  Leaving aside, for now, the implications of

that admission for Highfields' requisite good faith basis for alleging in the Complaint that

the Court has diversity jurisdiction over the action, a clear consequence of Highfields'

position is that Highfields has intentionally closed off the *only* method by which to

ascertain the factual information necessary to "affirm" this Court's subject matter

jurisdiction:  taking discovery directly from the relevant individuals and entities.

        Further, by asserting that the Investor Lists are protected by the attorney-

client privilege and rejecting requests to identify the Highfields investors by name (or any

other useful description) in any other form, Highfields has refused to provide access to

the information necessary to test the accuracy of, and further develop, the facts alleged in

the two affidavits sworn to by Mr. Mazzella, which he offered based on his personal

knowledge and review of relevant business records, including Highfields' investor

database.  Highfields cannot use the attorney-client privilege to shield those records,

while it uses the same information as the basis for its argument that this Court has subject

matter jurisdiction over this matter. *See United States* v. *Bilzerian*, 926 F.2d 1285, 1292

(2d Cir. 1991) (where party raises a claim that, in fairness, requires disclosure of

protected communication, privilege may be implicitly waived); *see also In re Kidder*

*Peabody Securities Litigation*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (privilege-holder

"may waive the privilege if he makes factual assertions the truth of which can only be

assessed by examination of the privileged communication"); *Gov't Guar. Fund of the*

*Republic of Finland* v. *Hyatt Corp.*, 177 F.R.D. 336, 341-42 (D.V.I. 1997) (defendant

waived privilege over documents covering same subject matter as communications

attorney relied on to make factual assertions in affidavit); *Computer Network Corp.* v. *Spohler*, 95 F.R.D. 500, 502 (D.D.C. 1982) (assertion of facts in attorney's affidavit waived privilege over communications forming the basis for those factual assertions); *G.S. Enters.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 270-71 (1991).  Accordingly, because the Investor Lists, and the investor database on which they appear to have been based, comprise at least some of the alleged facts on which Highfields has grounded its pending motion, Highfields has affirmatively waived any privilege status that once might have been applicable to those lists – if any such status ever did apply to them.

Finally, Highfields' assertion of attorney-client privilege over the Investor Lists makes sense only if Highfields claims that its entire understanding of the citizenship of its members is based on privileged communications or legal analysis.  If, as is the case, SCOR is entitled to learn the "type," "mailing address" and "formation country" of Highfields' investors, and to receive the two affidavits by Mr. Mazzella purportedly addressing that information, there could be nothing in the Investor Lists that constitutes a privileged communication entitled to protection.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts, SCOR hereby submits a request for oral argument in support of its motion.

## **CONCLUSION**

For the foregoing reasons, SCOR respectfully requests that the Court

(i) reject Highfields' attempt to designate the Investor Lists as Privileged Material under

the Protective Order and instead declare them not privileged; (ii) grant to SCOR its costs,

including attorneys' fees, associated with this motion; and (iii) grant to SCOR any such

other and further relief that the Court may deem just and proper.


Of Counsel:                                    Respectfully submitted,

SULLIVAN & CROMWELL LLP             ROPES & GRAY LLP
125 Broad Street
New York, NY 10004-2498             By:_____/s/ Douglas H. Meal_____
Tel:  212-558-4000                        Douglas H. Meal (BBO#340971)
Fax:  212-558-3588                        Giselle J. Joffre (BBO#658047)

                                          One International Place
                                          Boston, MA 02110-2624
                                          Tel:  617-951-7000
                                          Fax:  617-951-7050
                                          Counsel for Defendant SCOR


Dated:  June 8, 2006
        Boston, Massachusetts

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of June, 2006, I caused true and

correct copies of (i) Defendant SCOR's Memorandum of Law In Support of its Motion to

Declare Highfields' Investor Lists Not Privileged Material, and (ii) the Declaration of

Douglas H. Meal and its accompanying exhibits to be served by hand upon:

Lisa C. Wood, Esq.
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210

_____/s/ Giselle J. Joffre_____
                    Giselle J. Joffre, Esq.

10053960.1