# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————X
                                       :

HIGHFIELDS CAPITAL LTD.,          :
HIGHFIELDS CAPITAL I LP,          :
HIGHFIELDS CAPITAL II LP,         :

                                       : Civ. No. 04-10624 (MLW)

                     Plaintiffs,   :

               v.                  :

                                        :

SCOR, S.A.,                        :

                     Defendant.   :
—————————————————X

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR A PROTECTIVE ORDER BARRING DISCOVERY FROM PLAINTIFFS' INVESTORS AND IN SUPPORT OF DEFENDANT SCOR'S CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO SUBJECT MATTER JURISDICTION

Douglas H. Meal
Giselle J. Joffre
Sara M. Beauvalot
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
Tel:  617-951-7000
Fax:  617-951-7050

Of Counsel:
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Tel:  212-558-4000
Fax:  212-558-3588

*Counsel for Defendant SCOR*

Boston, Massachusetts
June 28, 2006

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF RELEVANT FACTS ........................................................................5

ARGUMENT ..................................................................................................................6

I.     THE COURT SHOULD GRANT SCOR'S CROSS-MOTION BECAUSE
       THE REQUESTED DISCOVERY IS INDISPENSIBLE TO AN
       EVALUATION OF THIS COURT'S SUBJECT MATTER
       JURISDICTION. ...................................................................................................6

       A.     The Limited Information Provided by Highfields Thus Far
              Is Plainly Insufficient to Assess Highfields' Jurisdictional
              Assertions...................................................................................................7

       B.     The Disputed Requests Seek Essential Jurisdictional Facts
              That Highfields Has Refused to Provide. ................................................10

II.    HIGHFIELDS' ILLEGITIMATE ATTEMPTS TO AVOID DISCOVERY
       RELATED TO ITS INVESTORS SHOULD BE REJECTED. ...........................12

       A.     The Court Should Deny Highfields' Procedurally
              Illegitimate and Substantively Unwarranted Request for a
              Protective Order .......................................................................................12

       B.     The Investor Lists Are Not Privileged or, In the
              Alternative, Highfields Should Be Compelled to Produce
              Non-Privileged Versions...........................................................................17

REQUEST FOR ORAL ARGUMENT .........................................................................19

CONCLUSION..............................................................................................................20

i

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*American Electric Power Co.* v. *United States*,
191 F.R.D. 132, 140-41 (S.D. Ohio 1999) ...................................................................14

*Anderson* v. *Cryovac, Inc.*,
805 F.2d 1 (1st Cir. 1986)..........................................................................................14

*Ares-Serono, Inc.* v. *Organon International B.V.*,
151 F.R.D. 215 (D. Mass. 1993)................................................................................14

*Association for Reduction of Violence* v. *Hall*,
734 F.2d 63 (1st Cir. 1984)........................................................................................19

*Burton Mechanical Contractors, Inc.* v. *Foreman*,
148 F.R.D. 230 (N.D. Ind. 1992) ...............................................................................13

*Carden* v. *Arkoma Associates*,
595 U.S. 185 (1990)...............................................................................................9, 10

*Dalkon Shield Claimants* v. *MacLeod*,
197 B.R. 575 (E.D. Va. 1995) ...................................................................................10

*Fisher* v. *United States*,
425 U.S. 391 (1976)...................................................................................................18

*Grupo Dataflux* v. *Atlas Global Group, L.P*,
541 U.S. 567 (2004)......................................................................................................8

*International Shipping Co.* v. *Hydra Offshore, Inc.*,
875 F.2d 388 (2d Cir. 1989) .........................................................................................9

*Kokkonen* v. *Guardian Life Insurance Co. of America*,
511 U.S. 375 (1994)......................................................................................................6

*Lincoln American Corp.* v. *Bryden*,
375 F. Supp. 109 (D. Kan. 1973)................................................................................16

*Lincoln Prop. Co.* v. *Roche*,
--, U.S. -- 126 S. Ct. 606 (Nov. 29, 2005) ...................................................................9

*Loazano* v. *Maryland Casualty Co.*,
850 F.2d 1470 (11th Cir. 1988) ..................................................................................16

*M. Berenson Co.* v. *Faneuil Hall Marketplace, Inc.*,
103 F.R.D. 635 (D. Mass. 1984)................................................................................16

*Medtronic Sofamor Danek, Inc.* v. *Michelson,*
 No. 01-2373-GV, 2002 WL 33003691 (W.D. Tenn. Jan. 30, 2002) ............................14

*Oppenheimer Fund, Inc.* v. *Sanders,*
 437 U.S. 340 (1978) ...........................................................................................6, 13

*Pramco, LLC* v. *San Juan Bay Marina, Inc.,*
 435 F.3d 51 (1st Cir. 2006) .....................................................................................10

*Prozina Shipping Co* v. *Thirty-Four Automobiles,*
 179 F.R.D. 41 (D. Mass. 1998) ...............................................................................15

*Skwira* v. *United States,*
 344 F.3d 64 (1st Cir. 2003) .......................................................................................6

*Topp* v. *CompAir Inc.,*
 814 F.2d 830 (1st Cir. 1987) .....................................................................................9

*Trans World Hospital Supplies Ltd.* v. *Hospital Corp. of America,*
 542 F. Supp. 869 (M.D. Tenn. 1982) ........................................................................9

*Trevino* v. *ACB American., Inc.,*
 232 F.R.D. 612 (N.D. Cal. 2006) .............................................................................14

*United States* v. *Fruehauf,*
 365 U.S. 146 (1961) .................................................................................................7

*Wharton* v. *Feeley,*
 1987 U.S. Dist. LEXIS 10039 (D. Mass. Oct. 23, 1987) ...........................................17

## STATE CASES

*Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.,*
 781 N.E.2d 787 (Mass. 2003) ..................................................................................10

## FEDERAL STATUTES AND REGULATIONS

15 U.S.C. § 6802(e)(8) ...................................................................................................16

28 U.S.C. § 1332 .............................................................................................................8

17 C.F.R. § 248.15(a)(5) ................................................................................................16

17 C.F.R. § 160.15(a)(5) ................................................................................................16

17 C.F.R. § 313.15(a)(7) .......................................................................................16

## FEDERAL RULES OF CIVIL PROCEDURE

Fed R. Civ. P. 41(a)(2)....................................................................................3, 17

Fed. R. Civ. P. 12(h)(3) ......................................................................................3

## MISCELLANEOUS

James WM. Moore, *Moore's Federal Practice - Civil* § 261.01 (3d ed. 2006)................12

Jeffrey Bacich and Steven J. Revell, *Bender's Federal Practice Forms* § 23 (2006) .......16

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Rules 7.1(b) and 37.1(b) of the Local Rules of the United States District Court for the District of Massachusetts, Defendant SCOR respectfully submits this Memorandum of Law in support of its Cross-Motion to compel Highfields Capital Ltd., Highfields Capital I LP and Highfields Capital II LP (collectively, "Highfields" or "the Plaintiffs") to provide discovery sufficient to substantiate the Court's subject matter jurisdiction over this case, including complying in full with Request Numbers 34, 35, 36, 37, 65 and 66 of *SCOR's First Request for the Production of Documents by Plaintiffs* ("SCOR's First Request"),[1] and in opposition to Plaintiffs' Cross-Motion seeking a protective order barring SCOR from taking discovery from Highfields' investors.

## PRELIMINARY STATEMENT

Each successive submission that Highfields has filed in connection with the jurisdictional dispute in this litigation further distances Highfields from its original invocation of federal subject matter jurisdiction in the Complaint, as well as its more recent—now clearly disingenuous—request that the Court "affirm" that subject matter jurisdiction. Indeed, Highfields' *Proposed Reply Memorandum of Law in Support of Plaintiffs' Motion to Affirm Subject Matter Jurisdiction Or, In the Alternative, to Refer Case to State Court* (the "Proposed Reply," cited herein as "Proposed Rep. Mem."), effectively concedes that the current record is insufficient to substantiate an "affirmation" of jurisdiction and acknowledges that Highfields is not even in possession of all the relevant information necessary to conclude that the Court has subject matter jurisdiction over this case. (*See* Proposed Rep. Mem. 4 n.2.) This admission suggests that Highfields did not

---

[1]  Copies of SCOR's First Request, and *Plaintiffs' Response to Defendant SCOR's First Request for the Production of Documents by Plaintiffs* are attached to the Declaration of Douglas H. Meal, subscribed to on June 28, 2006 (cited herein as "Meal Decl. Ex. __"), as Exhibits 1 and 2.

have the requisite good faith basis for asserting jurisdiction in the Complaint (*see* Compl. ¶ 17), and it undermines the propriety of Highfields' request that the Court "affirm" subject matter jurisdiction.[2]

In Highfields' most recent submission, *Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Declare Highfields' Investor Lists Not "Privileged Material" and in Support of Plaintiffs' Cross-Motion for a Protective Order* (cited herein as "Prot. Order Mem."), Highfields now contends that it is "almost certain" that subject matter jurisdiction is lacking. (Prot. Order Mem. 15.) Despite that claim, Highfields has neither withdrawn its inconsistent request that the Court "affirm" subject matter jurisdiction nor filed a motion to dismiss the Complaint for lack of subject matter jurisdiction. Instead, Highfields continues to press for an advisory ruling on its motion to "affirm" subject matter jurisdiction while simultaneously denying SCOR access to the documents and information necessary to determine which of the inconsistent positions that Highfields has taken on the resolution of that motion is the correct one.

Compounding the frustrating inconsistency of Highfields' stated positions regarding this Court's jurisdiction, Highfields has attempted to distort the clear and consistent stance taken by SCOR on that issue. Highfields claims that SCOR has argued that the Court lacks subject matter jurisdiction, and that there is thus no need for further discovery. (Prot. Order Mem. 2.) SCOR, however, has argued no such thing. From the beginning of this jurisdictional dispute, SCOR's persistent position has been that discovery of the facts must precede any ruling on those facts. (*See* SCOR's *Memorandum of Law in Opposition to Plaintiffs' Motion to Affirm Subject Matter Jurisdiction Or, In the Alternative, to Refer Case to State Court* 16 (the "Opposition Memorandum," cited herein as "SCOR's Opp. Mem.")

---

[2]  Indeed, Highfields has admitted that it filed that motion after having suggested to SCOR that jurisdiction did not exist and having proposed to SCOR that the case be moved to state court. (Prot. Order Mem. 3-4.)

("Neither Highfields nor SCOR currently is asserting that this Court lacks subject matter jurisdiction.").)  In accordance with that position, SCOR's Opposition Memorandum requested that the Court employ its inherent power to order the jurisdictional discovery Highfields was unwilling to provide (SCOR's Opp. Mem. 15-16) and, as Highfields has proposed, SCOR's present cross-motion formally requests that the Court compel the jurisdictional discovery initially requested by SCOR on January 31, 2006 in SCOR's First Request.

Despite the jurisdictional allegations of the Complaint and Highfields' still-pending request for an "affirmation" of jurisdiction, Highfields has sought SCOR's agreement to a voluntary dismissal of the Complaint and re-filing in state court, which SCOR has refused to provide.  (Prot. Order Mem. 4.)  If Highfields truly believes that subject matter jurisdiction is lacking, it can file a motion to dismiss under Rule 12(h)(3) and provide a full factual record on which to evaluate that motion.  Alternatively, if the prospect of jurisdictional discovery is so troubling to Highfields that it wishes to abandon the litigation, it can ask the Court to approve a dismissal of the action under Rule 41(a)(2) of the Federal Rules of Civil Procedure, without SCOR's assent.[3]  Highfields, however, cannot expect that SCOR will simply agree to be deprived of the federal forum that Highfields initially sought out without developing or testing the factual basis for doing so.

In contrast to SCOR's steadfast contention that the factual record is incomplete and in need of significant augmentation, the only consistent undercurrent of Highfields' continually shifting position is its refusal to provide the jurisdictional discovery it necessitated by bringing this action in federal court.  Highfields initially attempted to avoid

---

[3]  SCOR suggested these options to Highfields in SCOR's *Sur-Reply Memorandum of Law in Opposition to Plaintiffs' Proposed Reply Memorandum of Law in Support of Their Motion to Affirm Subject Matter Jurisdiction Or, In the Alternative, Refer Case to State Court* (cited herein as "Sur-Reply").  (Sur-Reply 2.)

providing the jurisdictional discovery called for in SCOR's First Request by filing its motion purportedly asking the Court to "affirm" subject matter jurisdiction.[4]  In connection with that motion, Highfields provided a woefully inadequate factual record falling well short of one on which the Court could ascertain, let alone "affirm," its jurisdiction.  In addition, Highfields' submissions were bereft of any useful documentary support for even the limited facts that Highfields begrudgingly disclosed in connection with that motion.

Since filing its motion, Highfields has used multiple illegitimate justifications for its increasingly desperate attempts to shield itself from the requisite jurisdictional discovery.  Principally, Highfields contends that the identities of its investors are immune from disclosure because they are "highly sensitive." (Proposed Rep. Mem. 4 n.2.)  Highfields now seeks a protective order to prohibit SCOR from taking any discovery from Highfields' investors.  However, based upon Highfields' own submission, Highfields clearly does not have standing to assert the rights of its investors.  (Prot. Order Mem. 3 ("Highfields, not its investors, are the plaintiffs in this case").)

Moreover, Highfields' request for a protective order is premature and not yet ripe for decision: unlike Highfields, SCOR has not yet attempted to pursue discovery from anybody other than the named parties to this lawsuit, and SCOR certainly has not noticed the 350 depositions that Highfields has conjured up.  In any event, Highfields' request for a protective order to bar jurisdictional discovery from its investors is unwarranted because, as Highfields essentially admits, pursuing discovery from Highfields' investors could prove crucial to the jurisdictional inquiry.  Highfields' melodramatic confidentiality and privacy concerns are substantially outweighed by the direct relevance and significance of that

---

[4]   The advisory nature of the opinion called for by Highfields' motion is made clear by Highfields' admission that it seeks mere legal "guidance" (Prot. Order Mem. 15), and by Highfields' failure to advocate a clear position on the ultimate ruling it actually is requesting from the Court.

information to the jurisdictional inquiry. Indeed, Highfields' expressed concerns are fully addressed by the *Stipulation and Protective Order* entered in this litigation on February 27, 2006 (the "Stipulated Protective Order") (Meal Decl. Ex. 3), which Highfields itself negotiated and recognized as reasonable and appropriate.

Highfields similarly attempted to evade its obligation to provide jurisdictional discovery when it attempted to invoke the Stipulated Protective Order to compel SCOR to return certain documents identifying Highfields' investors that it now asserts are protected by attorney-client privilege (the "Investor Lists"). However, Highfields admits that the documents are mere physical reproductions of an electronically pre-existing and generally discoverable "investor database" apparently kept in the ordinary course of business. (Prot. Order Mem. 5.) Such documents do not become privileged simply because they were given to—or printed at the request of—an attorney, and any handwritten notations that may somehow hint at a request for legal advice easily can be redacted. Alternatively, Highfields should provide SCOR with unaltered print-outs of its "investor database" for which it does not assert privilege. Because this information is critical to the jurisdictional inquiry and clearly called for by SCOR's First Request, the Court should grant SCOR's cross-motion to compel Highfields to produce the relevant documents to SCOR.

## STATEMENT OF RELEVANT FACTS

The disagreement between the parties concerning Highfields' refusal to produce documents relating to its citizenship has been well-documented in SCOR's previous submissions. Accordingly, SCOR respectfully refers the Court to the "Statement of Relevant Facts" set out in SCOR's *Memorandum of Law in Opposition to Plaintiffs' Motion to Affirm Subject Matter Jurisdiction Or, In the Alternative, to Refer Case to State Court*, filed May 2, 2006, and the "Statement of Relevant Facts" set out in SCOR's *Memorandum of Law in Support of Its Motion to Declare Highfields' Investor Lists Not "Privileged*

*Material*," filed June 8, 2006, for a description of the procedural and factual history of the litigation relevant to this memorandum.

**Summary of Local Rule 37.1 Conference. –** Pursuant to Rule 37.1(a) of the Local Rules of the United States District Court for the District of Massachusetts, on April 18, 2006, James Carter and Theodore Edelman, counsel for SCOR, conducted a meeting by telephone conference with Ken Leonetti, counsel for Highfields, in an attempt to resolve or narrow the issues raised by SCOR's cross-motion. The conference began at approximately 10:00 a.m. and lasted approximately fifteen minutes. During the conference, Mr. Leonetti confirmed Highfields' refusal to provide the jurisdictional discovery requested by SCOR, and the parties were unable to reach any agreement.

## ARGUMENT
### I.
### THE COURT SHOULD GRANT SCOR'S CROSS-MOTION BECAUSE THE REQUESTED DISCOVERY IS INDISPENSIBLE TO AN EVALUATION OF THIS COURT'S SUBJECT MATTER JURISDICTION.

The determination of whether a claim is within the subject matter jurisdiction of the federal courts should be made on the basis of a complete record concerning all the relevant facts. *See Skwira* v. *United States*, 344 F.3d 64, 71-72 (1st Cir. 2003) (if relevant facts are in doubt, courts should engage in preliminary fact-finding when determining subject matter jurisdiction); *see also Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 350 n.13 (1978) ("where issues arise as to jurisdiction . . . discovery is available to ascertain the facts bearing on such issues."). It is axiomatic that a plaintiff has the burden of proving that the court in which the plaintiff brought suit has subject matter jurisdiction over the action. *See Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction."). Accordingly, having chosen to bring this case in federal court, Highfields must either withdraw its motion to

"affirm" jurisdiction and move for a dismissal of this action, or: (1) present facts and evidence to the Court that, if credited, would establish complete diversity of citizenship among the parties; and (2) provide the jurisdictional discovery necessary for SCOR to test the veracity of Highfields' jurisdictional presentation. Highfields has done neither.

Instead, Highfields contends that it is not required to provide relevant jurisdictional discovery because, if the Court accepts the accuracy of Highfields' factual allegations and then provides the legal "guidance" requested by Highfields by rejecting Highfields' arguments regarding various questions of law, jurisdiction would be absent. (Prot. Order Mem. 2, 15.) However, Highfields has not supported any of the facts it has asserted with documentary evidence and, in any event, SCOR is entitled to test their accuracy before being deprived of a federal forum. More importantly, as SCOR argued in its Sur-Reply, the Court is constitutionally prohibited from providing the "guidance" requested by Highfields. A federal court may only decide actual controversies that have "emerge[d] precisely framed and necessary for decision from a clash of adversary argument." (Sur-Reply 3-6) (citing *United States* v. *Fruehauf*, 365 U.S. 146, 157 (1961).) In other words, Highfields must provide the facts necessary to develop a complete record and, if the parties disagree on the application of the law to those facts, the Court may then be asked to resolve that controversy. *See Fruehauf*, 365 U.S. at 157. Given the lack of a factual record, the parties do not yet know which, if any, controversies eventually will be "necessary" for the Court to decide. Indeed, the fact that even to this day, neither party has asserted to this Court that it lacks subject matter jurisdiction, demonstrates beyond any challenge that the "adversary argument" necessary to create any actual controversy is lacking here.

> **A.    The Limited Information Provided by Highfields Thus Far Is Plainly Insufficient to Assess Highfields' Jurisdictional Assertions.**

A federal court may not exercise subject matter jurisdiction founded on diversity of citizenship if there are "citizens or subjects of foreign states" on both sides of the litigation,

unless there are also citizens of different U.S. states on both sides of the litigation.  *See* 28 U.S.C. § 1332(a); *see also Grupo Dataflux* v. *Atlas Global Group, L.P*, 541 U.S. 567, 569 (2004).  It is undisputed that the sole defendant, SCOR, as a French company, is a foreign citizen.  Consequently, if any one of the Plaintiffs is also a foreign citizen, complete diversity is lacking and the Court does not have a basis on which to exercise subject matter jurisdiction under 28 U.S.C. § 1332.  Highfields has failed, however, to plead—let alone prove—the facts necessary to determine the citizenships of Plaintiffs and, thus, has failed to provide the Court with the record necessary to determine whether the Court has the power to preside over this case.

  *Highfields Capital Ltd.* – The citizenship of Highfields Capital Ltd. depends upon the classification of its organizational form.   In Highfields' *Memorandum of Law in Support of Plaintiffs' Motion to Affirm Subject Matter Jurisdiction Or, In the Alternative, to Refer Case to State Court*, filed April 19, 2006, (cited herein as "Pls.' "Affirm" Mem."), Highfields asserted that Highfields Capital Ltd. is an "exempted company" organized under the laws of the Cayman Islands and that it "should be deemed a corporation for jurisdictional purposes."  (Pls.' "Affirm" Mem. 7-8.)  Highfields also has claimed, however, that "[i]t is possible . . . a Cayman Islands exempted company would not be a corporation" for the purpose of assessing diversity jurisdiction.  (Pls.' "Affirm" Mem. 8 n.5.)

  If Highfields Capital Ltd. is considered a corporation, it is a citizen of:  (1) every U.S. state or foreign nation in which it is incorporated; and (2) the one U.S. state or foreign nation in which its principal place of business is located.  *See* 28 U.S.C. § 1332(c).  Although there is some authority, cited by Highfields (Pls.' "Affirm" Mem. 13-14), for the proposition that the foreign organization of a corporation with its principal place of business in the United States does not destroy complete diversity in an action against another alien, most courts confronting the issue have held that an alien corporation with its principal place

of business in a state of the United States is a citizen of both the foreign nation and that state. *Contrast Trans World Hosp. Supplies Ltd.* v. *Hosp. Corp. of Am.*, 542 F. Supp. 869, 878-79 (M.D. Tenn. 1982), *with Int'l Shipping Co.* v. *Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989). The principal place of business of a corporation without physical operations, such as a passive investment fund, is "the localized nerve center from which the corporation in issue is directly run." *Topp* v. *CompAir Inc.*, 814 F.2d 830, 835 (1st Cir. 1987). Highfields has argued that application of the "nerve center" test would result in a finding that Highfields Capital Ltd. is a citizen of Massachusetts "for diversity jurisdiction purposes" (*see* Pls.' "Affirm" Mem. 12-13), but it has not provided *any* of the information required by *Topp* to determine whether the "nerve center" of Highfields Capital Ltd. is within a U.S. state. [5] Without that information, SCOR and this Court do not have a record upon which to evaluate potential application of the holding in *Trans World*.

Alternatively, if Highfields Capital Ltd. is not considered a corporation, its citizenship would encompass the citizenship of its constituent members. *See Carden* v. *Arkoma Associates*, 595 U.S. 185, 195 (1990) ("*Carden*"). Again, Highfields has not provided the documents requested by SCOR that would establish the citizenship of the various constituent members of Highfields Capital Ltd., and thus, under that scenario, the citizenship of Highfields Capital Ltd.

***Highfields Capital I LP and Highfields Capital II LP*** – The citizenship of a limited partnership encompasses the citizenship of *each* of its general *and* limited partners. *See Lincoln Prop. Co.* v. *Roche*, -- U.S. --, 126 S. Ct. 606, 610 & n.1 (Nov. 29, 2005) (citing

---

[5] The factors relevant to this "nerve center" test include: (1) the location of corporate headquarters; (2) the location of directors' meetings; (3) the location from which tax returns are filed; (4) the location of corporate records; (5) the location of corporate bank accounts; (6) the location of personnel who direct daily operations of the corporation; (7) the location in which major policy decisions are made; and (8) the place designated in the corporation's organizational documents as the official headquarters of the company. *See Topp*, 814 F.2d at 837-38.

*Carden* at 189).  This same rule is applicable to all forms of unincorporated associations, including limited liability companies and trusts.  *See Carden* at 195; *Pramco, LLC* v. *San Juan Bay Marina, Inc.*, 435 F.3d 51, 55 (1ˢᵗ Cir. 2006); *Dalkon Shield Claimants* v. *MacLeod*, 197 B.R. 575, 579-80 (E.D. Va. 1995).

Plaintiffs have asserted that Highfields Capital I LP and Highfields Capital II LP had 232 limited partners, combined, when the Complaint was filed, including individuals, corporations, trusts, partnerships and limited liability companies.  (Pls.' "Affirm" Mem. 7.) However, the only information Highfields has provided thus far is all but useless to the task of establishing the citizenship of the partners of the two limited partnership plaintiffs, and Highfields has offered virtually none of the information that would in fact permit determination of the citizenship of those limited partners.  (*See* SCOR's Opp. Mem. 11-14.)

### B.    The Disputed Requests Seek Essential Jurisdictional Facts That Highfields Has Refused to Provide.

SCOR's First Request included six specific requests for the production of documents intended, in part,[6] to elicit the facts necessary to evaluate Highfields' assertion of subject matter jurisdiction.  Specifically, SCOR has requested in Requests Numbers 34 through 37 and 65 through 66 of SCOR's First Request the information necessary, among other things, to establish the citizenship of the Plaintiffs for purposes of diversity jurisdiction, including documents and information related to the form of association, ownership structure, business activities and constituent membership of the Plaintiffs.  Highfields, however, has refused

---

[6]  These requests also seek discovery of merits-related issues, including any damages allegedly suffered by the Plaintiffs, or individuals or entities related to the Plaintiffs, and the locus of any such injury, which is central to determination of whether the "center of gravity" of the circumstances allegedly giving rise to Plaintiffs' claim was in Massachusetts under Chapter 93A of the Massachusetts General Laws.  *See Kuwaiti Danish Computer Co.* v. *Digital Equip. Corp.*, 781 N.E.2d 787, 799-800 (Mass. 2003) (announcing "center-of-gravity" test to determine whether alleged misconduct occurred "primarily and substantially within the commonwealth," a foundational prerequisite to application of Chapter 93A).  Although it would be inappropriate for SCOR to press these issues at this time, SCOR reserves all rights to seek at a later date compulsory production of the requested documents for reasons other than their jurisdictional relevance.

virtually completely to comply with those discovery requests, asserting, among other things, that those requests are overly broad, unduly burdensome, seek irrelevant information and are "calculated to harass."

For the Court's convenience, those requests and Highfields' responses to them are set out in full in the Appendix to this memorandum of law. The documents and information that SCOR has requested in Request No. 34 concern the ownership structures of Plaintiffs and the entities related to Plaintiffs. SCOR's Requests Nos. 35 and 65 concern the identities, citizenship, corporate status, principal place of business and residence of the named Plaintiffs and the general partners, limited partners, owners, members and other relevant persons of the named Plaintiffs. In Requests Nos. 36, 37 and 66, SCOR seeks documents and information concerning the form of association and ownership structures of the Plaintiffs, in order, among other things, to identify both (i) the types of entities that the Plaintiffs constitute and (ii) the organizations and individuals whose citizenships are controlling of the question of whether complete diversity exists in this action.

Highfields' responses to those requests either refuse outright to provide any of the requested discovery or offer to provide insufficient and unduly limited documents and information that do not include discovery necessary to determine the citizenship of the entities whose citizenship is—as a matter of established legal principles—controlling of the question of whether subject matter jurisdiction exists in this case. It is simply disingenuous for Highfields to argue that requests aimed at so fundamental a concept as the court's subject matter jurisdiction are "calculated to harass."

**II.**

**HIGHFIELDS' ILLEGITIMATE ATTEMPTS TO AVOID DISCOVERY RELATED TO ITS INVESTORS SHOULD BE REJECTED.**

    **A.**    **The Court Should Deny Highfields' Procedurally Illegitimate and Substantively Unwarranted Request for a Protective Order**

Highfields' cross-motion for a protective order prohibiting SCOR from taking discovery directly from Highfields' investors is as premature as Highfields' motion to "affirm" jurisdiction. Indeed, Highfields entire argument is based on its irrational and unfounded fear that, as soon as SCOR has access to the investor information necessary to properly determine the existence of the Court's subject matter jurisdiction, SCOR will "launch a broadside of invasive and burdensome discovery" by issuing subpoenas "to 350 Highfields investors" and "the individual partners and members of those investors." (Prot. Order Mem. 13-14.) Highfields' argument is chimerical. SCOR has never suggested that it would issue 350 subpoenas or take 350 depositions. Indeed, any additional discovery SCOR might require once it has access to Highfields' investor lists may be as innocuous as a few simple interrogatories or document requests. As SCOR has not yet attempted to subpoena or depose any of Highfields' investors, nor is at this stage in any position to even guess how much additional discovery may be necessary, Highfields' cross-motion is based on a highly speculative, hypothetical set of facts. The motion is therefore premature and will not become ripe unless and until SCOR actually seeks discovery from any of Highfields' investors.

Moreover, even if Highfields' cross-motion were ripe, it is, in any event, profoundly impermissible. Highfields has insisted that its investors are not "real parties to this action" and "have not played any role in this litigation" because "Highfields, not its investors, are the plaintiffs in this case." (Prot. Order Mem. 3, 16-17.) If Highfields' investors are indeed separate and distinct from Highfields in the context of this lawsuit, it is axiomatic that Highfields has no standing to assert their privacy rights. *See* James WM. Moore, *Moore's*

-12-

*Federal Practice - Civil* § 261.01 (3d ed. 2006) ("A party responding to a discovery request usually may not seek a protective order asserting the rights of third parties to protect their privileged, proprietary or confidential information.  The affected third parties must intervene directly to seek a protective order to protect that information.") (citations omitted); *see also Burton Mechanical Contractors, Inc.* v. *Foreman*, 148 F.R.D. 230, 234 (N.D. Ind. 1992) (party to lawsuit does not have standing "to assert the rights of [third parties] with respect to the protection of their proprietary or confidential business information.").  Highfields cross-motion, therefore, should be denied for lack of standing.

However, if the Court reaches the merits of this issue, it should deny Highfields' request for a protective order as unwarranted.  Setting aside Highfields' *in terrorem* argument of 350 depositions, the simple point is that information in Highfields' investor lists and in the possession of its investors "bears on, or . . . reasonably could lead to other matters that could bear on" the question of subject matter jurisdiction.  *Oppenheimer*, 437 U.S. at 350.  This information is, therefore, relevant and discoverable.  *See id.*  Indeed, this information not only satisfies the minimal standard of relevance necessary to justify discovery, it is critical to the determination of essential jurisdictional facts.[7]  Highfields has admitted that the only information in its possession concerning the citizenship of its investors is "the names and addresses of [the] investors and certain tax declarations of those investors."  (Proposed Rep. Mem. 4 n.2.)  It is well-established that such barebones

---

[7]  The identities and locations of Highfields investors are also relevant to merits-related issues, including the inquiry into whether, under Chapter 93A, the alleged misconduct took place "primarily and substantially within the commonwealth." (*See* n. 4, *supra*.)  Moreover, according to publicly available information, at least one of Highfields' investors is a competitor of SCOR.  *See* XL Capital Ltd, Proxy Statement (Schedule 14A), at 5 (April 5, 2002) ("[T]he Company holds a minority stake in the hedge fund manager of Highfields and had invested approximately $176.5 million in funds managed by this management company as of December 31, 2001.").  Discovery from that investor clearly will be relevant to merits-related issues such as Highfields' reliance on SCOR's alleged misrepresentations and Highfields' sophistication as an investor in the reinsurance industry.  Therefore, if the Court grants Highfields' request for a protective order, it should limit that protective order to jurisdictional discovery.  SCOR reserves the right to challenge any restriction on discovery of merits-related issues until it becomes appropriate to do so.

information alone is insufficient to ascertain the investors' citizenship. Thus, additional information must be sought directly from the investors themselves. Without such information, it is impossible to develop a complete factual record upon which to test the accuracy of Highfields' various factual and legal assertions, which it now claims, in contrast to the assertions of the Complaint, may deprive the Court of jurisdiction. Highfields' proposed protective order therefore simply cannot be reconciled with Highfields' obligation to substantiate its jurisdictional assertions, an obligation that persists as long as this case continues in federal court and Highfields' motion to "affirm" jurisdiction remains pending.[8]

Further, Highfields' privacy concerns are unjustified. A party seeking a protective order bears the burden of demonstrating "good cause" for its request, and it must make a particular factual demonstration of specific potential harm; it cannot rely on conclusory statements. *Anderson* v. *Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). The court must then balance the potential harm identified by the movant with the need for the discovery. *See Ares-Serono, Inc.* v. *Organon Int'l B.V.*, 151 F.R.D. 215, 220 (D. Mass. 1993). Further, protective orders prohibiting the taking of depositions are "extraordinary measure[s]" that

---

[8]  Incredibly, Highfields suggests that SCOR can simply "utiliz[e]" a version of its investor lists, for which the actual names of Highfields' investors have been redacted, to conduct its jurisdictional investigation. (Prot. Order Mem. 3.) Highfields does not explain how documents that supply hardly a shred of jurisdictionally relevant information can be "utilized." Moreover, Highfields' redaction of those investor lists was illegitimate. The Stipulated Protective Order provides significant restrictions on the use of confidential information, but it does not permit a party to withhold confidential documents or redact confidential information from otherwise relevant documents. Highfields may not now unilaterally decide to withhold non-privileged relevant documents that it considers to be sensitive, nor can it redact non-privileged material that it considers to be irrelevant or confidential from otherwise relevant documents. *See Ares-Serono*, 151 F.R.D. at 220 (compelling production of confidential documents and holding that use and disclosure limitations provided by stipulated protective order constituted adequate protection for such documents); *Trevino* v. *ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (prohibiting redaction of confidential information from relevant, non-privileged documents covered by standard protective order); *Medtronic Sofamor Danek, Inc.* v. *Michelson*, No. 01-2373-GV, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002) ("[I]nformation may not be redacted from a document because it is deemed irrelevant by the producing party, especially when a protective order is in place to govern production of confidential information....The Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction."); *Am. Elec. Power Co.* v. *United States*, 191 F.R.D. 132, 140-41 (S.D. Ohio 1999) (refusing to permit redaction of non-privileged client identities from relevant documents, based, in part, on the protection already afforded under confidentiality agreement between the parties).

are "rarely granted, and then only if [the] movant shows a particular and compelling need for such an order." *Prozina Shipping Co* v. *Thirty-Four Autos.*, 179 F.R.D. 41, 48 (D. Mass. 1998) (quotations and citations omitted).

Highfields has not made the requisite showing of specific potential harm, and it certainly has not demonstrated that this is one of those rare instances in which depositions should be prohibited. Notwithstanding Highfields' paranoia, SCOR does not propose to subject Highfields' investors to public dissemination of their financial records. Indeed, the Stipulated Protective Order, which reflects the parties' agreement regarding the treatment of confidential information in this litigation, already would protect against such actions. (Meal Decl. Ex. 3.) The Stipulated Protective Order authorizes a party to designate documents produced by the parties in connection with the litigation as "Confidential" or "Highly Confidential" and significantly restricts the use of documents so-designated. (Protective Order ¶¶ 3, 4, 9, 10 (Meal Decl. Ex. 3.) It also allows deposition transcripts, interrogatory responses and documents produced by third parties to be designated "Confidential" or "Highly Confidential." (Protective Order ¶¶ 5, 6, 8 (Meal Decl. Ex. 3.) The safeguards of the Stipulated Protective Order were bargained-for by the parties and provide more than adequate protection to satisfy Highfields' privacy concerns. Highfields has made no showing—and, in fact, has not even endeavored to show—that the safeguards of the Protective Order are insufficient to protect the information sought in the document requests at issue on SCOR's cross-motion and any eventual discovery that SCOR may seek from Highfields' investors.

Moreover, even if Highfields' privacy concerns were not fully addressed by the protections provided in the Stipulated Protective Order, those concerns must yield to the clear necessity of the discovery Highfields seeks to prohibit. Indeed, the only authority cited by Highfields' in support of its contention that its privacy concerns are a legitimate basis

-15-

upon which to issue a protective order actually suggests the contrary.  In *Lincoln American Corp.* v. *Bryden*, cited by Highfields (Prot. Order Mem. 16), the court refused to prohibit discovery of the names and addresses of a defendant's investors, reasoning that their clear relevance outweighed the interests embodied by a state statute "favoring confidentiality of stockholder lists and records."  375 F. Supp. 109, 110-12 (D. Kan. 1973).[9]  This, of course, is SCOR's argument.  Moreover, the statute and regulations Highfields cites as purported authority for its ostensible responsibility to protect the identities of its investors (*see* Prot. Order Mem. 15 n.4), do not relieve Highfields of its obligations to provide necessary discovery in this litigation.  To the contrary, the statute and regulations specifically provide exceptions from their requirements when necessary to comply with other legal obligations, such as those imposed by a court order.  *See* 15 U.S.C. § 6802(e)(8); 17 C.F.R. § 248.15(a)(5); 17 CFR § 160.15(a)(5); 17 CFR § 313.15(a)(7).[10]  Most importantly, it should not be forgotten that it was Highfields that invoked this Court's subject matter jurisdiction, it was Highfields that requested that the Court "affirm" its subject matter jurisdiction, and it

---

[9]    In the *Loazano* v. *Maryland Casualty Co.* decision, also cited by Highfields (Prot. Order Mem. 16), the court prohibited discovery of the identities of investors in certain limited partnerships, but the basis for its decision was that those identities simply were not relevant.  850 F.2d 1470, 1472 (11th Cir. 1988) ("[T]he partnerships . . . are totally unrelated to the controversy between Lozano and Maryland Casualty.").  That is not the case in the present action.

[10]    In addition, Highfields' analogy of the status of its investors in this litigation to that of passive members in a class action is factually attenuated and misplaced.  (*See* Prot. Order Mem. 16-18.)  Here, SCOR is seeking factual information necessary for a proper determination as to whether the procedural prerequisites for filing suit in a federal court have been met.  The domicile of passive class members is irrelevant in class actions; thus, the jurisdictional inquiry in this case is more properly compared to a court's examination of whether a proposed class satisfies the procedural requirements set forth by Federal Rule of Civil Procedure 23 for class certification.  In ruling on these procedural prerequisites, it is well-established that courts "ordinarily will need more information than is provided in the pleadings and, therefore, will commonly conduct evidentiary hearings."  Jeffrey Bacich and Steven J. Revell, *Bender's Federal Practice Forms* § 23 (2006).  In addition, the authority cited by Highfields does not even support its position:  "While it is true that discovery against absentee class members . . . cannot be had as a matter of course, the overwhelming majority of courts which have considered the scope of discovery against absentees have concluded that such discovery is available" when, as Highfields concedes is the case here, "the information is not available from the representative parties."  *M. Berenson Co.* v. *Faneuil Hall Marketplace, Inc.*, 103 F.R.D. 635, 637 (D. Mass. 1984).)

was Highfields' failure to have conducted the necessary inquiry before it filed the Complaint that has necessitated the discovery Highfields now seeks to prohibit. If Highfields' privacy concerns outweigh its interest in this litigation, Highfields retains the option of seeking a dismissal of this case under Rule 41(a)(2).

Finally, Highfields suggests that if the Court denies Highfields' request that the Court prohibit discovery of the investors' citizenship, Highfields should be allowed to take the discovery from its investors itself, by making its own private inquiry of its investors and then sharing the results of that secret inquiry with SCOR and the Court. (Prot. Order Mem. 18-19.) In other words, Highfields now seeks the Court's permission to conduct the inquiry Highfields should have conducted before it filed the Complaint,[11] and that SCOR has been asking it to conduct since January. Highfields has had its chance, and regardless, Highfields' proposal would prevent SCOR and this Court from testing the accuracy of any jurisdictional facts eventually asserted by Highfields on the basis of information that Highfields allegedly received, in private, from those investors.

### B.    The Investor Lists Are Not Privileged or, In the Alternative, Highfields Should Be Compelled to Produce Non-Privileged Versions.

The only documents provided to SCOR by Highfields that include the identities of Highfields' investors are the Investor Lists that Highfields now claims to be privileged documents that were produced inadvertently. However, Highfields admits that the Investor Lists are print-outs from a pre-existing electronic "investor database" and that the information contained within the database is not privileged. (Prot. Order Mem. 5.) Thus, even if the Investor Lists are privileged, which SCOR does not concede, Highfields should already have provided non-privileged print-outs of the relevant investors for the date on

---

[11]    *See Wharton* v. *Feeley*, 1987 U.S. Dist. LEXIS 10039 (D. Mass. Oct. 23, 1987) (imposing Rule 11 sanctions for failure to conduct the "reasonable inquiry" into parties' citizenship).

which the Complaint was filed.  The simple fact that Highfields has not produced such print-outs reveals that its true intention is not to protect the confidentiality of attorney-client communications, but to avoid providing SCOR with jurisdictionally relevant discovery.

Bizarrely, Highfields implies that it has not produced such print-outs because SCOR has chosen to challenge Highfields' characterization of the Investor Lists as privileged rather than "request[] further relevant information through [the] normal discovery process."  (Prot. Order Mem. 3.)  SCOR is at a loss to understand this contention.  Quite clearly, SCOR has not limited itself solely to a pursuit of the Investor Lists.  SCOR's First Request plainly calls for the production of Highfields' investor records, and SCOR has repeated that request in numerous recent filings with this Court.  However, in the event that Highfields is confused as to SCOR's position, SCOR's cross-motion to compel compliance with SCOR's First Request should remove any doubt as to SCOR's use of the "normal discovery process."

In any event, Highfields' manufactured basis for asserting attorney-client privilege over the Investor Lists should be rejected.[12]  Highfields claims that the Investor Lists are privileged because those particular print-outs from the "investor database" were "created for the purpose of enabling Highfields' general counsel to render legal advice and used by him to do so."  (Prot. Order Mem. 6.)  Highfields' argument is based on a faulty premise.  The Investor Lists were not "created" at the attorney's insistence; they are merely hard copy versions of pre-existing electronic business records.  *See Fisher* v. *United States*, 425 U.S. 391, 403-04 (1976) ("[P]re-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal

---

[12]    Highfields asserts that SCOR's motion to challenge Highfields' designation of the Investor Lists as privileged is "premature" and should yield to consideration of Highfields' motion to "affirm" jurisdiction. (Prot. Order Mem. 12.)  To the contrary, however, resolution of the jurisdictional discovery disputes is a prerequisite to any eventual ruling on the existence of subject matter jurisdiction.  (*See* Sur-Reply 3-6.)

advice."). Under Highfields' logic, the *Fisher* rule becomes meaningless: any pre-existing electronic document that is printed and provided to an attorney—indeed, any physical document that is photocopied and provided to an attorney—becomes privileged, even though the version given to the attorney is a mere duplicate of the pre-existing document. Highfields' argument clearly cannot stand.[13]

Highfields also claims that the Investor Lists are privileged because they "contain Mr. Mazzella's handwritten notations reflecting his review and analysis of" the Investor Lists. (Prot. Order Mem. 5.) However, the notations to which Highfields refers are virtually nonsensical. They do not reflect or reveal anything, let alone legal advice. Moreover, the proper approach would be to redact the notations, which would eliminate any hint of a privileged communication, if there were indeed one to be found. *See Ass'n for Reduction of Violence* v. *Hall*, 734 F.2d 63, 66 (1st Cir. 1984) (innocuous portions of privileged documents should be made available by excising the privileged portions). Once the handwritten notations are redacted there would be no risk of revealing any allegedly privileged communications.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts, SCOR hereby requests an oral argument in support of its Cross-Motion.

---

[13] Highfields further attempts to justify its assertion of privilege over the Investor Lists by arguing that SCOR has conceded that certain other documents produced by Highfields are privileged and were produced inadvertently. (Prot. Order Mem. 5.) This simply is not true. There is an insufficient factual basis for SCOR to reach any conclusion as to whether the documents are, in fact, privileged. Accordingly, SCOR has acknowledged that, from the face of the documents, there is an arguable basis for an assertion of privilege, which SCOR does not intend to challenge at this stage of the litigation because the documents relate exclusively to merits issues. In any event, even if some of those documents might be privileged, it does not follow that the Investor Lists are also privileged.

## CONCLUSION

For the foregoing reasons, SCOR respectfully requests that the Court: (i) deny Highfields' Cross-Motion for a Protective Order; (ii) enter an Order compelling Highfields to provide discovery sufficient to substantiate the Court's subject matter jurisdiction over this case, including complying in full with Request Numbers 34, 35, 36, 37, 65 and 66 of *SCOR's First Request for the Production of Documents by Plaintiffs* ("SCOR's First Request"); and (iii) grant to SCOR any such other and further relief that the Court may deem just and proper.

Respectfully submitted,

ROPES & GRAY LLP

By:  */s/ Sara M. Beauvalot*
     Douglas H. Meal (BBO#340971)
     Giselle J. Joffre (BBO#658047)
     Sara M. Beauvalot (BBO#658281)

     One International Place
     Boston, MA 02110-2624
     Tel: 617-951-7000
     Fax: 617-951-7050

     Of Counsel:
     SULLIVAN & CROMWELL LLP
     125 Broad Street
     New York, NY 10004-2498
     Tel: 212-558-4000
     Fax: 212-558-3588

     *Counsel for Defendant SCOR*

Dated: June 28, 2006
       Boston, Massachusetts

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June, 2006 Defendant SCOR's

Memorandum of Law in Opposition to Plaintiffs' Cross-Motion for a Protective Order and

in Support of its Cross-Motion to Compel Production of Documents Relating to Subject

Matter Jurisdiction and the Declaration of Douglas H. Meal and its accompanying exhibits

were filed through the ECF system and will be sent electronically to the registered

participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Sara M. Beauvalot*

Sara M. Beauvalot, Esq.

# APPENDIX

**DEFENDANT SCOR'S REQUESTS  NOS. 34-37 AND 65-66 FOR THE
PRODUCTION OF DOCUMENTS BY PLAINTIFFS AND PLAINTIFFS'
RESPONSES THERETO**

1.      **Request Number 34**

        The complete text of SCOR's Request Number 34, and Highfields'

response, is reproduced below:

<u>**Request Number 34:**</u>

        Documents sufficient to show the ownership structure of the Highfields Entities
        and the Highfields Affiliates,[1] including any changes to that ownership structure.

<u>Specific Objection and/or Response:</u>

        Highfields objects to Request Number 34 on the grounds that it seeks documents
        or information not relevant to the subject matter of this action, nor reasonably
        calculated to lead to the discovery of admissible evidence.

2.      **Request Number 35**

        The complete text of SCOR's Request Number 35, and Highfields'

response, is reproduced below:

<u>**Request Number 35:**</u>

        Documents sufficient to identify every general and limited partner, owner or
        member of, or investor in, each of the Highfields Entities and the citizenship,
        place of incorporation or organization, principal place of business and residence

---

[1]     The term "Highfields Entities" is defined as "Highfields Capital Ltd., Highfields Capital I LP, and
        Highfields Capital II LP, individually and collectively," and the term "Highfields Affiliates" is
        defined as "any or all entities directly or indirectly related to, or affiliated with any of the
        Highfields Entities, including Highfields Capital Management LP, all entities managed by
        Highfields Capital Management LP, and all other predecessors, successors, parent companies,
        subsidiaries, joint ventures, divisions, general partners, limited partners, affiliates and assigns of
        any of the Highfields Entities."  (SCOR's First Request, Definitions ¶ I (Meal Decl. Ex. 1).)

of (i) each of the Highfields Entities and (ii) any general and limited partner, owner or member of, or investor in, each of the Highfields Entities, including the following: For every general or limited partner, owner or member of, or investor in any of the Highfields Entities that is a corporation, provide documents sufficient to identify that corporation's place(s) of incorporation and principal place of business. For every general or limited partner, owner or member of, or investor in, any of the Highfields Entities that is an unincorporated association, including, without limitation, a partnership, a limited partnership, or a limited liability company, provide documents sufficient to identify that unincorporated association and every general partner, limited partner, member, or owner of, or investor in that unincorporated association, as well as the citizenship, place or organization, principal place of business and, where applicable, residence of each such association, general partner, limited partner, member, owner or investor. For every general or limited partner, owner or member of, or investor in, either (i) any Highfields Entity or (ii) any partner, owner or member of, or investor in, any such entity who is an individual, provide documents sufficient to identify his or her citizenship and home address. If the individual has resided at his or her current home address for less than one year, provide documents sufficient to identify his or her previous home address.

Specific Objection and/or Response:

Highfields objects to Request Number 35 on the grounds that it is overly broad, unduly burdensome, and calculated to harass. Highfields further objects to this request on the grounds that it seeks information not within Highfields' knowledge and imposes upon Highfields a burden beyond the scope of Fed. R. Civ. P. 26. Highfields further objects to this request to the extent it requires Highfields to disclose the identity of persons or entities where such disclosure may be prohibited by law. Highfields further objects to this request on the grounds that information regarding the identity of Highfields' investors, owners, partners, and/or members is confidential and irrelevant.

Subject to and without waiver of its general and specific objections, and to the extent such information exists in documentary form, Highfields will produce documents in its possession, custody, or control that are responsive to this request to the extent that the request relates to named Plaintiffs in the lawsuit and to the citizenship of the Plaintiffs as of the date of the filing of the Complaint.

### 3.    Request Number 36

The complete text of SCOR's Request Number 36, and Highfields'

response, is reproduced below:

**Request Number 36:**

> To the extent not already requested, documents sufficient to identify the form of
> association, including, without limitation, a corporation, a limited liability
> company, a partnership, or a limited partnership, of each of the Highfields
> Entities.

Specific Objection and/or Response:

> Highfields objects to Request Number 36 on the grounds that it is overly broad,
> unduly burdensome, and calculated to harass.  Highfields further objects to this
> request on the grounds that it seeks information not within Highfields' knowledge
> and imposes upon Highfields a burden beyond the scope of Fed. R. Civ. P. 26.
> Highfields further objects to this request to the extent it requires Highfields to
> disclose the identity of persons or entities where such disclosure may be
> prohibited by law. Highfields further objects to this request on the grounds that
> information regarding the identity of Highfields' investors, owners, partners,
> and/or members is confidential and irrelevant.

> Subject to and without waiver of its general and specific objections and to the
> extent that such documents exist in documentary form, Highfields will produce
> documents in its possession, custody, or control that are responsive to this request
> only to the extent that they relate to named Plaintiffs in the litigation.

### 4.    Request Number 37

The complete text of SCOR's Request Number 37, and Highfields'

response, is reproduced below:

**Request Number 37:**

> All agreements and other documents that govern, or establish the terms of, the
> relationship between any of the Highfields Entities and any partner, investor, or
> other person with a financial interest, in any of the Highfields Entities.

-3-

<u>Specific Objection and/or Response:</u>

Highfields objects to Request Number 37 on the grounds that it is overly broad, unduly burdensome, and calculated to harass. Highfields further objects to this request on the grounds that it is vague and ambiguous. Highfields further objects to this request on the grounds that it seeks documents or information not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**5.    Request Number 65**

The complete text of SCOR's Request Number 65, and Highfields'

response, is reproduced below:

**<u>Request Number 65:</u>**

Documents sufficient to identify all partners, officers, employees, directors, representatives or any other personnel of Highfields and their respective positions during the period October 1, 2001 to the present.

<u>Specific Objection and/or Response:</u>

Highfields objects to Request Number 65 on the grounds that it is overly broad and unduly burdensome. Highfields further objects to this request on the grounds that it seeks documents or information not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

**6.    Request Number 66**

The complete text of SCOR's Request Number 66, and Highfields'

response, is reproduced below:

**<u>Request Number 66:</u>**

All agreements and other documents concerning or identifying Highfields' organization, structure and ownership during the period October 1, 2001 to the present.

<u>Specific Objection and/or Response:</u>

Highfields objects to Request Number 66 on the grounds that it seeks documents or information not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Highfields further objects to this request on the grounds that it is overly broad, unduly burdensome, and calculated to harass.